KORULA T. CHERIAN (Bar No. 133967)
sunnyc@cherianllp.com
ROBERT M. HARKINS (Bar No. 179525)
bobh@cherianllp.com
**CHERIAN LLP**
2001 Addison St, Suite 275
Berkeley, CA 94704
Telephone: (510) 944-0190

STEPHANIE R. WOOD (Bar No. 242572)
stephaniew@cherianllp.com
**CHERIAN LLP**
8350 N. Central Expressway, Suite 1900
Dallas, TX 75206
Telephone: (945) 205-0301

THOMAS M. DUNHAM (pro hac vice)
tomd@cherianllp.com
J. MICHAEL WOODS (pro hac vice)
michaelw@cherianllp.com
ADAM A. ALLGOOD (Bar No. 295016)
adama@cherianllp.com
**CHERIAN LLP**
1901 L. St. NW, Suite 700
Washington, DC 20036
Telephone: (202) 838-1560

Attorneys for Plaintiff BEIJING MEISHE NETWORK TECHNOLOGY CO., LTD.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BEIJING MEISHE NETWORK TECHNOLOGY CO. LTD.<br><br>Plaintiff,<br><br>v.<br><br>TIKTOK INC., TIKTOK PTE. LTD., BYTEDANCE LTD., AND BYTEDANCE INC.,<br><br>Defendants. | Case No. 23-CV-06012-SI<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO AMEND TEXAS PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: March 29, 2024<br>Time: 10:00 AM PST<br>Place: Courtroom 1, 17th Floor<br>Before: Hon. Judge Susan Illston<br>Trial Date: TBD |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on March 29, 2024 at 10:00 a.m. or soon thereafter as counsel may be heard in the United States Courthouse, located at the United States District Court for the Northern District of California – San Francisco Courthouse, Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, where Plaintiff Beijing Meishe Network Technology Co. Ltd. ("Meishe") will and hereby does move to amend the Texas Protective Order governing this case.

Meishe seeks relief (1) to increase the total allowable print volume pages of source code and remove the limit on allowable consecutive pages and (2) to allow Meishe's outside consultant Dr. Sam Malek to have access to Defendants' source code where Defendants base their objection to his access solely on the restriction under the Texas Protective Order entered in W.D. Texas that no more than three Outside Consultants may have access to the other party's source code.

Dated: February 22, 2024

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

A. Plaintiff's Request to Revise the Source Code Printing Limits ..... 3

B. Access to Defendants' Source Code by Dr. Malek ..... 4

III. STATEMENT OF THE ISSUES ..... 5

IV. ARGUMENT AND AUTHORITIES ..... 5

A. Good Cause Exists to Modify the Print Limitations of the Texas Protective Order ..... 5

1. Plaintiff's Need for Additional Printed Pages of Source Code Demonstrates Good Cause to Modify the Texas Protective Order ..... 6

2. Plaintiff's Requested Modification of Print Limits is Reasonable in Consideration of How the Court Ordinarily Treats Source Code Limits and Proportionality Demonstrates Good Cause ..... 7

3. The Nature of This Dispute as a Copyright and Trade Secret Action Demonstrates Good Cause for Modifying the Texas Protective Order to Allow Plaintiff to Request and Receive the Additional Printed Source Code ..... 8

4. Modification of the Texas Protective Order Cannot Be Avoided ..... 9

5. The Concern the Print-Out Page Limits Were Introduced to Address is Still Protected Under Plaintiff's Proposal ..... 10

B. Access to Defendants' Source Code by Plaintiff's Expert, Dr. Malek, is Proper ..... 12

1. Dr. Malek is Plaintiff's Third Outside Consultant and is Allowed to Access the Code Under the Texas Protective Order ..... 12

2. In the Alternative, the Texas Protective Order Should be Modified to Allow for Disclosure to Four Outside Consultants ..... 13

V. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

### Cases

*Cisco Sys. v. Chung*, No. 19-cv-07562-PJH, 2023 U.S. Dist. LEXIS 48924 (N.D. Cal. Mar. 22, 2023) .......... 9

*Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865-EMC (PHK), 2023 U.S. Dist. LEXIS 213445 (N.D. Cal. Nov. 30, 2023) .......... 13

*Inventor Holdings, LLC v. Wal-Mart Stores Inc.*, Civil Action No. 1:13-cv-00096 (GMS), 2014 U.S. Dist. LEXIS 119933 (D. Del. Aug. 27, 2014). .......... 10

*Johnson v. City & Cty. of S.F.*, No. CV 09-5503 JSW (JSC), 2012 U.S. Dist. LEXIS 3971 (N.D. Cal. Jan. 12, 2012) .......... 6

*Lilith Games (Shanghai) Co. v. uCool, Inc.,* No. 15-CV-01267-SC, 2015 U.S. Dist. LEXIS 128619 (N.D. Cal. Sep. 23, 2015) .......... 9

*Microunity Sys. Eng'g. Inc. v. Apple, Inc.*, No. 13-mc-80020 LHK (PSG), 2013 U.S. Dist. LEXIS 76469 (N.D. Cal. May 30, 2013) .......... 7

*OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622-JST (KAW), 2014 U.S. Dist. LEXIS 14419 (N.D. Cal. Oct. 9, 2014) .......... 8

*Rabin v. Google LLC*, No. 22-cv-04547-PCP, 2023 U.S. Dist. LEXIS 207835 (N.D. Cal. Nov. 20, 2023) .......... 9, 14

*Valencell, Inc. v. Apple, Inc.*, No. 5:16-CV-1-D, 2016 U.S. Dist. LEXIS 173158 (E.D.N.C. Dec. 12, 2016) .......... 8

### Statutes

Fed. R. Civ. Pro. 26(b)(1) .......... 8

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The motion addresses two important requests by Plaintiff Beijing Meishe Network Technology, Co., Ltd.: (1) to increase and modify the language limiting the amount of printed source code allowed under the Texas Protective Order, and (2) an order allowing Plaintiff's expert Dr. Sam Malek to view Defendants' source code.

This case was filed in the Western District of Texas on May 18, 2021. In this case, Plaintiff Beijing Meishe Network Technology Co., Ltd. ("Meishe" or "Plaintiff") alleges Defendants TikTok and ByteDance entities ("Defendants")[1] infringe its copyrighted works by copying its software source code and misappropriated its trade secrets. *See* Texas Action at Dkt. 235 (Third Amended Complaint) at ¶¶ 4 and 5.[2] Plaintiff filed its case against Defendants after discovering in March of 2021, that Defendants' apps infringed Plaintiff's copyrights. Specifically, Plaintiff used publicly available TikTok object code in the form of an APK and compared it to Plaintiff's APK which illustrated the copying in the TikTok code. *See id.* at ¶ 56. As Plaintiff's Complaint explains, Plaintiff believes that Defendants obtained access to Plaintiff's code through its former employee, Mr. Jing Xie, working for Defendants. *See id.* at ¶ 58.

While Plaintiff was able to establish copying from publicly available information, the key evidence of copying in this case is Defendants' source code. Further, to demonstrate the pervasive nature of the copying, Plaintiff needs to study and show the breadth of Defendants' copying, both the uses of copied code in each version of Defendants' code and the changes in the versions over time.[3]

After the summonses in this case against the foreign defendants were returned executed, Defendants filed a flurry of motions:

- Motion to Dismiss for Failure to State a Claim (Dkt. No. 27)

[1] TikTok Inc., TikTok PTE. Ltd, ByteDance Ltd., and ByteDance Inc. are the named Defendants in this action. During the pendency of this litigation, Plaintiff believes that Defendants' roles and responsibilities have shifted and that Defendants may have reassigned beneficial interests and responsibilities beyond the four named defendants. There is a current discovery dispute as to Defendants' less than fulsome disclosure of these changes.

[2] Unless otherwise noted, all docket entries shall be in reference to filings from *Beijing Meishe v. TikTok and ByteDance*, Case No. 21-cv-00504 (W.D. Texas).

[3] Plaintiff's assertion is that Defendants have infringed its copyright(s) since at least 2018. *See* Complaint at ¶ 56.

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

- Motion to Stay Based On International Abstention (Dkt. No. 36)
- Motion to Transfer (Dkt. No. 58)
- Motion to Stay Discovery (Dkt. No. 59)

On May 26, 2022, Judge Gilliland held a status conference and hearing on Defendants' motions to dismiss and stay at which time he made clear the case was progressing. Shortly thereafter, on June 21, 2022, the court entered the Agreed Protective Order ("Texas Protective Order") governing the treatment of confidential information. Dkt. 82.

The Texas Protective Order has never been modified. By its terms, it imposes numerical limitations on the printing of source code which have since shown to be insufficient in light of the volume of relevant code and versions. By its terms, it also imposes a limit on the number of Outside Consultants who can access the Producing Party's source code to three Outside Consultants with the exception that direct reports and support personnel are not counted. *See* Dkt. 82 at ¶19(c) and n. 1.

In the Texas action, Plaintiff sought relief from those page limitations and modification of the order explaining the print limits the parties adopted were arbitrary and that both the continuous page limit and the total print page limits were far less than what has borne out as reasonably necessary. *See* Dkt 370, (the Texas Motion). Specifically, Plaintiff sought to (1) increase the total allowable print volume to 1,100 pages (the currently allowed 600 pages with an additional 500 pages to account for email production designated as "Highly Confidential–Source Code"), plus an additional 500 pages for each version of source code produced; and (2) remove the 25 consecutive page restriction.[4] Additionally, Plaintiff asked the Texas court to Order Defendants to produce relevant requested printouts that Defendants are still refusing to provide, relying upon the "consecutive" page count presumption, despite Plaintiff's good cause explanation. Plaintiff desired to avoid any substantial increase to source code printouts—through the use of representative versions—but Defendants were unwilling to agree.

In the Motion previously filed in Texas seeking relief and modification, Plaintiff also sought assistance from the Texas court regarding Defendants' refusal to allow Plaintiff's third outside consultant, Dr. Sam Malek, access to Defendants' source code. As background, the Texas protective

[4] If the Court is not inclined to remove this limit altogether, in the alternative Plaintiff requests an increase of this limit from 25 pages to 75 consecutive pages.

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

Order permits source code access for up to three Outside Consultants with support personnel for an Outside Consultant not counting against the limit of three. Plaintiff has two Outside Consultants, Dr. Michael Shamos and Mr. Dave Howell, and one support person, Mr. Greg Kesden, who have access to Defendants' source code. Defendants' position is that Dr. Sam Malek should be counted as a fourth not third Outside Consultant as they contend Mr. Kesden should be deemed an Outside Consultant irrespective of his support role to Dr. Shamos.[5]

As Defendants do not object to Dr. Malek's access to their code based on Dr. Malek's credentials or his prior work experience, Defendants' refusal to allow him access to their source code is unreasonable warranting either a judicial finding he is the third Outside Consultant or a modification of the Texas Protective Order to allow the parties up to four Outside Consultants.

Plaintiff's Motion was filed on October 19, 2023 (Dkt. 370), Defendants' Opposition was filed on October 26, 2023 (Dkt. 371), and Plaintiff's Reply was filed November 2, 2023 (Dkt. 373). On November 17, 2023, the Western District issued its Order transferring the case (Dkt. 374) in response to the Fifth Circuit's October 31, 2023 Judgment and Writ of Mandamus requiring transfer from the Western District of Texas to the Northern District of California. Dkt. 372. Thus, this dispute was fully briefed and before the court, but the case was transferred before the court had the opportunity to rule on the matter.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Request to Revise the Source Code Printing Limits

In June of 2022, without access to each other's source code, Plaintiff and Defendants agreed to a preliminary and arbitrary total of 600 pages for hard copy printouts of source code. *See* Dkt. 82 at ¶ 24 ("The Receiving Party may request printouts of no more than six hundred (600) pages total without the agreement of the Producing Party."). Further, the parties also incorporated a 25-page limit for block printing of continuous source code print outs. *Id.* ("Any printing request for a portion of Source Code that consists of more than twenty-five (25) pages of a continuous block of source code shall be presumed to be excessive, and the burden shall be on the Receiving Party to demonstrate the need for such a printed copy.")

[5] Importantly, Defendants have taken full advantage of the exception applicable to direct reports and support personnel – Defendants have five persons accessing Plaintiff's source code.

That agreement predated either party seeing any source code produced by the other. Since June of 2022, Plaintiff has produced 17 versions of source code, and Defendants have produced 32+ versions[6] of source code. Because the copying by Defendants is pervasive and spans multiple versions of Defendants' code, the limits which the parties arbitrarily chose in the Agreed Texas Protective Order have been shown to be disproportionately small in view of the needs of the case. To date, Plaintiff has used 499 of the available 600 printout pages, with Defendants refusing to produce an additionally requested 124 pages.

Plaintiff first sought a representativeness stipulation with Defendants so that Plaintiff could use such a stipulation in lieu of hard copies with their experts, the Court, and ultimately the jury.

On September 5, 2023, the parties met and conferred, and Defendants refused to agree to a stipulation because the Court had ordered Defendants to produce development logs. *See* Ex. C. Sept. 6, 2023 B. Lubarsky Letter at 3.[7] However, development logs are an insufficient proxy for a stipulation; while they describe changes made to the code, they do not *show* the changes. Moreover, logs in no way reduce the burden of Plaintiff to prove copying and use via source code.

Defendants similarly refused the Texas Court's suggestion regarding representative versions, despite producing 27+ additional versions of source code in addition to their previously ordered 5 versions. *See* Dkt. 244, Order of April 20, 2023 Discovery Hearing ("Absent a stipulation regarding the representativeness of source code produced, Defendants are ORDERED to produce within ten days of this order complete versions (e.g., X.0.0) of the TikTok source code related to audio and video editing from version 8.0.0 through the current version as of May 8, 2023.").

**B. Access to Defendants' Source Code by Dr. Malek**

On September 11, 2023, Plaintiff disclosed Dr. Sam Malek for access to Defendants' Confidential and Confidential–Outside Attorneys' Eyes Only material in accordance with the Texas Protective order, to which Defendants did not object. *See* Ex. D, Woods Email. On October 2, 2023,

[6] Defendants produced 32 versions of source code prior to October 13, 2023. On October 13, 2023, Defendants supplemented their discovery response to Interrogatory No. 1 identifying additional TikTok iOS source code and separately advised the code was available for review. *See* Ex. A and B respectively. But Plaintiff has not been given any access yet to this code. Specifically, Defendants reneged on their offer to make the code available using the transfer of this case and the yet to be entered new scheduling order as their justification. *See* Ex. M. Defendants have yet to identify how many additional versions of source code are included in this recent production.

[7] Subsequently, Defendants offered only to agree that the [redacted] version made available for inspection [redacted] is representative of later versions.

Plaintiff also disclosed Dr. Malek for access to Defendants' Highly Confidential–Source Code material. *See* Ex. E, Woods Email. The Texas Protective Order permits access to source code by up to three Outside Consultants. *See* Dkt. No. 82 at ¶19(c). Further the Texas Protective Order does not count an Outside Consultant's direct reports and support personnel against the limit of three Outside Consultants. In its email, Plaintiff explained to Defendants that Dr. Malek would be Plaintiff's third Outside Consultant as Plaintiff currently had two Outside Consultants—Dr. Michael Shamos and Mr. Dave Howell—and Mr. Greg Kesden was a direct report to Dr. Shamos. *See* Ex. E.

On October 10, 2023, Defendants responded objecting to Dr. Malek's access to Defendants' source code. *See* Ex. F, Okano Email. Defendants did not object based on Dr. Malek's credentials or any possible conflicts but rather they disagreed that Mr. Kesden was a direct report to Dr. Shamos and Defendants considered Mr. Kesden to be a third Outside Consultant. The parties met and conferred on October 11, 2023 without reaching a resolution.

## III. STATEMENT OF THE ISSUES

Whether good cause exists to modify the source code print limitations of the Texas Protective Order where the presumptive numerical limits within the Order were agreed to prior an understanding as to what volume would be at issue and where the ordered limits have borne out as far less than what is reasonably necessary including because Defendants refuse to meaningfully stipulate as to representativeness of the versions.

Whether Defendants' objection to disclosure of Defendants' source code to Plaintiff's expert Dr. Sam Malek should be overruled because under the provisions of the Texas Protective Order he would be counted as Plaintiff's third (not fourth) Outside Consultant;

Or, if Dr. Sam Malek is counted as a Fourth Outside Consultant, whether good cause exists to modify the Texas Protective Order to expand the number of allowable Outside Consultants from three to four.

## IV. ARGUMENT AND AUTHORITIES

### A. Good Cause Exists to Modify the Print Limitations of the Texas Protective Order

The Texas Protective Order imposes agreed upon print limits that do not bear any relationship to the total amount of source code at issue in this case. Meishe requires the requested modification

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

to the limits because of the number of versions of source code, the pervasiveness of Defendants' copying, and Defendants' unwillingness to agree to a stipulation. Importantly, the print limits were agreed to at a time when Plaintiff could not have anticipated it might need to prepare its case to address a large number of code versions (32+ versions) without an agreement as to representativeness. "The court has inherent authority to grant a motion to modify a protective order where good cause is demonstrated." *See Johnson v. City & Cty. of S.F.*, No. CV 09-5503 JSW (JSC), 2012 U.S. Dist. LEXIS 3971, at *4 (N.D. Cal. Jan. 12, 2012) citing *Phillips v. GMC*, 307 F.3d 1206, 1213 (9th Cir. 2002). As explained below, Meishe has met its burden and demonstrated good cause for modifying the Texas Protective Order.

#### 1. *Plaintiff's Need for Additional Printed Pages of Source Code Demonstrates Good Cause to Modify the Texas Protective Order*

The 600 page number the parties originally agreed to and the court ordered is arbitrary and untethered to the facts of this case. Neither the Western District of Texas court nor Plaintiff had any data to go on when setting this limit. As reflected by the volume of the code demonstrably at issue—and Defendants refusal to designate representative versions—this number became unreasonably small. Additionally, numerous responsive e-mails and attachments were produced solely on the source code computers and designated as "Highly Confidential—Source Code."

To date, Plaintiff has already printed 499 pages and requested additional pages (124 pages) which Defendants refuse to provide. To account for Plaintiff's need to prepare for depositions using emails, Plaintiff needs this presumptive limit modified to 1,100 pages.

Additionally, given the ever expanding number of versions at issue and Defendants' refusal to agree to a meaningful representative stipulation, Plaintiff requests up to 16,000 printed pages from the source code produced to date for which Defendants refuse to stipulate on representativeness. This number, 16,000 printed pages, assumes that for Plaintiff to demonstrate the full breadth of Defendants' copying and use across the 32 versions of code that Plaintiff will require an average of 500 pages per version. Plaintiff further requests the Court's modification of the Texas Protective Order afford for this number to account for future versions of code which Defendants may produce and refuse to stipulate as to representativeness. Specifically, that the 16,000 printed pages increase by an additional 500 pages per produced volume of code. This number, 500 pages per produced

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

volume of code, while also arbitrary, is supported by precedent in this Court. Specifically, in *Microunity Systems*, the Court considered a motion to compel brought regarding Adobe Systems, Inc.'s obligations pursuant to responding to MicroUnity's subpoena. *Microunity Sys. Eng'g. Inc. v. Apple, Inc.*, No. 13-mc-80020 LHK (PSG), 2013 U.S. Dist. LEXIS 76469 (N.D. Cal. May 30, 2013). Microunity sought for Adobe to produce additional versions of its Flash Player source code under the Protective Order governing confidential information in the underlying patent litigation in the Eastern District of Texas. Adobe offered a cap of 700 print pages total of source code and MicroUnity disagreed asserting the protective order provision setting the limit as no more than 10% or 500 pages of the total source code, whichever is lesser, for any software release should govern. *See Microunity Sys.*, 2013 U.S. Dist. LEXIS 76469, at *8. Or in the alternative, Microunity requested Adobe confirm in a declaration that the source code in the additional nine versions was the same as to the relevant source code instructions at issue. *Id.* at 4. After considering the parties' positions, the Court compelled production of the additional code sought and rejected the 700 print page cap in favor of the 10% or 500 pages per software release. *Id.* at 9. In its reasoning, the Court highlighted that while Adobe argued against the higher print limits because MicroUnity would not need to introduce every version of the code into evidence because the code is repetitive, that "Adobe has not certified either to MicroUnity or to the court that the code in fact is duplicative" and therefore the print limits per version were appropriate. *See id* at *8-9.

Because the limit of printed pages was set prior to Plaintiff's ability to review source code it was not reflective of the needs of the case. In view of the needs of the case, Plaintiff's request is reasonable, supported by legal authority, and should be granted.

*2. <u>Plaintiff's Requested Modification of Print Limits is Reasonable in Consideration of How the Court Ordinarily Treats Source Code Limits and Proportionality Demonstrates Good Cause</u>*

Because of the number of versions of source code (32+), the pervasiveness of Defendants' copying, and Defendants' unwillingness to agree to a stipulation, Plaintiff requires an increase to the total printed pages of source code. Despite its appearance, increasing the total page count by 500 pages per produced version is limited and proportional in view of the size of the produced code and the degree of copying. For example, in Defendants' produced source code claimed to be associated with audio and video editing functionality of the TikTok app version 8.4.0, there are over [redacted] files,

with an estimated over [redacted] pages of source code. For version 15.0.0, there are over [redacted] files with over [redacted] estimated pages; and for version 27.0.0, there are over [redacted] files with over [redacted] estimated pages. *See* Ex. N, Declaration of Adam Allgood.

The N.D. California Model Order for production of source code in patent cases does not cap limits to source code paper copies but instead is guided by what is reasonably necessary. *See* Model Protective Order at ¶ 9(d). And where parties in patent litigation cases propose print limitations they have been rejected in favor of the reasonably necessary provision of the model protective order. *See* *OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622-JST (KAW), 2014 U.S. Dist. LEXIS 144191, at *4-6 (N.D. Cal. Oct. 9, 2014) ("Apple has failed to show good cause to impose its proposed limitations on the printing of source code. The parties may print portions of source code, as is reasonably necessary, consistent with Paragraph 9(d) of the model protective order.); *see also Valencell, Inc. v. Apple, Inc.*, No. 5:16-CV-1-D, 2016 U.S. Dist. LEXIS 173158, at *10 (E.D.N.C. Dec. 12, 2016) ("The court declines to impose the arbitrary, presumptive limits proposed by Apple. Instead, it adopts language similar to that used in the California model protective order, which employs a reasonableness standard and permits a producing party to challenge the amount of source code sought to be printed as excessive or unreasonable…").

Here Plaintiff is seeking a modification of the Texas Protective Order because the volume of code now at issue has demonstrated the limits are overly restrictive and are preventing Plaintiff from requesting and receiving the code it needs. Good cause to modify the limits as Plaintiff requests is fully supported. The modification is in line with how the Model Protective Order treats source code recognizing the requesting party should be able to obtain the code it needs. Further, the revised numerical limits proposed are fully supported under the consideration of proportionality. *See* Fed. R. Civ. Pro. 26(b)(1) (limiting discovery to relevant matters "proportional to the needs of the case… and whether the burden or expense of the proposed discovery outweighs its likely benefit.")

*3. The Nature of This Dispute as a Copyright and Trade Secret Action Demonstrates Good Cause for Modifying the Texas Protective Order to Allow Plaintiff to Request and Receive the Additional Printed Source Code*

This is a copyright and trade secret action. Unlike a patent case where functionality may be accused using evidence of the functionality from source code, the evidence here is of copying from the source code itself. What is a reasonable limit should consider the Plaintiff's burden of proof.



Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

"Computer programs … are protected under copyright law… .." *Lilith Games (Shanghai) Co. v. uCool, Inc.,* No. 15-CV-01267-SC, 2015 U.S. Dist. LEXIS 128619, at *14 (N.D. Cal. Sep. 23, 2015). "Substantial similarity in the literal elements of a computer program can be demonstrated either by showing verbatim (or near verbatim) copying of the source code or that the 'fundamental essence' of the code was duplicated*.* *Id.* at *15. Thus for its copyright claims, Meishe needs source code including as its evidence of verbatim or near verbatim copying

Regarding its trade secret misappropriation claims, Meishe as the "plaintiff must show that (1) it possessed a trade secret, (2) the defendant misappropriated the trade secret, and (3) the plaintiff suffered damages as a result." *See Cisco Sys. v. Chung*, No. 19-cv-07562-PJH, 2023 U.S. Dist. LEXIS 48924, at *19 (N.D. Cal. Mar. 22, 2023) (internal citations omitted). "Misappropriation means either the (1) acquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means; or the (2) disclosure or use of a trade secret of another without express or implied consent." *Id.* at *19-20 (internal citations and quotations omitted). Thus for its trade secret claims, Meishe needs source code including as evidence of Defendants' use of Meishe's code.

Although Patent case law authorities exist that have set very conservative limits on printing source code pages, such cases *do not* consider the copyright infringement and trade secret plaintiff's burden of proof and are not relevant to this litigation.[8]

In consideration of Meishe's burden as the plaintiff in this copyright and trade secret case, the further hard copy printouts it seeks are proportional to Meishe's needs and the evidence is directly relevant to proving Defendants' copying.

*4. <u>Modification of the Texas Protective Order Cannot Be Avoided</u>*

At this stage in the case it is clear that Plaintiff cannot operate under the limits in the Texas Protective Order given the volume of source code at issue, the prevalence of the copying, and the nature of this case as a copyright and trade secret action. As explained above, Defendants initially

[8] Moreover, this Court's Model Order, while its provisions are instructive as to the treatment of sensitive information, is not written to address copyright and trade secret disputes. *See, e.g., Rabin v. Google LLC*, No. 22-cv-04547-PCP, 2023 U.S. Dist. LEXIS 207835, at *2 (N.D. Cal. Nov. 20, 2023) ("Except for patent cases (which this case is not), 'the Local Rules do not require the parties to use any of the model protective orders and counsel may stipulate to or move for another form of protective order.' Model Protective Orders, cand.uscourts.gov/forms/model-protective-orders.")

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

indicated they would consider a stipulation of representativeness, but in reality, have refused to engage in negotiating any representativeness stipulation other than for versions after [redacted]. By isolating their representativeness agreement to versions [redacted], Defendants are necessarily requiring Plaintiff to provide evidence of copying from September 6, 2018 through [redacted] from their software versions 8.4.0 through version [redacted].[9] Further, despite language in the Texas Protective Order that recognized that the Receiving Party (here Plaintiff) could receive printouts in excess of the limits where it needed them (Dkt. 82 at ¶ 24), Defendants have refused to produce requested documents, where Plaintiff has reasonably explained why it requires printouts in excess of the presumptive "excessive" limit. *See* Ex. G, Sept. 28, 2023 Plaintiff Correspondence to Defendants (explaining that the requested files contain [redacted], or shows that Plaintiff's copied source code is included in [redacted]); *See also* Ex. H, Sept. 27, 2023 Defendants' Correspondence (refusing to print requested documents as containing "more than 25 pages of a continuous block of source code"), Ex. I, Oct. 2, 2023 Defendants' Correspondence (subsequent refusal to produce).[10] Thus, unless this Court requires their agreement, there is no other way for Plaintiff to prove its case other than with version-specific tangible evidence of copying. Moreover, even if the Court later requires their agreement to a stipulation, Plaintiff should not be stalled nor should Plaintiff's experts be left in the lurch without the source code evidence they need to draw from to create their reports.

5. *The Concern the Print-Out Page Limits Were Introduced to Address is Still Protected Under Plaintiff's Proposal*

In the same paragraph that set the arbitrary limit as 600 pages, the Texas Protective Order explained "the purpose of the protections": to prevent the receiving party, Meishe, from printing out portions of code for its initial review and analysis outside the source code room. *See* Dkt. 82 at ¶ 24 ("The Receiving Party shall not print source code in order to review blocks of source code elsewhere in the first instance, i.e., as an alternative to reviewing that source code electronically on the Source Code Computer, as the Parties acknowledge and agree that the purpose of the protections herein

[9] This agreement relates solely to Android code and Defendants have yet to agree to *any* stipulation of representativeness as to iOS code.

[10] Courts that do set threshold page limits acknowledge the ability to modify such limits where a request for printing beyond the limit is met with "unalterable resistance" such as is present here. *See, e.g., Inventor Holdings, LLC v. Wal-Mart Stores Inc.*, Civil Action No. 1:13-cv-00096 (GMS), 2014 U.S. Dist. LEXIS 119933, at *13-14 (D. Del. Aug. 27, 2014).

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

would be frustrated by printing portions of code for initial review and analysis elsewhere.") This stated purpose is very similar to the condition imposed on the requestor of paper copies under the Northern District of California's Model Protective Order for patent cases "[the Receiving Party] shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in paragraph (c) in the first instance." *See* Model Protective Order at ¶ 9(d).

This restriction seeks to strike a balance. Specifically it recognizes that unlike less sensitive information, source code is not just produced for the receiving party to use. Instead there is a requirement that the code first be reviewed in a controlled environment and then identified by the receiving party as evidence it needs to prepare its case. Meishe's proposal honors this. Specifically, to even identify the code it requests in the form of a hard copy print out, Plaintiff (1) visits the source code computer to view the code, (2) creates a PDF of the portion of the code it is requesting a hard copy print out of, and (3) sends a print request letter to Defendants. Thus, Plaintiff necessarily is already performing an on-site analysis of the printout it is requesting and the purpose of the Texas Protective Order provisions and this Court's Model Protective Order will still be achieved even under the higher page limit for print outs.

Finally, the additional hard copy printout allowances apply equally to both sides. Plaintiff's source code is also at issue and under these revised limits Defendants too can print additional pages given Meishe's 17 versions of produced source code.

In sum, Plaintiff is entitled to evidence to support its claims. Defendants cannot use page limits to limit the scope of their liability by preventing Plaintiff from demonstrating copying and use by limiting the hard copies Plaintiff may obtain. Plaintiff needs the Texas Protective Order amended to allow:

1) The total print volume to increase to 1,100 pages;
2) Up to 16,000 additional printed pages from the source code produced to date for which Defendants refuse to stipulate on representativeness where this number will increase by an additional 500 pages for each further produced volume of code which Defendants will not agree as representative; and
3) Removal of the 25-page limit for consecutive pages.[11]

[11] If the Court is not inclined to remove this limit altogether, in the alternative Plaintiff requests an

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

**B. Access to Defendants' Source Code by Plaintiff's Expert, Dr. Malek, is Proper**

*1. Dr. Malek is Plaintiff's Third Outside Consultant and is Allowed to Access the Code Under the Texas Protective Order*

Plaintiff seeks access to Defendants' Highly Confidential - Source Code material for its third Outside Consultant, Dr. Sam Malek, under the Texas Protective Order. *See* Dkt. No. 82, ¶19. Plaintiff currently has two Outside Consultants - Dr. Michael Shamos and Mr. Dave Howell – and one support person, Mr. Greg Kesden, who have access to Defendants' source code. Defendants oppose providing Dr. Malek access and argue that Mr. Kesden is a third Outside Consultant. As explained below and confirmed by Mr. Kesden's declaration, Mr. Kesden has, since the beginning of his work for Plaintiff, worked in support of and at the direction of Dr. Michael Shamos. This Court should permit access to Defendants' source code by Dr. Malek. In the alternative, if the Court decides that Plaintiff already has three Outside Consultants, Plaintiff request the Court amend the Texas Protective Order to permit source code access by up to four (4) Outside Consultants.

The Texas Protective Order limits the number of Outside Consultants with access to the other side's source code to three (3). *See* Dkt. No. 82, ¶19(c). Footnote No. 1 of this paragraph further clarifies the meaning of "Outside Consultant" as used in paragraph 19(c), *does not include* the outside consultant's direct reports and other support personnel. *See id.* at n. 1. Using this provision, Defendants now have five persons accessing Plaintiff's source code which this Court authorized. *See* Dkt. No. 336. It is of no consequence that Plaintiff did not describe Mr. Kesden as a support person for Dr Shamos in its original disclosure. It is irrefutable that Mr. Kesden has only worked in a support capacity for Dr. Shamos in this litigation. *See* Ex. J, Declaration of Greg Kesden, ¶4. Mr. Kesden works at Carnegie Mellon University with Dr. Shamos and regularly works on consulting matters, including litigation, in support of Dr. Shamos. *See id.* at ¶¶ 1, 3; Ex. K, Kesden CV Ex. L, Shamos CV. Moreover, Plaintiff has not retained, nor does it plan to retain Mr. Kesden to provide expert testimony in this litigation. *See* Ex. J, ¶5. Mr. Kesden is a support person reporting directly to Dr. Shamos as contemplated by Note 1 to Paragraph 19(c) of the Texas Protective Order.

Defendants argue that the fact Plaintiff did not originally disclose Mr. Kesden as a support person for Dr. Shamos requires he be counted as an Outside Consultant. But Defendants' argument

increase of this limit from 25 pages to 75 consecutive pages.

here fails as the Texas Protective Order did not require any specific statement in the disclosure about whether the individual is a support person or a direct report. Moreover, Mr. Kesden has made clear in his declaration that he has always worked in support of and at the direction of Dr. Michael Shamos in this litigation. *See* Ex. J., ¶4.

Defendants also argue that Mr. Kesden is a testifying expert and that Plaintiff "now seeks to expand the number of potential experts who may testify about Defendants' source code." *See* Ex D. That is false, because Mr. Kesden is not a testifying expert. *See* Ex. J. at ¶5. It is also irrelevant, because the Texas Protective Order does not limit the number of testifying experts, only those who may view the other side's source code. With Dr. Malek, Plaintiff would have four individuals with opposing source code access, while Defendants already have five such individuals. This Court should grant access to Defendants' source code by Dr. Malek.

2. *In the Alternative, the Texas Protective Order Should be Modified to Allow for Disclosure to Four Outside Consultants*

Although Plaintiff submits that Dr. Malek should be granted access to Defendants' source code as its third Outside Consultant, should the Court decide that Plaintiff already has three Outside Consultant under the Texas Protective Order, Plaintiff requests the Court amend the Texas Protective Order to permit up to four Outside Consultants with access to Defendants' source code.

Such an amendment would not unreasonably increase the number of individuals with access to the other side's source code as Defendants already have five individuals reviewing Plaintiff's source code, and Plaintiff would, with the amendment, only have four individuals reviewing Defendants' source code. Moreover, in view of this Court's Model Protective Order this is presumptively reasonable as the Court's Model Protective Order does not set a numerical limit on the number of qualified persons that may access source code.[12] *See* Model Order at ¶9(b); *see Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865-EMC (PHK), 2023 U.S. Dist. LEXIS 213445, at *4 (N.D. Cal. Nov. 30, 2023) ("the Court's Tier 2 MPO contains presumptively reasonable conditions for a Protective Order to be used in a case involving discovery of highly sensitive materials") (citations omitted).

[12] The restriction on experts is as follows: "Experts of the Receiving Party (1) *to whom disclosure is reasonably necessary for this litigation*, (2) who have signed the 'Acknowledgment and Agreement to Be Bound' (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.4(a)(2), below, have been followed". Model Order at ¶7.3 (c) (emphasis added).

Finally, if Defendants had sought this limit in the forum in the first instance, they would have been required to show "specific harm or prejudice" they would suffer should four experts be allowed access to review their source code. *See Rabin v. Google LLC*, No. 22-cv-04547-PCP, 2023 U.S. Dist. LEXIS 207835, at *4 (N.D. Cal. Nov. 20, 2023); *id.* at 3 ("Here, because Google seeks to impose greater restrictions [than the Model Order], it bears the burden of showing prejudice or harm that will result if the less restrictive standard order, as modified by Plaintiffs, is imposed.")

As Defendants have not raised any objections specific to Dr. Malek and cannot show any specific harm or prejudice they will suffer if he is given access to their source code, Plaintiff's requested relief should be granted.

## V. CONCLUSION

For the reasons set forth herein, the Court should amend the Texas Protective Order to include that the Receiving Party may request printouts of a cumulative total of one-thousand and one hundred (1,100) pages plus an additional five hundred (500) pages per produced source code version without the agreement of the Producing Party. Further, the limit for continuous pages should be removed completely. The increase of printed pages and removal of continuous page print limits should moot Defendants' objections and require Defendants to produce Plaintiff's currently requested source code files that Defendants have refused to produce. Regarding the five hundred (500) pages per produced source code version, should Defendants elect to designate representative versions, Plaintiff remains willing to accommodate a reduction in printed source code pages.

Also, for the reasons set forth herein, this Court should grant access to Defendants' source code material to Dr. Malek. In the alternative, if the Court determines that Plaintiff already has three Outside Consultants, Plaintiff requests the Court modify the Texas Protective Order to permit source code access by up to four (4) Outside Consultants.

DATED: February 22, 2024

Respectfully Submitted,

CHERIAN LLP

By: */s/ Robert Harkins*
ROBERT M. HARKINS (Bar No. 179525)
bobh@cherianllp.com
KORULA T. CHERIAN (Bar No. 133967)

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

sunnyc@cherianllp.com
CHERIAN LLP
2001 Addison St, Suite 275
Berkeley, CA 94704
Telephone: (510) 944-0190

STEPHANIE R. WOOD (Bar No. 242572)
stephaniew@cherianllp.com
CHERIAN LLP
8350 N. Central Expressway, Suite 1900
Dallas, TX 75206
Telephone: (945) 205-0301

THOMAS M. DUNHAM (pro hac vice)
omd@cherianllp.com
J. MICHAEL WOODS (pro hac vice)
michaelw@cherianllp.com
ADAM A. ALLGOOD (Bar No. 295016)
adama@cherianllp.com
CHERIAN LLP
1901 L. St. NW, Suite 700
Washington, DC 20036
Telephone: (202) 838-1560

*Attorneys for Plaintiff Beijing Meishe Network Technology Co., Ltd.*

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 22nd of February 2024, with a copy of this document via the Court's EM/ECF system.

*/s/ Robert M. Harkins, Jr.*
Robert M. Harkins, Jr.
SBN 179525

*Attorney for Plaintiff*