WHITE & CASE LLP
Yar R. Chaikovsky (175421)
yar.chaikovsky@whitecase.com
Philip Ou (259896)
philip.ou@whitecase.com
David T. Okano (278485)
david.okano@whitecase.com
Heather Burke (284100)
heather.burke@whitecase.com
Radhesh Devendran (318517)
radhesh.devendran@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Additional counsel listed on signature page

Attorneys for
TikTok Inc., TikTok Pte. Ltd., ByteDance Ltd.
and ByteDance Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

BEIJING MEISHE TECHNOLOGY CO.,

Plaintiff,

v.

TIKTOK INC., TIKTOK PTE. LTD., BYTEDANCE LTD. and BYTEDANCE INC.,

Defendants.

Case No. 3:23-cv-6012-SI

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO AMEND AGREED PROTECTIVE ORDER**

Date: March 29, 2024
Time: 10:00 AM PST
Courtroom: Courtroom 1, 17th Floor
Judge: Hon. Susan Illston

# TABLE OF CONTENTS

**Page(s)**


CONTESTED PROVISIONS OF AGREED PROTECTIVE ORDER (DKT. 82) ..................... IV

I. INTRODUCTION ..................... 1

II. FACTUAL BACKGROUND ..................... 2

- A. Meishe represented it knew the full scope of asserted code before negotiating page and continuous print limits in the Agreed Protective Order ..................... 2
- B. Meishe refuses to answer interrogatories identifying its asserted copyrights, alleged trade secrets, or Defendants' accused source code with specificity ..................... 2
- C. Meishe's demand to eliminate continuous page and print limit protections ..................... 3
- D. Meishe's attempt to circumvent limits on number of testifying experts ..................... 4

III. LEGAL STANDARDS ..................... 5

IV. ARGUMENT ..................... 6

- A. Meishe's motion is not ripe for resolution ..................... 6
  - 1. This Court should first resolve Defendants' Rule 12(b)(6) motion ..................... 6
  - 2. This Court should also require Meishe to identify the source code "at issue" in this case—its asserted copyrights and alleged trade secrets—with sufficient particularity ..................... 6
- B. Meishe has not established good cause to modify the Protective Order to remove print limits for source code ..................... 8
  - 1. Meishe's request to print more than 25 continuous pages of source code is unjustified in light of its refusal to identify its claims with sufficient particularity ..................... 8
  - 2. Meishe cannot criticize the Protective Order's terms when it has not diligently reviewed Defendants' produced source code or identified its asserted source code with sufficient particularity ..................... 9
  - 3. Meishe's demand to print 25,000+ pages of Defendants' source code suggests the intent to improperly review code outside a secure environment ..................... 10
  - 4. The Agreed Protective Order's current print limits are adequate ..................... 12
  - 5. Meishe's alleged justification for increased print limits is unsupported ..................... 13
- C. Meishe's attempt to recharacterize Dr. Kesden as a "support personnel" to

circumvent limits on the number of testifying experts should be rejected ............ 16

V. CONCLUSION ........................................................................................................ 18

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Epic Tech, LLC v. Fusion Skill, Inc.*,
No. 19-cv-2400, Dkt. 75 (S.D. Tex. Oct. 8, 2019) (Dkt. 371-16)....12

*IDX Sys. Corp. v. Epic Sys. Corp.*,
285 F.3d 581 (7th Cir. 2002)....7

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir. 1998)....7

*Intel Corp. v. VIA Techs., Inc.*,
198 F.R.D. 525 (N.D. Cal. 2000)....5, 6, 10, 13

*Koss Corp. v. Apple Inc.*,
No. 20-cv-665-ADA, 2021 U.S. Dist. LEXIS 269053 (W.D. Tex. Apr. 15, 2021)....12

*Linex Tech. Inc. v. Hewlett Packard Co.*,
No. 13-cv-159-CW-MEJ, 2013 WL 1820909 (N.D. Cal. Apr. 30, 2013)....8, 9, 11, 15

*Logantree LP, v. Garmin Int'l., Inc.*,
No. 17-cv-1217-EFM, 2021 WL 3421577 (D. Kan. Aug. 5, 2021)....11

*MicroUnity Sys. En'g. Inc. v. Apple, Inc.*,
No. 13-mc-80020-LHK-PSG, 2013 U.S. Dist. LEXIS 76469 (N.D. Cal. May 30, 2013)..12, 13

*OpenTV, Inc. v. Apple, Inc.*,
No. 14-cv-1622-JST-KAW, 2014 U.S. Dist. LEXIS 144191 (N.D. Cal. Oct. 9, 2014)....13

*Peoples v. Aldine Indep. School Dist.*,
No. cv-06-2818, 2008 WL 2571900 (S.D. Tex. June 19, 2008)....5

*Polydyne Dev. Corp. v. Digital Market, Inc.*,
No. 99-cv-487-JN, Dkt. 25 (W.D. Tex. Jan. 20, 2000) (Dkt. 371-17)....12

*Rensselaer Poly. Inst. v. Apple Inc.*,
No. 13-cv-633, 2014 U.S. Dist. LEXIS 63413 (N.D.N.Y. May 8, 2014)....14

*Valencell, Inc. v. Apple, Inc.*,
No. 16-cv-1-D, 2016 U.S. Dist. LEXIS 173158 (E.D.N.C. Dec. 12, 2016)....13, 15

*Virtual Chart Sols I, Inc. v. Meredith*,
No. 17-cv-546, Dkt. 103 (E.D. Tex. May 16, 2018) (Dkt. 371-15)....12

**CONTESTED PROVISIONS OF AGREED PROTECTIVE ORDER (DKT. 82)**

24. ***Any printing request for a portion of Source Code that consists of more than twenty-five (25) pages of a continuous block of source code shall be presumed to be excessive***, and the burden shall be on the Receiving Party to demonstrate the need for such a printed copy. ***The Receiving Party may request printouts of no more than one six hundred (600) pages total without the agreement of the Producing Party***. To the extent that more Source Code is required, written approval from the Producing Party shall be given in good faith once the Receiving Party articulates a reasonable need. ***The Receiving Party shall not print source code in order to review blocks of source code elsewhere in the first instance, i.e., as an alternative to reviewing that source code electronically on the Source Code Computer, as the Parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing portions of code for initial review and analysis elsewhere***.

**<u>CONTESTED PROVISIONS OF AGREED PROTECTIVE ORDER (DKT. 82)</u>**

19. **HIGHLY CONFIDENTIAL – SOURCE CODE Material:** Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information, documents, or things designated HIGHLY CONFIDENTIAL – SOURCE CODE Material only to the following in addition to those identified in Paragraphs 39-40 below regarding use of Designated Material at depositions: …

c. ***Up to three (3) Outside Consultants[1] of the Receiving Party*** to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement To Be Bound By Protective Order" attached hereto as Exhibit A and the "Certification Of Outside Consultant" attached hereto as Exhibit B. Disclosure may be made to such Outside Consultants of the Receiving Party only pursuant to and after completion of the procedures set out in Section D below

[1] For the purposes of this paragraph, ***an Outside Consultant is defined to include the outside consultant's direct reports and other support personnel, such that the disclosure to a consultant or expert who employs others within his or her firm to help in his or her analysis shall count as a disclosure to a single consultant or expert***. However, for any consultant's employee that assists in review and analysis of the designated "Highly Confidential – Source Code", that employee must also be approved to access Designated Material pursuant to the procedures of Section D.

## I. INTRODUCTION

Beijing Meishe Tech. Co., Ltd.'s ("Meishe") motion is not ripe and should be deferred or denied. Meishe rushed to re-file this motion on the day before the Case Management Conference after learning of Defendants' planned motion to stay discovery under Cal. Civ. Code Proc. § 2019.210 in Defendants' portion of the Joint Case Management Statement. But the Court cannot conduct a proper legal analysis to evaluate whether good cause exists for Meishe's desired modifications to the Agreed Protective Order before resolution of Defendants' Rule 12(b)(6) motion (Dkt. 409) and until Meishe identifies the source code it intends to assert as its copyrights and alleged trade secrets with sufficient particularity. The Court should defer any ruling on this motion until then.

If the Court addresses Meishe's motion at this time, it should be denied. The effective Protective Order in this case was agreed to by the parties almost two years ago, on June 16, 2022. Dkt. 82. A critical purpose of this Agreed Protective Order is to prevent inadvertent disclosure of a parties' confidential source code. To do so, the Agreed Protective Order mandates that source code must largely remain in a secure environment, and that any printed copies must be limited to "portions" of the code rather than uninterrupted, continuous sections. The parties agreed that a reviewing party "***shall not*** print source code in order to review blocks of source code elsewhere in the first instance, *i.e.*, as an alternative to reviewing that source code electronically on the Source Code Computer." Dkt. 82 ¶ 24 (emphasis added). The parties "agree[d]" that the very "purpose of the protections" in the Protective Order "would be frustrated" by permitting a party to "print[] portions of code for initial review and analysis elsewhere." *Id.*

Before this case was transferred, Meishe had more than a year to inspect Defendants' produced source code. Meishe elected ***not*** to do so with any reasonable diligence. To excuse a deficiency of its own making, Meishe seeks an unreasonable modification to the Agreed Protective Order which has been in place for almost two years—including the entirety of the fact discovery period before this case was transferred. Meishe's desired modification would permit its experts to review ***tens of thousands*** of continuous, uninterrupted pages of Defendants' confidential source code outside of a secure environment. It would also allow Meishe to recharacterize a separately

disclosed testifying expert from an "Outside Consultant" to a "support personnel" to improperly shield his communications with other disclosed Meishe experts from discovery.

There is no good cause to modify the Agreed Protective Order and heighten the risk of inadvertent disclosure of Defendants' code because Meishe chose not to have its experts diligently review that code under terms that ***Meishe*** agreed to almost two years ago. Nothing in the current Agreed Protective Order prevents Meishe from inspecting Defendants' code in person—just as Defendants' experts have done for Meishe's code. If it is not deferred, the Court should deny Meishe's motion.

## II. FACTUAL BACKGROUND

### A. Meishe represented it knew the full scope of asserted code before negotiating page and continuous print limits in the Agreed Protective Order

To oppose Defendants initial Rule 12(b)(6) motion, Meishe claimed it had identified the "universe" of information that Defendants had allegedly copied from to oppose Defendants' Rule 12(b)(6) motion. Dkt. 114-2 (May 26, 2022 Hr'g Tr.), 108:5–109:7. ***After*** Meishe had represented to the Court that it knew the full scope of allegedly copied code, the parties negotiated a protective order in early June 2022.

The terms included a compromise to limit source code printing to no more than 25 continuous pages and 600 pages in total. Dkt. 82 ¶ 24. While the parties had several disagreements that required the Court to resolve, both parties agreed to the continuous page and total print limits for source code. *See* Dkt. 62-1 at 9 (¶ 5.f), Dkt. 114-3 at 9:15–10:9, 18:14–19:13, 28:9–18. These limits were important. The parties agreed that a reviewing party "***shall not*** print source code in order to review blocks of source code elsewhere in the first instance, *i.e.*, as an alternative to reviewing that source code electronically on the Source Code Computer, as the Parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing portions of code for initial review and analysis elsewhere." Dkt. 82 ¶ 24 (emphasis added). On June 21, 2022, the Court entered the Agreed Protective Order governing the treatment of source code in this case.

### B. Meishe refuses to answer interrogatories identifying its asserted copyrights, alleged trade secrets, or Defendants' accused source code with specificity

More than a year of discovery passed, during which time Meishe had access to Defendants'

source code. Throughout this period, to justify its requests for more discovery, Meishe repeatedly represented to the Court that it found evidence of copying. *See* Dkt. 337-03 (Apr. 20, 2023 Hr'g Tr.) at 15:15–17; *id.* at 4:21–22; Dkt. 207-3 (Jan. 23, 2023 Hr'g Tr.) at 37:22–38:1. When pressed by Defendants—and the Court—to back up its charges and answer interrogatories identifying both the specific portions of its source code allegedly copied and the specific portions of Defendants' source code that allegedly infringe or misappropriate Meishe's source code, Meishe refused to do so with any specificity. *See* Dkt. 207-3 at 38:9–40:5; Dkt. 337-03 at 29:23–30:13, 39:3–18. Meishe also continually shifted what it claimed to be its asserted intellectual property. It made two failed attempts to associate its asserted registered copyrights with its produced source code. Dkt. 279-2 at 2. It also amended its complaint to assert additional unregistered Chinese source code when it could not match its own produced source code with the code it had registered with the copyright office in China. Dkt. 279-2 at 3.

### C. <u>**Meishe's demand to eliminate continuous page and print limit protections**</u>

During this time, Meishe requested dozens of printouts of Defendants' source code. Dkt. 371-03. For more than a year after gaining access to Defendants' source code, Meishe's requests were within the page limit restrictions of the Agreed Protective Order. *Id.* But on September 23, 2023, Meishe requested source code printouts of entire files that were more than 25 pages in length, in violation of the Agreed Protective Order. *Id.* These printouts would also result in Meishe exceeding the 600-page total print limit. *Id.*; Dkt. 371-04. Defendants produced the requested source code except for three files which included continuous blocks of more than 25 pages of code. Dkt. 371-05. Defendants requested that Meishe demonstrate the need for printed copies of the entirety of those files, rather than non-continuous excerpts. *Id.* Meishe refused to limit its print requests to continuous blocks of less than 25 pages. Dkt. 371-06. Defendants explained that Meishe's stated need did not justify its request. Dkt. 371-07.

Shortly before the Fifth Circuit granted Defendants' petition for writ of mandamus and ordered the court to transfer the case to this District, Meishe filed a motion that would permit it to print entire versions of Defendants' source code related to video and audio editing. Dkt. 370. Meishe now renews this motion, where it seeks to (1) obtain *carte blanche* to print more than ***25,000***

***pages***[1]—around ***10 bankers' boxes of printouts***—of ***complete, unabridged files*** of Defendants' highly confidential source code, a ~***40x*** increase from current 600-page limits, and (2) eliminate critical confidentiality restrictions that prevent Meishe from printing more than 25 continuous pages of Defendants' source code. By Meishe's own admission, it would permit Meishe to print ***more than 70%*** of certain versions of Defendants' produced source code related to audio and video editing used by the TikTok Android app. Dkt. 401 ("Mot.") at 7:28–8:1.

Meishe provides no basis for this request that is tied to the scope of the actual copyright infringement and trade secret claims in this case, conceding that its proposal is "arbitrary." Mot. at 6:28–7:1. As discussed above, the proposal is "arbitrary" because Meishe refuses to identify with any reasonable particularity either the asserted or accused source code it contends Defendants infringe or have misappropriated.

**D. <u>Meishe's attempt to circumvent limits on number of testifying experts</u>**

The parties' Agreed Protective Order permits each party to designate up to three "Outside Consultants" who may inspect the other party's confidential source code. Dkt. 82 ¶ 19. Defendants have disclosed two individuals—Mr. Nigel Jones and Dr. Kevin Almeroth—as "Outside Consultants." Dkt. 313-3, 313-10. Defendants also disclosed three individuals—Tom Brooks, Nitin Kasturi, and Jason Scaroni— "as support personnel to assist Mr. [Nigel] Jones." Dkt. 316 at 3; Dkt. 313-3, 313-8. This is permitted under ¶ 19 of the Agreed Protective Order. Meishe initially identified three "Outside Consultants" under paragraph ¶ 20 of the Agreed Protective Order—Dr. Michael Shamos on Sept. 5, 2022, Mr. Daniel Kesden on Sept. 6, 2022, and Mr. David Howell on Apr. 12, 2023. Dkt. 371-10. Unlike Defendants, Meishe did ***not*** disclose any of its experts as "support personnel." Dkt. 371-10.

On July 5, 2023, Meishe brought a motion seeking to disqualify Defendants' expert Dr. Almeroth as a "fifth" disclosed "Outside Consultant," claiming Defendants violated the three "Outside Consultant" limit in the Agreed Protective Order. To justify its motion, Meishe claimed that Mssrs. Brooks, Kasturi, and Scaroni were Defendants' second, third, and fourth disclosed

[1] Defendants have made over 50 versions of their confidential source code available for inspection, not just the 32 Meishe identifies.

"Outside Consultants." Meishe's claims were contrary to fact, as Defendants had disclosed Mssrs. Brooks and Kasturi on Aug. 2, 2022 and Mr. Scaroni on Jan. 24, 2023 as "support personnel" to Mr. Jones ***without objection*** from Meishe. Ex. 371-17. Because Defendants provided evidence that all three report to, regularly work for, and bill their time to Mr. Jones, the Court denied Meishe's motion on July 24, 2023. Dkt. 336.

On September 11, 2023, Meishe disclosed Dr. Sam Malek as an "Outside Consultant," and requested that Defendants permit him to access their confidential material ***except for*** source code. Dkt. 371-08. Defendants did not object. The Agreed Protective Order does not place a limit on the number of "Outside Consultants" who can access a party's confidential material that does ***not*** include source code. Dkt. 82 ¶ 18.c.

On October 2, 2023, however, Meishe demanded that Defendants also allow Dr. Malek to access Defendants' ***source code***. Dkt. 371-09; Dkt. 82 ¶ 21. The Agreed Protective Order limits each party to no more than three "Outside Consultants" who can access the other party's highly confidential ***source code***. Dkt. 82 ¶ 19.c. "Support personnel" who work for or report to an "Outside Consultant" do not count as separate "Outside Consultants." *Id.* ¶ 19.c. n.1.

Dr. Malek is Meishe's ***fourth*** "Outside Consultant" it seeks to have access to Defendants' source code (in addition to Mssrs. Kesden and Howell, and Dr. Shamos). *See* Dkt. 371-10. Defendants objected to Dr. Malek, as the Agreed Protective Order prohibits more than three of Meishe's designated "Outside Consultants" from accessing Defendants' source code. Dkt. 371-11; Dkt. 82 ¶ 19. On October 2, 2023, Meishe for the first time claimed that Mr. Kesden was ***not*** an "Outside Consultant" but instead, "support personnel" to Dr. Shamos—despite its express disclosure of Mr. Kesden as an "Outside Consultant" more than a year earlier. Dkt. 371-09.

## III. <u>LEGAL STANDARDS</u>

"To modify a protective order a party must establish good cause by demonstrating how the protective order will prejudice the party's case." *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. 2000) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992)). "A party's prior consent to the protective order will weigh against its motion for modification." *See Peoples v. Aldine Indep. School Dist.*, No. cv-06-2818, 2008 WL 2571900, *2

(S.D. Tex. June 19, 2008).

## IV. ARGUMENT

### A. Meishe's motion is not ripe for resolution

The basis of Meishe's argument—the current Agreed Protective Order's print limits "do not bear any relationship to the total amount of source code ***at issue*** in this case" (Mot. 5:27–28 (emphasis added))—is flawed for two reasons. First, it is unclear what aspects of Meishe's copyright claim will remain after this Court's resolution of Defendants' pending Rule 12(b)(6) motion to dismiss (Dkt. 409). Second, Meishe has resisted answering Defendants' discovery requests and identifying with sufficient particularity the source code Meishe intends to assert in its copyright and trade secret claims, and Defendants' code that Meishe intends to accuse of violating its rights. Without this fundamental information, the source code "at issue" in the case remains unknown and therefore the factual inquiry needed to balance "the risk of inadvertent disclosure of trade secrets" against the risk that "protection of … trade secrets impair[s] prosecution" of the moving party's claim, is impossible. *See Intel*, 198 F.R.D. at 528.

#### 1. This Court should first resolve Defendants' Rule 12(b)(6) motion

First, it is improper and impractical to assess whether the source code printout limit should be increased until this Court resolves Defendants' pending Rule 12(b)(6) motion. Ex. 1 (exhibits attached to Decl. of David Okano) at 4:8–15. This Court will determine, for example, whether there is any plausible basis for Meishe's asserted copyright claims in source code that was not created until years after Mr. Jing Xie left Meishe and joined an affiliate of Defendants. Dkt. 409 at 5:14–7:4. Resolution of Defendants' Rule 12(b)(6) motion may affect the inquiry required to resolve this motion and undermine Meishe's alleged need to bypass the current source code print limits.

#### 2. This Court should also require Meishe to identify the source code "at issue" in this case—its asserted copyrights and alleged trade secrets—with sufficient particularity

Second, more than two years into the case, Meishe has refused to identify the source code it intends to assert as its copyrights and the source code intends to assert as its alleged trade secrets with sufficient particularity. Meishe continues to assert that its trade secrets encompass the entirety of the millions of lines of source code it has made available for inspection. Meishe's position does

not permit the identification of its alleged secrets with sufficient particularity. *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998) ("catchall phrase" of "every dimension and tolerance that defines or reflects the design" was not sufficient identification of trade secrets—plaintiff had to "identify[] the precise numerical dimensions and tolerances as trade secrets"); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583–584 (7th Cir. 2002) ("all information in or about [plaintiff's] software" was "too vague and too inclusive" to be a trade secret because it "d[id] not separate the trade secrets from the other information that goes into any software package").

Nor has Meishe separated the code it contends is a trade secret from the overlapping code it asserts as unregistered copyrights. And Meishe's identification of the source code underlying its copyrights registered with the Copyright Office in China has already changed ***three*** times in this case. Dkt. 279-2 at 2–3. Meishe's refusal to specify what is actually "at issue" highlights why this motion is premature and should be deferred until resolution of Defendants' planned motion to stay under § 2019.210 and Meishe's identification of its alleged trade secrets with sufficient particularity.

Until Meishe does so, this Court cannot reasonably assess whether ***any*** modification to the previously agreed limits is warranted, let alone a gross expansion to the ***25,000 pages*** Meishe requests. Nor can Defendants determine which versions of their source code—if any—could be representative of other versions, because Meishe refuses to identify the specific code it intends to assert. (Meishe admits that representative versions would moot the need for additional code printouts. Mot. 6.) With Meishe's current deficient identification of its asserted copyrights and alleged trade secrets, ***every*** difference between versions of Defendants' code could be relevant.

Meishe's motion should thus, at the very least, be deferred because the dispute is not ripe. After the Court resolves Defendants' 12(b)(6) motion and Meishe identifies its alleged trade secrets with sufficient particularity—and how they differ from its asserted copyrights—the Court and the parties will have sufficient information to determine whether there is good cause for any modification to the current Agreed Protective Order. Otherwise, it is premature to grant what Meishe admits is an "arbitrary" increase in source code print limits.

### B. Meishe has not established good cause to modify the Protective Order to remove print limits for source code

Should the Court reach the merits, Meishe's motion should be denied. It is an improper attempt to excuse Meishe's lack of diligence and failure to have its experts inspect Defendants' source code for the more than a year it was available. There is no good cause for Meishe to modify an agreed Protective Order to permit its experts to review tens of thousands of pages of Defendants' source code outside a secure environment.

#### 1. Meishe's request to print more than 25 continuous pages of source code is unjustified in light of its refusal to identify its claims with sufficient particularity

The parties agreed that "[a]ny printing request for a portion of Source Code that consists of more than twenty-five (25) pages of a continuous block of source code shall be presumed to be excessive." Dkt. 82 ¶ 24. This is one of the Agreed Protective Order's key provisions to limit access to and reduce the risk of inadvertent disclosure of entire source code files.

Meishe now seeks to eliminate this protection by permitting the printing of ***unlimited*** continuous pages without a basis to justify the request. Doing so would permit Meishe to print thousands of Defendants' source code files ***in their entirety*** for review outside a secure environment.[2] This is exactly what protective orders for source code are designed to prevent.

The court in *Linex Tech. Inc. v. Hewlett Packard Co.*, No. 13-cv-159-CW-MEJ, 2013 WL 1820909, at *2 (N.D. Cal. Apr. 30, 2013) rejected a request for increasing source code print limits for this very reason. The plaintiff sought to increase source code print limits from 50 continuous pages and 1,000 total pages to 100 continuous pages and 1,500 total pages on the basis that "additional products and relevant chipsets [were] at issue in th[at] case," and because it had printed thousands of pages in a related ITC investigation. *Id.* The defendants opposed on the basis that Linex was "simply attempting to bypass the protective order restrictions that prevent a party from reviewing source code outside the secure source code room," which "frustrates the confidentiality provisions in the protective order and increases the risk of a security breach." *Id.* The court agreed with the defendants, finding that the plaintiff's increased print limit "undermines the protective

[2] Meishe's alternative proposal of increasing the limit to continuous blocks of 75 pages raises similar concerns, as it would still allow Meishe to print thousands of complete source code files.

order's restrictions preventing a party from reviewing source code outside the secure room and weaken confidentiality protections." *Id*.

The same concerns in *Linex* are present here. Meishe's proposed modification would frustrate the confidentiality provisions in the Agreed Protective Order and increase the risk of inadvertent disclosure of Defendants' highly confidential source code. And Meishe's request is far more excessive than that in *Linex*. Whereas the *Linex* plaintiff sought to increase the continuous page print limit from 50 to 100 pages (2x), Meishe is seeking to remove the continuous page print limitation altogether. Even Meishe's alternative proposal of 75 continuous printed pages is a 3x increase over the current 25-page limit. Both proposals result in unacceptable increased risks of inadvertent disclosure.

2. <u>Meishe cannot criticize the Protective Order's terms when it has not diligently reviewed Defendants' produced source code or identified its asserted source code with sufficient particularity</u>

Nothing about the current Agreed Protective Order—which has been in place for almost two years—prejudices Meishe's ability to prosecute its case. That Meishe has demanded production of dozens of versions of Defendants' source code does not entitle it to dictate the terms for review of that code. Indeed, Meishe does not identify any prejudice imposed by the Agreed Protective Order, instead complaining that it has the burden to prove its claims in general. Mot. 10. But all cases assign general burdens. That the law assigns one party the burden of proof does not mean that party is prejudiced because it must abide by the terms of a protective order.

It is not the terms of the Agreed Protective Order, but ***Meishe's*** own lack of diligence, that underlies Meishe's motion. Meishe was able to review Defendants' code in person on multiple review laptops in a secure environment for more than a year. But Meishe made minimal effort to do so. For example, Meishe inspected Defendants' source code for only ***three days*** over the three months before this case was transferred. Dkt. 371-12 at 9–10. Defendants fear that Meishe filed this motion to excuse its own lack of diligence in reviewing the code it has demanded.

Meishe's dissatisfaction with the terms in the Agreed Protective Order is also undermined by its representations to the Court to avoid responding to Defendants' interrogatories. For months, in response to Defendants' motions to compel Meishe to identify with particularly the accused

portions of Defendants' source code, Meishe claimed that it had disclosed the information sought by Defendants. *See*, *e.g.*, Dkt. 371-13, 90:8–20. If Meishe representations were accurate, then Meishe should have known for many months the code it needed to print. Its delay and inaction in seeking this relief suggests a different motive—to excuse its lack of diligence.

Meishe's desire to circumvent the previously agreed terms of the Agreed Protective Order does not justify ignoring placing Defendants' highly confidential source code at greater risk of inadvertent disclosure. Should Meishe show a need to print more than 25 continuous pages for legitimate purposes, such as to attach to court filings or for trial exhibits, Defendants will consider reasonable requests. But Meishe's demand to print source code files beyond the agreed 25-page limits without particularized justification should be rejected. *See Intel*, 198 F.R.D. at 528 ("To modify a protective order a party must establish good cause ***by demonstrating how the protective order will prejudice the party's case***. . . . The protective order must actually prejudice presentation of the moving party's case, ***not merely increase the difficulty of managing the litigation***.") (emphases added).

3. Meishe's demand to print 25,000+ pages of Defendants' source code suggests the intent to improperly review code outside a secure environment

At the outset of the case, the parties negotiated a print limit of 600 total pages. Meishe seeks a staggering increase of this already elevated limit to more than 25,000 pages of Defendants' source code—1,100 unrestricted pages plus an additional 500 pages for each of the more than 50 versions of source code relating to audio and video editing for the TikTok app demanded by Meishe and made available for inspection by Defendants. This 25,000 pages is in stark contrast to the agreed baseline that "***no written or electronic record*** of the Source Code is permitted," subject to narrow defined exceptions that permit "a reasonable number of printouts and photocopies of ***specific portions*** of Source Code." Dkt. 82 ¶ 24 (emphases added).

With its desired elevated print limits, Meishe could print complete copies of ***entire*** software versions of Defendants' source code related to audio and video editing. Even with 1,100 pages, based on its own estimates, Meishe would be permitted to print ***~70%*** of the source code of certain software versions. Mot. 7:28–8:1. Taken together with Meishe's request to eliminate print limits

on continuous blocks of code, it is undisputed that ***Meishe seeks the ability to print thousands of full, complete source code files and entire versions of Defendants' source code related to audio and video editing without demonstrating a justification or need***. A request of this magnitude and scope is unreasonable and frustrates the purpose of the Agreed Protective Order.

The parties agreed that "[t]he Receiving Party ***shall not*** print source code in order to review blocks of source code elsewhere in the first instance, i.e., ***as an alternative to reviewing that source code electronically on the Source Code Computer***." Dkt. 82 ¶ 24 (emphases added). One of Meishe's experts—Dr. Shamos—inspected Defendants' source code for only ***one day*** despite being disclosed for the entire yearslong period that Defendants have made their source code available. *See* Dkt. 371-12. Another Meishe expert—Mr. Howell—inspected Defendants' source code less than ***five*** days. *Id.* Meishe is also seeking in its motion to add an additional new expert for access to Defendants' code, who ostensibly has never reviewed Defendants' code at all.

The parties agreed that "the purpose of the protections [in the Agreed Protective Order] would be frustrated by printing portions of code for initial review and analysis elsewhere." Dkt. 82 ¶ 24. The magnitude of code Meishe has requested the ability to print, along with the minimal amount of time its experts have reviewed Defendants' source code, suggests that Meishe seeks to print Defendants' source code for review outside a secure environment. It defies credibility that Meishe needs 25,000+ pages—around ***10 bankers' boxes of printouts—***for attachment to filings or motions. Instead, given the (1) minimal review by its experts and (2) sheer volume of code Meishe seeks the ability to print without any demonstrated justification or need, Defendants can only presume that Meishe's request is for the improper purpose of review of Defendants' source code outside a secure environment.

Ensuring that code review remains within a secure location is a primary purpose of protective orders. *See Linex Tech*, 2013 WL 1820909; *Logantree LP, v. Garmin Int'l., Inc.*, No. 17-cv-1217-EFM, 2021 WL 3421577, *8–11 (D. Kan. Aug. 5, 2021) ("Requests for printed copies of source code are subject to careful scrutiny because it is a less secure method of production that poses an increased risk of inadvertent disclosure."). Meishe's request is even more excessive than that rejected in *Linex*. Whereas the plaintiff in *Linex* requested an increase from 1,000 pages to

1,500 pages of source code printouts (1.5x), Meishe is seeking an increase from 600 pages to ***over 25,000*** pages (over ***40x***). For the same reasons as in *Linex*, Meishe's request should be denied.

4. The Agreed Protective Order's current print limits are adequate

The Agreed Protective Order's source code printout limitations are of similar magnitude to what is commonly entered into in other cases. *See Virtual Chart Sols I, Inc. v. Meredith,* No. 17-cv-546, Dkt. 103 at 7 (E.D. Tex. May 16, 2018) (Dkt. 371-15) (copyright; protective order limited parties to printing **30** consecutive pages, **200** total pages); *Epic Tech, LLC v. Fusion Skill, Inc.*, No. 19-cv-2400, Dkt. 75 at 10 (S.D. Tex. Oct. 8, 2019) (Dkt. 371-16) (copyright; order limited parties to printing **25** consecutive pages, **500** total pages); *Polydyne Dev. Corp. v. Digital Market, Inc.*, No. 99-cv-487-JN, Dkt. 25 at 5 (W.D. Tex. Jan. 20, 2000) (Dkt. 371-17) (copyright; order limited parties to **250** total pages); *Koss Corp. v. Apple Inc.*, No. 20-cv-665-ADA, 2021 U.S. Dist. LEXIS 269053, at *28 (W.D. Tex. Apr. 15, 2021) (patent; order limited parties to **15** consecutive pages, **250** total pages).

The single case cited by Meishe does not support its excessive request. In *MicroUnity Sys. En'g. Inc. v. Apple, Inc.*, No. 13-mc-80020-LHK-PSG, 2013 U.S. Dist. LEXIS 76469, at *1–2 (N.D. Cal. May 30, 2013), third party Adobe produced ten versions of its source code "subject to the protective order between MicroUnity and the defendants in the underlying case." The agreed protective order allowed for printing up to "10% or 500 pages of the total source code, whichever is lesser, of any software release." *Id*. at *8. MicroUnity filed a motion to compel Adobe to produce nine additional versions of source code, and asserted it needed "at least 72 pages for each of the nine versions of code it seeks," which was ***within the limits of the existing protective order***. *Id*. at *3–4. It was the producing party ***Adobe*** who sought to modify the protective order to cap printouts at 700 pages total for all code. *Id*. The court found that Adobe failed to meet its burden to modify the existing protective order. *Id*. at *8–9.

Unlike *MicroUnity*, Meishe ***agreed*** to 600 pages total across all versions of source code when it knew, or at least should have known, that multiple versions would be at issue. *See* section IV.B.2. Whereas Adobe had initially agreed to the lesser of 10% and 500 pages of code per software release in *MicroUnity*, Defendants did not agree to Meishe's excessive proposal. Further,

the plaintiff in *MicroUnity* was seeking just 72 pages per version across nine versions of code (648 pages total) compared to Meishe's unreasonable request of 500 pages per every version for a total of over 25,000 pages of source code printouts. *MicroUnity*, 2013 U.S. Dist. LEXIS 76469, at *3. Just as the court in *MicroUnity* was "not persuaded that the protective order under which [Adobe] already produced is insufficient," the protective order that both parties agreed to here is similarly sufficient and should not be modified to remove the "significant procedures and security measures to ensure the protection of produced source code." *Id.* at *9.

And the two cases Meishe cites in which a court rejected a party's opposed request to adopt certain provisions are inapposite because they involved disputes where a protective order ***had yet to be entered***. Here, Meishe ***agreed*** to the print limits that it now seeks to expand or otherwise abolish. Meishe did not think the California model protective order's source code provisions were appropriate when the case was still in the Western District of Texas, and a change in venue has not lessened the need for the security protections to which the parties previously agreed. This differentiates the instant case from *OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-1622-JST-KAW, 2014 U.S. Dist. LEXIS 144191, at *4–6 (N.D. Cal. Oct. 9, 2014) and *Valencell, Inc. v. Apple, Inc.*, No. 16-cv-1-D, 2016 U.S. Dist. LEXIS 173158, at *9–10 (E.D.N.C. Dec. 12, 2016), where there was no protective order yet in place and the plaintiff had not agreed to defendant's proposal. Here, a protective order is already in place with agreed-upon source code protections. *See* N.D. Cal. Patent L.R. 2–2 ("The model protective order has been approved by the court and governs discovery ***unless the court enters a different protective order***." (emphasis added)). Unlike in *OpenTV* and *Valencell*, it is Meishe's burden to show good cause to modify such protections "by demonstrating how the protective order will prejudice [its] case" rather than "merely increase the difficulty of managing the litigation." *Intel*, 198 F.R.D. at 528. Meishe has failed to do so.

5. <u>Meishe's alleged justification for increased print limits is unsupported</u>

Meishe provides no good cause for the relief requested in this motion. First, Meishe alleges its former employee had access to specific asserted code. *See* Dkt. 344-2 at 39–40. With this knowledge, Meishe could have sought higher print limits corresponding to the pages of that specific code during negotiation of the Agreed Protective Order in June 2022. In April 2023, to justify a

demand for 20+ additional versions of Defendants' source code, Meishe claimed it found hundreds of pages of copying. Dkt. 337-03 at 15:15–17. While Meishe has refused to provide support for this assertion, the current print limits accommodate Meishe's bare allegations. On July 24, 2023, Meishe claimed it would request an increase in the Agreed Protective Order's page limits but admitted it had not communicated its request to the Defendants. Dkt. 371-13 at 92:20–21. Yet Meishe did not seek increased page limits for another ***three*** months, during which time it inspected Defendants' source code on only ***two*** days. Dkt. 371-12 at 9–10. If Meishe truly believed it needed more pages to support its claims, it could and should have done so much earlier, such as before agreeing to the terms of the Agreed Protective Order.

Second, Meishe is incorrect that it "could not have anticipated it might need to prepare its case to address a large number of code versions." Mot. at 6. When Meishe agreed to the now-disputed source code provisions, it was already accusing versions of the TikTok app dating back to 2018. Dkt. 9 ¶ 56 ("In March 2021, Meishe discovered that a series of apps belonging to ByteDance, Ltd. had infringed Meishe's copyright since at least 2018. These apps include, but are not limited to, TikTok, Douyin, Jianying, and CapCut."). Public information available to Meishe (and referenced in its complaint) shows that the TikTok app is updated frequently, with new versions usually being released within a week. *See* Ex. 2; Dkt. 235 ¶ 31 (Meishe's complaint includes and links a screenshot showing an earlier version of the TikTok app). Meishe was or should have been aware that there could be dozens of versions of source code at issue when it filed this case. Indeed, Meishe itself alleges that its asserted copyrights and trade secrets comprise multiple versions of its own produced source code. Meishe therefore had a general understanding of the breadth of source code that could be at issue in this case when it agreed to a 600-page print limit. Meishe's request to now apply a similar page limit (500 pages) ***per version***, for over 25,000 pages total—***40+ times*** the current limit—is unreasonable.

Third, there is no legitimate need to print 25,000+ pages—around 10 bankers' boxes full of pages—given Meishe's identification of less than a handful of pages of alleged copying to date. *See* Dkt. 371-13 at 82:4-12; *Rensselaer Poly. Inst. v. Apple Inc.*, No. 13-cv-633, 2014 U.S. Dist. LEXIS 63413, at *10 (N.D.N.Y. May 8, 2014) (denying request to relax source code print limits

"not tied to any particular need"). Meishe has continually frustrated Defendants' efforts to discover exactly what Meishe contends is infringing code so that Defendants can reasonably understand the scope of Meishe's claims. Meishe cannot now change course and demand a re-write of the Agreed Protective Order based on alleged infringement it has not identified with any reasonable particularity. Nor does Meishe tie its request to use in pleadings and trial exhibits that "describe[] the types of activities warranting printing of source code." *Valencell*, 2016 U.S. Dist. LEXIS 173158, at *8.

Fourth, Meishe's attempt to shift blame to Defendants for not stipulating to representative versions does not justify its request. Defendants' code has changed substantially over time. *See* Dkt. 362 at 1. As explained above, Defendants ***cannot*** provide stipulations on representativeness when Meishe refuses to identify with specificity (*e.g.*, by page and line number) its asserted copyrights and alleged trade secrets. *See* Dkt. 371-13 at 93:6–7, 94:7–10.

Fifth, Meishe's explanation as to why its excessive expansion of the source code printout limits still comports with "the purpose of the Texas Protective Order provisions and this Court's Model Protective Order" is illogical. Meishe argues that it must (1) visit the source code room, (2) create PDFs of the code it wants to print, and (3) send a print request letter. Mot. at 11. But this process applies regardless of how many printouts are allowed. The problem Meishe fails to address is that its requested 25,000-page limit with no restrictions on printing continuous blocks of source code would allow Meishe's counsel to indiscriminately print files in their entirety with no analysis of their contents in the source code room. With these physical printouts secured, Meishe's experts—including one who has only inspected Defendants' source code a ***single day*** in the past—would be permitted to review entire files of source code in the first instance outside Defendants' source code room in a less secure environment. Meishe's request "undermines the protective order's restrictions preventing a party from reviewing source code outside the secure room and weaken confidentiality protections." *Linex*, 2013 WL 1820909, at *2.

Meishe's claim there is no alternative solution to eviscerating the provisions of the Protective Order it agreed to earlier is baseless. If Meishe needs additional code to attach to pleadings, court filings, and/or trial exhibits, Defendants will not oppose reasonable requests.

Defendants have also agreed to make code review computers available for depositions. But to ensure the security of Defendants' source code and effectuate the purpose of the Agreed Protective Order, the source code print limits in the Agreed Protective Order must not be weakened.

### C. Meishe's attempt to recharacterize Dr. Kesden as a "support personnel" to circumvent limits on the number of testifying experts should be rejected

Eight months ago, Meishe entrenched itself in the position that the limit on "Outside Consultants" must be enforced. It filed a baseless motion seeking to prevent Defendants from using Dr. Kevin Almeroth as a testifying expert, asserting that three consultants who Defendants ***expressly disclosed*** as "support personnel" to Mr. Nigel Jones months earlier were actually separate "Outside Consultants." *See* Dkt. 313. Even after Defendants provided evidence that these three "support personnel" reported to Mr. Jones, regularly worked for him, and billed their time to him, Meishe would still not relent. Now, Meishe claims that Mr. Daniel Kesden—who was ***not*** disclosed as support personnel, and instead expressly disclosed "as an outside consultant" ***in the exact same way*** as Dr. Michael Shamos—is actually "support personnel" to Dr. Shamos. But Meishe refuses to provide any proof that it demanded from (and was provided by) Defendants. Meishe's shameless factual distortion, made for the first time more than a year after Mr. Kesden was first disclosed "as an outside consultant"—not "support personnel"—should be rejected.

To begin, a consultant disclosed as "support personnel" to another "Outside Consultant" is an important distinction because their communications to each other can potentially be shielded from disclosure. Mr. Kesden—unlike Mssrs. Brooks, Kasturi, and Scaroni for Mr. Jones—was not disclosed under ¶ 19 of the Agreed Protective Order as "support personnel," but rather under ¶ 20 as an "Outside Consultant." *Compare* Dkt. 371-10 *with* Dkt. 371-18. Unlike Defendants, who provided redacted copies of invoices showing that support personnel directly billed their time to the designated "Outside Consultant" (Dkt. 316-6), Meishe appears unwilling to provide similar proof. The mere fact that Mr. Kesden allegedly supports and reports to Dr. Shamos ***as an independent "Outside Consultant" who may still testify at trial*** does not qualify him as a "support personnel" under the Agreed Protective Order. In short, Meishe's new claim that Mr. Kesden is Dr. Shamos' direct report—more than a year after it disclosed him—is not credible.

But most importantly, while Mr. Kesden states he has not yet "been asked" to provide expert testimony (Dkt. 401-11 at 2), ***Meishe*** is only willing to equivocally represent that it does not "plan" for Mr. Kesden to provide expert testimony (Mot. at 12), even though Mr. Kesden's CV states he has often been retained by plaintiffs to "testif[y] in federal and state jurisdictions." Dkt. 401-12 at 4. And contrary to Meishe's argument that the Agreed Protective Order does not limit the number of testifying experts, the Agreed Protective Order specifically limits the number of "Outside Consultants"—defined as including "expert witnesses"—who can view a party's ***source code***. Dkt. 82 ¶¶ 14, 19.c. Meishe cannot reasonably contend that Mr. Kesden is merely "support personnel" rather than an independent expert witness when it cannot confirm that Mr. Kesden will not testify.

Meishe should not be permitted to circumvent the Agreed Protective Order's limits on the number of "Outside Consultants" who can view source code or shield correspondence between its experts by recharacterizing them as "support personnel." It is undisputed Mr. Kesden has provided testimony in cases where Dr. Shamos has also been retained by the same party. *See* Dkt. 371-19 at 6 ("Realtime Data, LLC v Morgan Stanley (N.Y.S.D.)"; "Realtime Data v CME Group (N.Y.S.D.)"). Meishe's vague statements leave open the possibility it could offer both Mr. Kesden and Dr. Shamos as testifying experts.

Meishe's suggestion that the "Outside Consultant" limitation would not have been allowed by this Court without a showing of "specific harm or prejudice" (Mot. at 14) ignores the fact that ***Meishe agreed to the provision*** (Dkt. 62-1, ¶ 6.b). In other words, even in Meishe's hypothetical in which the Agreed Protective Order had been negotiated in this forum in the first instance, no showing of "specific harm or prejudice" would have been required because the parties were in agreement as to the limitations on the number of "Outside Consultants" who could view a party's source code.

Meishe provides no good cause for modifying the Agreed Protective Order to allow it an additional "Outside Consultant" to review Defendants' source code. Meishe does not contend that its three currently designated "Outside Consultants" (Dr. Shamos, Mr. Kesden, and Mr. Howell) are unable to adequately review Defendants' source code. Nonetheless, if Meishe confirms it ***will not*** (not merely does not "plan to") use Mr. Kesden as a testifying expert, and agrees to produce all

his non-work product-protected correspondence with Dr. Shamos up to the filing of this motion during expert discovery, Defendants would be willing to withdraw their objection to Dr. Malek. But unless Meishe does so, its late-filed motion is an unsupported attempt to skirt the agreed limits in the Agreed Protective Order on the number of "Outside Consultants" (including testifying experts) who can view a party's source code and improperly alter its earlier characterization of its designated experts.

## V. CONCLUSION

Defendants request that the Court defer or deny Meishe's motion to amend the Agreed Protective Order and deny Meishe's request to grant access to Defendants' source code material to Dr. Malek.

Dated: March 7, 2024

WHITE & CASE LLP

By: */s/ Yar R. Chaikovsky*
Yar R. Chaikovsky

WHITE & CASE LLP
Yar R. Chaikovsky (175421)
yar.chaikovsky@whitecase.com
Philip Ou (259896)
philip.ou@whitecase.com
David T. Okano (278485)
david.okano@whitecase.com
Heather Burke (284100)
heather.burke@whitecase.com
Radhesh Devendran (318517)
radhesh.devendran@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

WHITE & CASE LLP
Michael Songer
Michael.songer@whitecase.com
701 Thirteenth Street, NW
Washington, DC 2005-3807
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

Andrew Zeve
Andrew.Zeve@whitecase.com

Jeremy Dunbar
Jeremy.Dunbar@whitecase.com
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701

PAUL HASTINGS LLP
Andrea Roberts
andrearoberts@paulhastings.com
1117 S. California Avenue
Palo Alto, California 94304-1106
Telephone: 1(650) 320-1800
Facsimile: 1(650) 320-1900

Attorneys for
TikTok Inc., TikTok Pte. Ltd., ByteDance Ltd. and ByteDance Inc.