KORULA T. CHERIAN (Bar No. 133967)
sunnyc@cherianllp.com
ROBERT M. HARKINS (Bar No. 179525)
bobh@cherianllp.com
**CHERIAN LLP**
2001 Addison St, Suite 275
Berkeley, CA 94704
Telephone: (510) 944-0190

STEPHANIE R. WOOD (Bar No. 242572)
stephaniew@cherianllp.com
**CHERIAN LLP**
8350 N. Central Expressway, Suite 1900
Dallas, TX 75206
Telephone: (945) 205-0301

THOMAS M. DUNHAM (pro hac vice)
tomd@cherianllp.com
J. MICHAEL WOODS (pro hac vice)
michaelw@cherianllp.com
ADAM A. ALLGOOD (Bar No. 295016)
adama@cherianllp.com
**CHERIAN LLP**
1901 L. St. NW, Suite 700
Washington, DC 20036
Telephone: (202) 838-1560

Attorneys for Plaintiff BEIJING MEISHE NETWORK TECHNOLOGY CO., LTD.

**Cherian LLP**
**2001 Addison Street, Suite 275**
**Berkeley, CA 94704**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BEIJING MEISHE NETWORK TECHNOLOGY CO. LTD.,<br><br>Plaintiff,<br><br>v.<br><br>TIKTOK INC., TIKTOK PTE. LTD., BYTEDANCE LTD., AND BYTEDANCE INC.,<br><br>Defendants. | Case No. 23-CV-06012-SI<br><br>**PLAINTIFF'S REPLY IN SUPORT OF PLAINTIFF'S MOTION TO AMEND TEXAS PROTECTIVE ORDER**<br><br>Date: March 29, 2024<br>Time: 10:00 AM PST<br>Place: Courtroom 1, 17th Floor<br>Before: Hon. Judge Susan Illston<br>Trial Date: TBD |

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1
II. ARGUMENT ........ 2
A. Defendants' Arguments Against Access by Dr. Malek to Source Code are Irrelevant ........ 2
B. Meishe's Motion to Amend the Protective Order is Ripe and Does Not Depend on Defendants' Motion to Dismiss ........ 3
C. Meishe Has Shown Good Cause to Modify the Protective Order ........ 5
1. The Protections for Source Code in the Protective Order Remain Intact with Plaintiff's Requested Modifications. ........ 5
2. Plaintiff Has Been Diligent in its Source Code Review Which Defendants Have Obstructed. ........ 7
3. Modification of the Protective Order is Needed. ........ 8
4. This Court's Precedents Support Plaintiff's Requested Increase in the Source Code Printing Limit and Defendants Cited Cases are Inapplicable. ........ 9
III. CONCLUSION ........ 11

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

## TABLE OF AUTHORITIES

**Cases**

*Epic Tech, LLC v. Fusion Skill, Inc.*, No. 19-cv-2400 (S.D. Texas)................................................ 10

*InteliClear, LLC v. ETC Global Holdings*, Inc., 978 F.3d 653 (9th Cir. 2020)................................ 4

*Koss Corp. v. Apple Inc.*, No. 20-cv-665-ADA (W. D. Texas) ..................................................... 10

*Linex Tech Inc. v. Hewlett Packard Co*., No. C 13-00159 CW (MEJ), 2013 U.S. Dist. LEXIS 61808 (N.D. Cal. Apr. 30, 2013) ............................................................................. 6, 7

*MicroUnity Systems Engineering Inc. v. Apple, Inc.*, No. 13-mc-80020 LHK (PSG), 2013 U.S. Dist. LEXIS 76469 (N.D. Cal. May 30, 2013) ....................................................... 9, 10

*Opternative, Inc. v. Jand, Inc*., No. 17-CV-6936 (RA)(SN), 2019 U.S. Dist. LEXIS 116722 (S.D.N.Y. July 12, 2019) ........................................................................................ 6

*Polydyne Development Corp. v. Digital Market, Inc.*, No. 99-cv-487-JN (W.D. Texas)................ 11

*Rabin v. Google LLC*, No. 22-cv-04547-PCP, 2023 U.S. Dist. LEXIS 207835 (N.D. Cal. Nov. 20, 2023) ............................................................................................................ 3

*Rensselaer Polytechnic Institute v. Apple Inc.*, No. 13-cv-633, 2014 U.S. Dist. LEXIS 63413 (N.D.N.Y. May 8, 2014)...................................................................................... 9

*Virtual Chart Solutions I, Inc. v. Meredith,* No. 17-cv-546 (E.D. Texas) ....................................... 11

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

## I. INTRODUCTION

Plaintiff has demonstrated good cause for the requested modifications. First, there is no good reason to deny Dr. Malek access to Defendants' source code. Defendants assert incorrectly that the Protective Order somehow implicates communications between "outside consultants" and "support personnel," and that the Protective Order limits the number of testifying experts. The Protective Order does not. The Court should overrule Defendants' objection, but in the alternative, Plaintiff requests the Court amend the Protective Order to permit source code access by up to four (4) Outside Consultants. That is fewer total people with access to Defendants' code than they already have had review Plaintiff's code.

Second, as to the increase in printed pages, the amount of source code produced by Defendants in this case far exceeds the original production, and Defendants opted not to enter stipulations to reduce the amount of relevant code. Instead, Defendants produced more than [redacted] some of which now include more than [redacted]. Also, instead of producing all of Defendants' email with their email production, Defendants put some unknown amount of email only on their source code computer. All of this warrants an increase of (1) the total allowable print volume to 1,100 pages (the currently allowed 600 pages with an additional 500 pages to account for email production designated as "Highly Confidential–Source Code"), plus an additional 500 pages for each version of source code produced; and (2) remove the 25 consecutive page restriction.[1] Further, the Court should order Defendants to produce the already identified relevant requested printouts that Defendants are currently refusing to provide.

In response, Defendants rely principally on their unfounded fear that Meishe will use the increased limits to print source code to review blocks of source code outside the source code computer in the first instance. This is directly refuted by how Meishe requests source code and the history of this case. Defendants also argue that Plaintiff's request should be denied because Plaintiff has not been diligent in its source code review. But Defendants have improperly <u>blocked Plaintiff's inspection of source code for almost five months</u>. Further, Defendants' arguments regarding their

[1] If the Court is not inclined to remove this limit altogether, in the alternative Plaintiff requests an increase of this limit from 25 pages to 75 consecutive pages.

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

Rule 12(b)(6) motion and a discovery motion they have not yet filed are red herrings, and Defendants have already been denied twice in moving to dismiss Plaintiff's copyright claims. Plaintiff's requests are not excessive and are reasonable for the current circumstances in the case.

## II. ARGUMENT

### A. Defendants' Arguments Against Access by Dr. Malek to Source Code are Irrelevant

Plaintiff seeks access to Defendants' source code for Dr. Sam Malek. Defendants do not object to Dr. Malek's access based on credentials or his prior work – this dispute is just about the number of source code reviewers. Defendants have *five* reviewers of Plaintiff's source code and Plaintiff seeks to add a *fourth* reviewer. As discussed in the Motion, the Texas Protective Order permits source code access for up to three Outside Consultants with support personnel for an Outside Consultant not counting against the limit of three. *See* Mot. at 12, Dkt. 401. Plaintiff has two Outside Consultants, Dr. Shamos and Mr. Howell, and one support person, Mr. Greg Kesden, who have access to Defendants' source code. Dr. Malek would be Plaintiff's third Outside Consultant as permitted by the Texas Protective Order. *See* Dkt. 82 at ¶ 19. Defendants' position is that Dr. Sam Malek should be counted as a fourth, not third Outside Consultant as they contend Mr. Kesden should be deemed an Outside Consultant irrespective of his support role to Dr. Shamos.

In their Opposition, Defendants raise arguments against access by Dr. Malek to Defendants' source code that are irrelevant as these arguments are unrelated to the requirements of the Court's Protective Order. First, Defendants argue that Plaintiff did not identify Mr. Kesden as "support personnel" and Defendants argue they need to know if an individual is "support personnel" or an "outside consultant" because of the communications between these individuals. *See* Opp. at 16. But communications between these individuals are not addressed anywhere in the Texas Court's Protective Order nor is there any requirement to specifically identify an individual as "support personnel" in the Texas Protective Order. Defendants mischaracterize the disclosure requirements of the Protective Order by stating that "Mr. Kesden … was not disclosed under ¶ 19 of the Agreed Protective Order as 'support personnel, but rather under ¶ 20 as an 'Outside Consultant.'" Opp. at 16. But this characterization is incorrect as ¶ 20 provides the disclosure requirements for both

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

"support personnel" and "Outside Consultants." Defendants cannot justify denying access to source code by Dr. Malek based on requirements that do not exist.

Second, Defendants argue again that the Protective Order somehow limits the number of testifying experts. *Id.* at 17. But there are no such limits in the Protective Order, nor does the Protective Order address the number of experts in the litigation. Although not required by the Protective Order, Plaintiff confirms that Mr. Kesden – who is support personnel for outside consultant Dr. Shamos – will not provide expert testimony.

Third, even if the Court determines a modification to the Protective Order is required, the addition of Dr. Malek as a source code reviewer does not prejudice Defendants. Defendants are using *five* different reviewers for Plaintiff's source code and Plaintiff seeks only to add a *fourth* reviewer of Defendants' much more voluminous source code. Defendants argue that Plaintiff agreed to the limits on source code reviewers. But, as discussed in the following sections, Plaintiff could not have anticipated the sheer volume of Defendants' implicated source code nor the extent of Defendants' copying of Plaintiff's source code.[2] Defendants cannot show any real prejudice due to Dr. Malek's access to Defendants' source code.

Defendants provide no basis to refuse access to Defendants' source code by Dr. Malek. This Court should grant Dr. Malek source code access or, in the alternative, the Court should modify the Protective Order to permit source code access for up to four (4) Outside Consultants.

### B. Meishe's Motion to Amend the Protective Order is Ripe and Does Not Depend on Defendants' Motion to Dismiss

As an initial matter, Defendants argue that the Court should not decide the instant motion pending a long list of Defendants' demands. First, Defendants claim that Meishe has not identified the source code at issue (Meishe's asserted copyrights and trade secrets) with sufficient particularity. Even though such identification is unrelated to the issues in this motion, Meishe has identified this

---

[2] As noted in the Motion, the Court's Model Protective Order does not set a numerical limit on the number of qualified persons who may review source code. *See* Mot. at 12-13. If the Court's Model order were used, Defendants would be required to show prejudice to limit the number of source code reviewers. *See Rabin v. Google LLC*, No. 22-cv-04547-PCP, 2023 U.S. Dist. LEXIS 207835, at *4 (N.D. Cal. Nov. 20, 2023); *id.* at 3 ("Here, because Google seeks to impose greater restrictions [than the Model Order], it bears the burden of showing prejudice or harm that will result if the less restrictive standard order, as modified by Plaintiffs, is imposed.").

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

code in detail. Specifically, Plaintiff has identified the source code associated with its copyrights and trade secrets by copyright number and version listing individual file names, along with whether the file was the same, added, modified, or deleted within each asserted version of Plaintiff's source code. *See* Ex. C (346 pages) to Plaintiff's Supplemental Responses to Defendants' Interrogatories (Nos. 1-31), dated May 11, 2023. Also, Plaintiff has identified the [redacted]. *See* Ex. B (155 pages) to Plaintiff's Supplemental Responses to Defendants' Interrogatories (Nos. 5, 7, 18, and 19), dated March 9, 2023. More importantly, Plaintiff has provided an identification of [redacted]. *See* Ex. A (118 pages) to Plaintiff's Supplemental Responses to Defendants' Interrogatories (Nos. 1-31), dated October 25, 2023. Plaintiff also identified specific modules of Defendants that contain Plaintiff's trade secrets. *See id.* And Plaintiff also listed [redacted]. *See id.*

Second, Defendants are trying to defer a decision on Plaintiff's motion by arguing that the Court should decide another motion – ***which they have yet to file***. Defendants argue that an increase in the printing of source code should not be decided until Plaintiff has made a more particular identification of trade secrets. Defendants have already announced their intent to file a motion to stay discovery pending a more particular identification of trade secrets and were told to wait by the Court. *See* Opp. Ex. 1 (February 23, 2024, Hearing Transcript) at 12, Dkt. 411-2. Moreover, the Texas Court previously held that Plaintiff has already identified its trade secrets with more particularity than the trade secrets identified in *InteliClear, LLC v. ETC Global Holdings*, Inc., 978 F.3d 653 (9th Cir. 2020). *See* Dkt. 128. Since that decision, Plaintiff has further supplemented its identification of trade secrets adding even more specificity. *See* Plaintiff's Supplemental Response to Defendants' Interrogatory No. 1, dated February 20, 2024. Defendants have no basis to defer a decision on this motion based on a speculative motion Defendants may file in the future.

Third, Defendants argue that this motion should not be decided until the Court decides Defendants' now third motion to dismiss. But this litigation did not stop moving forward the first

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

two times Defendants unsuccessfully sought to dismiss Plaintiff's claims. The Court should not defer decisions on motions filed before Defendants' motion to dismiss, particularly as the Western District of Texas court has rejected Defendants' two prior motions to dismiss at least in part.

Defendants have no legitimate basis to seek to defer a decision on Plaintiff's Motion to Amend the Texas Protective Order. This motion is unrelated to the arguments made by Defendants and is ripe for resolution.

### C. Meishe Has Shown Good Cause to Modify the Protective Order

Meishe has met its burden and demonstrated good cause for modifying the Protective Order. As explained in Meishe's Motion, Meishe requested the modification to the limits based upon the number of versions of source code, the pervasiveness of Defendants' copying, and Defendants' unwillingness to agree to a stipulation regarding representative versions of its code. *See* Mot. at 5-6. Defendants now complain that their code is too varied to designate representative versions. If that is true, then Defendants must allow for sufficient printing of its now [redacted] to permit Plaintiff to present its case for copyright infringement and misappropriation of trade secrets in view of the extensive copying of Plaintiff's source code by Defendants. *See* Opp. at 4.

In its Opposition, Defendants argue that: (1) the protections of the Protective Order are somehow lost with increased printing limits; (2) Plaintiff has not been diligent in its review of Defendants' source code despite Defendants blocking Plaintiff's inspections of code; (3) Plaintiff has not justified its requested modification and that no modification of the Protective Order is needed despite the [redacted]; (4) this Court's precedents somehow do not support increased printing limits and that several inapplicable protective orders from other courts support a lower printing limit. As discussed below, Defendant's arguments are without merit and this Court should grant Plaintiff's requested modification to the Protective Order.

1. <u>The Protections for Source Code in the Protective Order Remain Intact with Plaintiff's Requested Modifications.</u>

Defendants' fear that Meishe will use the increased limits to print source code to circumvent the purpose of the printout limits is unsupportable. First, nothing suggests Meishe even could, with

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

the revised limits to the protective order, review blocks of source code outside the source code computer in the first instance. As explained in the Motion, to request a hard copy print out, Plaintiff (1) visits the source code computer in the offices of Defendants' counsel to view the code, (2) creates a PDF of the portion of the code it is requesting a hard copy print out of, and (3) sends a print request letter to Defendants. *See* Mot. at 7. Meishe is necessarily already performing the on-site analysis of the source code printout that it is requesting; this will not change. *See Opternative, Inc. v. Jand, Inc.*, No. 17-CV-6936 (RA)(SN), 2019 U.S. Dist. LEXIS 116722, at *8 (S.D.N.Y. July 12, 2019) (requiring resisting party to provide source code printout requested noting defendant's expert conducted an on-site review for several hours).

In their Opposition, Defendants repeatedly state [redacted] but ignore that they now have identified [redacted] for inspection. Plaintiff seeks 1,100 unrestricted pages[3] and then an increase in the total of 500 additional pages per version of Defendants' source code. An increase for an average of 500 pages per additional version of source code is not a significant amount considering Defendants' extensive copying of Plaintiff's source code and that a single version of Defendants' code consists of as much as [redacted]. *See* Mot. at 7-8. Indeed, Defendants have only allowed [redacted] to be inspected and Defendants <u>have blocked any review of their source code for almost five months</u>. Despite Defendants' protests, Plaintiff's proposed increase in printing limits is reasonable given the sheer volume of source code at issue and Defendants' extensive copying of Plaintiff's source code.

Next, the authority Defendants cite to support denying Meishe's request, *Linex Tech Inc. v. Hewlett Packard Co.*, No. C 13-00159 CW (MEJ), 2013 U.S. Dist. LEXIS 61808 (N.D. Cal. Apr. 30, 2013), is wholly distinguishable. In *Linex Tech*, the court was considering adopting provisions from a protective order that was used in a different action between the same parties in a new separate action. In holding the court would not increase print page limitations from the protective order the parties used at the ITC for the district court action, the court was addressing facts where the lesser page counts had actually been sufficient for the ITC action. *See id.* at *8-9.

---

[3] The total of 1,100 pages consists of the current 600 pages permitted in the Protective Order and 500 additional pages for email only produced on the source code computers which was not contemplated when the parties negotiated the Protective Order in 2022.

Unlike in *Linex Tech*, Meishe ***has reviewed the code*** and the volume that Plaintiff has determined it needs is driving the requested necessary increases. Specifically, Meishe has already needed to use the 600 pages originally provided for by the existing Protective Order and faced instances where the continuous page range it needs exceeds 25. *See* Dkt. 371-02, Exhibit 2 at 7 (Source Code Print Log reflecting Defendants' sum of the total print out pages as 605 and the three current print requests Defendants have refused). Defendants' imagined risks of Plaintiff printing large amounts of source code and only then reviewing the code do not exist.

2. Plaintiff Has Been Diligent in its Source Code Review Which Defendants Have Obstructed.

Defendants' argument that Plaintiff is not entitled to additional printing of source code because it has not been diligent in its source code review fails as Defendants have actually prevented Plaintiff's review of source code – including newly available source code – for almost five months. After Defendants fought making any source code available for almost a year, Plaintiff was finally able to review some of Defendants' source code in September 2022 following a Court order. *See* Dkt. No. 128. Defendants continued trying to stymie further source code review requiring additional Court orders. *See e.g.,* Dkt. 244.[4]

Despite Defendants' efforts to restrict source code review, Plaintiff's source code reviewer, two experts, and two attorneys have extensively reviewed Defendants' source code. However, in recent months Defendants have completely blocked any source code review by Plaintiff. As discussed in Plaintiff's Motion, on Oct. 23, 2023, Defendants informed Plaintiff that additional source code was available for inspection. *See* Mot. at 4. But on Nov. 1, 2023, the day after the litigation was transferred to this Court, Defendants informed Plaintiff that they were stopping any further source code inspections pending assignment to a Judge in this Court. *See* Mot. Ex. M, Dkt. 401-14. Following the recent Case Management Conference, Plaintiff attempted to again inspect the multiple new versions of Defendants' source code which Defendants had stated was available.

[4] Plaintiff previously filed a motion for sanctions for Defendants' repeated violations of the Court's orders requiring Defendants to make the source code for its TikTok app available for inspection. *See* Dkt. 337. Part of this motion was Defendants' refusal to produce all versions of the iOS version (Apple) of its TikTok app. To date, Defendants have only made some versions available for inspection. Plaintiff has delayed re-filing this motion in this Court pending an inspection of new versions of Defendants' source code (the inspection of which Defendants are presently blocking).



Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

But Defendants again acted precipitously to block any inspection of Defendants' source code now arguing that Plaintiff needed to further identify its trade secrets. *See* Ex. O, Email from D. Okano, dated February 28, 2024.

Incredibly, Defendants now argue that Plaintiff has not been diligent in its review of source code despite ***Defendants blocking any source code review since November 2023***. Defendants should not be allowed to rely on this argument as Defendants are the cause of Plaintiff not being able to review source code for the last five months.

3. Modification of the Protective Order is Needed.

Plaintiff has provided more than sufficient justification for modifying the Protective Order to increase the source code printing limits. As discussed in the Motion, Plaintiff has described in detail the basis for its request to increase the source code printing limits. *See* Mot. at 6-9. But Defendants argue that Plaintiff has not provided justification for the increase in source code printing limits. Specifically, Defendants assert that Plaintiff should have known when negotiating the Protective Order that it needed higher printing limits. But the Protective Order was negotiated almost two years ago, and before Plaintiff had inspected a single line of Defendants' source code. Plaintiff could not know that [redacted] would be implicated in Defendants' copying of Plaintiff's code or know the extent of Defendants' copying. After negotiating the Protective Order, Plaintiff provided Defendants a chart with [redacted]. Two years ago, Plaintiff could not have anticipated the number of pages of Defendants' source code Plaintiff would need to demonstrate the extent of copying by Defendants.

Defendants also attempt to support their argument that Plaintiff request should be denied for lack of support by citing *Rensselaer Polytechnic Institute v. Apple Inc.*, No. 13-cv-633, 2014 U.S. Dist. LEXIS 63413 (N.D.N.Y. May 8, 2014). But *Rensselaer Polytech.* is a patent infringement litigation – not a copyright infringement case. As discussed in the Motion, the requirements regarding the volume of printing of source code necessary for a patent infringement case is dramatically different from a copyright infringement and trade secret litigation where the needed evidence is the copying of the code itself and not the functionality of the code. *See* Mot. at 8-9.

While the Protective Order itself always contemplated adjusting the limits in good faith upon the requesting party articulating a reasonable need, Defendants have not abided by this requirement. *See* Dkt. 82 at ¶ 24 ("To the extent that more Source Code is required, written approval from the Producing Party shall be given in good faith once the Receiving Party articulates a reasonable need.") Regarding the increase to the continuous page counts, Defendants are improperly disregarding Meishe's well-reasoned requests. For example, Meishe complied with providing reasoning for the instances where the printout requests exceeded the current limit of 25 pages and Defendants disregarded those reasons and responded that "Assuming its purpose is not an impermissible alternative to reviewing Defendants' source code elsewhere in the first instance, Beijing Meishe should be able to identify smaller portions to print without violating the Protective Order." *See* Mot. Ex. G, Dkt. 401-8 (Sept. 28, 2023 Allgood Letter explaining nature of relevance and need for print out of continuous blocks of 33 pages, 28 pages and 63 pages); *see also* Mot. Ex. I at 2, Dkt. 401-9 (Oct. 2, 2023 Okano Letter to Allgood rejecting Meishe's explanation and refusing printouts).

4. <u>This Court's Precedents Support Plaintiff's Requested Increase in the Source Code Printing Limit and Defendants Cited Cases are Inapplicable.</u>

As discussed in the Motion, this Court's decision in *MicroUnity Systems Engineering Inc. v. Apple, Inc.*, No. 13-mc-80020 LHK (PSG), 2013 U.S. Dist. LEXIS 76469 (N.D. Cal. May 30, 2013), provides precedent for the type of source code printing limits Plaintiff seeks. *See* Mot. at 6-7. In their Opposition, Defendants attempt to distinguish *MicroUnity*, because the patentee estimated from the additional nine versions of code that Adobe was being ordered to produce, that it would need "just 72 pages per version." Opp. at 13 (citing *MicroUnity*, 2013 U.S. Dist. LEXIS 76469, at *3). This misses the point.

The 72-pages-per-version estimate in *MicroUnity* regarded the ***minimum*** number of pages it would need to print from each version as evidence from third-party code for its ***patent*** case. *MicroUnity*, 2013 U.S. Dist. LEXIS 76469, at *3. In comparison, this is a copyright case and trade secret misappropriation case where the manner in which the evidence is used and correspondingly the volume needed is very different. *See* Mot. at 8-9 (explaining code needed to show copying and use).

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

Importantly too, in *MicroUnity*, the patentee's estimate as to how much code it would need to print for additional versions was made after it reviewed the versions of the source code Adobe produced. *MicroUnity*, 2013 U.S. Dist. LEXIS 76469, at *2-3. Similarly, Plaintiff's estimate here of 500 pages average per version, unlike in the Texas Protective Order, is now based on what it estimates it will need to print on average based on the source code it has reviewed to date.

In *MicroUnity*, the Court agreed 10% or 500 pages per release was appropriate including because third-party Adobe would not confirm that the relevant source code portions would be the same across the additional nine versions. *Id.* at *8. This authority does support Plaintiff's position that the volume Plaintiff requests does not undermine the protections of source code in the protective order. And that even where the producing party, Adobe, had no role in negotiating how its source code was to be treated in the litigation, the Court still agreed it was appropriate to allow up to 10% or 500 pages (whichever is less) to be printed per version.

To support their contention that Plaintiff's requested printing limits are excessive, Defendants have selectively identified source code printing limits from protective orders in cases in different courts (not this Court). *See* Opp. at 12. But the cases identified by Defendants are not applicable to the instant case.

First, Defendants point to a protective order limiting source code printing to 250 pages in *Koss Corp. v. Apple Inc.*, No. 20-cv-665-ADA (W. D. Texas). But this case is a patent infringement case – not a copyright or trade secret litigation. *See Koss*, No. 20-cv-665-ADA (W.D. Texas), Dkt. 1 at 1. As discussed in the Motion, the requirements regarding the volume of printing of source code necessary for a patent infringement case is dramatically different from a copyright infringement and trade secret litigation where the needed evidence is the copying of the code itself and not the functionality of the code. *See* Mot. at 8-9.

Second, Defendants identify a protective order limiting source code printing to 500 pages in *Epic Tech, LLC v. Fusion Skill, Inc.*, No. 19-cv-2400 (S.D. Texas). Although this is, in part, a copyright infringement case the copyrights are for icons and images used in the source code – not a case where [redacted] as in the instant case. *Epic Tech.*, No. 19-cv-2400 (S.D. Tex.), Dkt. 1 at ¶ 23.

Third, Defendants identify a protective order from a 25-year-old case limiting source code printing to 250 pages in *Polydyne Development Corp. v. Digital Market, Inc.*, No. 99-cv-487-JN (W.D. Texas). Because of the age of this case one of the few documents available is the protective order Defendants cite. The case appears to have been removed from state court and it is impossible to even determine the issues in this case and whether it even involved copyright infringement.

Fourth, Defendants point to the protective order in *Virtual Chart Solutions I, Inc. v. Meredith,* No. 17-cv-546, Dkt. 103 at 7 (E.D. Texas), limiting source code printing to 200 pages. Although this is, in part, a copyright infringement case, the software at issue is limited to what appears to be a single version of user interface and database structure source code – unlike here [redacted] each version with tens of thousands of pages of code.

## III. CONCLUSION

For the reasons set forth herein and in Plaintiff's Motion, this Court should grant access to Defendants' source code material to Dr. Malek. In the alternative, if the Court determines that Plaintiff already has three Outside Consultants, Plaintiff requests the Court modify the Texas Protective Order to permit source code access by up to four (4) Outside Consultants.

Also, for the reasons set forth in Plaintiff's moving papers, the Court should amend the Protective Order to include that the Receiving Party may request printouts of a cumulative total of one-thousand and one hundred (1,100) pages plus an additional five hundred (500) pages per produced source code version without the agreement of the Producing Party. Further, the limit for continuous pages should be removed completely. The increase of printed pages and removal of continuous page print limits should moot Defendants' objections and require Defendants to produce Plaintiff's currently requested source code files that Defendants have refused to produce. Regarding the increase in total pages by an average of five hundred (500) pages per produced source code version, should Defendants elect to designate representative versions, Plaintiff remains willing to accommodate a reduction in printed source code pages.

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

DATED: March 14, 2024

Respectfully Submitted,

CHERIAN LLP

By: */s/ Robert Harkins*

ROBERT M. HARKINS (Bar No. 179525)
bobh@cherianllp.com
KORULA T. CHERIAN (Bar No. 133967)
sunnyc@cherianllp.com
CHERIAN LLP
2001 Addison St, Suite 275
Berkeley, CA 94704
Telephone: (510) 944-0190

STEPHANIE R. WOOD (Bar No. 242572)
stephaniew@cherianllp.com
CHERIAN LLP
8350 N. Central Expressway, Suite 1900
Dallas, TX 75206
Telephone: (945) 205-0301

THOMAS M. DUNHAM (pro hac vice)
tomd@cherianllp.com
J. MICHAEL WOODS (pro hac vice)
michaelw@cherianllp.com
ADAM A. ALLGOOD (Bar No. 295016)
adama@cherianllp.com
CHERIAN LLP
1901 L. St. NW, Suite 700
Washington, DC 20036
Telephone: (202) 838-1560

*Attorneys for Plaintiff Beijing Meishe Network Technology Co., Ltd.*

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 14th of March 2024, with a copy of this document via the Court's EM/ECF system.

*/s/ Robert M. Harkins, Jr.*
Robert M. Harkins, Jr.
SBN 179525

*Attorney for Plaintiff*