UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEIJING MEISHE NETWORK
TECHNOLOGY CO., LTD.,

        Plaintiff,

    v.

TIKTOK INC., et al.,

        Defendants.

Case No. 23-cv-06012-SI

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT WITH LEAVE TO AMEND**

Re: Dkt. No. 409

Before the Court is defendants' renewed motion to dismiss plaintiff's third amended complaint. Dkt. No. 409. Plaintiff opposes. Dkt. No. 414. The Court heard oral argument on this motion on April 5, 2024. For the reasons set forth below, the Court GRANTS IN PART defendants' motion to dismiss with leave to amend and DENIES IN PART defendants' motion. Plaintiff shall file its fourth amended complaint no later than **May 14, 2024**.

**BACKGROUND**[1]

Plaintiff Beijing Meishe Network Technology Co., Ltd. ("Meishe") filed its third amended complaint on April 20, 2023 in the Western District of Texas. Dkt. No. 235 ("TAC"). The complaint alleges seven causes of action against defendants TikTok Inc., TikTok Pte. Ltd., ByteDance Ltd., and ByteDance Inc. (collectively, "defendants"). Four causes of action remain: copyright infringement, misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), misappropriation of trade secrets under the Texas Uniform Trade Secrets Act

---

[1] For purposes of this motion to dismiss, the Court treats as true the factual allegations as stated in plaintiff's complaint and draws all reasonable inferences in plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

United States District Court
Northern District of California

United States District Court
Northern District of California

("TUTSA"), and Lanham Act false advertising.[2]

Meishe is a private company established in 2014 under the laws of the People's Republic of China with a principal place of business in Beijing. *Id.* ¶¶ 3, 10. It is the owner of a copyright in Meishe software (the "Meishe app"), "a computer program that enables users to complete professional-level video and audio editing processing on the mobile side through simple operations, making high quality video and audio clips." *Id.* ¶ 53. Meishe "developed the Meishe app and further developed the Meishe SDK and other software that provide users with video and audio editing functions." *Id.* ¶ 54.

TikTok Inc. is a California corporation with a "regular and established place of business in Austin, Texas." *Id.* ¶ 11. TikTok Pte. Ltd. is a Singapore corporation with its principal place of business in Singapore. *Id.* ¶ 12. ByteDance Ltd. is a Cayman Islands corporation with offices in the United States and elsewhere. *Id.* ¶¶ 13, 16. ByteDance Inc. is a Delaware corporation. *Id.* ¶14. ByteDance Ltd. is the parent and owner of TikTok Inc., TikTok Pte. Ltd., and ByteDance Inc. *Id.* ¶ 15. ByteDance Ltd. developed the TikTok app around May 2017 and operates and controls the app in the United States through its subsidiaries and affiliates, including the other defendants in this case. *Id.* ¶¶ 17, 55.[3] The TikTok app "allows users to create short videos, which often feature music in the background and can be sped up, slowed down, or edited with a filter." *Id.* ¶ 55. Defendants operate ByteDance Ltd.'s TikTok business in the United States as a joint enterprise. *Id.* ¶ 21.

Meishe brings this action for copyright infringement of its registered and unregistered software, all of which is "subject to copyright protection." *Id.* ¶ 1. Meishe registered portions of its software with the Copyright Protection Centre of China ("CPCC"), with Copyright Registration Nos. 2015SR227927, 2018SR037747, 2018SR037751, 2018SR038324, 2018SR218096,

---

[2] On February 26, 2024, the Court granted the parties' joint stipulation dismissing the three state law tort claims, unfair competition by misappropriation under Texas law, unjust enrichment under Texas law, and aiding and abetting a breach of fiduciary duty under Texas law (Counts IV, VI and VII), with prejudice. Dkt. No. 405.

[3] The TikTok app is the international version of a Chinese application called Douyin. *Id.* ¶ 5.

2018SR218287, 2019SR0899912, and 2020SR0291426.[4]  *Id.* ¶¶ 1, 54.  Meishe lists completion dates for the CPCC-registered copyrighted software.  *See id.* ¶ 71.  Meishe is also the "owner of copyrights in its source code and software, which have been fixed in tangible mediums before the filing date of this lawsuit regardless of registration, including but not limited to [a long list of software]." *Id.* ¶¶ 1, 54.  Meishe "has the exclusive rights to reproduce, display, and distribute the copyrighted software," including the registered copyrights listed above, "as well as its copyrighted source code and software regardless of registration."  *Id.* ¶ 72.  Prior to filing the TAC, Meishe provided defendants with copies of the China copyright registrations and associated material and copies of other copyrighted works, and defendants' experts "have spent several days reviewing that code."  *Id.* ¶ 1.

In March 2021, Meishe discovered that a "series of apps belonging to ByteDance, Ltd. had infringed Meishe's copyright since at least 2018."  *Id.* ¶ 56.  "Meishe personnel conducted an analysis between code of Meishe app and that of TikTok app [which] shows that the code used to implement video and audio editing functions in the two apps is highly similar, proving that Defendants copied Meishe's copyright work."  *Id.*[5]

Defendants allegedly had access to Meishe's source code through Meishe's former employee, Mr. Jing Xie, who is currently working for defendants.  *Id.* ¶ 58.  Mr. Xie began his employment with a Meishe affiliate in 2007 and began his employment with Meishe in March 2015.  *Id.* ¶ 60.  As a C++ R&D engineer, Mr. Xie "directly participated in the development of Meishe's software and the subsequent upgrades of various versions until his resignation on or around June 8, 2015."  *Id.*  Mr. Xie also "had access to and control over Meishe's trade secrets, proprietary software code, and/or other confidential information" during his employment with Meishe and its affiliate.  *Id.* ¶ 59.  When Mr. Xie resigned on June 8, 2015, he "knowingly took copyrighted and trade secret

---

[4] Meishe's TAC lists eighteen copyright registrations that defendants allegedly copied.  *See* TAC ¶¶ 54, 71.  In a September 29, 2023 letter to defendants, Meishe withdrew the following ten registered copyrights from the case: 2019SR0899799, 2019SR0899814, 2019SR0901166, 2019SR0901175, 2019SR0901188, 2019SR0901198, 2019SR0901209, 2020SR0572704, 2020SR0572713, 2020SR0575533.  Dkt. No. 409 at 2 n.2; Dkt. No. 414 at 7 n.4.

[5] Meishe conducted a comparison between "TikTok v8.5.0" object code, obtained from public channels, and "Meishe v2.5.4" object code.  *Id.* ¶¶ 56-57.

United States District Court
Northern District of California

1   Meishe code that was incorporated into subsequent software including software controlled and

2   distributed by ByteDance and its subsidiaries." *Id.* ¶ 97, *see also* ¶ 63.  Mr. Xie began his

3   employment at ByteDance as "multimedia audio and video director" around October 2017.  *Id.*

4   ¶¶ 65, 98.

5        Around March 2021, Meishe audited Mr. Xie's activities and "discovered that on or around

6   June 3, 2015, he downloaded [and copied] Meishe's source code and/or other confidential

7   information." *Id.* ¶¶ 94, 101.  Each time Mr. Xie modified Meishe software in the "SVN system,"

8   he first had to check "the corresponding subtree of the repository to get a so-called 'working copy.'"

9   *Id.* ¶ 61.  The "SVN system recorded all relevant information in its logs," and "[t]hese logs prove

10  that Mr. Jing Xie accessed Meishe's source code and downloaded the source code." *Id.*  Around

11  May 14, 2021, Meishe "notarized the SVN log and checked the committed log of Jing Xie on SVN."

12  *Id.* ¶ 101.

13       In addition to the allegations already detailed, Meishe alleges the following with respect to

14  its copyright infringement claim.  "On information and belief, the TikTok app consists of Plaintiff's

15  proprietary information, trade secrets, and/or reproduced software code" registered with the CPCC,

16  "as well as its copyrighted source code and software regardless of registration."  *Id.*  ¶ 73.  More

17  specifically, defendants' software, including TikTok, "includes portions of code that are copyrighted

18  and owned by TikTok" and subjected to copyright registrations and portions of plaintiff's software

19  code that were never made public.  *Id.* ¶ 74.  Defendants infringed on plaintiff's copyright in its

20  software by reproducing Meishe's copyrighted works, preparing derivative works based on

21  Meishe's copyrighted works, and distributing the copyrighted works.  *Id.* ¶ 75.  Defendants also

22  profited by inducing users to download and use the TikTok app.  *Id.*  Additionally, "[u]pon

23  information and belief, on or around April 2020, Defendants took steps to obfuscate its software

24  code in order to conceal its infringement." *Id.* ¶ 76.

25       Defendants were aware of the incorporation of Meishe's copyrighted source code into at

26  least the TikTok app and were aware of the use of Meishe's copyrighted source code by users of at

27  least the TikTok app.  *Id.* ¶ 77.  Defendants also knowingly provided false copyright management

28  information and/or distributed or imported false copyright information for distribution, and/or

United States District Court
Northern District of California

4

1  "intentionally removed or altered Meishe's copyright management information from the software []

2  copied and distributed for importation." *Id.* ¶¶ 77, 160.  Meishe previously filed lawsuits against

3  ByteDance and other defendants in China, including an April 30, 2021 lawsuit, where, according to

4  a National Law Review article, Meishe alleged that "version 3.0 and later of Douyin released on

5  November 1, 2018, copied video and audio editing and processing software code from Meishe

6  Technology's copyrighted beauty photo software.  Further, six other apps by Bytedance have traces

7  of code plagiarism, many of which have the same function names and even misspelled code copied

8  from Meishe source code." *Id.* ¶ 79.

9         Plaintiff further alleges the following with respect to its misappropriation of trade secrets

10  claims under the DTSA and TUTSA.  "Plaintiff is the owner of trade secrets that include, but are

11  not limited to proprietary, independently-developed software code that allows for video and audio

12  editing, video and audio processing, video and audio release, personalized audio and video

13  recommendations, webcasting, and other confidential business information."  *Id.* ¶¶ 87, 119.

14  "Plaintiff's trade secrets are not generally known or readily ascertainable nor could they be properly

15  acquired or duplicated by others," and plaintiff's copyrighted source code has never been made

16  publicly available.  *Id.* ¶¶ 88-89, 120-121.  Meishe "has taken reasonable and extensive efforts to

17  maintain the secrecy of its source code through the use of employment agreements and other

18  measures. All of Plaintiff's trade secrets are stored on secure servers and are password-protected."

19  *Id.* ¶¶ 89, 121.  Defendants wrongfully acquired Meishe's proprietary software code from Mr. Xie

20  and knew or had reason to know that the software code was improperly acquired.  *Id.* ¶¶ 102, 131.

21  Defendants also obtained other trade secret information from Mr. Xie, including "information about

22  which portions of Meishe's software were most likely to be popular if incorporated into video

23  editing features in smart phone applications." *Id.* ¶ 103.  Defendants induce users to download and

24  use its products and services that include Meishe's software code. *Id.* ¶¶ 105, 133.

25         Meishe further alleges the following with respect to the Lanham Act claim.  TikTok "informs

26  users that it owns and has proper rights to the code it uses in its applications."  *Id.* ¶¶ 158-159.

27  Meishe provides examples of this in the TAC.  *See id.*  Through the described conduct, defendants

28  misrepresented to their consumers "the nature, characteristics of their product and commercial

United States District Court
Northern District of California

5

activities." *Id.* ¶ 161.  Defendants "have willfully continued to represent the software as their own, not credited Meishe with being the owners or author of portions of Defendants' products or code, and not stopped distributing the infringing and misappropriated code." *Id.*  Defendants' misrepresentations were intended to, and did influence purchasing decisions by its consumers.  *Id.* ¶¶ 163-164.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  A pleading must contain allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Dismissal under Rule 12(b)(6) is proper when the complaint "lacks a cognizable legal theory" or "fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly

be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I.    Copyright Infringement Claim (Count I)

The Copyright Act grants copyright owners the exclusive rights, among others, to copy, prepare derivative works based on, and distribute copyrighted works. *See* 17 U.S.C. § 106(1)-(3). To establish copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Where there is no direct evidence of copying, "copying may be established by showing that the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). Copying may also be established by pleading facts plausibly showing "that the two works in question are strikingly similar." *Malibu Textiles, Inc. v. Label Lane International, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019). "Where two works are strikingly similar, access may be inferred." *Id.* (citing *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 987-88 (9th Cir. 2017)).

### A.    Whether Meishe's Unregistered Copyright Infringement Allegations Are Sufficiently Specific

Defendants first argue that Meishe's copyright infringement claim for "copyrighted code and software regardless of registration" should be dismissed because Meishe's allegations are "conclusory and vague and provide no notice to Defendants on what Meishe has allegedly infringed." Dkt. No. 409 at 4. Meishe contends that it has identified its copyrighted works with sufficient particularity. Dkt. No. 414 at 3.

In the complaint, Meishe includes a long list of included but not limited to "source code and software, which have been fixed in tangible mediums before the filing date of this regardless of registration." TAC ¶ 1. Plaintiff explains how the infringement allegedly occurred: defendants

incorporated portions of Meishe's copyrighted source code into their software, specifically the TikTok app.  However, the TAC fails to allege sufficient facts that show copying of the unregistered works because it is not clear what source code or software listed in the first paragraph of the complaint was allegedly infringed.  *See Media.net Adver. FZ-LLC v. Netseer, Inc.*, 156 F. Supp. 3d 1052, 1068 (N.D. Cal. 2016) (dismissing a copyright infringement claim with leave to amend where the plaintiff failed to identify which sections of HTML code the defendant allegedly copied).  The Court thus dismisses Meishe's copyright infringement claims as to the unregistered works with leave to amend to add more specificity about what source code or software was allegedly copied.[6]  Meishe need not specify each and every instance of infringement; alleging representative acts of infringement is sufficient.  *See Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co. Ltd.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2016).

The Court directs Meishe to be specific with its language. The terms "source code" and "software" are used interchangeably in the TAC.  However, Meishe's counsel clarified at the April 5, 2024 hearing that "software" refers to products that are the result of compiling "source code," such as an app or SDK (software developer kit).  Hence the two terms refer to different things and should not be used interchangeably.

### B.    Whether Meishe Has Adequately Pled Access

Defendants next argue that Meishe has not properly pled access to both the unregistered copyrighted source code as well as material registered in 2017 – 2019.  Dkt. No. 409 at 5. Defendants argue that Meishe has failed to assert, and factually cannot assert, defendants' "access" to these works.  *Id.*

A plaintiff must separately plead access only when alleging substantial similarity, not when

---

[6] Defendants contend that Meishe should not be granted leave to amend because it has already amended its complaint three times and despite "over a year of discovery, including multiple chances to review Defendants' source code, Meishe has not cured the deficiencies in the Second Amended Complaint." Dkt. No. 409 at 15.  However, the court in Texas never issued an order on defendants' motion to dismiss.  Furthermore, the Court does not believe "that the pleading could not possibly be cured by the allegation of other facts," which means leave to amend should be granted under Ninth Circuit law.  *See Lopez*, 203 F.3d at 1130.

United States District Court
Northern District of California

alleging striking similarity. *See Baxter v. MCA, Inc.*, 812 F.2d 421, 423-24, n.2 (9th Cir. 1987); *Astor-White v. Strong*, 733 Fed. Appx 407, 407 (9th Cir. 2018). This is because access may be inferred when two works are strikingly similar. *Malibu Textiles*, 922 F.3d at 952. Here, Meishe alleges that its "personnel conducted an analysis between code of Meishe app and that of TikTok app [which] shows that the code used to implement video and audio editing functions in the two apps is highly similar." TAC ¶ 56. The Court does not find this allegation alone sufficient to allege striking similarity.[7]

"Access is proven when the plaintiff shows that the defendant had an opportunity to view or to copy the plaintiff's work." *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977). "This is often described as providing a 'reasonable opportunity' or 'reasonable possibility' of viewing the plaintiff's work." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000) (citing 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 13.02[A], at 13–19 (1999)). Reasonable access is "more than a bare possibility." *Three Boys Music Corp.*, 212 F.3d at 482 (citations and internal quotation marks omitted).

Meishe alleges that Mr. Xie had access to its proprietary software code and explains how it learned that Mr. Xie downloaded and copied the source code. *See* TAC ¶¶ 59, 61, 94, 101. Given these allegations, coupled with the allegation about the similarity of the code in Meishe and defendants' products, it is reasonable to infer that defendants had access to Meishe's source code

---

[7] Plaintiff asserts that the complaint "alleges striking similarity, including even at least one copied typographical error." Dkt. No. 414 at 6. However, the allegation about the typographical error is not specific to this case. Meishe alleges that it has "previously filed multiple lawsuits against ByteDance alleging that ByteDance incorporated Meishe's protected code in its products. These cases include, for example, a lawsuit filed on or about April 30, 2021 by Meishe against ByteDance and other Defendants. As noted in the National Law Review on May 1, 2021, for example, 'Meishe alleges that version 3.0 and later of Douyin released on November 1, 2018, copied video and audio editing and processing software code from Meishe Technology's copyrighted beauty photo software. Further, six other apps by Bytedance have traces of code plagiarism, many of which have the same function names and even misspelled code copied from Meishe source code.'" TAC ¶ 79. If Meishe had alleged that there are copied typographical errors involving the source code at issue in this case, the Court may be able to reasonably infer striking similarity. However, the Court cannot attribute this pleading quoted in an online article from a separate case to this case.

United States District Court
Northern District of California

that was created before Mr. Xie departed Meishe through Mr. Xie.[8]

Regarding the seven works registered with the CPCC post-June 8, 2015 when Mr. Xie left Meishe, defendants contend that "it is impossible for Meishe to demonstrate access" because its "only allegation of 'access to Meishe's source code' is through" Mr. Xie.  Dkt. No. 409 at 6; *see* TAC ¶ 71 for registration completion dates.  Consequently, according to defendants, any copyright registrations for works created after June 8, 2015 "cannot support a copyright claim, because Mr. Xie could not have had access to those works."  *Id.*  Meishe responds that this is a defense that assumes the works registered in 2017-2019 did not exist until after Mr. Xie departed Meishe.  Dkt. No. 414 at 6.  Meishe contends that it did not plead that Mr. Xie was only able to access Meishe's copyright protected materials after they were registered; rather, it alleged that Mr. Xie "had access to and control over Meishe's trade secrets, proprietary software code, and/or confidential information" from 2007 until his departure on June 8, 2015.  *Id.* (quoting TAC ¶ 93).

In their reply, defendants contend that a "bare assertion that these software versions existed in their entirety two to four years before Meishe represented to the copyright office in China that they were 'completed' is not plausible without further facts."  Dkt. No. 416 at 3.  The Court agrees with defendants that Meishe has pled insufficient facts to plausibly allege access to copyrighted works completed after Mr. Xie's departure from Meishe.  The motion to dismiss as to the copyright infringement claims is thus granted as to the copyrighted works created after Mr. Xie's departure from Meishe, with leave to amend to plead additional facts regarding access.

### C.     Whether Meishe Has Adequately Pled Substantial Similarity

Defendants next argue that Meishe's substantial similarity allegations do not provide fair notice of how defendants' works are substantially similar to Meishe's copyrighted works.  Dkt. No. 404 at 9.  Defendants contend that Meishe's "conclusory statements" do not identify what

---

[8] Defendants argue that the TAC is silent on whether Mr. Xie had access to the "copyrighted code and software regardless of registration."  Dkt. No. 409 at 6.  While the complaint could be more specific about what Mr. Xie had access to, the Court interprets the allegation that Mr. Xie had access to Meishe's proprietary software code to encompass the software and code listed in ¶ 1 of the complaint.  *See* TAC ¶¶ 1, 59.

copyrighted works are substantially similar to what parts of the TikTok app. *Id.* Regarding Meishe's allegation about its comparison of source code, defendants assert that Meishe does not plead that the code in Meishe v2.5.4 is part of its copyright infringement claim, and that there is no identification of what parts of the Meishe code is similar to the TikTok v8.5 code. *Id.* at 10.[9] Defendants further contend that Meishe has failed to show the two works are "highly similar," even though Meishe has conducted "an extensive review of Defendants' source code." *Id.* Defendants also contend that Meishe never identifies "what protectable aspect(s) of its asserted copyrights Defendants have allegedly copied" and that Meishe has "only alleged that its code and the TikTok app are similar in the functional sense." *Id.* Lastly, defendants contend that Meishe's "descriptions of its code reflect nothing more than processes, concepts and ideas—not a detailed showing of an original work." *Id.* Meishe responds that its allegations of similarity are sufficient under the notice pleading standard of Rule 8. *See* Dkt. No. 414 at 11-12.

Meishe alleges that defendants' software, "including but not limited to TikTok includes portions of [Meishe's] code that are copyrighted and owned by plaintiff and never made public." TAC ¶ 74. Meishe alleges that it has exclusive rights to its copyrighted software listed in the first paragraph of the TAC. *See id.* ¶ 72. Meishe further alleges:

> In March 2021, Meishe discovered that a series of apps belonging to ByteDance, Ltd. had infringed Meishe's copyright since at least 2018. These apps include, but are not limited to, TikTok, Douyin, Jianying, and CapCut. Meishe personnel conducted an analysis between code of Meishe app and that of TikTok app [that] shows that the code used to implement video and audio editing functions in the two apps is highly similar, proving that Defendants copied Meishe's copyright work.

> Though Meishe cannot obtain the source code of TikTok app, Meishe was able to conduct a comparison between "TikTok v8.5.0" object code and "Meishe v2.5.4" object code. On the Android platform, object code of an app is in the form of Android application package ("APK") file. The release version refers to the APK file. "TikTok v8.5.0" APK file can be obtained from public channels. In March 2021, Meishe downloaded "TikTok v8.5.0" APK file from a third-party android app store.

*Id.* ¶¶ 56-57. Meishe also alleges that on or around April 2020 defendants "took steps to obfuscate

---

[9] Meishe v.2.5.4 is listed in ¶ 1 of the TAC. However, as discussed in subsection A, it is unclear if Meishe alleges that all of the source code and software listed in ¶ 1 of the TAC was allegedly infringed.

1  its software code in order to conceal its infringement." *Id.* ¶ 76.

2      "Substantial similarity in the literal elements of a computer program can be demonstrated

3  either by showing verbatim (or near verbatim) copying of the source code or that the 'fundamental

4  essence' of the code was duplicated." *Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-CV-

5  01267-SC, 2015 U.S. Dist. LEXIS 128619, at *6 (N.D. Cal. Sep. 23, 2015) (citing 4-13 Nimmer on

6  Copyright § 13.03). "Similarly, copying will be found where source code is translated from one

7  programming language to another or where insignificant changes are made, such as replacing certain

8  terms, reordering lines of code, or adding or removing comments." *Id.*

9      As discussed in part A, it is unclear what software or source code was allegedly infringed.

10 However, once the complaint is amended to address this deficiency, the Court finds plaintiff's

11 allegations of substantial similarly sufficient at this pleadings stage.

12

13      **D.      Whether Meishe Has Adequately Pled a Violation of 17 U.S.C. § 1202**

14     Defendants contend that Meishe alleges a violation of 17 U.S.C. § 1202, the Digital

15 Millenium Copyright Act ("DMCA"), "through conclusory allegations that Defendants provided

16 copyright management information ('CMI') that is 'false' or 'removed or altered Meishe's' CMI."

17 Dkt. No. 404 (quoting TAC ¶ 77). Defendants contend that Meishe provides no identification of

18 the CMI allegedly "removed or altered" and that its "bare and conclusory allegations" are

19 insufficient. *Id.* Meishe responds that its allegations in ¶ 77 of the TAC are sufficient to allege a

20 violation of the DMCA. Dkt. No. 414 at 7-8.

21     Section 1202(a) of the DMCA provides that: "No person shall knowingly and with the intent

22 to induce, enable, facilitate, or conceal infringement--(1) provide copyright management

23 information that is false, or (2) distribute or import for distribution copyright management

24 information that is false." 17 U.S.C. § 1202(a). Section 1202(b) provides that:

25     No person shall, without the authority of the copyright owner or the law—(1)
       intentionally remove or alter any copyright management information; (2) distribute
26     or import for distribution any copyright management information knowing that the
       copyright management information has been removed or altered without authority of
27     the copyright owner or the law, or (3) distribute, import for distribution, or publicly
       perform works, copies of works, or phonorecords, knowing that copyright

28

United States District Court
Northern District of California

management information has been removed or altered without authority of the copyright owner or the law.

17 U.S.C. § 1202(b). Additionally, the defendant must do so "knowing or having reasonable grounds to know that [the removal or alteration of CMI] will induce, enable, facilitate, or conceal an infringement." *Id.*[10]

Meishe alleges the following with respect to CMI:

On information and belief, Defendants knowingly with the intent to induce, enable facilitate, or conceal infringement, provided copyright management information that is false and/or distributed or imported for distribution copyright information that is false, and/or intentionally removed or altered Meishe's copyright management information from the software it copied and distributed for importation copyright management information knowing that the copyright management information was removed or altered without Meishe's consent or having reasonable grounds to know that its actions would induce, enable facilitate, or conceal infringement.

TAC ¶¶ 77, 160.  These allegations simply reiterate the legal standard and are insufficient.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Without alleging some facts identifying what source code or software had CMI removed or to describe what the removed or altered CMI was, without identifying what CMI was distributed and how it was distributed, and without pleading facts in support of the required mental state, Meishe has failed to state a claim under the DMCA.  *See Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019).  The motion to dismiss is thus granted as to the DMCA claim.  Meishe is granted leave to amend to allege additional facts because the Court concludes that amendment would not necessarily be futile.  *See Lopez*, 203 F.3d at 1127.[11]

---

[10] CMI is defined, in relevant part, as: "[A]ny of the following information conveyed in connection with copies . . . of a work . . . or displays of a work, including in digital form . . .: (1) The title and other information identifying the work, including the information set forth on a notice of copyright. (2) The name of, and other identifying information about, the author of a work. (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright. . ." 17 U.S.C. § 1202(c).

[11] Defendants argue for the first time in their reply that Meishe's allegations under § 1202(b) have additional defects, namely that actionable conduct under subsections (b)(1) and (b)(2) requires that CMI be removed or altered from an original work, not a copy of that work, and that subsection (b)(3) prohibits removing or altering CMI from a copy of an original work only if the copy and the original works are identical.  Dkt. No. 416 at 5.  The Court does not reach these arguments at this time because they were raised for the first time in the reply brief.  *See, e.g., Nathanson v. Polycom,*

United States District Court
Northern District of California

1

**E.      Whether Meishe Sufficiently Pled Contributory and Induced Infringement**

2

Defendants similarly contend that Meishe's allegations of contributory and induced

3

copyright infringement are "bare legal conclusions without any facts sufficient to identify the

4

necessary acts by Defendants or the allegedly infringing conduct of TikTok app users." Dkt. No.

5

409 at 7.

6

To state a claim for contributory copyright infringement, a plaintiff must allege that a

7

defendant "(1) has knowledge of a third party's infringing activity, and (2) induces, causes, or

8

materially contributes to the infringing conduct." *Perfect 10, Inc. v. Visa Int'l Serv. Ass' n*, 494 F.3d

9

788, 795 (9th Cir.2007) (citations and internal quotation marks omitted). The first prong "requires

10

more than a generalized knowledge by the [defendants] of the possibility of infringement."

11

*Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013).

12

With respect to contributory copyright infringement, Meishe alleges:

13

14

15

16

17

> In violation of 17 U.S.C. § 501, Defendants have and will continue to violate and
> both directly and indirectly infringe Plaintiff's copyright in the software registered
> by reproducing, displaying, and profiting from inducing users to download and use
> the TikTok app. Defendants were aware of the incorporation of Meishe's copyrighted
> source code into, at least, the TikTok app. Defendants were further aware of the use
> of Meishe's copyrighted source code by the users of, at least, the TikTok app.
> Defendants were aware of the infringing activity and induced, caused, or materially
> contributed to the infringing conduct.

18

TAC ¶ 77. Meishe further alleges that "the TikTok app began infringing Plaintiff's copyright in the

19

software by reproducing, displaying, and profiting from inducing users to download and use the

20

TikTok app." *Id.* ¶ 75. Meishe also alleges that defendants "actively and continuously induce users

21

to download and use the TikTok app and provide instructions online for downloading and using the

22

TikTok app." *Id.* ¶ 28.

23

The Court finds these allegations sufficient at the pleading stage. Meishe identifies the

24

alleged third-party infringers – TikTop app users. Meishe also alleges that defendants induce users

25

to download the TikTok app and provide instructions online for doing so. Taking as true the

26

27

28

_____

*Inc.*, 2015 WL 12964727, *1 (N.D. Cal. Apr. 16, 2015) (noting that numerous courts, including the Ninth Circuit, have concluded that it is inappropriate to consider arguments raised for the first time in a reply brief).

14

1    allegations in Meishe's complaint, it is reasonable to infer that defendants had knowledge of the

2    alleged acts of infringement of third-party TikTok app users. The motion to dismiss the contributory

3    and induced copyright infringement claim is therefore denied.

4

5    **F.      Whether Meishe Sufficiently Pled that its Copyrighted Works Are Exempt from**

6    **the Registration Requirement**

7           Meishe alleges that all its registered and unregistered copyrighted works are "foreign works

8    as defined by the [U.S.] Copyright Act and copyright registration is not necessary to bring a claim

9    of copyright infringement under 17 U.S.C. § 101 and 17 U.S.C. § 104(b)(2)."  TAC ¶¶ 2, 70.[12]

10   Defendants contend that it is undisputed that Meishe's copyright claims all rely on foreign works,

11   but the TAC "does not provide or otherwise allege facts sufficient to show its asserted Chinese

12   copyrights do not need to be registered in the U.S. Copyright Office before it can bring suit."  Dkt.

13   No. 404 at 8.  Meishe responds that it has plausibly alleged its ownership of the foreign works and

14   that the works are exempt from the registration requirements, and more is not required.  Dkt. No.

15   414 at 10.  Specifically, Meishe asserts that it is not required to plead that the copyrighted works

16   were first published solely in China because plaintiffs need not anticipate and attempt to plead

17   around potential defenses.  *Id.*

18          The international implications of copyright law are principally governed by the Berne

19   Convention.  *See Unicolors*, 52 F.4th at 1078–79.  As a party to the Convention, the United States

20   agrees to extend the same protections to foreign copyright holders as to domestic copyright holders.

21   *Id.* at 1078.  Foreign works are exempt from registering with the U.S. Copyright Office under 17

22   U.S.C. § 411(a), which is otherwise a prerequisite for standing.  *See Fourth Est. Pub. Benefit Corp.*

23   *v. Wall-Street.com, LLC*, 139 S. Ct. 881, 885 (2019) ("Congress removed foreign works from

24   § 411(a)'s dominion in order to comply with the Berne Convention['s] . . . bar on copyright

25

26   _____

27          [12] 17 U.S.C. § 104(b)(2) specifies that published works are subject to protection under this
     title if "the work is first published in the United States or in a foreign nation that, on the date of first
28   publication, is a treaty party."

United States District Court
Northern District of California

formalities for such works.").  Whether a work is a United States or foreign work is "inextricably intertwined with publication" because the registration requirement only applies to "United States work[s]."  *teamLab Inc. v. Museum of Dream Space, LLC*, 650 F. Supp. 3d 934, 945 (C.D. Cal. 2023); 17 U.S.C. § 411; *see also* 17 U.S.C. § 104.

The Copyright Act defines a "United States work" differently depending on whether the alleged work is a published work or an unpublished work.  *See* 17 U.S.C. § 101.  A published "United States work" is defined as a work that is first published –

(A) in the United States;

(B) simultaneously in the United States and another treaty party . . .

(C) simultaneously in the United States and a foreign nation that is not a treaty party; or

(D) in a foreign nation that is not a treaty party, and all of the authors of the work are nationals, domiciliaries, or habitual residents of, or in the case of audiovisual work legal entities with headquarters in, the United States."  *Id.*  An unpublished "United States work" is defined as a work in which "all the authors of the work are nationals, domiciliaries, or habitual residents of the United States, or, in the case of an unpublished audiovisual work, all the authors are legal entities with headquarters in the United States."  *Id.*  A plaintiff must "adequately allege that its works are not United States works in order to be exempt" from the registration requirement.  *UAB "Planner 5D" v. Facebook, Inc.*, No. 19-cv-03132-WHO, 2019 WL 6219223, at *6 (N.D. Cal. Nov. 21, 2019). The "*omission* of allegations indicating that the work is a United States work" is insufficient.  *Id.* (quoting *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 555 (S.D.N.Y. 2018) (emphasis in original)).

Here, neither party disputes that Meishe's copyrighted works are "foreign works."  The statute does not define "foreign works."  Defendants contend that Meishe has not adequately alleged that its copyrighted works are not "United States works" subject to the § 411 publication requirement.  The Court agrees.  Accordingly, the copyright infringement claims are also dismissed with leave to amend to allege facts indicating that the works are not "United States works" within the meaning of 17 U.S.C. § 101.

## II.     Misappropriation of Trade Secret Claims (Counts II and III)

Defendants argue that Meishe's DTSA and TUTSA trade secret claims should be dismissed because Meishe has failed to give sufficient notice to defendants of what its trade secrets are.  Dkt. No. 409 at 12.  Defendants also contend that Meishe's DTSA claim should be dismissed because the DTSA does not apply extraterritorially, and all the alleged improper acts pled occurred in China.  *Id.*

### A.     Whether Meishe Provided Sufficient Notice of Its Alleged Trade Secrets

"To succeed on a claim for misappropriation of trade secrets under the DTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff."  *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020).  Plaintiffs "must identify the trade secrets and carry the burden of showing they exist."  *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993).  To allege the existence of a trade secret, the plaintiff must demonstrate that (1) the information is not "readily ascertainable through proper means," (2) it "derives independent economic value," and (3) the plaintiff took "reasonable measures to keep such information secret." *See* 18 U.S.C. § 1839(3). "A plaintiff need not spell out the details of the trade secret."  *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, *5 (N.D. Cal. May 13, 2015).  However, "[t]he plaintiff should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade."  *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998) (internal quotation marks and citations and emphasis omitted).

Meishe alleges that it is the "owner of trade secrets that include, but are not limited to proprietary, independently-developed software code that allows for video and audio editing, video and audio processing, video and audio release, personalized audio and video recommendations, webcasting, and other confidential business information."  TAC ¶¶ 87, 119.  Meishe further alleges that defendants "obtained other trade secret information from Meishe" provided by Mr. Xie "including but not limited [to] information about which portions of Meishe's software were most

1    likely to be popular if incorporated into video editing features in smart phone applications." *Id.*

2    ¶ 103.  Meishe alleges that its source code is valuable and that defendants wrongfully acquired

3    plaintiff's "commercial trade secrets in the form of software code." *See id.* ¶¶ 122-23, 131.  Meishe

4    alleges that its "copyrighted source code has never been made publicly available" and that its

5    "copyrighted software was only published, distributed, sold, or offer[ed] for sale as compiled object

6    code." *Id.* ¶ 89.  Meishe further alleges that it has taken "reasonable and extensive efforts to maintain

7    the secrecy of its source code through the use of employment agreements" and that its "trade secrets

8    are stored on secure servers and are password-protected." *Id.*  Defendants contend that Meishe has

9    failed to allege its trade secrets with sufficient particularity, arguing that Meishe's allegations are

10   "devoid of specificity" and provide no clarify "as to what the alleged secret information is and how

11   it differs from information that is publicly known."  Dkt. No. 409 at 12-13.

12           To the extent the trade secrets are software code (which the Court understands to be the same

13   thing as source code) designed for the specified purposes, the Court finds these allegations

14   sufficiently particular.  *See Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1050, 1052 (N.D. Cal.

15   2020) (finding that the plaintiff described the trade secret information with sufficient particularity

16   where the plaintiff alleged categories of misappropriated information, including source code, and

17   referenced the categories' subject matter); *cf Creative Writer Software, LLC v. Schechter*, No. 23-

18   cv-2471-MWF, 2023 WL 6786796, *3 (C.D. Cal. Sept. 5, 2023) (concluding the plaintiff failed to

19   identify the purported trade secret with sufficient particularity because it was unclear whether the

20   plaintiff's "proprietary information" referred to the "underlying source code, the functionality of the

21   code, the design of the platform, the exact combination of various features . . . all of the above, or

22   something else entirely").  However, the Court finds it unclear whether the trade secrets include

23   anything other than the software (ie. source) code designed for the specified purposes, specifically

24   what "other confidential business information" refers to and what "other trade secret information"

25   Mr. Xie allegedly provided to defendants.  *See* TAC ¶¶ 87, 103.  Thus, the Court dismisses the

26   trademark infringement claims in part with leave to amend to clarify whether the alleged trade

27   secrets include anything other than "proprietary, independently-developed software code that allows

28   for video and audio editing, video and audio processing, video and audio release, personalized audio

18

and video recommendations, webcasting" and "information about which portions of Meishe's software were most likely to be popular if incorporated into video editing features in smart phone applications." *See id.*

**B.**     **Whether the DTSA Claim Should Be Dismissed Because of the Location of the Actionable Conduct**

Defendants next argue that "the federal trade secret DTSA claim should also be dismissed because the TAC does not allege that any actionable facts occurred in the United States." Dkt. No. 409 at 14. Meishe responds that it "did not allege that the DTSA offenses—improper acquisition, unauthorized disclosure, and unauthorized use of the trade secrets . . .—occurred outside of the United States" and that defendants' argument is an affirmative defense. Dkt. No. 414 at 16.

The DTSA "applies to conduct occurring outside the United States if —(1) the offender is a natural person who is a citizen or permanent resident alien of the United States, or an organization organized under the laws of the United States or a State or political subdivision thereof; or (2) an act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837.

Meishe pled that defendant TikTok Inc. is a California corporation and that defendant ByteDance Inc. is a Delaware corporation. TAC ¶¶ 11, 14. However, with respect to the defendants who are not "organized under the laws of the United States," Meishe does not include allegations indicating that "acts in furtherance of the offense" were committed in the United States. Meishe only alleges with respect to jurisdiction that "Defendants have committed, aided, induced, and/or participated in the commission of the tortious act of copyright infringement and other acts alleged in other claims in this Complaint that led to foreseeable harm to Meishe in [the Western District of Texas]." *Id.* ¶ 44. The DTSA claim as to the non-US incorporated defendants is thus dismissed with leave to amend to indicate what "acts in furtherance of the offense" were committed in the United States.

**III.     Lanham Act Claim (Count V)**

"Section 43(a) of the Lanham Act . . . forbids the use of false designations of origin and false

descriptions or representations in the advertising and sale of goods and services." *Smith v. Montoro*, 648 F.2d 602, 603 (9th Cir. 1981). To establish a false designation of origin claim under § 43(a)(1)(A), the plaintiff must show that the defendant "(1) use[s] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *See Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007). A claim for false advertising under § 43(a)(1)(B) requires a plaintiff to show that "(1) a statement made in a commercial advertisement or promotion is false or misleading; (2) that it actually deceives or has the tendency to deceive a substantial segment of its audience; (3) that it's likely to influence purchasing decisions and (4) that the plaintiff has been or is likely to be injured by the false advertisement." *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 828 (9th Cir. 2011).[13] Meishe alleges Lanham Act violations under both subsections of the statute.

Defendants contend that Meishe does not allege that defendants rebranded Meishe's software as their own, but rather that they misrepresented the intellectual property of the TikTok app as their own. Dkt. No. 404 at 10. Defendants argue that Meishe's "false advertising" allegation "simply states that by copying the code, Defendants have *ipso facto* claimed ownership over the

---

[13] Section (a)(1) of the statute, at issue here, specifically provides that:

> Any person who, on or in connection with any goods or services . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. 1125(a)(1).

1    code," and that mere allegations of misrepresentation cannot support a Lanham Act claim as a matter

2    of law.  Dkt. No. 409 at 10-11.

3         Meishe alleges that defendants "made false and misleading descriptions and representations

4    of fact, which were intended, likely, and did in fact mislead, cause confusion, cause mistake, and

5    deceive as to their ownership of the software of its application to its consumers."  TAC ¶ 157.

6    Meishe alleges that "TikTok informs users that it owns and has proper rights to the code it uses in

7    its applications" and provides examples of statements made by defendants.  *Id.* ¶¶ 158-59.

8    According to Meishe, defendants "have represented that they value intellectual property and would

9    not infringe others' intellectual property, but have done so as described in this Complaint" and

10   defendants "willfully continued to represent the software as their own, not credited Meishe with

11   being the owners or author of portions of Defendants' products or code, and not stopped distributing

12   infringing and misappropriated code."  *Id.* ¶ 161.  Meishe further alleges that defendants knowingly

13   provided and/or distributed false CMI and/or removed or altered Meishe's CMI from the software

14   it copied and distributed.  *Id.* ¶ 160.

15        Defendants assert that the "Lanham Act does not address the uncredited *copying* of a work,

16   and cannot be used as a surrogate to a copyright infringement claim."  Dkt. No. 404 at 11.  They

17   cite *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) in support.  *Dastar*

18   addressed the question of whether § 43(a) of the Lanham Act "prevents the unaccredited copying of

19   a work."  *Id.* at 25.  The "gravamen of respondents' claim" was that in marketing and selling a video

20   set entitled World War II Campaigns as its own product "without acknowledging its nearly

21   wholesale reliance on the Crusade television series," the defendant made a "false designation of

22   origin, false or misleading description of fact, or false or misleading representation of fact, which .

23   . . is likely to cause confusion . . . as to the origin . . . of his or her goods."  *Id.* at 31 (citing Lanham

24   Act § 43(a)).  The Court reasoned that this claim "would undoubtedly be sustained" if the defendant

25   had bought some of the plaintiff's videotapes and "merely repackaged them as its own."  *Id.*

26   However, the defendant's alleged wrongdoing was "vastly different: It took a creative work in the

27   public domain—the Crusade television series—copied it, made modifications (arguably minor), and

28   produced its very own series of videotapes."  *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The Court then went on to decide what section (a)(1)(A) of the Lanham Act means by the

2    "origin" of goods, specifically whether it is appropriate to adopt a special definition or "origin"

3    under the Lanham Act for communicative products and whether § 43(a) of the Lanham Act could

4    be read as creating a cause of action "for the use of otherwise unprotected works and inventions

5    without attribution." *Id.* at 31, 33, 36.  The Court concluded that: "reading the phrase 'origin of

6    goods' in the Lanham Act in accordance with the Act's common-law foundations (which were not

7    designed to protect originality or creativity), and in light of the copyright and patent laws (which

8    were ), we conclude that the phrase refers to the producer of the tangible goods that are offered for

9    sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at

10   37.  Because the plaintiff was the "origin" of the products it sold as its own, the defendants could

11   not prevail on their Lanham Act claim.  *Id.* at 38.  The Court was concerned that recognizing in

12   § 43(a) "a cause of action for misrepresentation of authorship of noncopyrighted works" would

13   cause the Lanham Act to conflict with copyright law and that reading "origin" in § 43(a) "to require

14   attribution of uncopyrighted materials would pose serious practical problems."  *Id.* at 33-35.

15   "Assuming for the sake of argument that Dastar's representation of itself as the 'Producer' of its

16   videos amounted to a representation that it originated the creative work conveyed by the videos,

17   allowing a cause of action under § 43(a) for that representation would create a species of mutant

18   copyright law that limits the public's 'federal right to copy and to use' expired copyrights." *Id.* at

19   34 (citation omitted).

20        Plaintiff contended at oral argument that *Dastar* focused on claims under subsection (A) of

21   § 43(a)(1), but that plaintiff also alleges Lanham Act false advertising violations under subsection

22   (B).  The Court agrees that *Dastar* focused on the "confusion . . . as to origin" provision of

23   § 43(a)(1)(A).  "If . . . the producer of a video that substantially copied the Crusade series were, in

24   advertising or promotion, to give purchasers the impression that the video was quite different from

25   that series, then one or more of the respondents might have a cause of action—not for reverse passing

26   off under the 'confusion . . . as to the origin' provision of § 43(a)(1)(A), but for misrepresentation

27   under the 'misrepresents the nature, characteristics [or] qualities' provision of § 43(a)(1)(B).  For

28   merely saying it is the producer of the video, however, no Lanham Act liability attaches to *Dastar*."

*Id.* at 38.

The Ninth Circuit recently interpreted *Dastar* in *OTR Wheel Engineering, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008 (9th Cir. 2018). There, the primary issue before the court was "whether [the defendant] can be found liable for reverse passing off under the Lanham Act." *Id.* at 1012. The court held that pursuant to *Dastar*, "a claim for reverse passing off cannot be brought to prevent the copying of intellectual property" because "[c]opying is dealt with through the copyright and patent laws, not through trademark law." *Id.* at 1012, 1015. "Reverse passing off" occurs when the "producer misrepresents someone else's goods or services as his own." *Dastar*, 539 U.S. at 27 n.1. Because the defendant did not simply copy the plaintiff's intellectual property, but rather passed of genuine products of the plaintiff as his own, the court found the defendant could be liable for reverse passing off under the Lanham Act. *Id.* at 1012-13. The court assessed whether the defendant's conduct amounted to mere copying and concluded that instead of simply copying the plaintiff's design, the defendant used tires from an anticipated order of plaintiff's tires and passed those tires off as his own. *Id.* at 1014-15. The court further indicated that it did not need to determine "whether use of the OTR mold would create a mere copy or a genuine OTR product" because "[t]here was evidence that [the defendant] did pass of actual OTR tires." *Id.* at 1017.

Defendants also point to *Media.net Adver. FZ-LLC*, 198 F. Supp. 3d at 1087. This case did not involve a Lanham Act claim. However, in holding that the California Unfair Competition Law ("UCL") claim was preempted by the U.S. Copyright Act, the court compared the UCL claim to reverse passing-off claims. *See id.* at 1087-88. The court reasoned that "a reverse passing-off claim is, in essence, a misrepresentation claim which is, in effect, what Plaintiff is also alleging in the instant case—i.e., that Defendant failed to disclose to potential customers that it had used Plaintiff's code in its own product, marketing the product as its own." *Id.* at 1087. The court went on to say that "[a] number of courts have held that a reverse passing-off claim is not qualitatively different from a copyright claim and is preempted because [c]laims alleging misrepresentations of the ownership or origin of an idea do not differ from the 'inherent misrepresentations that accompany unauthorized copying and reproduction of another's copyrighted work." *Id.* at 1087 (internal quotation marks and citations omitted). The court concluded that "even if some inference could be

23

made that there was a misrepresentation *not* based on reverse passing-off, Plaintiff has failed to include sufficiently specific allegations to make it plausible that Defendant made any such broader misrepresentation." *Id.* at 1088.

Luxul Technology Inc. v. Nectarlux, LLC, 78 F. Supp. 3d 1156 (N.D. Cal. 2015) and *Talavera v. Global Payments, Inc.*, 670 F. Supp. 3d 1074 (S.D. Cal. 2023), raised for the first time at the April 5, 2024 hearing, provide further guidance. *Luxul Technology* found the defendants' reliance on *Dastar* misplaced with respect to a false designation of origin claim. *Id.* at 1172. Unlike in *Dastar*, "where the defendant independently created a tangible good to sell and was therefore the 'origin' of the 'good' being sold," here the "gravamen" of the plaintiff's claim was that the defendants' marketing materials falsely designated the defendants as the source of LED tube lamps by replacing "Luxul" with "Nectar." *Id.* at 1172. The good at issue was an LED tube lamp pictured in marketing materials, not the marketing materials themselves, and the defendants did not and could not contend they were the "origin" of the LED tube lamps. *Id.* The court noted that "in this circuit, a reverse passing off claim requires the alteration of a product and a subsequent sale." *Id.* at 1171. With respect to plaintiff's false advertising claim, the court noted that in the FAC the plaintiff alleged that the defendant falsely claimed that the "Nectar product is UL certified with the intent to induce prospective customers of Luxul to purchase Defendant's product in lieu of Luxul's product" but the remainder of the plaintiff's allegations were "bare recitations of the elements of a false advertising claim." *Id.* at 1172.

*Talavera* involved a false designation of origin claim at the summary judgment stage. The court found the defendants' actions analogous to those of Dastar because the evidence demonstrated that the defendants "copied Plaintiffs' SunShop software code into a new file, removed 'the portions of [Plaintiffs'] code that deal with license key checks and sections of the code that reference call home functionality,' and then offered that product to potential clients." *Id.* at 1106. The court found that these actions amounted to copying and that their reverse passing of claim must fail because the plaintiffs failed to present any evidence that the defendants passed off the plaintiffs' tangible goods as defendants' own. *Id.* at 1107.

Based on this authority, the Court concludes that Meishe's false designation of origin claim

is not cognizable under § 43(a)(1)(A) of the Lanham Act because Meishe alleges a reverse passing off claim—that defendants incorporated its source code into their TikTok app (ie. copied the source code) and passed the TikTok app off as developed from their own source code.  The Court also finds that Meishe has insufficiently alleged a false advertising claim under § 43(a)(1)(B).  Meishe points to statements defendants made in their copyright notice at tiktok.com, in the ByteDance Code of Conduct, in TikTok's Intellectual Property Policy, and in TikTok's terms of service.  *See* TAC ¶¶ 158-59.  However, it is not clear that any of these statements were made on the context of "commercial advertising or promotion." *See* 15 U.S.C. 1125(a)(1)(B).  Plaintiff has also not alleged how these statements are likely to influence purchasing decisions by consumers.  *See TrafficSchool.com*, 653 F.3d at 828.  However, it is possible that Meishe could amend its complaint to add sufficient factual allegations, so the Court grants plaintiff leave to amend its § 43(a)(1)(B) false advertising claim.[14]

---

[14] In their reply, defendants also point to *Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs.*, LLC, 845 F.3d 1246 (9th Cir. 2017).  This case involved the §43(a)(1)(A) requirement that a plaintiff establish a likelihood of consumer confusion.  There, the plaintiff, a producer of karaoke tracks, claimed that the defendants, who operated a karaoke business, violated the Lanham Act by "media-shifting" plaintiff's soundtracks from physical CDs to digital files and performing them without authorization.  *Id.* at 1248.  The plaintiff's theory was that because the media-shifted files displayed the plaintiff's trademarks and trade dress when performed, consumers would believe that the tracks originated with the plaintiff, rather than with the defendants.  *Id.* at 1249.  The plaintiff framed the dispute as concerning a new tangible good—the new digital files that the defendants allegedly created from the plaintiff's CDs.  *Id.* at 1250.  The court disagreed, reasoning that the plaintiff's theory did not involve consumer confusion about the source of an appropriate "good" under the Lanham Act but rather over the source of content.  *Id.* at 1249. Although the defendants may, in some sense, have created a new good by copying plaintiff's CDs to hard drives, it was not a relevant good under the Lanham Act because "the good whose origin is material for purposes of a trademark infringement claim is the tangible product sold in the marketplace rather than the creative content of that product."  *Id.* at 1250 (internal quotation marks and citations omitted).  If there was any confusion, it did not concern the source of the goods because consumers "never see the digital files and Defendants neither sell them nor make representations about their source medium."  *Id.*  Instead, the defendants made allegedly unauthorized use of the content of the plaintiff's karaoke tracks, which the court held was precluded under *Dastar*.  *Id.*  Defendants analogize *Slep-Tone* to the present case contending that here, the relevant good is the TikTok app and consumers cannot view the source good, so there can be no consumer confusion about its origin. Dkt. No. 416 at 9.  The Court finds this argument relevant to the § 43(a)(1)(A) false designation of origin claim only, which the Court has already determined is not cognizable under *Dastar*.  The Court thus need not reach the issue of whether *Slep-Tone* requires dismissal of the § 43(a)(1)(A) claim as a matter of law.

1

2                                    **CONCLUSION**

3          For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART

4  defendants' motion to dismiss the copyright infringement claim, misappropriation of trade secrets

5  claims, and Lanham Act claim, with leave to amend except as to the § 43(a)(1)(A) Lanham Act

6  claim.

7          The copyright infringement claim is dismissed with leave to amend on the following

8  grounds. The complaint lacks sufficient information about what *unregistered* copyrighted works

9  were allegedly infringed.  The complaint fails to plead access to copyrighted works completed after

10 Mr. Xie left Meishe, but the access allegations as to the works completed while Mr. Xie was with

11 Meishe are sufficient.  Lastly, for all copyrighted works, the complaint fails to adequately allege

12 that the works are not "United States works" within the meaning of 17 U.S.C. § 101.

13         The violation of 17 U.S.C. § 1202 claim is dismissed with leave to amend because it is

14 conclusory.

15         The motion to dismiss is denied as to the contributory and induced infringement claim.

16         The misappropriation of trade secret claims are dismissed with leave to amend to the extent

17 they allege trade secrets beyond "proprietary, independently-developed software code that allows

18 for video and audio editing, video and audio processing, video and audio release, personalized audio

19 and video recommendations, webcasting" and "information about which portions of Meishe's

20 software were most likely to be popular if incorporated into video editing features in smart phone

21 applications."  Additionally, the DTSA claim is dismissed with leave to amend as to the non-United

22 States incorporated defendants because Meishe has inadequately alleged "acts in furtherance of the

23 offense" committed in the United States.

24

25

26

27

28  ///

26

The Lanham Act § 43(a)(1)(A) claim is dismissed without leave to amend because the Court finds it not cognizable under the above-referenced case law.  The Lanham Act § 43(a)(1)(B) claim is dismissed with leave to amend.

        **IT IS SO ORDERED**.

Dated: April 23, 2024

SUSAN ILLSTON
United States District Judge