[redacted]

WHITE & CASE LLP
Yar R. Chaikovsky (175421)
yar.chaikovsky@whitecase.com
Philip Ou (259896)
philip.ou@whitecase.com
David T. Okano (278485)
david.okano@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Additional counsel listed on signature page

*Attorneys for TikTok Inc., TikTok Pte. Ltd., ByteDance Ltd. and ByteDance Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

BEIJING MEISHE NETWORK TECHNOLOGY CO., LTD.,

Plaintiff,

v.

TIKTOK INC., TIKTOK PTE. LTD., BYTEDANCE LTD. and BYTEDANCE INC.,

Defendants.

Case No. 3:23-cv-6012-SI

**DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO IDENTIFY ITS TRADE SECRETS AND STAY DISCOVERY IN THE INTERIM**

Date: Friday, July 12, 2024
Time: 10 AM PT
Courtroom: Courtroom 1
Judge: Hon. Susan Illston

# TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

III. LEGAL STANDARDS ........ 4

- A. Rule 26 of the Federal Rules of Civil Procedure ........ 4
- B. California Code of Civil Procedure § 2019.210 ........ 5

IV. ARGUMENT ........ 5

- A. Section 2019.210 Applies to Meishe's Trade Secret Misappropriation Claims Independent of Meishe's Separate Burden to Avoid Dismissal on the Pleadings. ........ 6
  - 1. Section 2019.210 applies to non-CUTSA claims. ........ 6
  - 2. The Court's prior Rule 12(b)(6) ruling does not mean that Meishe has met its separate and more stringent § 2019.210 burden. ........ 7
- B. Meishe Fails to Identify its Purported Trade Secrets with Reasonable Particularity in its Pleadings. ........ 8
- C. Meishe Fails to Identify its Purported Trade Secrets with Reasonable Particularity in its Interrogatory Responses. ........ 9
  - 1. Meishe's descriptions are vague. ........ 11
  - 2. Meishe's descriptions are overbroad. ........ 12
  - 3. Meishe's descriptions omit key identification information that it can and should provide. ........ 13
  - 4. Meishe's recent supplementation does not cure the deficiencies in its descriptions. ........ 14
- D. This Court Should Stay Discovery Until Meishe Identifies Its Asserted Trade Secrets with Specificity. ........ 19

V. CONCLUSION ........ 21

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Albert's Organics, Inc. v. Holzman*,
No. 19-cv-7477-PJH, 2020 WL 4368205 (N.D. Cal. July 30, 2020) ....................................7, 8

*Alphonso Inc. v. Tremor Video, Inc.*,
No. 22-cv-3629-NC, 2022 WL 17968081 (N.D. Cal. Oct. 31, 2022)..................................7, 19

*Alta Devices, Inc. v. LG Elecs., Inc.*,
No. 18-cv-404-LHK, 2019 WL 176261 (N.D. Cal Jan. 10, 2019) ............................................6

*Comput. Econs., Inc. v. Gartner Grp., Inc.*,
50 F. Supp. 2d 980 (S.D. Cal. 1999)..........................................................................5, 20

*Controltec Inc. v. MCT Tech., Inc.*,
No. 10-cv-1869-DOC, 2011 WL 13227734 (C.D. Cal. June 3, 2011) ......................................7

*Dairy, LLC v. Milk Moovement, Inc.*,
No. 21-cv-2233-WBS, 2022 WL 3578582 (E.D. Cal. Aug. 19, 2022)..............................5, 7, 8

*France Telecom, S.A. v. Marvell Semiconductor, Inc.*,
No. 12-cv-4967-WHA, 2013 WL 12145894 (N.D. Cal. Sept. 6, 2013) ....................................4

*Gatan, Inc. v. Nion Co.*,
No. 15-cv-01862, 2018 WL 2117379 (N.D. Cal. May 8, 2018)................................7, 8, 14, 21

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir. 1998)..........................................................................................9

*Integral Dev. Corp. v. Tolat*,
675 F. App'x 700 (9th Cir. 2017) ........................................................................... passim

*InteliClear, LLC v. ETC Global Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020)................................................................................ passim

*Jobscience, Inc. v. CVPartners, Inc.*,
No. 13-cv-4519-WHA, 2014 WL 1724763 (N.D. Cal. May 1, 2014).............................3, 5, 20

*Lilith Games (Shanghai) Co. v. uCool, Inc.*,
No. 15-cv-1267-SC, 2015 WL 4149066 (N.D. Cal. July 9, 2015) ..........................................20

*Loop AI Labs Inc. v. Gatti*,
No. 15-cv-798-HSG, 2015 WL 9269758 (N.D. Cal. Dec. 21, 2015) .............................. passim

*M/A-Com Tech. Sols., Inc. v. Litrinium, Inc.*,
No. 19-cv-220-JVS, 2019 WL 4284523 (C.D. Cal. June 11, 2019) ................................ passim

*Monolithic Power Sys., Inc. v. Dong*,
No. 20-cv-6752-JSW, 2021 WL 3847961 (N.D. Cal. Aug. 27, 2021) ....................6, 7

*Neothermia Corp. v. Rubicor Med., Inc.*,
345 F. Supp. 2d 1042 (N.D. Cal. 2004) ....................6, 7

*Poynt Corp. v. Innowi, Inc.*,
No. 18-cv-5814-BLF, 2019 WL 935499 (N.D. Cal. Feb. 26, 2019)....................7

*Quintara Bioscis., Inc. v. Ruifeng Biztech Inc.*,
No. 20-cv-4808-WHA, 2021 WL 965349 (N.D. Cal. Mar. 13, 2021)....................6, 7

*Social Apps, LLC v. Zynga, Inc.*,
No. 11-cv-491-YGR, 2012 WL 2203063 (N.D. Cal. June 14, 2012) ....................7, 10, 14, 18

*Teradata Corp. v. SAP SE*,
No. 18-cv-3670-WHO, 2018 WL 6528009 (N.D. Cal. Dec. 12, 2018)....................11, 20

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
147 F. Supp. 3d 1147 (D. Or. Nov. 30, 2015)....................11, 19

*Weride Corp. v. Huang*,
379 F. Supp. 3d 834 (N.D. Cal. 2019) ....................6

*Yeiser Res. & Dev., LLC v. Teknor Apex Co.*,
No. 17-cv-1290-BAS, 2019 WL 2177658 (S.D. Cal. May 20, 2019) ....................7, 19

**STATE STATUTES**

California Code of Civil Procedure § 2019.210.................... passim

**FEDERAL RULES**

FED. R. CIV. P. 26 .................... passim

FED. R. CIV. P. 12(b)(6).................... passim

FED. R. CIV. P. 12(e)....................3

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on Friday, July 12 at 10 AM, or as soon after as the matter may be heard, in Courtroom 1, 17th Floor, of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Defendants will bring this motion before the Honorable Susan Illston.

By this Motion, to the extent Plaintiff's claims are not dismissed pursuant to Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint (Dkt. 435-2), Defendants move the Court for an order compelling Plaintiff to identify its trade secrets with reasonable particularity and staying discovery in the interim pursuant to Rule 26 of the Federal Rules of Civil Procedure and California Code of Civil Procedure § 2019.210.

This Motion is based on the attached Memorandum of Points and Authorities, the pleadings and papers already filed in this action, and any other such matters of which the Court may take judicial notice or otherwise properly consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Beijing Meishe Network Tech. Co., Ltd. ("Meishe") alleges Defendants TikTok Inc., TikTok Pte. Ltd., ByteDance Ltd., and ByteDance Inc. ("Defendants") misappropriated Meishe's source-code-based trade secrets. But in the years that this lawsuit has been pending, Meishe has yet to identify with any reasonable particularity—in either its pleadings or discovery responses—what portion of its millions of lines of asserted code constitute those allegedly misappropriated trade secrets. Defendants have diligently pursued this basic information, and the court from which the case was transferred ordered Meishe to provide it. Meishe has yet to do so.

The relevant chronology of Meishe's failure to identify its trade secrets is as follows: Meishe filed this case in a Texas court asserting Texas trade secret misappropriation claims based on its allegation that "Defendants wrongfully acquired Plaintiff's commercial trade secrets … in the form of its source code." At the onset of discovery in Texas, Meishe maintained its vague trade secret misappropriation allegations while demanding access to all of Defendants' source code. The Texas court allowed Meishe to access Defendants' code. Meishe then reviewed Defendants' code

dozens of times over the course of a year to identify the allegedly misappropriated trade secrets. Despite four chances over three years to amend its Complaint or otherwise identify the trade secrets at issue, Meishe has still refused to provide the fundamental basis of its claims: a reasonably particular identification of its alleged trade secrets. Instead, in its Fourth Amended Complaint and an associated interrogatory response, Meishe continues to assert that its allegedly misappropriated trade secrets are to be found "somewhere" in the ***millions*** of lines of its source code, or to be gleaned from general categories of technical information and functional descriptions of its software.

As courts in this circuit have repeatedly recognized, Meishe must describe with particularity *where* in that universe of code its allegedly misappropriated trade secrets can be found. Without this information, Defendants cannot reasonably prepare a defense, and the Court cannot address the proper scope of discovery.

Meishe's repeated failure to provide any particularity in its trade secret identification has two ramifications. First, as explained in Defendants' pending Motion to Dismiss, this failure to identify the trade secrets should result in the dismissal of Meishe's trade secret claims. *See* Dkt. 435-2 at 17–20. Second, for the purposes of this motion, to the extent any claims survive dismissal, the Court should stay discovery until Meishe identifies its trade secrets with the requisite level of particularity pursuant to California Code of Civil Procedure § 2019.210.

## II. <u>FACTUAL BACKGROUND</u>

Meishe filed this lawsuit in the Western District of Texas more than three years ago, on May 18, 2021, alleging that Defendants copied Meishe's source code and asserting, *inter alia*, claims of trade secret misappropriation under Texas and federal law. *See* Dkts. 1, 6. Since then, Defendants have repeatedly sought from Meishe—through its pleadings and discovery responses—basic foundational information needed in any intellectual property case to prepare a defense and determine the scope of discovery: the identity of Meishe's trade secrets and what was allegedly misappropriated by Defendants.

Meishe's first iterations of its complaint failed to provide notice of the scope of its trade secrets, instead listing generic categories of information that it claimed qualified for trade secret protection. *See* Dkts. 1, ¶¶ 21, 55; 6, ¶ 87; 9, ¶ 88. In March 2022, Defendants moved pursuant to

Rule 12(b)(6) to dismiss Meishe's trade secret misappropriation claims for failure to state a claim. *See* Dkt. 27. The West Texas court never ruled on that motion. *See* Dkt. 67. Defendants also moved pursuant to Rule 12(e) for a more definite statement of Meishe's purported trade secrets. *See* Dkt. 113. The West Texas court denied that motion as moot after granting Meishe leave to amend its complaint for a third time. Nevertheless, as this Court here in California recently recognized in dismissing most of Meishe's claims (Dkt. 429), Meishe still had not adequately pleaded its claims in its Third Amended Complaint ("TAC").

In July 2022, following venue and jurisdictional motions, Defendants served discovery requests on Meishe, seeking the same basic information through interrogatories: (1) the specific source code comprising each asserted trade secret, and (2) the specific portions of Defendants' source code evidencing misappropriation. *See* Dkts. 98, 128, 184, 196, 244. Initially, Meishe claimed it could not respond to these requests because it did not have access to Defendants' source code. Meishe's response was inadequate and logically unsound—Meishe should not need access to *Defendants'* source code to identify its *own* trade secrets. The response was also legally improper, as many courts have found that a trade secret plaintiff cannot assert a broad generalization of the alleged secrets, and then undertake a "fishing expedition" into a Defendant's files to discover a match. *See*, *e.g.*, *Jobscience, Inc. v. CVPartners, Inc.*, No. 13-cv-4519-WHA, 2014 WL 1724763, at *2 (N.D. Cal. May 1, 2014).

Nevertheless, on September 14, 2022, the West Texas court declined to order Meishe to identify its trade secrets in further detail at that time, finding Meishe's categorical descriptions in its discovery responses "[redacted]" to require Defendants to make certain versions of their video editing source code available for inspection. Dkt. 151-3 (emphasis added); Dkt. 128. In January 2023, the West Texas court revisited the issue after Meishe had an opportunity to inspect Defendants' source code and ***ordered*** Meishe to identify "the specific portions of code—such as by module or subroutine name, but not by specific lines of code—that it contends … misappropriates its trade secrets." Dkt. 196. To date, Meishe has at most identified [redacted] that allegedly misappropriates its trade secrets. *See* Dkts. 182-2 at 1–2; 182-5. Yet Meishe continues to assert millions of lines of its own source code and

accuse millions of lines of Defendants' source code.

Because Meishe's failure to identify its trade secrets has hindered Defendants' ability to prepare a defense, following transfer, Defendants informed this Court of their intention to file two related motions. *See* Dkt. 399 at 8. ***First***, Defendants prepared the instant Motion to Stay Discovery until Meishe adequately identifies its alleged trade secrets. ***Second***, Defendants prepared a Renewed Motion to Dismiss Meishe's TAC pursuant to Rule 12(b)(6), seeking, *inter alia*, dismissal of Meishe's trade secret misappropriation claims for failure to plead the existence of a trade secret under Ninth Circuit case law.

The Court requested that Defendants file the motion to dismiss the TAC and to wait to file the instant motion until the Court ruled on the motion to dismiss. On April 23, 2024, the Court granted Defendants' motion to dismiss, dismissing nearly all of Meishe's claims in its TAC with limited leave to amend. Meishe has since filed a Fourth Amended Complaint (Dkt. 431-3) (the "FAC"). Because the FAC fails to cure the previous deficiencies—including Meishe's inadequate descriptions of its trade secrets—Defendants recently filed a motion to dismiss the FAC (Dkt. 435-2).[1] Consistent with the Court's prior instructions, Defendants also waited to file the instant motion.

With full knowledge that Defendants intended to file this Motion to Stay Discovery, Meishe has raised a litany of discovery disputes with the Special Master. In response, on May 28, 2024, the Special Master requested that Defendants file this Motion with the Court, regardless of the further narrowing that could result from the Court's disposition of the pending Motion to Dismiss.

## III. LEGAL STANDARDS

### A. Rule 26 of the Federal Rules of Civil Procedure

Under Rule 26, parties may "obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or defense." *France Telecom, S.A. v. Marvell Semiconductor, Inc.*, No. 12-cv-4967-WHA, 2013 WL 12145894, at *1 (N.D. Cal. Sept. 6, 2013). A party moving to compel discovery has the initial burden of establishing that its requests are relevant and proportional to the needs of the case. *See* FED. R. CIV. P. 26(b)(1). Courts may also enter protective orders

[1] In the Motion to Dismiss, Defendants also assert that Meishe's copyright infringement claim—which is based on the same asserted source code as its trade secret claims—should be dismissed in its entirety. Dkt. 435-2 at 7–13.

limiting the breadth or use of discovery. *See Dairy, LLC v. Milk Moovement, Inc.*, No. 21-cv-2233-WBS, 2022 WL 3578582, at *3 (E.D. Cal. Aug. 19, 2022). "District courts have broad discretion to determine whether a protective order is appropriate and, if so, what degree of protection is warranted." *Id.*

### B. California Code of Civil Procedure § 2019.210

"In any action alleging the misappropriation of a trade secret … ***before commencing discovery*** relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity[.]" CAL. CODE CIV. PROC. § 2019.210 (emphasis added). Like Rule 26, § 2019.210 "allows a court to enter appropriate orders" related to discovery, including orders staying discovery pending adequate identification of a plaintiff's trade secrets. *Id.*; *Loop AI Labs Inc. v. Gatti*, No. 15-cv-798-HSG, 2015 WL 9269758, at *4-5 (N.D. Cal. Dec. 21, 2015). Section 2019.210 "harmoniously coexists with various provisions of Rule 26 and enhances the court's ability to control discovery in trade secret cases." *Comput. Econs., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999).

## IV. ARGUMENT

"Experience has shown that it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify whatever happens to be there as having been trade secrets stolen from plaintiff." *Jobscience*, 2014 WL 1724763, at *2. But a "true trade secret plaintiff" should "be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery," *id.*, thereby "enabl[ing] defendants to form complete and well-reasoned defenses" and "assist[ing] the court in framing the appropriate scope of discovery[.]" *Loop*, 195 F. Supp. 3d 1107, 1112 (N.D. Cal. 2016). Thus, under § 2019.210 of the California Code of Civil Procedure, a threshold requirement for a plaintiff asserting a trade secret misappropriation claim is that it "identify [its] trade secrets with 'reasonable particularity' prior to commencing discovery." *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 658 n.1 (9th Cir. 2020). The requirement applies to pleadings and is independent from the "plausibility" standard of Rule 12(b)(6). *See M/A-Com Tech. Sols., Inc. v. Litrinium, Inc.*, No. 19-cv-220-JVS, 2019 WL 4284523, at *2 (C.D. Cal. June 11, 2019). It also extends beyond the pleadings to

discovery, ***which should be stayed*** until it is met. *See Loop*, 2015 WL 9269758, at *3.

This case is over three years old, and no court has determined whether Meishe has met its burden of identifying its purported trade secrets with sufficient particularity before discovery can properly commence. Here, neither Meishe's operative complaint nor its discovery responses contain adequate descriptions of its purported trade secrets. To the extent Meishe's trade secret misappropriation claims survive Defendants' pending Motion to Dismiss, Meishe should be compelled to sufficiently identify its purported trade secrets, and discovery should be stayed until it does so.

**A. Section 2019.210 Applies to Meishe's Trade Secret Misappropriation Claims Independent of Meishe's Separate Burden to Avoid Dismissal on the Pleadings.**

As set forth below in more detail, any assertion by Meishe that it has no § 2019.210 burden because it continues to assert non-California trade secret misappropriation claims[2] is mistaken—§ 2019.210 applies to Meishe's claims. Likewise, any reliance by Meishe on the Court's limited Rule 12(b)(6) ruling to relieve it of its § 2019.210 burden is misplaced—§ 2019.210 applies separate from, and is more stringent than, the Rule 12(b)(6) standard for stating a claim. Meishe must identify its trade secrets with particularity before discovery is allowed to proceed.

**1. Section 2019.210 applies to non-CUTSA claims.**

"On its face, [§ 2019.210] is not limited to misappropriation claims pursuant to the [C]UTSA." *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1043 (N.D. Cal. 2004); *see Monolithic Power Sys., Inc. v. Dong*, No. 20-cv-6752-JSW, 2021 WL 3847961, at *1 (N.D. Cal. Aug. 27, 2021) ("[T]he court orders [plaintiff] to comply with § 2019.210" because "the crux of the claims is the same: trade-secret misappropriation."). Courts in this district and others have thus routinely applied § 2019.210 to plaintiffs asserting DTSA claims in federal court (as here). *See, e.g.*, *Quintara Bioscis., Inc. v. Ruifeng Biztech Inc.*, No. 20-cv-4808-WHA, 2021 WL 965349, at *1 (N.D. Cal. Mar. 13, 2021).[3] Courts have also applied § 2019.210 to plaintiffs asserting claims

[2] As discussed in Defendants' pending Motion to Dismiss (Dkt. 435-2), Meishe's continued reliance on the Texas trade secret statute—despite the fact that this case has nothing to do with Texas (as the Fifth Circuit found)—is improper.

[3] *See also Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18-cv-404-LHK, 2019 WL 176261, at *1–2 (N.D. Cal Jan. 10, 2019) (applying § 2019.210 to DTSA claims); *Weride Corp. v. Huang*, 379 F.

pursuant to trade secret laws of other states (as here). *See, e.g.*, *Yeiser Res. & Dev., LLC v. Teknor Apex Co.*, No. 17-cv-1290-BAS, 2019 WL 2177658, at *4–5 (S.D. Cal. May 20, 2019) (in case involving DTSA and Delaware UTSA claims, noting that reliance on § 2019.210 "may be particularly appropriate in cases in which a plaintiff raises both federal DTSA claims and state law trade secrets claims").[4] Section 2019.210 applies to Meishe's claims.[5]

**2. The Court's prior Rule 12(b)(6) ruling does not mean that Meishe has met its separate and more stringent § 2019.210 burden.**

The Court previously held that one limited paragraph of Meishe's TAC containing categorical descriptions of Meishe's purported trade secrets, was sufficient to avoid dismissal under Rule 12(b)(6). *See* Dkt. 429 at 18–19 (quoting Dkt. 235 ¶ 87). This paragraph is recycled in ¶ 149 of the FAC. The Court otherwise found Meishe's trade secret descriptions insufficient and dismissed them. *Id.*

But the Court's approval of ¶ 149 for Rule 12(b)(6) purposes is irrelevant to the instant inquiry. Meishe's § 2019.210 burden of "identif[ying] [its] trade secrets with 'reasonable particularity' prior to commencing discovery," *InteliClear*, 978 F.3d at 658 n.1., is more stringent than its burden under Rule 12(b)(6). *See Litrinium*, 2019 WL 4284523, at *2; *Gatan, Inc. v. Nion Co.*, 2018 WL 2117379, at *2–4 (N.D. Cal. May 8, 2018); *see also Albert's Organics, Inc. v. Holzman*, No. 19-cv-7477-PJH, 2020 WL 4368205, at *3–4 (N.D. Cal. July 30, 2020); *Dairy*, 2022 WL 3578582, at *5; *Controltec Inc. v. MCT Tech., Inc.*, No. 10-cv-1869-DOC, 2011 WL 13227734, at *4 (C.D. Cal. June 3, 2011) ("Though the complaint does not identify those

---

Supp. 3d 834, 845-46 (N.D. Cal. 2019) (same); *Poynt Corp. v. Innowi, Inc.*, No. 18-cv-5814-BLF, 2019 WL 935499, at *3 (N.D. Cal. Feb. 26, 2019) (same); *Alphonso Inc. v. Tremor Video, Inc.*, No. 22-cv-3629-NC, 2022 WL 17968081, at *1–2 (N.D. Cal. Oct. 31, 2022) (same); *Social Apps, LLC v. Zynga, Inc.*, No. 11-cv-491-YGR, 2012 WL 2203063, at *2 (N.D. Cal. June 14, 2012) (same).

[4] Courts in this district have even applied § 2019.210 to *non-trade-secret* claims. *See, e.g.*, *Neothermia*, 345 F. Supp. 2d at 1043 (applying § 2019.210 to claim for "breach of the nondisclosure agreement"); *Monolithic*, 2021 WL 3847961, at *1 (similar).

[5] Moreover, regardless of the statutory basis of a trade secret misappropriation claim, "[i]n exercising its broad discretion over discovery under Rule 26," the Court can still "look to state law trade secret discovery rules … to determine the proper course of discovery." *Yeiser*, 2019 WL 2177658, at *5; *Quintara*, 2021 WL 965349, at *1 ("Though state procedure does not govern here, in the trade secret context, the undersigned judge has often borrowed the tried and true … § 2019.210 under the district court's … case-management authority.").

features with particularity, that is a burden that befalls a trade secret plaintiff 'prior to commencing discovery.'"). Thus, "[a] finding that [its] allegations are sufficient to survive a motion to dismiss does not mean the trade secret allegations are sufficient under Section 2019.210." *Litrinium*, 2019 WL 4284523, at *3.

Put simply, "[i]n denying defendants' motion to dismiss, the [C]ourt was required to determine whether the TAC stated a trade secret claim—***not*** whether the TAC's trade secret allegations satisfied § 2019.210." *Gatan*, 2018 WL 2117379, at *2 (emphasis added); *Dairy*, 2022 WL 3578582, at *4 (collecting cases recognizing that "[w]hether trade secrets are particularized enough to survive a motion to dismiss and whether they are particularized enough for discovery to commence are two separate questions."). Courts in this district have rejected trade secret descriptions under § 2019.210 as insufficient to justify discovery even after finding them sufficient to state a claim. *See, e.g.*, *Gatan*, 2018 WL 2117379, at *2–4; *Holzman*, 2020 WL 4368205, at *3–4. As discussed *infra* Parts B & C, the Court should do the same here.

**B. Meishe Fails to Identify its Purported Trade Secrets with Reasonable Particularity in its Pleadings.**

As discussed in Defendants' pending Motion to Dismiss, aside from the single sentence of generic categories in ¶ 149 of the FAC, Meishe's descriptions of its trade secrets in its pleadings are deficient even for Rule 12(b)(6) purposes. *See* Dkt. 435-2. Even if the Court disagrees, Meishe's allegations certainly do not describe its trade secrets with sufficient particularity to satisfy § 2019.210. Most of the pertinent trade secret allegations in the FAC are now just copied from Meishe's discovery responses, which, as explained *infra* Part C, are deficient. The only trade secret descriptions unique to the FAC are contained in two sentences, both of which are also deficient under § 2019.210.

***First***, Meishe's ¶ 149 (the only allegation to survive Defendants' previous Motion to Dismiss the TAC) is plagued with vagueness and catchall language that this Court already rejected:

> [Plaintiff is] … the owner of trade secrets that ***include, but are not limited to*** proprietary, independently-developed software code that allows for video and audio editing, video and audio processing, video and audio release personalize audio and video recommendations, webcasting and ***other confidential business information***.

FAC ¶ 149 (emphasis added); *cf.* Dkt. 429 at 18 (dismissing Meishe's trade secret claims in part, finding "it unclear … what '***other confidential business information***' refers to" (emphasis added); *Litrinium*, 2019 WL 4284523, at *4 (finding "the word 'including,' followed by a list of presumably some, but not all, aspects of the alleged trade secret" insufficient under § 2019.210); *Gatan*, 2019 WL 4284523, at *4 (noting the "use of catchall words such as 'including' weighs against a finding that the designation satisfies § 2019.210").

***Second***, Meishe also adds a new vague category of purported non-source-code trade secrets consisting of "Meishe's confidential plans for future development." FAC ¶ 150. But Meishe fails to provide *any* description of those purported plans or how they qualify as trade secrets. *See id.* At most, Meishe still just "lists categories of alleged trade secrets in broad terms" without any clarity as to what the actual trade secret information is and how it differs from publicly known information. *Litrinium*, 2019 WL 4284523, at *4. Meishe has failed to identify its trade secrets in any of its pleadings with sufficient particularity to meet § 2019.210's standard.

### C. Meishe Fails to Identify its Purported Trade Secrets with Reasonable Particularity in its Interrogatory Responses.

To adequately identify its trade secrets outside of its pleadings, a plaintiff must "identify or designate the trade secrets at issue with sufficient particularity to limit the permissible scope of discovery by distinguishing trade secrets from matters of general knowledge in the trade or of special knowledge of those persons … skilled in the trade." *Loop*, 195 F. Supp. 3d at 1111. That means "plaintiffs must clearly refer to tangible trade secret material instead of referring to a system which *potentially* qualifies for trade secret protection." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998). And in the source code context, it means a plaintiff must identify "specific key aspects of its source code" that it claims are its trade secrets. *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 703 (9th Cir. 2017). Meishe has not done so here.

Over a year ago, Defendants served interrogatories that requested Meishe to identify *with specificity* where (1) each of its alleged trade secrets are located in its own asserted source code (Interrogatory No. 1), and (2) each alleged trade secret is purportedly misappropriated in Defendants' accused source code (Interrogatory No. 17).

Meishe responded by identifying 11 categories of generic information like "[redacted]," the "[redacted]," and "[redacted]" *See* Ex. 1, 2nd Supp. Resp. at 6–7. This generalized list is not sufficient to meet Meishe's burden under § 2019.210. *See InteliClear*, 978 F.3d at 658 ("Plaintiffs may not simply rely upon 'catchall' phrases or identify categories of trade secrets they intend to pursue at trial."); *Social Apps*, 2012 WL 2203063, at *4.

The West Texas court ordered Meishe to supplement this response after granting it access to Defendants' source code. However, Meishe still refused to identify its alleged trade secrets, instead attempting to push any meaningful identification of its alleged trade secrets to expert discovery, when Defendants would have no opportunity in discovery to respond to it. In its supplemental response, Meishe asserted that it "[redacted]," but "[redacted]" *Id.* at 8. Meishe then cited to an "Exhibit A," stating that "[redacted]" *Id.* at 8–9 (emphasis added). Exhibit A, as shown below, is nothing but a collection of file names and directories (Ex. 2, Exhibit A to 2nd Supp. Resp. at 1–90):

[redacted]

Meishe provided no explanation of what it unilaterally deemed "[redacted]" or how these file names and directories allow Defendants to discern Meishe's alleged trade secrets or how they are different from software development concepts known in the field.

The first column in the first chart in this 118-page exhibit is titled "[redacted]," which

lists a file name. *Id.* at 1. The second column lists [redacted] different produced versions of Meishe software, each of which is associated with a separate "repository" of source code, *e.g.*, app1.0, app1.3_2631, … NVStreamingSDK2.14.1. The third column is titled "[redacted]," which also lists a file name. The fourth column lists 14 different produced versions of Defendants' source code, each of which is associated with a separate "repository" of source code, *e.g.*, version 8.4, 8.5, 19.1.3.

While lengthy, this obtuse chart of file names provides ***no explanation*** of ***what*** Meishe's alleged trade secrets are. Each "module" and file name can include thousands of lines of computer code. Meishe provides no explanation tying these lists of files names to its alleged trade secrets. It is impermissibly vague and overbroad on its face, as it omits key identification information that Meishe must provide, such as the "specific ***key*** aspects of [Meishe's] source code," *Integral*, 675 F. App'x at 703 (emphasis added), that would allow Defendants to adequately mount a defense and the Court to "determin[e] relevancy and the scope of discovery." *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1153 (D. Or. Nov. 30, 2015); *Teradata Corp. v. SAP SE*, No. 18-cv-3670-WHO, 2018 WL 6528009, *4 (N.D. Cal. Dec. 12, 2018).

**1. <u>Meishe's descriptions are vague.</u>**

As a foundational matter, it is unclear what Meishe means when it refers to "[redacted]" in Exhibit A. Meishe could be referring to a single file, an entire repository of source code (*e.g.*, Meishe app v.1.0), or [redacted] versions of the same file in [redacted] different produced versions of its source code. The same ambiguity applies to Meishe's use of the term "[redacted]" when referring to Defendants' code. To avoid this, Defendants' interrogatories requested page and line numbers to ensure they had actual notice of the extent of Meishe's purported trade secrets, but Meishe refuses to provide this basic information.

Meishe also fails to explain the relationship between the [redacted] versions of the "[redacted]" file identified in the example above (and many others) in the first and second columns, and the [redacted] versions of the "[redacted]" file identified in the third and fourth columns. Meishe's files, including "[redacted]," have been modified between different revisions of its source code. Defendants' code has also

undergone significant revisions over time as the TikTok application has evolved, as evidenced by the numerous versions of each file shown in Meishe's Exhibit A. *See, e.g.*, Ex. 2, Exhibit A to 2nd Supp. Resp. at 1–90.

Meishe does not explain (1) what in ***each*** version of these identified files is relevant to its alleged trade secrets or (2) what the alleged relationship is between any of its [redacted] identified files and the 14 versions of Defendants' files. There are numerous, if not hundreds or thousands of, differences between each identified file, and dozens of potential relationships between the identified files. "It is inadequate for plaintiffs to cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information." *See Inteliclear*, 978 F.3d at 658. And Meishe provides no explanation of these differences or relationships. These "[l]ong lists of general areas of information containing unidentified trade secrets are not substitutes for particularized and concrete trade secrets." *See id.*

**2. <u>Meishe's descriptions are overbroad.</u>**

When pressed to explain Exhibit A, Meishe claimed that there is source code somewhere in one version of the first-column file that has some unspecified number of lines of code that are copied by some unspecified portion of code contained in a third-column file. Alleging copying—even if true—does not satisfy Meishe's burden under § 2019.210. Nor does this blanket allegation provide any particularity as to what is at issue or alleged.

Some of the source code files listed in Exhibit A contain hundreds of thousands of lines of code. Meishe has nevertheless refused to specify what aspects of the code in the respective files are at issue. And the remaining 28 pages of Exhibit A following the above-described chart further highlight the overbreadth of Meishe's identification of its purported trade secrets. The second Exhibit A table appears to simply list some of Meishe's "[redacted]" that are allegedly "[redacted]" from the "[redacted]" in the first table, without any further explanation. *See* Ex. 2, Exhibit A to 2nd Supp. Resp. at 90–91. The third Exhibit A table likewise appears to list almost ***every single function name*** within Meishe's code without any further explanation. *See id.* 91–118. This does not meet Meishe's burden under § 2019.210. *See Integral*, 675 F. App'x at 703.

### 3. Meishe's descriptions omit key identification information that it can and should provide.

Exhibit A also hides key identification information requested by Defendants that Meishe is required to disclose: (1) the specific Meishe code it intends to assert, and (2) the specific Defendant code it intends to accuse. This is information Meishe claims it has, *see, e.g.*, Dkts. 182-2, 1–2; 257-16, 4:21–22, and that Meishe previously provided a limited sample of. *See* Dkt. 182-5. In support of prior briefing on its motion to amend its complaint (but tellingly not in response to Defendants' discovery requests), Meishe provided two pages of source code in one of its files ([redacted]) from a single software version or code repository ([redacted]), compared to two pages in one of Defendants' files ([redacted]) from a single software version or code repository ([redacted]).

These two pages include a chart containing one Meishe function in the [redacted] file (*e.g.*, "[redacted]") and one Defendant function in the [redacted] file (*e.g.*, "[redacted]") (*see* Dkt. 182-5):

[redacted]

Meishe subsequently disclosed another two similar pages of source code in support of other prior briefing, *see* Dkts. 292-15; 292-16, and appears to have included one new snippet in its FAC. *See* FAC ¶ 114. ***None of these comparisons or pages are evident from Meishe's interrogatory responses***.

These five pages of source code are the only disclosure Meishe has provided that attempt to identify its asserted source code or Defendants' accused code with any specificity. And even

then, Meishe fails to describe what ***within*** those five pages (*e.g.*, code comments, variable names, or lines that exclusively include a parenthesis, bracket, or semicolon) it contends are its alleged trade secrets. *See Integral*, 675 F. App'x at 703. In any event, if Meishe can provide this example to support its prior request to amend its complaint, it can provide all such information regarding its purported trade secrets, as required. *See Social Apps.*, 2012 WL 2203063, at *5 ("Here, leaving aside the two instances where [plaintiff] identified a specific file name or source code line numbers, [plaintiff] has only offered the most general concepts to describe what it believes is its trade secret information. That is not sufficient.").

**4. <u>Meishe's recent supplementation does not cure the deficiencies in its descriptions.</u>**

On February 20, 2024—years into this case, days before the initial case management conference, and only *after* learning that Defendants intended to file the Instant Motion—Meishe served a supplemental response to Defendants' Interrogatory No. 1. *See* Ex. 1, 2nd Supp. Resp. at 9–21. Meishe's supplementation addresses ***one*** of the eleven generic categories of information Meishe claimed in its original response are its trade secrets—"[redacted]." *See id.* at 6-7, 9. The other ten categories are deficient for the reasons discussed *supra* Part C.1–3.

<u>There is no real narrowing</u>: Meishe's response attempts to create an illusion of providing detail without actual doing so. First and foremost, Meishe prefaces its supplement by maintaining that ***all*** of its millions of lines of source code constitute its trade secrets, ensuring that its response fails to provide any real narrowing of its alleged trade secrets (Ex. 1, 2nd Supp. Resp. at 9):

As shown above, Meishe also continues to use vague and improper catchall phrases. Meishe's response is deficient for those reasons alone. *See Litrinium*, 2019 WL 4284523, at *4 (finding "the word 'including,' followed by a list of presumably some, but not all, aspects of the alleged trade secret" insufficient under § 2019.210); *Gatan*, 2018 WL 2117379, at *3 ("use of catchall words such as 'including' weighs against a finding that the designation satisfies § 2019.210"); *Social Apps*, 2012 WL 2203063, at *4 ("A description of the category, or even of the subcategories of information within a category, does not comply with the requirement to identify

the actual matter that is claimed to be a trade secret.”).

<u>Meishe’s response cannot be tied to its asserted source code</u>: The defects from Meishe’s insistence on asserting ***all*** its source code as its alleged trade secrets are magnified by the inability to tie the supplemental response to asserted source code referenced in the FAC or produced by Meishe on source code computers. Instead, Meishe provides subcategories of high-level software design and functionality—which has been available for decades—using generalized descriptions that cannot be associated with the asserted source code in this case, much less any implementation of that functionality in specific lines of code. The following are but a few examples where Meishe appears to suggest that high-level, basic, and general design concepts that cannot be tied to its asserted code are its purported trade secrets.

[redacted]

[redacted]

Ex. 1, 2nd Supp. Resp. at 9.

“[redacted]” are fundamental concepts taught in every college-level computer science curriculum. Meishe claims its “[redacted]” include [redacted]—another basic concept—and that it has code that “[redacted].” *Id.* Meishe does not explain ***how*** the alleged “[redacted]” is “[redacted]” or how any of these basic coding practices differentiate Meishe’s undefined “[redacted]” from general programming practices that were known in the field. At a more fundamental level, Meishe does not identify ***what*** Meishe’s alleges is a trade secret within this high-level description of desired functionality.

[redacted]

See id. at 12.

The first concept taught in entry-level computer science courses are "[redacted]"—the smallest sequence of programmed instructions for an operating system. Multiple "[redacted]" form a computing process. This basic structure of a program, called multi-threading or parallel processing, allows each thread to handle a different task at the same time, making best use of processing resources. Meishe's description reiterates this basic concept of [redacted]. Its framework can allegedly "[redacted]" and process "[redacted]" simultaneously. But resource optimization through parallel processing has always been the core of the general programming practices known in the field. Meishe's description fails to describe how its coding practices differentiate its framework from what was already known in the field. Nor does this description of desired functionality provide any indication of ***what*** Meishe's alleges is a trade secret.

[redacted]

*See id.* at 10.

[redacted]" and "[redacted]" are foundational mathematical concepts. A graph is a mathematical structure used to describe relationships between objects, called nodes. It is a common way to

visualize and represent networks from the connectedness of biological cells to human behavior. In computer science, node-based architecture ("[redacted]") is another common concept taught in college computer science classes.

Software designs implementing a node-based architecture must use two basic concepts: a node that performs some type of computation or a process; and a graph that describes the network of nodes, interconnected via links or pins. Meishe's description of its [redacted]. Meishe adds that its [redacted]." But this is no more than general functionality of a node graph software design, commonly used in filming and gaming industries. Meishe provides no detail on how its implementation of a [redacted] differs from general programming practices known in the field. Nor does this description provide any indication of ***what*** Meishe alleges is a trade secret.

Meishe also adds descriptions of various computer science concepts, such as "[redacted]." *See, e.g.*, *id.* at 10. These terms describe an entry-level computer science concept called "inheritance." Inheritance is a well-known concept where one object is based on another object. It is a basic tenet of object-oriented programming.

Instead of creating many new types of nodes, a [redacted] can be created, which forms the model and provides the basic properties for all other nodes. [redacted] holds variables ("[redacted]") that all nodes should or could have. Using this [redacted], new nodes (e.g., "[redacted]") can be created more easily, as they can already include desired properties that are common to the nodes. Meishe's description fails to identify how its implementation of a [redacted] differs from what was known in the field.

* * *

These exemplary excerpts describe high level ***functionality*** of software—functionality which has existed for decades—rather than specific details on ***how*** Meishe's implementation allegedly differs from what was generally known in the field. Indeed, Meishe's supplemental response is careful to ***avoid*** express identification of any particular functional aspect of its software as a purported trade secret. Such high-level descriptions "add[] little more than an elaborate

categorization scheme for a variety of related concepts" that are "***no substitute*** for specifically identifying and describing the actual [trade secret] that … was stolen, or pointing to where it might be found[.]"). *Social Apps*, 2012 WL 2203063, at *4 (emphasis added).

Further, Meishe's supplemental response provides ***nothing*** that would allow Defendants to associate these high-level concepts with ***any*** particular software or file versions in Meishe's universe of asserted source code, let alone the specific portions of allegedly protected code within those file versions. But the identification of specific source code, not mere functional descriptions, is what § 2019.210 requires. *See id.* ("a trade secret designation that attempt[s] to characterize various aspects of the underlying design of a software program as trade secrets fail[s] to describe the trade secret properly" because "the only protectable secret identified was the source code itself") (citing *Silvaco Data Sys. v. Intel Corp.*, 109 Cal. Rptr. 3d 27 (Cal. Ct. App. 2010)).

Put another way, while Meishe provides some additional description of how its software allegedly functions, it fails to identify what ***source code*** in what ***versions*** of what ***files*** it is describing. *Compare* Ex. 1, 2nd Supp. Resp. at 9, 21, *with Loop*, 195 F. Supp. 3d at 1114 (finding that "use of technical language" in a plaintiff's 53-paragraph description "does not mask the fact that its descriptions fail to identify any 'confidential information' described therein"). And compounding this deficiency is the fact that nothing in Meishe's response delineates between what Meishe believes is a protectable trade secret and concepts that were generally known in the field, which are littered throughout the response. *See, e.g.*, Ex. 1, 2nd Supp. Resp. at 11 (describing common and nonspecific data structures [redacted] that have existed since the advent of physical film editing); *id.* at 12 (describing common use of function and class names as part of supposed "[redacted]" that fail to include any actual [redacted]); *id.* (asserting that functionally-described "[redacted]" can "[redacted]" to "[redacted]" without any description of ***how*** it is accomplished).

The effective impact of Meishe's supplemental response is thus no more than Meishe once again stating that its alleged trade secrets are vague concepts hidden within millions of lines of source code. In other words, "[r]ather than a 'reasonably particular' list of trade secrets, [Meishe's] disclosure resembles an effort to categorize every piece of [source code] that could potentially have

value to the company." *Loop*, 195 F. Supp. 3d at 1114. That is insufficient. *See Litrinium*, 2019 WL 4284523, at *2 ("Where alleged trade secrets 'consist of incremental variations on, or advances in the state of the art in a highly specialized technical field, a more exacting level of particularity may be required[.]'").

### D. <u>This Court Should Stay Discovery Until Meishe Identifies Its Asserted Trade Secrets with Specificity.</u>[6]

Meishe has had ***years*** to properly identify its trade secrets and has had access to Defendants' source code and technical documents in the meantime. It has amended its Complaint four times and has received access to millions of lines and over hundreds of thousands of pages of Defendants' code in discovery. Yet Meishe still refuses to describe its alleged trade secrets with particularity. As discussed in the Motion to Dismiss, the proper remedy is to dismiss Meishe's trade secret misappropriation claims for failure to state a claim. *See* Dkt. 435-3. But to the extent the claims survive, this Court should compel Meishe to provide the required specificity and stay discovery until Meishe does so.

Rule 26 allows a court to compel a plaintiff to provide adequate descriptions of its trade secrets and to issue a protective order staying discovery in the interim. *See* FED. R. CIV. P. 26(c)(1)(G); *Vesta*, 147 F. Supp. 3d at 1153 ("Requiring Plaintiff in this case to make pre-discovery disclosures of its alleged misappropriated trade secrets is supported by strong practical and policy reasons, including the goal of assisting this Court 'in determining relevancy and the scope of discovery."); *Yeiser*, 2019 WL 2177658, at *5 ("[T]his Court believes that a DTSA plaintiff may be required to go beyond its pleadings at the discovery stage consistent with Rule 26's discovery framework."). Section 2019.210 also allows courts to stay discovery until a plaintiff "identif[ies] the trade secret with reasonable particularity." CAL. CODE CIV. P. § 2019.210; *Alphonso*, 2022 WL 17968081, at *2 (defendants' "motion to stay discovery is granted due to

[6] Meishe is incorrect to the extent it contends the West Texas court determined that Meishe satisfied its burden under § 2019.210. *See* Dkt. 399 at 12. The court's 2022 order denied Defendants' early request that Meishe supplement its response to a Defendant interrogatory seeking identification of Meishe's trade secrets. *See* Dkt. 128. It did not hold that Meishe had met its burden under § 2019.210. Indeed, the court made clear that its order was ***preliminary*** (Dkt. 151-3 at 30:9–11), and later revisited the issue, finding Meishe's descriptions of its alleged trade secrets in its discovery responses were ***not sufficient***. *See* Dkt. 195; Dkt. 196 ("Plaintiff … must identify the specific portions of code … that it contends … misappropriate its trade secrets.").

insufficient trade secret disclosure"); *Loop*, 195 F. Supp. 3d at 1109. In fact, under § 2019.210, discovery ***cannot*** commence until a plaintiff meets its threshold burden of identifying its alleged trade secrets.

Far from identifying "up front, and with specificity the particulars of the trade secrets without discovery," Meishe has refused for years to specify the source code it claims is protected—all the while probing Defendants' source code through discovery, demanding thousands of pages of printed code, and effectively seeking access to the entire TikTok code base. *See* Dkt. 401; *see also Jobscience*, 2014 WL 1724763, at *2. Meishe cannot (and does not) complain that the information sought is not relevant or is not proportional to the needs of the case—Defendants' interrogatories seek foundational information underlying Meishe's trade secret misappropriation claims. *See InteliClear*, 978 F.3d at 658.

And until Meishe provides that information—by identifying the "specific key aspects of its source code" that it claims constitute all of its asserted trade secrets—Defendants cannot prepare their defenses. *See Integral*, 675 F. App'x at 703. Defendants do not know, for example, what portions of the ***millions*** of lines of Meishe's source code to analyze for commercial value or public availability. Nor can the Court determine the scope of discovery without having some threshold sense of what Meishe's actual claimed trade secrets are. *See Comput. Econs.*, 50 F. Supp. 2d at 989 ("Only until a plaintiff identifies its allegedly misappropriated trade secrets can the court determine the relevance, and therefore the scope, of discovery."); *see also Teradata*, 2018 WL 6528009, at *4.

Those elementary problems are ***exactly*** what § 2019.210 is meant to avoid. *See Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-cv-1267-SC, 2015 WL 4149066, at *4 (N.D. Cal. July 9, 2015) (describing the "purpose of Section 2019.210" as "enabl[ing] defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trail to effectively defend against charges of trade secret misappropriation" and "assist[ing] the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope" (quoting *Adv. Modular Sputtering, Inc. v. Super. Ct.*, 33 Cal. Rptr. 3d 901, 906 (Cal. Ct. App. 2005))). After over three years of litigation, full access to Defendants'

source code, and repeated representations that it found evidence to support its claims, Meishe must finally disclose the basic, fundamental aspects of its case: the particular Meishe source code at issue and the code Defendants allegedly misappropriated.

Accordingly, should the Court decline to dismiss Meishe's trade secret misappropriation claims pursuant to Rule 12(b)(6), *see* Dkt. 435-2, the Court should compel Meishe to adequately identify its purported trade secrets and stay discovery in this case until it does so. *See Gatan*, 2018 WL 2117379, at *2; *Litrinium*, 2019 WL 4284523, at *2.

## V. CONCLUSION

For the foregoing reasons, to the extent Meishe's trade secret misappropriation claims are not dismissed, Defendants respectfully request that the Court issue an order compelling Meishe to adequately identify its purported trade secrets and staying discovery until Meishe complies.

Dated: June 5, 2024

WHITE & CASE LLP

By: */s/ Yar R. Chaikovsky*
Yar R. Chaikovsky

WHITE & CASE LLP
Yar R. Chaikovsky (175421)
yar.chaikovsky@whitecase.com
Philip Ou (259896)
philip.ou@whitecase.com
David T. Okano (278485)
david.okano@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

WHITE & CASE LLP
Michael Songer
Michael.songer@whitecase.com
701 Thirteenth Street, NW
Washington, DC 2005-3807
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

Andrew Zeve
Andrew.Zeve@whitecase.com
Jeremy Dunbar
Jeremy.Dunbar@whitecase.com

609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701

Attorneys for
TikTok Inc., TikTok Pte. Ltd., ByteDance Ltd.
and ByteDance Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 5, 2024, all counsel of record who are deemed to have consented to electronic service have been served with a copy of this document via the Court's EM/ECF system.

*/s/ Yar R. Chaikovsky*
Yar R. Chaikovsky