UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEIJING MEISHE NETWORK TECHNOLOGY CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> TIKTOK INC., et al., <br><br> Defendants. | Case No. 23-cv-06012-SI <br><br> **ORDER DENYING DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO IDENTIFY ITS TRADE SECRETS PURUSANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 2019.210 AND STAY DISCOVERY IN THE INTERIM** <br><br> Re: Dkt. No. 440 |

Before the Court is defendants TikTok Inc., TikTok Pte. Ltd., ByteDance Ltd., and ByteDance Inc. (collectively, "defendants") motion to compel plaintiff to identify its trade secrets and stay discovery in the interim. Dkt. No. 440. Plaintiff Beijing Meishe Network Technology Co. Ltd. ("Meishe") opposes. Dkt. No. 451. Pursuant to Civil Local Rule 7-1(b), the Court determines that this motion is suitable for resolution without oral argument. For the reasons set forth below, the Court DENIES defendants' motion and ORDERS the parties to proceed with discovery and raise any discovery disputes first with the Special Master.

**BACKGROUND**

On July 23, 2024, this Court issued an order on defendants' motion to dismiss plaintiff's Fourth Amended Complaint ("FOAC"), in relevant part denying defendants' motion to dismiss as to plaintiff's trade secret misappropriation claims. *See* Dkt. No. 465. Meishe's identification of trade secrets in the FOAC is as follows.

Meishe alleges that it is "the owner of trade secrets that include, but are not limited to proprietary, independently-developed source code that allows for video and audio creation and editing, video and audio processing, video and audio release, personalized audio and video

1  recommendations, webcasting, and other confidential business information." Dkt. No. 433
2  ("FOAC") ¶ 149.  With respect to the language "and other confidential business information," the
3  Court found the allegation met the Rule 12(b)(6) pleading standard with the understanding that this
4  phrase referred to "Meishe's confidential internal plans for future development of Meishe software,
5  examples of which are provided in Ex. Q to the FOAC."  Dkt. No. 465 at 21 n.13.

6  Meishe next alleges that its trade secrets include Meishe's Copyrighted Works, "including
7  the non-public source code modules" listed in a voluminous Exhibit to the FOAC.  FOAC ¶ 150,
8  Ex. O.  Meishe alleges that this source code includes:

> Meishe's framework for processing video and audio streaming media, including but not limited to, for example, the length control mechanism of the AV processing pipeline, the streaming media engine, the node schema processing architecture for video special effect processing, the parallel processing architecture in the streaming media engine workflow, the video data common abstract interface form, video processing of the general abstract interface form, general abstract interface form of audio processing, and the multi-track processing architecture for video sources.

13  *Id.* ¶ 150.  The Court found this allegation met the Rule 12(b)(6) pleading standard with the inclusion
14  of the "including, but not limited to, for example" phrase to the extent this allegation summarizes
15  the source code modules contained in Exhibit O to the FOAC.  Dkt. No. 465 at 22 n.13.  The Court
16  understands that Meishe is alleging that each line entry in Exhibit O to the FOAC includes trade
17  secret source code allegedly misappropriated by defendants.  *See* Dkt. No. 465 at 21.

18  Lastly, Meishe asserts "trades [sic] secrets related to Meishe's confidential internal plans for
19  future development of Meishe software and which portions of Meishe's software were most likely
20  to be popular if incorporated into audio/video creation and editing features in smart phone and other
21  applications."  *Id.*  The FOAC alleges that Meishe's asserted trade secrets are identified "with
22  specificity" in a February 20, 2024 interrogatory response.  FOAC ¶ 151, Ex. Q.

23  In the instant motion, defendants argue that to the extent Meishe's trade secret claims are
24  not dismissed, the Court "should stay discovery until Meishe identifies its trade secrets with the
25  requisite level of particularity pursuant to California Code of Civil Procedure § 2019.210."  Dkt.
26  No. 440 at 2.  Surviving a motion to dismiss does not "prejudge whether plaintiff's trade secret
27  allegations satisfied § 2019.210."  *Gatan, Inc. v. Nion Co.*, No. 15-cv-01862-PJH, 2018 WL
28  2117379, at *2 (N.D. Cal. May 8, 2018).

**DISCUSSION**

Defendants contend that California Code of Civil Procedure § 2019.210 applies to plaintiff's trade secret misappropriation claims notwithstanding the claims' basis in Texas state and federal law, not California law. Dkt. No. 440 at 6.

California Code of Civil Procedure § 2019.210 provides:

> In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act (Title 5 (commencing with Section 3426) of Part 1 of Division 4 of the Civil Code), before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code.

Cal. Civ. P. Code § 2019.210. The purpose of section 2019.210 is as follows:

> First, [section 2019.210] promotes well-investigated claims and dissuades the filing of meritless trade secret complaints. Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets. Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope. Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation.

*Computer Economics, Inc. v. Gartner Group Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999) (citations omitted).

"The letter and spirit of section 2019.210 require the plaintiff, subject to an appropriate protective order, to identify or designate the trade secrets at issue with 'sufficient particularity' to limit the permissible scope of discovery by distinguishing the trade secrets from 'matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" *Advanced Modular Sputtering, Inc. v. Super. Ct.*, 132 Cal. App. 4th 826, 834 (2005) (quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998) (citation omitted). Section 2019.210 "was intended to require the trade secret claimant to identify the alleged trade secret with adequate detail to allow the *defendant* to *investigate* how it might differ from matters already known and to allow the court to craft relevant discovery." *Alta Devices, Inc. v. LG Electronics, Inc.*, No. 18-cv-00404, 2019 WL 176261, at *2 (N.D. Cal. Jan. 10, 2019) (quoting *Brescia v. Angelin*, 172 Cal. App. 4th 133, 147 (2009)) (emphasis in original).

By contrast, the Defend Trade Secrets Act ("DTSA") does not contain any "heightened"

3

pleading requirements. *Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*, No. 17-cv-1290-BAS-MSB, 2019 WL 2177658, at *4 (S.D. Cal. May 20, 2019). However, a DTSA plaintiff may still "be required to go beyond its pleadings at the discovery stage consistent with Rule 26's discovery framework." *Yeiser*, 2019 WL 2177658 at *5.

The Ninth Circuit has not decided whether section 2019.210 applies to actions in federal court and district courts within the circuit have reached differing conclusions on this issue. *See Social Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *1 (collecting cases). Courts that have applied section 2019.210 to actions in federal court have found that the statute "does not conflict with any Federal Rule of Civil Procedure but rather assists the court and parties in defining the appropriate scope of discovery." *Id.* at *2; *see also Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-cv-1267-SC, 2015 WL 4149066, at *3 (N.D. Cal. July 9, 2015) (noting that courts in this district have generally found that section 2019.210 is applicable in federal cases). Other courts have reasoned that the plain language of the statute limits its applicability to cases where a California Uniform Trade Secrets Act ("CUTSA") claim is pled. *See Picture Shop, LLC v. Saw Inc.*, No. 2:23-cv-03075-KK (MAR), 2024 U.S. Dist. LEXIS 63267, at *6 (C.D. Cal. Apr. 5, 2024); *Blockchain Innovation, LLC v. Franklin Res., Inc.,* No. 21-cv-08787-AMO (TSH), 2023 WL 4045234, at *1 (N.D. Cal. June 15, 2023). With a few exceptions discussed below, the cases defendants rely on to argue that this Court should apply section 2019.210 to this case included claims under both the Defend Trade Secret Act ("DTSA") and CUTSA and the issue was whether to apply a California state procedural rule in federal court.

Defendants point to a handful of cases where courts applied section 2019.210 (or similar state law requirements) to cases that did not involve CUTSA claims. In *Yeiser*, the plaintiff raised trade secret claims pursuant to the DTSA and Delaware Uniform Trade Secrets Act. 2019 WL 2177658 at *1. At issue was the application of a Delaware common law rule that required a trade secret plaintiff to identify its trade secrets with "reasonable specificity" in fact discovery. *Id.* at *3. The court found that the application of this Delaware rule was proper. *Id.* at *5. The Court reasoned that "in exercising its broad discretion over discovery under Rule 26, it may be that a federal court will look to state law trade secret discovery rules . . . to determine the proper course of discovery."

4

1  *Id.* at *5. It further reasoned that "[t]his reliance may be particularly appropriate in cases in which
2  a plaintiff raises both federal DTSA claims and state law trade secret claims." *Id.* Because *Yeiser*
3  involved the application of a Delaware rule to a case that included Delaware law trade secret claims,
4  the Court does not find that it provides guidance here.

5  In *Neothermia Corporation v. Rubicor Medical, Inc.*, the plaintiff argued that a previous
6  version of section 2019.210 was inapplicable because it asserted a claim for breach of a
7  nondisclosure agreement, not a claim for trade secret misappropriation. 345 F. Supp. 2d 1042, 1043
8  (N.D. Cal. 2004). The court found that the plaintiff's allegation constituted a "misappropriation" as
9  that term is defined by the CUTSA, so the then version of section 2019.210 "thus applies not only
10 to theft of trade secrets, but also to disclosure of secrets in violation of a nondisclosure agreement
11 as alleged in the instant case." *Id.* at 1044. This case was initially filed in California. In *Monolithic*
12 *Power Systems, Inc. v. Wei*, a short opinion that cites *Neothermia*, the plaintiff initially claimed
13 breach of contract, a violation of the Computer Fraud and Abuse Act, and fraud, "alleging
14 misappropriation of trade secrets." No. 20-CV-06752-JSW (LB), 2021 WL 3847961, at *1 (N.D.
15 Cal. Aug. 27, 2021). In dismissing the initial complaint, the trial court held that the plaintiff was
16 trying to avoid CUTSA's strictures by restating its trade-secret claims as something else. *Id.* The
17 amended complaint dropped certain claims and replaced the words "trade secret" with "confidential
18 information." The court then held that the "crux of the claims is the same: trade-secret
19 misappropriation." *Id.* In contrast, Meishe has specifically alleged trade secret misappropriation
20 claims under the DTSA and TUTSA since the beginning of this case.

21 Lastly, in *Quintara Biosciences, Inc. v. Ruifeng Biztech Inc.*, the plaintiff alleged a "slew of
22 state-law claims," but not a claim under the CUTSA, and one federal trade secret misappropriation
23 claim. No. C 20-04808 WHA, 2021 WL 965349, at *1, 4 (N.D. Cal. Mar. 13, 2021). The court
24 noted that district courts have "wide discretion in controlling discovery" and went on to state that
25 although "state procedure does not govern here, in the trade secret context the undersigned judge
26 has often borrowed the tried and true California Code of Civil Procedure § 2019.210 under the
27 district court's Rule 16 case-management authority." *Id.* (citations omitted). The Court declines to
28 do the same here as the instant case involves no California state law claims.

5

1     That said, district courts have "wide discretion to manage discovery, including to 'set the
2    timing and sequence of discovery.'" *Blockchain Innovation*, 2023 WL 4045234, at *2 (citing
3    *Crawford-El v. Britton*, 523 U.S. 574, 599 (1998)). "Thus, even though section 2019.210 is not
4    literally applicable to this case, a federal court undoubtedly has the discretion to require the
5    disclosure of trade secrets before allowing trade secret-related discovery to proceed." *Id.* The court
6    in *Blockchain* provides a nonexclusive list of reasons why section 2019.210 might nonetheless be
7    applied in federal court: if the plaintiff if suing under both CUTSA and DTSA concerning the same
8    trade secrets, if "sequencing discovery in this manner could provide for effective case management,"
9    and if a court thought the plaintiff, "through artful pleading, was trying to avoid CUTSA's
10   strictures." *Id.* (internal quotation marks and citations omitted). The Court does not find any of
11   these reasons applicable here where there are no CUTSA claims, the case was initially filed in Texas,
12   and discovery was well underway before the case was transferred to this District.

13     The issue really comes down to managing discovery. As both parties point out in their
14   briefing, fact discovery has been ongoing for a long time. The Ninth Circuit has noted that
15   "discovery provides an iterative process where requests between parties lead to a refined and
16   sufficiently particularized trade secret identification." *Inteliclear, LLC v. ETC Global Holdings*,
17   Inc., 978 F.3d 653, 662 (9th Cir. 2020). The parties should proceed expeditiously with discovery to
18   move this case along.

19     That said, the Court recognizes the challenges inherent to a case that involves a voluminous
20   amount of asserted trade secret source code. The Court understands the trade secrets at issue in this
21   case to be encompassed in Exhibits O and Q to the FOAC, with the other allegations in the complaint
22   defendants take issue with describing or summarizing the source code contained in these exhibits.
23   To the extent there are other trade secrets at issue in this case not contained in Exhibits O and Q to
24   the FOAC, Meishe is instructed to describe what those trade secrets are and where they can be found
25   for the benefit of the Court, Special Master, and defendants. Additionally, if either party believes
26   the other has not adequately responded to discovery requests under Rule 26, they are instructed to
27   raise these disputes with the Special Master (with the ability to raise objections or motions to adopt
28   or modify the Special Master's orders with this Court) in accordance with the Order appointing the

6

Special Master at Dkt. No. 423.

## CONCLUSION

For the reasons stated above and for good cause shown, the Court DENIES defendants' motion to compel Meishe to identify its trade secrets pursuant to California Code of Civil Procedure § 2019.210 and stay discovery in the interim.

**IT IS SO ORDERED**.

Dated: July 26, 2024

_____
SUSAN ILLSTON
United States District Judge