Judicate West
980 9th Street, Ste. 2200
Sacramento, CA 95814
Phone: 916 394-8490
Fax: 916 394-8495

Kendall J. Newman
Special Master

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEIJING MEISHE NETWORK TECHNOLOGY CO., LTD.,<br><br>Plaintiff,<br><br>vs.<br><br>TIKTOK INC., et al.<br><br>Defendants. | Case No. 23-cv-06012-SI<br>Judge Susan Illston<br><br>JW CASE NO.: A314886<br><br>SPECIAL MASTER'S ORDER[1] REGARDING DEFENDANTS' MOTION TO COMPEL TRADE SECRET AND COPYRIGHT INFORMATION ["ISSUE K"] |

The undersigned Special Master issues the following Order regarding Defendants' Motion to Compel Trade Secret and Copyright Information [Issue K].

On February 6, 2025, counsel appeared before the undersigned for a hearing regarding Plaintiff's Motion.[2] The Special Master previously directed a briefing schedule for the instant

[1] "Pursuant to Rule 53(e), the Special Master shall issue orders on motions presented to him which shall be final and not require the Court's signature, subject to the parties' right to file objections as described below. If the Special Master considers it advisable to make a Report to the Court, he shall do so in accordance with Rule 53(f)." Dkt. No. 423 at 3-4.

[2] The Court originally set the non-expert discovery cutoff deadline as March 7, 2025, with expert designations originally set for March 28, 2025. Dkt. No. 492. On February 3, 2025, the Court approved the parties' Joint Stipulation re Schedule, extending the non-expert discovery cutoff deadline to March 28, 2025, and setting expert designations for April 18, 2025. Dkt. No. 536. The expert discovery cutoff remains June 13, 2025. *Id.*

motion. Dkt. No. 511. Pursuant to that schedule, counsel timely filed opening papers, opposition papers, and reply papers. The Special Master's briefing schedule also required that the reply papers describe counsels' good faith meet-and-confer attempts to resolve the instant dispute in person, virtually (i.e., on Zoom), or by phone if absolutely necessary. Dkt. No. 511. The Special Master has reviewed the papers and finds that this requirement has been satisfied; counsel has been genuinely unable to fully resolve the dispute despite their good faith efforts to do so. Reply at 10.

During the hearing before the Special Master, Robert Harkins, Michael Woods, and Adam Allgood of Cherian LLP appeared on behalf of Plaintiff. David Okano, Yar Chaikovsky, Andrew Zeve, Philip Ou, and Radhesh Devendran of White & Case, LLP appeared on behalf of Defendants. A court reporter transcribed the hearing.

## I. BACKGROUND

Defendants' Motion seeks an order compelling Plaintiff to provide "fulsome responses to Interrogatory Nos. 1, 7, 8, 20 and 31." Mot. at 15. The Interrogatories seek details and specifics regarding Plaintiff's trade secret and copyright claims.

Defendants have sought to discover details regarding Plaintiff's claims and allegations since the outset of this case. Importantly, Plaintiff's claims have previously been held to be sufficient for purposes of surviving the pleading stage, and discovery has been well underway. Now, with less than two months remaining before the closure of fact discovery, and for the first time since the pleadings were settled, Defendants again seek an order requiring Plaintiff to provide additional specifics and details regarding Plaintiff's claims.

According to Defendants, at the outset of the case, "Meishe first claimed it could not respond to these [Interrogatories ] because it did not have access to Defendants' source code." Mot. at 2; Ex. 2, at 67-68 (addressing Interrogatory No. 7 re: re alleged copyrights). "Nonetheless, Defendants made their source code related to video and audio editing processing available for inspection more than two years ago, in September 2022." Mot at 2; Ex. 3.

On September 14, 2022, the U.S. District Court for the Western District of Texas denied Defendants' first effort to challenge Meishe's trade secret disclosures noting that Meishe's

disclosures were sufficient even under the Ninth Circuit's standard for such disclosures. Opp'n at 2; Dkt. 128 at 1 ("Plaintiff has identified its trade secret "with more particularity than the trade secrets identified in *InteliClear*."). Since that decision, "Meishe supplemented its trade secret disclosure several times including its detailed February 20, 2024 supplemental response to Defendants' Interrogatory No. 1. See Ex. 1, Meishe's Supplemental Response to Defendants' Interrogatory No. 1 at 9, dated February 20, 2024." Opp'n at 2.

"In January 2023, the West Texas court revisited the issue and ordered Meishe to 'identify the specific portions of code—such as by module or subroutine name but not by specific lines—that it contend[s] infringe its copyrights or misappropriate its trade secrets.'" Mot. at 2, Ex. 4, at 2. "The West Texas court added that 'Plaintiff will not be permitted to include in its expert reports portions of code not identified in response to [Defendants' Interrogatories Nos. 1, 6, and 7].'" Mot. at 2, Ex. 4, at 2.

"On Feb. 22, 2023, Meishe supplemented its responses to include a 65-page identification of hundreds of allegedly copied Meishe files and corresponding accused Defendant source code. Ex. 5 (now FOAC, Ex. P)." Mot. at 2. "On May 11, 2023, Meishe supplemented its interrogatory responses for its asserted copyrights with a 346-page exhibit containing thousands of source code files. Ex. 6 (now FOAC, Ex. O). On Oct. 25, 2023, Meishe revised what is now Exhibit P to the FOAC to accuse additional versions of source code Defendants had produced—without any further analysis supporting its expanded allegations. Ex. 7." Mot. at 2.

"Following transfer of this case to NDCA, Defendants informed Meishe of their intention to file a motion to stay discovery under § 2019.210. Ex. 8, at 8. In response, on Feb. 20, 2024, Meishe supplemented its response to Defendants' trade secret interrogatory to include Exhibit O (now FOAC, Ex. Q), that has narrative descriptions of eight functionalities and identifies 35 source code files, and 'TODO' comments containing 'Meishe's confidential internal plans.'" Mot. at 3; FOAC ¶ 150; Ex. 2, at 10–30. "In April 2024, the Court dismissed Meishe's copyright infringement and trade secret claims with leave to amend to add more specificity and clarity." Mot. at 3, Ex. 9.

"Meishe filed the current operative complaint (FOAC) in May 2024 with Exhibits O, P,

and Q." Mot. at 3, Ex. 10, ¶¶ 4, 150; Ex. 11 (Exhibit O); Ex. 12 (Exhibit P); Ex. 13 (Exhibit Q). "In the FOAC, Meishe contends that its copyrights and trade secrets are encompassed in a 346-page list of thousands of source code files and its trade secrets include both certain 'examples' of functionality as well as its entire source code production of over 10,000 files." Mot. at 3, Ex. 10, ¶¶ 4, 150. "In July 2024, the Court denied Defendants' renewed Rule 12 motion to dismiss, determining that although 'Meishe's alleged trade secrets are voluminous,' Meishe's identification was sufficiently specific to survive a dismissal on the pleadings." Mot. at 3, Ex. 14, at 20–21.

"Defendants challenged Meishe's trade secret disclosure again in a motion to dismiss Meishe's Fourth Amended Complaint ("FOAC"). On July 23, 2024, this Court entered its Order granting in part and denying in part Defendants' Motion to Dismiss. See Dkt 465." Opp'n at 2. That Order stated in part, "[t]he Court finds Meishe's additional trade secret allegations sufficiently particular, particularly when considered alongside its February 20, 2024 interrogatory response at Dkt. No. 433, Ex. Q. Meishe's alleged trade secrets are voluminous, but that alone does not mean the allegations should be dismissed on the pleadings. Although it may be inadequate for 'plaintiffs to cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information,' *InteliClear, LLC v. ETC Global Holds., Inc.*, 978 F.3d 653, 658 (9th Cir. 2020), here Meishe has cited and incorporated by reference just two documents, one of which includes a long list of source code. See Dkt. 465 at 21." Opp'n at 2. "The 'Ex. Q' cited in the Court's Order is Meishe's interrogatory response on trade secrets attached as Ex. 1. The other document referenced in the Court's Order above is a 300+ page document identifying Meishe's non-public source code modules that contain Meishe's trade secrets as well as the source code modules associated with Meishe's asserted copyrights. See Ex. 2, Exhibit C to Meishe's Supplemental Interrogatory Responses, dated May 11, 2023." Opp'n at 3.

"Next, on July 26, 2024, in response to Defendants' Motion to Compel Plaintiff to Identify its Trade Secrets Pursuant to California Code of Civil Procedure § 2019.210, seeking a further disclosure of Meishe's trade secrets, this Court held that Meishe's trade secret disclosure

was sufficient. The Court also stated that further disclosure was only warranted, beyond what Meishe had already disclosed, if Meishe contended it had "other trade secrets at issue not contained in Exhibits O and Q [the attached Exs. 1 and 2] to the FOAC." See Dkt 466 at 6. Meishe has not identified any additional trade secrets." Opp'n at 3. The Court held that Meishe's asserted trade secrets are "encompass[ed]" by a 346-page exhibit listing thousands of source code files and a supplemental interrogatory response with a 20-page narrative description of eight functionalities and "TODO" comments containing Plaintiff's confidential internal plans. Mot. at 3, Ex. 1, at 6. However, the Court also "recognize[d] the challenges inherent to a case that involves a voluminous amount of asserted trade secret source code." Mot at 3, Ex. 1, at 6. The Court referred to Rule 26 as the vehicle to "provide[] an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification." *Inteliclear, LLC v. ETC Global Holds., Inc*., 978 F.3d 653, 662 (9th Cir. 2020).

In denying Defendants' Motion to Compel Plaintiff to Identify its Trade Secrets Pursuant to California Code of Civil Procedure § 2019.210, the Court instructed that "if either party believes the other has not adequately responded to discovery requests under Rule 26," that party should "raise these disputes with the Special Master." Ex. 1, at 6. The Court emphasized that both "parties should proceed expeditiously with discovery." *Id*. The Court also directed that, for any trade secret not included in Exhibits O and Q to the operative pleading, Plaintiff must "describe what those trade secrets are and where they can be found for the benefit of the Court, Special Master, and defendants." *Id*.

Thereafter, Plaintiff explains that "[i]n response to an order from the Special Master, Meishe has provided two 'exemplary' lists of 'identified functions/structures/etc.' with allegedly copied source code. The first list identifies less than 100 Meishe source code files. See Ex. 16. The second list contains 7 new Meishe source code files. See Ex. 17. On Nov. 19, 2024, Defendants sent a letter to Meishe identifying multiple deficiencies in Meishe's interrogatory responses. See Ex. 18. Defendants noted that Meishe had not identified the protectable elements of its asserted copyrights or the asserted trade secrets associated with the millions of lines of source code in Meishe's 346-page exhibit. See id." Mot. at 4.

"On Dec. 6, 2024, during a Status Conference with the Court, Defendants confirmed with Judge Illston that Defendants could still raise the issue of trade secret identification with the Special Master, pursuant to Rule 26. Ex. 19, at 7:2–14." Mot. at 4.

"On Dec. 9, 2024, Meishe responded, claiming it had already identified its asserted copyrighted source code in its interrogatory responses and that 'Meishe's asserted source code is both copyrightable (and copyrighted) and original.' See Ex. 20. Meishe asserted that it had not been ordered to identify all alleged lines of code and that the previously provided list was merely "exemplary." Mot. at 4. Meishe also confirmed it was not asserting any non-literal elements of its software under copyright but was only asserting the "actual source code," i.e., the literal elements of its software. Mot. at 4. Meishe also claimed that its trade secret identification in its pleadings and discovery responses was deemed sufficient by the Court and refused to supplement it. Mot. at 4.

## II. LEGAL STANDARDS

### A. *Relevance and Proportionality*

Federal Rule of Civil Procedure 37 enables the propounding party to bring a motion to compel responses to discovery. Fed. R. Civ. P. 37(a)(3)(B). Under Federal Rule of Civil Procedure 37, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). The court may order a party to provide further responses to an "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4).

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The party seeking to compel discovery has the burden of establishing that its request satisfies the relevance requirement of Rule 26 of the Federal Rules of Civil Procedure. *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Parties may obtain discovery regarding "any matter that bears on or that reasonably could lead to other matters that could bear on any issue that is or may be raised in the case." *Vasudevan Software, Inc. v. Int'l Bus. Mach. Corp.*, No. 09-cv-5897 RS, 2011 WL 1599646, *1 (N.D. Cal. Apr. 27, 2011). Relevancy should be "construed liberally and with common sense." *Soto*, 162 F.R.D. at 610 (internal citation omitted).

Relevant information need not be admissible at trial to be discoverable. *Id*. Additionally, district courts have broad discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Relevancy, for purposes of discovery, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Nguyen v. Lotus by Johnny Dung Inc.*, No. 8:17-cv-01317-JVS-JDE, 2019 WL 3064479, at *1 (C.D. Cal. June 5, 2019) (internal citations and quotation marks omitted). "[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Id.*

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering, among other things, "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). Contention interrogatories are governed primarily by Rule 33(a)(2): "An interrogatory may relate to any matter that may be inquired into under Rule 26(b). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." *See e.g. Auris Health, Inc. v. Noah Med. Corp.*, 2023 U.S. Dist. LEXIS 161870, 2023 WL 5959427, *9, (N.D. Cal. Sept. 12, 2023).

B. ***Supplemental Responses to Discovery***

"A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." Fed. R. Civ. P. 26(e)(1).

If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions. See Fed. R. Civ. P. 37(a)(3)(A).

Rule 37(c)(1) forbids "the use at trial of any information required to be disclosed by Rule 26(a) or (e) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106 (9th Cir. 2001).

## III. DISCUSSION

Defendants' motion seeks supplemental responses to several Interrogatories requesting specific details regarding Plaintiff's trade secrets and copyright claims. In particular, the conclusion of Defendants' Motion seeks an order compelling Plaintiff to provide "fulsome responses to Interrogatory Nos. 1, 7, 8, 20 and 31." Mot. at 15. Given this specifically requested relief, the motion seeks to compel supplemental responses to Interrogatories.

Defendants propounded the subject Interrogatories at the outset of discovery, approximately three years ago. Plaintiff's responses thereto originally preserved objections, but over time and through supplemental responses, Plaintiff provided more substantive responses.

On February 22, 2023, Plaintiff supplemented its responses to include a 65-page identification of hundreds of allegedly-copied Meishe files and corresponding Defendant source code. Mot. at 2, Ex. 5 (now FOAC, Ex. P).

On May 11, 2023, Plaintiff supplemented its interrogatory responses for its asserted copyrights with a 346-page exhibit containing thousands of source code files. Mot. at 2, Ex. 6 (now FOAC, Ex. O).

On October 25, 2023, Plaintiff revised what is now Exhibit P to the FOAC to accuse

additional versions of source code Defendants had produced; Defendants argue that this did not include any further analysis supporting its expanded allegations. Mot. at 2, Ex. 7.

On November 5, 2024, Plaintiff supplemented its responses to the subject Interrogatories. Mot. at 2, Ex. 2.

***A. Reasonable Particularity Standard***

Briefing on both sides refers to the "reasonable particularity" standard. The "reasonable particularity" standard is often applied at the outset of discovery in trade secret cases, such as in cases where California Code of Civil Procedure section 2019.210 applies, or in cases where a court has otherwise required a plaintiff to first reasonably particularize its list of alleged trade secrets before being permitted to delve into discovery regarding the defendant's sensitive information.[3] However, this case is not at the outset of discovery; fact discovery closes in less than two months.

However, the undersigned is not persuaded that an initial "reasonable particularity" standard is appliable to this particular motion. The instant motion seeks to compel supplemental responses to Interrogatories that completely answer all subparts of the Interrogatories. The motion does not ask a plaintiff to prepare an initial identification of alleged trade secrets with sufficient "particularity" to warrant allowing the plaintiff to delve into the defendant's sensitive materials. Indeed, Plaintiff has ***already*** been permitted discovery into Defendant's sensitive materials, and Plaintiff has ***already*** provided an initial identification of its trade secrets – which the Court found sufficient for purposes of the pleading stage. The undersigned finds that this

---

[3] California Code of Civil Procedure § 2019.210 provides that "[i]n any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act . . ., before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity[.]" "'Reasonable particularity' mandated by [S]ection 2019.210 does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation. Nor does it require a discovery referee or trial court to conduct a miniature trial on the merits of a misappropriation claim before discovery may commence. Rather, it means that the plaintiff must make some showing that is reasonable, i.e., fair, proper, just and rational." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835-36 (2005) (citations omitted). A trade secret identification should be "liberally construed, and reasonable doubts about its sufficiency [should be] resolved in favor of allowing discovery to go forward." *Brescia v. Angelin*, 172 Cal. App. 4th 133, 149 (2009) (applying Section 2019.210.).

case has progressed past the initial stages where the "reasonable particularity" standard is typically applied.

Indeed, no "reasonable particularity" showing has been formally required of Plaintiff in this case. The Court previously denied Defendants' motion to apply California Code of Civil Procedure section 2019.210 (and its "reasonable particularity" requirement), and based on the allegations in the pleading and the exhibits thereto, the Court allowed discovery to go forward. However, Plaintiff has not shown that this effectively insulated Plaintiff from responding to any future discovery requests seeking details regarding Plaintiff's claimed trade secrets or copyrights. For purposes of preparing its defenses, then, Defendants are entitled to relevant, proportionate discovery regarding the specifics and details of Plaintiff's claims – even if those claims were previously found to be sufficient for purposes of permitting Plaintiff to conduct discovery.

Moreover, the issue framed in the instant motion is not whether ***Plaintiff*** has made a certain threshold showing entitling it to engage in discovery regarding ***Defendant's*** sensitive information; instead, ***Defendant*** seeks to discover specifics and details regarding ***Plaintiff's*** claims for purposes of preparing defenses thereto. Therefore, the "reasonable particularity" cases cited in the parties' papers do not fit the procedural posture of this case and are not particularly analogous, as discussed below.

Defendant argues that Plaintiff must identify its trade secrets with "*sufficient particularity* to separate [them] from matters of general knowledge in the trade or of special knowledge of those persons… skilled in the trade." *See InteliClear, LLC v. ETC Glob. Holdings, Inc*., 978 F.3d 653, 658 (9th Cir. 2020) (emphasis in original). This standard may ultimately apply when it comes time for summary judgment or trial. However, in *Inteliclear,* "particularity" was required in the context of "***prov[ing]*** ownership of a trade secret" – **not** in the context of a motion to compel supplemental responses to certain Interrogatories. *See id.* ("To ***prove*** ownership of a trade secret [on summary judgment], plaintiffs 'must identify the trade secrets and carry the burden of showing they exist.' [Citation.] "The plaintiff 'should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade.") (emphasis added)

(citation omitted) (reviewing trial court's grant of summary judgment and holding "there is at least a genuine dispute as to whether InteliClear was successful in identifying at least one trade secret with sufficient particularity."). The undersigned is not persuaded that the "particularity" standard applied to the summary judgment ruling under review in *InteliClear* applies to the instant motion to compel supplemental responses to Interrogatories. However, in moving to compel Plaintiff's supplemental responses to these Interrogatories, Defendant seeks to more precisely pin down what Plaintiff is alleging so that Defendant can prepare specific defenses thereto. The undersigned notes that, importantly, this is not the same as requiring Plaintiff to ***prove*** its claims.

Plaintiff argues that (Opp'n at 3), as discussed in *Genentech*, "[a]bsent a showing that the details alone, without further explanation, are inadequate to permit the defendant to discern the boundaries of the trade secret so as to prepare available defenses, or to permit the court to understand the identification so as to craft discovery, *the trade secret claimant need not particularize* how the alleged secret differs from matters already known to skilled persons in the field." *See Genentech, Inc. v. JHL Biotech, Inc.*, No. C 18-06582 WHA, 2019 U.S. Dist. LEXIS 36140, at *47-48 (N.D. Cal. Mar. 1, 2019) (emphasis added) (addressing whether "reasonable particularity" was shown for purposes of request ***for a preliminary injunction***). However, the undersigned is not persuaded that *Genentech* applies here. That case, and others cited in Plaintiff's papers, describe the "reasonable particularity" standard in different contexts, such as in seeking a preliminary injunction. *See id.* Those cases did not involve motions to compel supplemental responses to certain Interrogatories with two months remaining before the close of fact discovery.

The undersigned finds that level of specificity ultimately needed to surpass the pleadings stage, or to ***prove*** trade secret or copyright claims at trial, or to withstand summary judgment, or to obtain a preliminary injunction, is not determinative here. Instead, for the instant motion the issue is whether Defendant's Interrogatories seek ***relevant*** information that is ***proportional*** to the needs of the case, and whether Plaintiff's response to each Interrogatory is ***complete***. *See* Fed. R. Civ. Proc. 26.

### *B. Supplemental Interrogatories re: Details of Trade Secret Claims*

Defendants' Interrogatory Nos. 1 and 8 seek details and specifics regarding Plaintiffs' trade secret claims.[4]

Defendants' papers argue that Plaintiff's responses to these Interrogatories are, at present, incomplete. Mot. at 5-7; Ex. 16 at 6, 10 ("CNvCommonImageReader::OpenFile" and "NvConvertNvTimeToMillisecond") ("Meishe has identified basic source code functions such as opening a file or converting time to milliseconds as its alleged trade secrets . . . . ***If Meishe contends that the verbatim text of its code is itself a trade secret, it must supplement its interrogatory response to say so, including specific identification of lines of code for which it asserts the verbatim text as a trade secret. Otherwise, Meishe must identify the specific functionalities it contends are trade secrets***.") (emphasis added). Defendants argue that "[f]or each alleged trade secret, Meishe must also specify the independent economic value of that alleged trade secret from not being generally known or readily ascertainable. Defendants have sought this information through their Interrogatory No. 8. Meishe's source code does not qualify as a trade secret—even if it was kept secret—if it has no independent economic value by virtue of being secret. See 18 U.S.C. § 1839(3). Meishe has not identified this independent economic

---

[4] **Interrogatory No. 1** states: "Identify with specificity each trade secret, including the Alleged Nonpublic Source Code, that You allege to have been misappropriated in this action. For each trade secret, identify (1) each specific trade secret that each separate Defendant allegedly misappropriated by reciting the specific information comprising the trade secret (e.g., the lines of code in a specific version of source code), (2) the specific portion of any document or file allegedly conveyed to each separate Defendant, if any, in which the alleged trade secret is evidenced, and 3) the methodology (e.g., by emailing, handing, showing, speaking, or otherwise), to the extent known, by which any of those trade secrets were allegedly communicated to each separate Defendant. The identification must separate each asserted trade secret into a numbered list, as shown in the following non-limiting examples. [Chart omitted]. The identification should not include public or generally available information that Meishe does not contend is part of its trade secret(s). If Meishe contends that any of the enumerated trade secrets is a compilation or combination trade secret, then Meishe shall identify the entire compilation or combination (whether any, some, or all of the elements, data, or code is generally or publicly known). If any element of the asserted compilation or combination is itself a trade secret, that information should be separately listed as such." Ex. 2 at 4-5.
**Interrogatory No. 8** states: "Describe the complete factual and legal basis for Your contention that each of Your alleged trade secrets, as identified in Your response to Defendants' Interrogatory No. 1, including the Alleged Nonpublic Source Code, is a trade secret, by providing with respect to each such alleged trade secret: (a) how such alleged trade secret differs from information that is known in the industry or is in the public domain; (b) how such alleged trade secret differs from information that may be derived from examining consumer products and applications; (c) how such alleged trade secret differs from Your Asserted Copyrights or any other patent or patent application; (d) any and all efforts by Meishe to maintain the confidentiality of, restrict access to, or otherwise protect such alleged trade secret; and (e) the person(s) who developed each alleged trade secret." Ex. 2 at 68-73.

value of each asserted trade secret, let alone provided the factual basis supporting its contentions." Mot. at 7.

Defendants cites to the *Auris* case and the *RealD* case as primary support for their argument that supplemental responses to these Interrogatories should be ordered. Mot. at 5-7.

***1. Auris***

The undersigned finds that the legal standard applied in Defendants' cited case of *Auris* applies here, and finds that the case weighs in favor of granting Defendant's motion. Because it is an analogous trade secret case addressing a motion to compel supplemental responses to contention interrogatories, the undersigned quotes extensively from the *Auris* case below.

"The requesting party has the 'burden of justification' to overcome the 'general policy...to defer propounding and answering contention interrogatories until near the end of the discovery period.'" *Auris Health, Inc.* 2023 WL 5959427 at *10 (citing *In re Convergent Technologies Sec. Litigation*, 108 F.R.D. 328, 334-40 (N.D. Cal. Oct. 28, 1985)).

As explained in *Auris*, "the reasonable particularity standard is a pre-discovery test." *Auris Health, Inc. v. Noah Med. Corp.*, 2023 U.S. Dist. LEXIS 161870, 2023 WL 5959427, *13-17 (N.D. Cal. Sept. 12, 2023). "The [reasonable particularity] standard does not establish that Plaintiffs have satisfied their obligation, in the course of discovery, to identify the trade secrets." *Id.* "Federal courts have required plaintiffs in federal cases to meet the reasonable particularity standard, deriving from California Code of Civil Procedure Section 2019.210, prior to commencing discovery." *Id.* (citing *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 658, n.1 (9th Cir. 2020) (citing *Social Apps*, 2012 U.S. Dist. LEXIS 82767, 2012 WL 2203063, at *1-3)). "In contrast, at the discovery phase, the level of detail that a plaintiff must provide in its trade secret disclosures is greater. The Ninth Circuit, reviewing a district court's grant of summary judgment, applied the reasonable particularity standard to determine whether a jury could be instructed to determine what trade secrets exist." *Id.* (citing *InteliClear,* 978 F.3d at 657-660). "At that stage, '[t]he plaintiff should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" *Id.* (citing *InteliClear,* 978 F.3d at

658). "Thus, Plaintiffs' expert declaration does not support their position that they have completed their trade secret disclosures as to all their asserted trade secrets." *Id.*

"However, this shortcoming does not mean that Plaintiffs are obligated to complete their responses to Moving Defendants' contention interrogatories (Interrogatories No. 1) at this time. The Court is not persuaded that the contention interrogatories, at this stage, meaningfully advance the case." *Id*. (citing *In re Convergent Techs*., 108 F.R.D. at 338-39). "The contention interrogatories are directed to each and every alleged trade secret. The parties agree, however, that only a subset of the alleged trade secrets will ultimately go to trial. The contention interrogatories will not meaningfully clarify key issues, narrow the scope of the dispute, or facilitate early settlement or dispositive motion practice. Other discovery tools are better suited to reveal which alleged trade secrets Noah Medical has likely misappropriated and which trade secrets may not have been used by Noah Medical because they remained on the personal devices of the individuals without ever being used. That information is in Defendants' possession. Yet Noah Medical and the individual defendants, apart from Romo, had not begun its discovery productions as of August 24, 2023. ***More progress must be made on discovery before Plaintiffs are reasonably required to supplement their responses to Interrogatories No. 1***. After Defendants, in particular Noah Medical, begin and make significant progress on their productions, the alleged trade secrets that lack merit will very likely become more apparent, and then Interrogatories Nos. 1 will be more useful to clarify or narrow the issues in the case. Moreover, requiring a further response regarding the 78 distinct trade secrets against the original defendants would be disproportionate to the present needs of the case." *Id.* (emphasis added)

"After the initial hearing on the discovery disputes, the parties submitted a proposed discovery schedule (ECF No. 93 at 5) that illustrated a middle path between Plaintiffs' claim that their responses to the contention interrogatories were already complete, and Moving Defendants' claim that they are immediately entitled to specific and precise trade secret disclosures early in the discovery process. In this case, sequencing discovery such that Plaintiffs are required to supplement their responses to the contention interrogatories only after sufficient discovery has been completed does not mean that the Court is necessarily adjudicating the merits question of

misappropriation, as Moving Defendants contend. The process of winnowing which trade secrets that will advance and must be identified with sufficient particularity is consistent with the discovery process that the Ninth Circuit has endorsed. In trade secret cases 'discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized identification.'" *Id.* (citing *InteliClear*, 978 F.3d at 662). The Court in *Auris* granted in part Defendants' motion to compel Plaintiffs to "supplement their responses to . . . Interrogatories No. 1 for the trade secrets Plaintiffs propose to take to trial." *Id.* at *17.

The undersigned finds that the legal standard applied in *Auris* applies here. The plaintiffs in *Auris* argued that "their responses to the contention interrogatories were already complete" (*id.* at *16) based on the allegations in their pleading, such that they need not provide any further discovery responses conveying details and specifics about those alleged trade secrets. Here, Plaintiffs take that same position. The defendants in *Auris* argued that they were "immediately entitled to specific and precise trade secret disclosures early in the discovery process." *Id.* at *16-17. Herein, Defendants also seek to discover specific and precise trade secret information, but it is not "early in the discovery process." *See id.* The Court in *Auris* explained that, because the defendants in that case had not yet produced documents or responded to discovery, "progress must be made on discovery before Plaintiffs are reasonably required to supplement their responses." *Id.* at *15-16. Here, however, Defendants are seeking to discover details and specifics from Plaintiff with about two months remaining before the closure of fact discovery. Thus, while the Court in *Auris* phased discovery and granted the defendants' motion to compel plaintiff's supplemental responses with those supplemental responses to be served well after plaintiff's receipt of defendants' own discovery responses, no such phasing is necessary (and none has been requested) here. Defendants have already provided discovery responses and produced documents to Plaintiff. The timing of this motion and the discovery to date satisfies the "general policy" of waiting to require trade secret plaintiffs to "answer[] contention interrogatories until near the end of the discovery period." *See id.* at *10; *see also In re eBay Seller Antitrust Litig.*, No. 07-cv-1882-JF, 2008 WL 5212170, *1 (N.D. Cal. Dec. 11, 2008) ("[C]ourts tend to deny contention interrogatories filed before substantial discovery has taken

place, but grant them if discovery almost is complete.”).

In the Reply, Defendants argue that Plaintiff’s Opposition “mischaracterizes Defendants’ argument and citation to *Auris Health*. Defendants do not seek, as in *Auris Health*, ‘a degree of specificity and precision in the trade secret identification that sounds in patent law.’ Rather, Defendants request that Meishe identify what its trade secrets are. And Meishe has not done so.” Reply at 2. Defendants also argue that the need for the requested supplemental Interrogatory responses are even more pressing than those in *Auris Health* were.[5] Defendants’ arguments are well-taken.

Accordingly, for the same reasons described in *Auris* and quoted above, the undersigned finds that now is an appropriate time for Plaintiff to provide further responses to the Interrogatories seeking details and specifics about its claims.

### *2. RealD*

In addition to *Auris*, Defendant cites to *RealD*, which also addresses a motion to compel supplemental responses to interrogatories in a trade secret case. Mot. at 5-6. Defendant argues that, “[a]t this stage of discovery, the mere identification of lines of source code where an unspecified alleged trade secret may be found is insufficient. Instead, Meishe ‘must identify what portions of the source code constitutes trade secrets’ and what alleged trade secret is associated with each portion so that ‘a court [can] determine whether they meet the definition [of a trade secret].’” Mot. at 6 (quoting *RealD Spark LLC v. Microsoft Corp*., 2023 U.S. Dist. LEXIS 80221, 2023 WL 3304250, *7 (W.D. Wash. May 8, 2023)).

In ordering supplemental responses to interrogatories requesting details about the alleged trade secrets, the court in *RealD* framed the issue as turning on the relevance, proportionality,

---

[5] As Defendants argue (Reply at 3-4), “[t]he *Auris Health* defendants had several months to conduct fact discovery into at most 78 trade secrets. Here, Defendants will have less than two months to conduct fact discovery into a ‘voluminous amount of asserted trade secret source code.’ Mot. Ex. 1 at 6. For example, Defendants will have less than one month to collect and produce textbooks, articles, patents (Meishe and Xin Ao-Te have over 1,000 patents related to audio and video processing), open source software, publications, and other materials, and supplement existing third party subpoenas and serve any additional subpoenas to develop their defenses on trade secrets that have not yet been identified—and which could be far more numerous than those at issue in *Auris Health*.”

and completeness of interrogatory responses with "an eye towards a possible summary judgment motion and, eventually, trial." *RealD Spark LLC v. Microsoft Corp.*, 2023 U.S. Dist. LEXIS 80221, 2023 WL 3304250, *9-10 (W.D. Wash. May 8, 2023).

When responding to interrogatories seeking details of its trade secret claims, the plaintiff in *RealD* "simply incorporated by reference the allegations in its Complaint and parroted the Trade Secrets Categories. [ . . .] RealD then provided a supplemental response on January 31, 2023, that relied on Fed. R. Civ. P. 33(d) and directed Microsoft to 2,857 pages in RealD's discovery production pertaining to the first four categories of the Trade Secrets Categories and said that it would make the source code described in the last category of the Trade Secrets Categories available for inspection." *Id.* at *5.

The court in *RealD* ordered plaintiff to provide supplemental responses. The court explained that in a trade secret case, "the bar for what must be stated in a complaint for purposes of a motion to dismiss is lower than what is expected once a case has progressed to discovery with a protective order entered, as is the situation here. In order for this case to proceed to trial, RealD will need to identify 'specific key aspects' of its source code." *Reald Spark LLC v. Microsoft Corp*., 2023 U.S. Dist. LEXIS 80221, 2023 WL 3304250, *20 (W.D. Wash. May 8, 2023) (citing *Dropzonems, LLC v. Cockayne*, No. C16-2348, 2019 U.S. Dist. LEXIS 225681, 2019 WL 7630788, at *11 (D. Or. Sept. 12, 2019)).

"[T]his case has progressed beyond the motion to dismiss stage. As RealD admits, '[t]he reasonableness or sufficiency of those disclosures [made at the motion to dismiss stage] 'typically arise in the battleground of discovery.'" [Citation to docket.] Discovery has begun, a protective order has been entered, and it is time for the Parties to probe the evidence that will be offered to prove or defend the case with an eye towards a possible summary judgment motion and, eventually, trial." *RealD,* 2023 WL 3304250 at *9-10 (citation omitted).

*RealD* addresses a motion to compel supplemental interrogatory responses seeking details about trade secret claims – fairly analogous to the instant motion. Moreover, the discovery in *RealD* was in an "early stage" (*id.* at *5-6); whereas here, fact discovery closes in approximately two months. This timing weighs even more strongly in favor of requiring Plaintiff to supplement

its Interrogatory responses to provide the details requested. While *RealD* includes citations to summary judgment cases, it is for the rather unobjectionable proposition that discovery should unfold "with an eye toward a possible summary judgment motion." *See id*. *RealD* did not hold that a trade secret plaintiff must ***prove up*** every aspect of all of its claims when assessing the need for supplemental further responses to interrogatories.

Plaintiff challenges *RealD* as not precedential authority, not authority this Court follows[6], improperly reliant on summary judgment authorities to resolve a discovery motion, and improperly importing standards from patent law cases. Opp'n at 5. However, the undersigned finds that the rationale of *RealD* to be reasonable and fairly analogous.

Accordingly, the undersigned finds that *RealD* supports an order requiring Plaintiff's supplemental responses to the Interrogatories at issue. Defendants have shown that Plaintiff's response to the Interrogatory is incomplete. While Plaintiff has provided some substantive information in response to the Interrogatories, Plaintiff's responses do not clearly address ***all*** components of the Interrogatory.

For example, Interrogatory No. 1 requires Plaintiff to identify "each specific trade secret" it alleges, by the "lines of code in a specific version of source code" and to state the "specific portion of any document or file allegedly conveyed" to Defendants, and "how" the trade secret was communicated. Plaintiff's responses to this Interrogatory to date have not provided these specifics for each and every trade secret alleged. Therefore, Plaintiff's response is incomplete. If Plaintiff has this information, it is Plaintiff's obligation to provide it.

Interrogatory No. 1 also asks that, if Plaintiff alleges a "compilation or combination trade secret, then Meishe shall identify the entire compilation or combination (whether any, some, or

---

[6] As to Plaintiff's argument that Northern District of California judges do not follow *RealD*, the undersigned is not persuaded. Opp'n at 5-6. Whether a Court in a different case decided to follow the rationale of RealD would turn on the facts of *that* particular case and would not dictate *RealD's* potential application here. Moreover, Plaintiff's single cited case did not even cite to or discuss RealD; Plaintiff urges the undersigned to look to the *briefing* leading up to the ruling in that case, and then to infer from the court's ruling that the moving party's citation to *RealD* was not persuasive. *See Auris Health, Inc. v. Noah Med. Corp.*, 2024 U.S. Dist. LEXIS 236721, *6, 2024 WL 5294698 (N.D. Cal. Nov. 23, 2024) ("*Auris 2024*"). The undersigned declines to infer from that one ruling's silence as to *RealD* (it does not cite to the case) signifies that *RealD* "is not authority that this Court follows." Opp'n at 5-6.

all of the elements, data, or code is generally or publicly known). If any element of the asserted compilation or combination is itself a trade secret, that information should be separately listed as such." Ex. 2 at 4-5. Therefore, Plaintiff's response is incomplete. If Plaintiff has this information, it is Plaintiff's obligation to provide it.

Further, as discussed during the hearing, Plaintiff's supplemental responses should remove any so-called "mushy language," such as the phrase "including but not limited to." At this point in the discovery process, more definite and specific responses are appropriate.

Also during the hearing, counsel and the Special Master discussed Plaintiff's alleged intellectual property in part by analogizing to an original "novel" being locked in a safe. The concept of chapters in the "novel," or certain "recipes" in a cook book, were analogies for Plaintiff's alleged trade secrets and copyrights. Plaintiff's counsel confirmed that Plaintiff has alleged its entire "novel" (i.e., all of its source code, in its entirety) was allegedly misappropriated here. The Special Master finds that, to carry out this analogy, Plaintiff's supplemental responses must describe, with specifics, whether Plaintiff is alleging the entire "novel" was misappropriated or, otherwise, which specific "chapters" or "sentences" were misappropriated. Similarly, Plaintiff must specify which "recipes" were stolen, and must specify the alleged functionality of each trade secret asserted, i.e., in the manner Defendant suggests. *See e.g.*, Mot. at 5-7; Ex. 16 at 6, 10 ("CNvCommonImageReader::OpenFile" and "NvConvertNvTimeToMillisecond") ("Meishe has identified basic source code functions such as opening a file or converting time to milliseconds as its alleged trade secrets . . . . If Meishe contends that the verbatim text of its code is itself a trade secret, it must supplement its interrogatory response to say so, including specific identification of lines of code for which it asserts the verbatim text as a trade secret. Otherwise, Meishe must identify the specific functionalities it contends are trade secrets.").

***3. <u>Relevance</u>***

The Interrogatories seek relevant information. The requested specifics regarding Plaintiff's alleged trade secrets bear directly on Defendants' defenses and will allow Defendants to produce documents supporting those defenses while fact discovery is still open. Mot. at 1-2.

Reply at 3-4. Plaintiff has not developed any arguments that this discovery seeks ***irrelevant*** information. Accordingly, the undersigned finds that these Interrogatories seeks relevant information regarding the specifics of Plaintiff's trade secret claims.

***4. <u>Proportionality</u>***

Plaintiff argues that providing the specific details the Interrogatories seek would be burdensome to Plaintiff. "Meishe has already provided the necessary information and requiring Meishe to go further would be extremely burdensome." Opp'n at 2. Plaintiff also argues, "Defendants have not shown any grounds to require Meishe to supplement its identification of trade secrets and the supplementation they request is recognized by this Court as akin to patent disclosures and not required. Because further identification is not required and given the volume of misappropriated trade secrets in this case, any requirement for Meishe to further supplement its trade secret identification would be very burdensome and not proportional to the needs of the case. Similarly, Defendants' request for Meishe to supplement its asserted copyright identification is also not supported by this Court's precedents and would also impose a heavy burden on Meishe, particularly given the volume of source code involved." Opp'n at 11.

The undersigned is not persuaded. First, Plaintiff has not "already provided the necessary information" (Opp'n at 2) requested in the Interrogatories; it is not for Plaintiffs to decide what is "necessary" for purposes of Defendants' defenses. Second, Plaintiff has sole knowledge of the breadth and scope of its own claims because it frames those claims; Defendant has propounded discovery designed to ascertain the contours and details of those claims. The requested specifics are proportionate to the needs of the case because they are tied directly to Plaintiff's allegations and seek to flesh out those allegations. Third, the discovery was propounded at the outset of the case, approximately three years ago. This case is no longer in its early stages; fact discovery closes in approximately two months. At this stage, Defendant is entitled to discover specifics regarding every trade secret Plaintiff is continuing to pursue. While Plaintiff need not reveal expert opinions or methodologies, Plaintiff must respond with responsive underlying factual details within its knowledge.

Plaintiff's argument that supplemental responses would be disproportionate to the needs

of the case is also not well-taken. Plaintiff argues that "further identification is not required[,] and given the volume of misappropriated trade secrets in this case, any requirement for Meishe to further supplement its trade secret identification would be very burdensome and not proportional to the needs of the case. Similarly, Defendants' request for Meishe to supplement its asserted copyright identification is also not supported by this Court's precedents and would also impose a heavy burden on Meishe, particularly given the volume of source code involved." Opp'n at 11.

Plaintiff argues that its claims were all previously held to be sufficiently detailed for purposes of the pleading stage, so Plaintiff need not provide any further specifics about its claims beyond what it provided at the pleadings phase. Opp'n at 4; Dkt. No. 466 at 6 ("[t]he Court understands the trade secrets at issue in this case to be encompassed in Exhibits O and Q to the FOAC."). This argument is not well-taken. Plaintiff has not cited authorities showing that trade secret or copyright claims that were held to be sufficiently alleged for pleading purposes are never subject to discovery seeking details beyond what was alleged in the pleading.

Defendants argue that, "[w]ith depositions scheduled in February and the close of fact discovery shortly thereafter, Meishe has yet to identify the trade secrets 'contained' in the thousands of files listed in Exhibit O to its FOAC." Reply at 2. "In its opposition, Meishe admits its alleged trade secrets are not the source code files listed in Exhibit O, but rather some unidentified subset of code or functionality contained within those files. Opp. at 3 (describing 300+ page Exhibit O as "Meishe's non-public source code modules that ***contain*** Meishe trade secrets" (emphasis added)). Exhibit O is a list of thousands of files totaling millions of lines of source code. At this stage of discovery, Defendants should not have to guess what trade alleged secrets might lurk within millions of lines of source code." Reply at 2-3. These arguments are well-taken.

**5. *<u>Other Objections</u>***

Plaintiff's objections to the Interrogatories are not materially advanced in the Opposition. Given that approximately two months remain before the deadline for fact discovery – and for Defendants to frame its defenses specific to Plaintiff's claims – it cannot be said that the

Interrogatories are overbroad or unduly burdensome. Further, Plaintiff did not quantify the burden or otherwise indicate how much time it would take to further respond to the Interrogatory. *See, e.g., Yphantides v. County of San Diego*, No. 21CV1575-GPC(BLM), 2022 WL 3362271, at *7 (S.D. Cal. Aug. 15, 2022) ("A responding party must demonstrate that the discovery sought would be unduly burdensome to produce. [Citation.] To satisfy this burden, the responding party must provide sufficient detail regarding the time, money, and procedures required to produce the requested documents. [Citation.] Unsupported, conclusory statements regarding expense and burden are not sufficient to illustrate why requested discovery is not proportional.") (citations omitted).) The undersigned finds the requested discovery to be proportionate to the needs of this specific case. Indeed, the parameters of the Interrogatories are shaped by the scope and breadth of Plaintiff's own claims.

For all the reasons described in the moving papers (Mot. at 5-7), Plaintiff's responses to these Interrogatories do not clearly provide all of the requested specifics and details pertaining to Plaintiff's trade secrets. Plaintiff's responses to these Interrogatories are therefore incomplete. Defendants have shown entitlement to Plaintiff's supplemental responses regarding alleged trade secrets "***(i) identifying every functionality that Meishe contends constitutes a trade secret and the corresponding source code; (ii) identifying which, if any, lines of source code Meishe contends contain text that is asserted as a trade secret; (iii) for each trade secret, identifying the independent economic value it provides from not being generally known, and (iv) delineating what is asserted as a copyright and what is asserted as a trade secret***." Mot. at 2 (emphasis added). Again, if Plaintiff has this information, it is Plaintiff's obligation to provide it. Plaintiff need not reveal expert opinions or methodologies when providing its supplemental responses.

### *C. Supplemental Interrogatories re: Details of <u>Copyright</u> Claims*

Defendants' Interrogatory Nos. 7, 20, and 31[7] seek details and specifics regarding

[7] **Interrogatory No. 7**: "Describe the complete factual and legal basis for Your contention that Defendants infringed your Asserted Copyrights, and with respect to each Asserted Copyright, separately provide for each named

Plaintiffs' copyright claims. Defendants want Meishe to clearly define its copyrighted works and copyright claims through supplemental responses to these Interrogatories, with Defendants' moving papers highlighting the various ways in which Plaintiff's current responses are incomplete. Mot. at 8-9, Ex. 2 at 66, 99, 122.

Defendants argue that Plaintiff must "specify whether its asserted copyrighted works are all the source codes files in a particular version of its app or SDK, or each separate file individually. Mot. at 8-9. Defendants argue that, at present, Plaintiff's "asserted copyrights remain (1) a voluminous list containing thousands of source code files (Ex. 10, ¶ 4; Ex. 11) and (2) a smaller list containing hundreds of source code files and "software functions" that allegedly comprises source code that Defendants copied (Ex. 10, ¶ 109; Ex. 12)." Mot. at 7-8. According to Defendants, "Meishe has also identified an "exemplary list" of less than 100 source code files from one version of Meishe source code (Meishe app v.1.5) that it contends were copied "verbatim or near-verbatim" in Defendants' audio and video editing source code. See Ex. 16; Ex. 17. Meishe refuses to identify what from this smorgasbord of source code file lists are its asserted copyrighted works—i.e., are Meishe's copyrighted works a collection of many individual files, or separate individual files? This information is critical to the copyright infringement analysis." Mot. at 7-8. "Meishe also refuses to identify what within its as-yet undefined copyrighted works is the protectable expression that Meishe contends was infringed

---

Defendant: (a) the circumstances under which each Defendant came to learn of the Asserted Copyright; (b) how such Asserted Copyright was allegedly misappropriated by each Defendant; (c) the factual bases for Your allegation that each Defendant infringed such Asserted Copyright; and (d) what damages or monetary relief, if any, Meishe claims it is entitled to recover from each Defendant as a result of the alleged infringement of the Asserted Copyrights and the basis for such calculation. To the extent any of Your answers relies on an agency, an alter-ego, corporate relationship, or other theory involving the attribution of knowledge from one person or legal entity to another, identity the legal theory You are relying on and state all facts You contend that support such theory." Ex. 2 at 66-68.

**Interrogatory No. 20:** "Separately for each Asserted Copyright, describe the complete bases for Your contention that Your work protected by the Asserted Copyright is original, including whether it was independently created by its author and possesses a minimal degree of creativity, and the identification of each specific portion of the work that You contend is original, including the software name, corresponding folder name of any produced source code, version number, file name, and line numbers of code." Ex. 2 at 99-106.

**Interrogatory No. 31:** "Separately for each Asserted Copyright, explain whether it is derivative work by identifying the sections of each Asserted Copyright that are derived from any preexisting Asserted Copyright and the sections of each Asserted Copyright that are newly added, as well as the dates you contend these newly added sections were first affixed on a tangible medium of expression." Ex. 2 at 122.

by Defendants." Mot. at 7-8.

In the Reply, Defendants argue that "[y]ears into fact discovery, Meishe refuses to answer the basic question of whether each individual asserted source code file is a separate copyrighted work, or if the collection of files within a particular version of the Meishe app or SDK (e.g., all the asserted source code files in app v1.0) constitutes a copyrighted work. See Opp. at 6–7. Meishe's reliance on its allegations in the FOAC is insufficient. The FOAC defines the collective body of "Copyrighted Works" (plural), not the boundaries of each individual copyrighted work. Mot. Ex. 10 ¶¶ 1." Reply at 4.

Defendants' moving papers primarily rely on the *Vendavo* and *Northwest Home Designing* cases. Mot. at 12-14.

***1. Vendavo***

In *Vendavo*, the plaintiff alleged that a former employee copied his employer's products such that defendants' products were alleged to contain source code that was substantially similar to plaintiff's products. *Vendavo, Inc. v. Price f(x) AG,* No. 17-cv-6930-RS, 2019 WL 1995765, *3 (N.D. Cal. May 6, 2019).

Defendant argues that in *Vendavo*, the defendants served interrogatory requests seeking identification of original portions and preexisting material for each asserted copyright. *See id.* In response, the plaintiff maintained that its entire source code was its original work. *See id.* The plaintiff admitted that portions of the copyrighted work used open-source packages but claimed that those portions were not being asserted. *See id.* The plaintiff produced a 460-megabyte line-by-line comparison of the copyrighted and accused source code that identified every specific match. *See id.* Nevertheless, the court found the plaintiff's response to be insufficient. *See id.* This was because this comparison identified "any matches, ***even if the code [wa]s not copyrightable or original***," including basic noncopyrightable commands and open-source expressions. *See id.* (emphasis added). The court ruled that merely identifying preexisting open-source projects used in the asserted source code was insufficient, "as this fail[ed] to identify portions of the copyrighted code itself" and required defendants to "compare the open source projects with the copyrighted code to determine which portions match." *Id.* at *13-14. The court

ordered the plaintiff to specifically identify the original portions of the asserted copyright by filtering out third-party code and any other preexisting material. *Id*. (holding that "Plaintiff must specifically identify the preexisting material, which includes both code used from open source projects and any other preexisting material.").

Plaintiff argues (Opp'n at 9) that in *Vendavo*, a plaintiff alleged that a former employee copied his employer's products such that defendants' products were alleged to contain source code that was substantially similar to plaintiff's products. *Vendavo,* 2019 U.S. Dist. LEXIS 76387, at *3. The parties' experts were able to load both parties' source code bases into a tool to perform a comparison which generated a .txt file showing matches between the two sets of code. *Id*. at *7. In response to defendant's interrogatory seeking plaintiff to identify and describe original portions of its copyrights and portions that are substantially similar to defendant's accused products, plaintiff sought to rely on that machine generated .txt file as its own copyright identification. *Id*. at 14. The Court found that identification insufficient including because the .txt file had matches of code that were not copyrighted or original. *Id*. The Court ordered Plaintiff to provide supplemental responses "identifying the original portions of the code and any material constituting pre-existing material," among other relief. *Id*. at *18.

Plaintiff argues that here, unlike in *Vendavo*, Plaintiff "has provided a detailed identification of the non-public Meishe source code modules that are Meishe's asserted copyrights. See Ex. 2. Further . . . Meishe has provided Defendants with an identification of Meishe copyrighted source code present in several versions of Defendants' TikTok source code. Moreover, the plaintiff in *Vendavo* stated that some of its copyrighted code was actually open-source material, but Meishe specifically identified its asserted copyrights and stated it was not asserting any public code. *See Vendavo*, 2019 U.S. Dist. LEXIS 76387, at *3. Meishe has provided far more in this litigation than what the plaintiff in *Vendavo* provided when the Court considered whether its identifications were sufficient." Opp'n at 9-10.

In the Reply, Defendants argue that here, "Meishe has not provided a full list of all allegedly copied code like the *Vendavo* plaintiff, only what it contends are examples. Nor has Meishe identified third party libraries and frameworks used in its code, as did the *Vendavo*

plaintiff. Mot. at 13–14. Most importantly, Meishe has not done what the *Vendavo* court ordered: to identify the original portions of its asserted copyrights." Reply at 6.

The undersigned finds that *Vendavo* is fairly analogous here and finds it to weigh in favor of the requested relief. Plaintiff's statement that it is "not asserting any public code" (Opp'n at 9-10) does not render the requested discovery irrelevant or disproportionate to the needs of the case. This is because Defendants have shown that Plaintiff's list of identified copyrighted materials nevertheless appear to include pre-existing and third party code, rendering Plaintiff's statement "cryptic." Mot. at 8-14.[8] The undersigned agrees. Clarification and additional detail is warranted at this stage of the case. ***Plaintiff's supplemental responses to the Interrogatories will clarify the nature and extent of any pre-existing and third party code within Plaintiff's alleged copyrighted material.*** Plaintiff's supplemental responses shall explain "exactly which portions of Meishe files Meishe contends were 'modified' and which were not." Mot. at 13. A vague statement that the file (whether one line or the entire file) was "modified" or the "same" will be insufficient. *Id.*

Accordingly, the undersigned finds that *Vendavo* weighs in favor of the supplemental Interrogatory responses Defendants seek, for the various reasons explained in the moving papers. Mot. at 8-14.

***2. Northwest Home Designing***

In *Northwest Home Designing, Inc. v. Golden Key Constr*., Inc., No. 11–cv–5289 RBL, 2012 WL 1206268, *2 (W.D. Wash. Apr. 11, 2012), the court ordered a plaintiff to provide a more specific response to an interrogatory requesting identification of protectable elements in its asserted copyrights. The court explained that "the mere fact that Plaintiff's work is copyrighted does not mean that every element of the work is protected." *Id*. Without this specific identification, the court understood that it could not perform its duty and undertake the necessary

[8] Defendants also argue that "Meishe admits that every asserted copyright other than Meishe app v.1.0 contains source code files that are 'modified,' 'added,' 'removed,' or 'same' in relation to another asserted copyright. See Mot. at 13. But Meishe refuses to identify which portions of each file are 'modified' and which portions include pre-existing material. This further identification should be ordered." Reply at 6-7.

tests to determine what type of protection—narrow or strong—applied to the asserted copyrights. *See id.*

Plaintiff argues that *Northwest Home* "is distinguishable because the plaintiff there provided a very vague and general description of its protectable expression (house designs). The court found 'plaintiff's response merely identifies the general similarities between the two works, but it does not specify the protected elements.' Unlike *Northwest Home*, this case involves source code and Meishe has identified the specific Meishe source code modules for the asserted copyrights." *Opp'n at 10.*

The undersigned agrees with Plaintiff that *Northwest Home* is not particularly analogous and involved generally-described house design elements, not source code. However, the case is nevertheless an example illustrating that supplemental interrogatory responses are an appropriate vehicle through which a defendant can seek additional specifics and details about the nature of the copyright claims being asserted. *See Northwest Home Designing*, 2012 WL 1206268, at *2 ("Plaintiff must identify the protected elements of its work to determine what level of protection to which it is entitled. [. . .] If Plaintiff were correct, and it was impossible to identify each element of its plans that it alleges is copyright protected, then Plaintiff may not later at trial argue that additional or more specific elements of its plans are protected by copyright.").

The undersigned finds that Defendants have shown that supplemental interrogatory responses are an appropriate mechanism by which Defendants can ascertain the details and specifics of Plaintiff's copyright claims in this case. *See Vendavo,* 2019 U.S. Dist. LEXIS 76387, at *7-18. *Northwest Home Designing*, 2012 WL 1206268, at *2. Plaintiff has not presented authorities supporting its argument that, because it has already provided ***some*** details regarding its copyright claims, it need not respond to ***all*** portions of the Interrogatories seeking other additional details. Defendants' papers itemize the areas where Plaintiff's responses to date have been incomplete (Mot. at 8-14), and Plaintiff has not presented authorities showing that being ordered to provide supplemental responses conveying these additional details and specifics would be irrelevant or disproportionate to the needs of the case.

Accordingly, Plaintiffs shall provide supplemental responses to these Interrogatories.

Once again, as discussed during the hearing, Plaintiff's supplemental responses should remove any so-called "mushy language," such as the phrase "including but not limited to." At this point in the discovery process, more definite and specific responses are appropriate.

***3. Verbatim Copying vs. Substantial Similarity***

Plaintiff argues that because it has identified verbatim copying, Defendants do not need any additional details regarding Plaintiff's copyright claims based on "substantial similarity." "Defendants attempt to sow confusion by arguing that Defendants need more information to assess the substantial similarity test for copyright infringement. But this argument is misleading because Meishe has identified extensive verbatim copying of Meishe copyrighted source code, including the same typos, in multiple versions of Defendants' TikTok Android and iOS source code. Verbatim copying meets the striking similarity test for copyright infringement, so Defendants alleged concerns about being able to assess substantial similarity are unnecessary and misplaced." Opp'n at 8 (citing *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 953 (9th Cir. 2019) ("Two works are strikingly similar when the similarities between them are so great that they are 'highly unlikely to have been the product of independent creation.'") (internal citations omitted).

The undersigned is not persuaded that Plaintiff's allegations of "verbatim copying" renders the requested supplemental responses irrelevant or disproportionate to the needs of the case. In other words, the fact that Plaintiff has identified ***some*** alleged verbatim copying does not mean that Plaintiff may not attempt to claim, ***in addition***, other forms of copyright infringement outside the alleged verbatim copying. Moreover, Defendants' moving papers compellingly explain Defendants' various uncertainties surrounding Plaintiff's copyright claims (Mot. at 8-14). In their Reply, Defendants offer a compelling example of Plaintiff's shifting copyright claims, noting that in Plaintiff's Opposition brief, "Meishe baldly shifts an express claim of 'verbatim or near-verbatim' copying to a 'derivative work' when Defendants' noted

////

////

////

glaring defects in Meishe's identification of alleged copying ordered by the Special Master." Reply at 1, 4-5.[9] Defendants' argument is well-taken.

The undersigned finds that Plaintiff's supplemental responses to the Interrogatories would clarify Plaintiff's copyright claims, enabling Defendants to prepare specific defenses thereto. Defendants argue that "a derivative work must incorporate a protected work in some concrete or permanent form," and must do so at least "substantially." Reply at 5 (citing *Oracle Int'l Corp. v. Rimini St., Inc.*, 123 F.4th 986, 995 (9th Cir. 2024) (emphasis added)). This requires that substantial portions of "actual source code" were copied, as Plaintiff has not asserted copying of non-literal elements. Reply at 5. Defendants argue that, therefore, Plaintiff must identify any "substantial portions" of Meishe code that are allegedly copied. Mot. at 10–11; Reply at 5. Defendants also argue that material incorporated from pre-existing works must itself be copyrightable. Reply at 5 (citing *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1078–79 (9th Cir. 2000)). Defendants argue that, therefore, after identifying allegedly-copied code—including for its derivative works—Plaintiff must identify the protectable elements that it contends was infringed. Reply at 5.

Defendants' arguments are well-taken. The undersigned orders Plaintiff to supplement its Interrogatory responses so as to clearly "identify the exact scope of its asserted copyrights. This identification must include ***(1) the allegedly copied code for any derivative works, (2)***

---

[9] Defendant argues that "Meishe's opposition highlights the prejudice to Defendants from allowing Meishe to withhold the disclosure of its copyright claim. Faced with one of many examples of how Defendants' accused source code is not a copy of Meishe's asserted code, Meishe makes a major and sudden shift in its claims. Meishe identified this example as 'contain[ing] verbatim or near verbatim copied Meishe source code,' but pivots in a footnote in its opposition to asserting that the code is not a copy, but a 'derivative work.' *Compare* Mot., Ex. 16 at 1, *with* Opp. at 9 n.3. Meishe did not previously identify any of the allegedly copied code as "derivative works." The only derivative works identified by Meishe does not include the example Defendants identified. Ex. 37 at 117 (list of 'derived works' that does not include TEStreamingVideoProcessor.cpp). With less than two months until close of fact discovery, Meishe has yet again moved the goal posts. [ . . . ] Nor is this issue limited to the example in Defendants' motion. More than ***one-third*** of the instances of Defendants' alleged 'verbatim or near-verbatim' source code identified by Meishe differs in length by five or more lines from the allegedly copied Meishe code. Ex. 38. E.g., Meishe claims that 9 lines of TikTok code are 'verbatim or near verbatim' of 72 lines of Meishe code. *See id*. at 8 (CNvStreamingEngine::Stop). In multiple instances, the difference in length of allegedly copied lines exceeds ***100 lines of code***. *See, e.g., id*. at 3-5, 6-7. And this does not account for differences in the actual code itself when the ***content*** of the mismatched numbers of allegedly 'verbatim or near-verbatim' source code lines are compared." Reply at 4-5.

***specific identification of its original works, and (3) the specific protectable elements of each copyrighted work Meishe contends has been infringed***." (emphasis added). Further, as discussed during the hearing, if Plaintiff alleges verbatim copying with respect to a particular portion of its source code (or, all of its source code), Plaintiff's supplemental response shall clearly state this fact. Likewise, if Plaintiff alleges that a particular portion of code is a derivative work, Plaintiff's supplemental response shall clearly state this contention. With respect to each and every specific portion of source code Plaintiff asserts, the precise sort of infringement – verbatim or derivative – that Plaintiff contends should be clear from Plaintiff's supplemental responses.

#### ***4. Relevance and Proportionality***

The undersigned finds these Interrogatories seeking details about Plaintiff's copyright claims (Interrogatory Nos. 7, 20, and 31) are relevant and proportionate to the needs of the case for all the same reasons discussed above in analyzing Interrogatories Nos. 1 and 8 regarding trade secrets, as well as for the reasons described in the moving papers. Mot. at 8-14.

Plaintiff's responses to these Interrogatories do not clearly provide all of the requested specifics and details pertaining to Plaintiff's copyright claims. Plaintiff's responses to these Interrogatories are therefore incomplete. (Mot. at 8-14.) Defendants are entitled to Plaintiff's supplemental responses regarding the alleged copyrights, "identifying (i) each individual asserted copyrighted work and (vi) all asserted protectable elements within each copyrighted work." Mot. at 2. Again, if Plaintiff has this information, it is Plaintiff's obligation to provide the information. Plaintiff need not reveal expert opinions or methodologies when providing it supplemental responses.

### D. ***Defendant's Request for Ordering Plaintiff's Supplemental Responses on Shortened Timeframe***

Defendants seek an order requiring prompt supplemental Interrogatory responses from Plaintiff. "Meishe has informed Defendants that it intends to make its witnesses available for depositions from February 10-17, 2025. For example, Meishe's CEO—who authored Meishe source code and is named inventor on several Meishe and Xin Ao-Te patents related to audio and

video editing—has been offered for deposition on February 10. The prejudice to Defendants will be irreparable if Meishe is permitted to ignore its Rule 26 discovery obligations and refuse to participate in the discovery process at this stage of the case." Reply at 7. "Without an alteration of the fact discovery schedule, allowing Meishe any additional time to respond will effectively deny Defendants the relief they seek. For example, without Meishe's full trade secret identification before depositions of Meishe's witnesses, Defendants cannot reasonably question these witnesses on these alleged trade secrets, e.g., whether the specific asserted code tied to Meishe's alleged trade secrets used generally known techniques or third party technology or source code, whether specific asserted source code was developed at Meishe or Xin Ao-Te, and whether alleged trade secrets overlap with related Meishe and Xin Ao-Te patents. And Defendants will have less than a month after the hearing to conduct discovery into any newly identified trade secrets, including investigating and producing public materials disclosing the alleged trade secrets, and to serve any additional subpoenas based on those new trade secrets." Reply at 8.

The undersigned finds that there is a need for prompt supplemental Interrogatory responses from Plaintiff given the fast-approaching cutoff date for fact discovery, which the Court recently continued from March 7, 2025 to March 28, 2025. Dkt. No. 536. As discussed during the hearing, Plaintiff's counsel confirmed Plaintiff's ability to refine its contentions and provide the supplemental responses by March 6, 2025. Defendants' counsel proposed a sooner deadline of February 28, 2025, citing the pressing need due to upcoming deposition dates in this case. The undersigned finds that a compliance deadline of **March 3, 2025**, would be most appropriate here.

***E. Defendant's Request for An Order Prospectively Limiting Plaintiff's Claims***

Defendants argue that "Judge Illston's order on Defendants' § 2019.210 motion cabined Meishe's asserted trade secrets to Exhibits O and Q to the FOAC. Ex. 1, at 6. Yet Meishe refuses to comply with Judge Illston's instruction and continues to leave its alleged trade secrets open-ended and 'exemplary' without further description of what those trade secrets are, as ordered by Judge Illston. Meishe must comply with this order." Mot. at 15. Defendants request that Meishe

be ordered "to provide a final identification of its trade secrets and the protectable elements of its copyrights within one week of the special master's order, and thereafter be limited to that identification." Mot. at 15.

Defendants argue that, as in *Opal Labs,* "if the Court does not limit Plaintiff's trade secret claims to the trade secrets that Plaintiff has already identified, then Defendant will be at a disadvantage when it moves for summary judgment without having had the opportunity to conduct discovery concerning Plaintiff's later-identified trade secrets." *Opal Labs, Inc. v. Sprinklr, Inc.*, No. 3:18-cv-01192-HZ, 2019 U.S. Dist. LEXIS 208870, at *10-11 (D. Or. Dec. 4, 2019)).

Defendant's request for an order prospectively limiting Plaintiff's claims is denied without prejudice. While the undersigned has previously suggested that the Court should look with disfavor upon any documents introduced on summary judgment or at trial that were not produced in discovery, the relief Defendants seek here is more significant: an order that would prospectively limit Plaintiff's claims in this case. While the district judge in *Opal Labs* issued such an order (*see id.*), the undersigned declines to issue such an order *at this time*.

Instead, the undersigned strongly encourages the Court to look with disfavor upon any attempt by Plaintiff to prove up trade secrets not listed in its supplemental Interrogatory responses ordered herein. However, the scope of Plaintiff's permissible trade secret and copyright claims given Plaintiff's supplemental Interrogatory responses (i.e., those ordered herein) may ultimately be an issue for future determination. As Defense counsel Mr. Chaikovsky acknowledged during the hearing, the "good cause" standard should govern whether and when Plaintiff might permissibly make additions to its supplemental responses ordered herein.

## **IV. ORDER APPOINTING SPECIAL MASTER**

On April 4, 2024, the Court entered an Order Appointing Hon. Kendall J. Newman, Ret. As Special Master And Referring Discovery Disputes ("Order Appointing Special Master"). Dkt. No. 423.

The Order Appointing Special Master provides that, "Pursuant to Rule 53(b)(2)(A), the

Special Master shall assist the Court with all discovery disputes and managing the conduct of discovery to promote efficiency and savings of time and cost, and dealing with any other matters which the Court may direct him to undertake. The Special Master shall have the authority to set the date, time and place for all hearings, to preside over hearings, to take evidence, to conduct telephonic conferences to resolve disputes arising during depositions, and to issue orders awarding non-contempt sanctions, including, without limitation, the award of attorneys' fees, as provided by Rules 37 and 45. . . ." Dkt. No. 423 at 2-3.

"Pursuant to Rule 53(e), the Special Master shall issue orders on motions presented to him which shall be final and not require the Court's signature, subject to the parties' right to file objections as described below. If the Special Master considers it advisable to make a Report to the Court, he shall do so in accordance with Rule 53(f)." Dkt. No. 423 at 3-4.

The Order Appointing Special Master includes procedures for objections to the Special Master's orders, reports, and recommendations. "Pursuant to Rule 53(b)(2)(D) and 53(g), the procedures described in paragraphs 14 through 17 herein shall govern any action on the Special Master's orders, reports, and/or recommendations." Dkt. No. 423 at 4. "Any party wishing to file objections to or a motion to adopt or modify the Special Master's orders, reports, and/or recommendations must file such objections or motion with the Court within 14 days from the day the Special Master filed the order, report, and/or recommendation via ECF. Any order issued by the Special Master shall remain in effect pending any such objection or motion." *Id.* at 4.

"Pursuant to Rule 53(g)(3)-(5), the Court shall review findings of fact made or recommended by the Special Master for clear error. The Court shall review de novo any conclusions of law made or recommended by the Special Master. The Court will set aside the Special Master's ruling on a procedural matter only for an abuse of discretion." *Id.* at 4. "Pursuant to Rule 53(g)(1), in acting on an order, report, or recommendation of the Special Master, the Court shall afford the parties an opportunity to present their positions and, in its discretion, may receive evidence, and may adopt or affirm; modify; wholly or partly reject or reverse; resubmit to the Special Master with instructions; or make any further orders it deems appropriate." *Id.* at 4.

## V. SPECIAL MASTER'S FEE ALLOCATION

The Order Appointing Special Master specifies how the Special Master's compensation is to be allocated in this matter. "Pursuant to Rule 53(b)(2)(E) and 53(h), the Special Master shall be compensated at an hourly rate to be set by Judge Newman, Ret. after consultation with the parties, plus the Administrative Fee charged by Judicate West, and shall be reimbursed for any out-of-pocket expenses (e.g., expenses for telephone conference calls). The Special Master shall not charge for travel time. Judge Newman, Ret. shall prepare a monthly invoice for his services, which he shall provide to counsel. Plaintiff and defendants shall each pay half of the monthly invoice, unless the Special Master or the Court directs otherwise. Counsel shall each be responsible for promptly forwarding payment of the Special Master's invoice." Dkt. No. 423 at 3 (Order Appointing Special Master).

Here, the Special Master has complied with this provision and has provided his monthly invoicing to counsel, reflecting the time necessary for the Special Master to address the issues herein, with the assistance of his research attorney.

Rule 53(g) provides further that "The court must allocate payment among the parties after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master."

Here, the Special Master finds that Plaintiff and Defendants shall each pay half of the Special Master's monthly invoice in connection with the instant Order.

The Special Master will file a copy of this Order with the Court, whereupon the Order will also be served electronically on all parties.[10]

## VI. CONCLUSION

For these and all the foregoing reasons, the Special Master hereby **ORDERS** that:

---

[10] Fed. R. Civ. Proc. § 53(d)-(e) ("A master who issues an order must file it and promptly serve a copy on each party. The clerk must enter the order on the docket.") and ("A master must report to the court as required by the appointing order. The master must file the report and promptly serve a copy on each party, unless the court orders otherwise.").

1. Defendants' Motion to Compel Trade Secret and Copyright Information [Issue K] is GRANTED IN PART and DENIED IN PART without prejudice, as follows:

2. For Plaintiff's alleged **trade secret claims**:

   a. Defendants have shown Plaintiff's responses to Interrogatory Nos. 1 and 8 to be incomplete, such that Plaintiff shall serve further responses thereto by close of business on **March 3, 2025**.

      i. Plaintiff must more specifically identify all asserted trade secrets contained in the source code files listed in Exhibit O to the FOAC.

         1. Defendants have shown entitlement to (Mot. at 2) Plaintiff's supplemental responses regarding alleged trade secrets "(i) identifying every functionality that Plaintiff contends constitutes a trade secret and the corresponding source code; (ii) identifying which, if any, lines of source code Plaintiff contends contain text that is asserted as a trade secret; (iii) for each trade secret, identifying the independent economic value it provides from not being generally known, and (iv) delineating what is asserted as a copyright and what is asserted as a trade secret."

         2. If Plaintiff contends that the verbatim text of its code is itself a trade secret, its supplemental responses must say so, and must include specific identification of lines of code for which it asserts the verbatim text as a trade secret. Otherwise, Plaintiff must identify the specific functionalities it contends are trade secrets.

ii. Plaintiff's supplemental responses should remove any so-called "mushy language," such as the phrase "including but not limited to."

iii. Plaintiff must identify the factual bases[11] for the alleged independent economic value each specific asserted trade secret provides from not being generally known or readily ascertainable.

iv. Plaintiff need not reveal expert opinions or methodologies when providing its supplemental responses.

b. Plaintiff must make its witnesses available for deposition again after fact discovery closes should it alter its disclosure of alleged trade secrets in any way after its witnesses have been deposed.

c. The undersigned strongly encourages the Court to look with disfavor upon any attempt by Plaintiff to prove up trade secrets not listed in Plaintiff's supplemental responses ordered herein.

i. However, Defendant's request for an order prospectively limiting Plaintiff's claims is DENIED WITHOUT PREJUDICE. The undersigned declines to issue what would be, in effect, a ***prospective*** discovery sanction that would limit Plaintiff's claims in this case. Depending on the information included within Plaintiff supplemental Interrogatory responses ordered herein, the scope of Plaintiff's permissible trade secret claims will ultimately be an issue for the Court to determine.

3. For Plaintiff's **copyright claims**:

---

[11] Plaintiff's supplemental response identifying these factual bases shall include all facts, documents, witnesses, and evidence known to Plaintiff, and shall include explanations of how that evidence generally supports the alleged independent economic value(s), but need not reveal expert opinions, methodologies, or calculations. As previously discussed in the undersigned's Order regarding Issue J (Dkt. No. 538 at 22), the undersigned recognizes that calculations and numbers may change based on the analyses and opinions of Plaintiff's experts.

a. Defendants have shown Plaintiff's responses to Interrogatory Nos. 7, 20, and 31 to be incomplete, such that Plaintiff shall serve further responses thereto by close of business on **March 3, 2025**.

i. Defendants have shown entitlement to (Reply at 5) supplemental Interrogatory responses that "identify the exact scope of Plaintiff's asserted copyrights. This identification must include (1) the allegedly copied code for any derivative works, (2) specific identification of its original works, and (3) the specific protectable elements of each copyrighted work Plaintiff contends has been infringed.

1. If Plaintiff alleges verbatim copying with respect to a particular portion of its source code (or, all of its source code), Plaintiff's supplemental response shall clearly state this fact. Likewise, if Plaintiff alleges that a particular portion of code is a derivative work, Plaintiff's supplemental response shall clearly state this contention. With respect to each and every specific portion of source code Plaintiff asserts, the precise sort of infringement – verbatim or derivative – that Plaintiff contends should be clear from Plaintiff's supplemental responses.

2. Plaintiff's supplemental responses should remove any so-called "mushy language," such as the phrase "including but not limited to."

ii. Plaintiff need not reveal expert opinions or methodologies when providing its supplemental responses.

b. Plaintiff must identify all third-party libraries, frameworks, and other source code used in its 326-page exhibit (Exhibit O) by close of business on **March 3, 2025**.

c. Plaintiff must identify all expression in its 326-page exhibit (Exhibit O) it contends is protectable under each asserted copyright by close of business on **March 3, 2025**.

d. Plaintiff must identify whether each individual copyrighted work is the collection of source code for a single version of its app/SDK or instead an individual source code file by close of business on **March 3, 2025**.

e. To the extent Defendants request an order prospectively limiting Plaintiff's copyright claims, that request is DENIED WITHOUT PREJUDICE. The undersigned declines to issue what would be, in effect, a prospective discovery sanction that would limit Plaintiff's claims in this case. Depending on the information included within Plaintiff supplemental Interrogatory responses ordered herein, the scope of Plaintiff's permissible copyright claims will ultimately be an issue for the Court to determine.

4. The undersigned is mindful of the equities and concerns presented if Plaintiff later attempts to introduce or rely on a third party's documents, i.e., after having claimed an inability to access such documents due to a lack of "control" over them. Whether Plaintiff does or does not ultimately have access to or control over such documents, the undersigned strongly encourages the trial judge to look with disfavor upon documents introduced by any party during summary judgment proceedings and/or trial proceedings where that party previously claimed to lack control over such documents during discovery.

5. Plaintiff and Defendants shall each pay half of the Special Master's monthly invoice in connection with the instant Order.

IT IS SO ORDERED.

Dated: February 7, 2025

Kendall J. Newman

Honorable Kendall J. Newman (Ret.)
Special Master