1
2
3
4
5

Judicate West
980 9th Street, Ste. 2200
Sacramento, CA 95814
Phone: 916 394-8490
Fax: 916 394-8495

Kendall J. Newman
Special Master

6
7
8
9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17

BEIJING MEISHE NETWORK
TECHNOLOGY CO., LTD.,

              Plaintiff,

vs.

TIKTOK INC., et al.

              Defendants.

Case No. 23-cv-06012-SI
Judge Susan Illston


JW CASE NO.:   A314886


SPECIAL MASTER'S ORDER[1]
REGARDING PLAINTIFF'S MOTION TO
COMPEL SOURCE CODE PRINTOUTS

18
19
20
21
22

      The undersigned Special Master issues the following Order regarding Plaintiff's Motion
to Compel Source Code Printouts.

      On February 6, 2025, counsel appeared before the undersigned for a hearing regarding
Plaintiff's Motion.[2]  The Special Master previously directed (Dkt. No. 528) that the instant

23
24
25
26
27
28

[1] "Pursuant to Rule 53(e), the Special Master shall issue orders on motions presented to him which shall be final and
not require the Court's signature, subject to the parties' right to file objections as described below. If the Special
Master considers it advisable to make a Report to the Court, he shall do so in accordance with Rule 53(f)."  Dkt. No.
423 at 3-4.
[2] The Court originally set the non-expert discovery cutoff deadline as March 7, 2025, with expert designations
originally set for March 28, 2025.  Dkt. No. 492.  On February 3, 2025, the Court approved the parties' Joint
Stipulation re Schedule, extending the non-expert discovery cutoff deadline to March 28, 2025, and setting expert
designations for April 18, 2025. Dkt. No. 536.  The expert discovery cutoff remains June 13, 2025.  *Id.*

1

motion be heard on the same date as Defendants' Motion to Compel Further Identification of Trade Secrets [Issue K].

During the hearing before the Special Master, Robert Harkins, Michael Woods, and Adam Allgood of Cherian LLP appeared on behalf of Plaintiff.  David Okano, Yar Chaikovsky, Andrew Zeve, Philip Ou, and Radhesh Devendran of White & Case, LLP appeared on behalf of Defendants.  A court reporter transcribed the hearing.

Plaintiff's Motion seeks "printouts from Defendants' source code utilized in TikTok app versions 8.4.0, 15.0.0, and 25.0.0 – namely the first version where discovered copying occurred, a middle version (where the first copying in iOS is identified), and a later version (where copying in code produced for all operating systems is identified."  Mot. at 1.  "After providing a similar exemplary list of identified functions/structures/etc. for version 8.4.0, Defendants eventually provided printouts for that version.  Meishe requires a comparable set of printouts for key later versions.  However, Defendants maintain wholesale objections to the specific, analogous print requests from versions 15.0.0 and 25.0.0 and have refused to provide printouts for these later versions."  Mot. at 1.

I.    **BACKGROUND**

This is not the first time Plaintiff has sought to expand the previously agreed-upon limitations on printing hard copies of confidential source code.

The parties' Agreed Protective Order includes a compromise to limit source code printing to no more than 25 continuous pages and 600 pages in total.  Dkt. No. 82 ¶ 24.  On February 22, 2024, Plaintiff filed a motion to amend the Agreed Protective Order. Plaintiff sought to "amend the Texas Protective Order to include that the Receiving Party may request printouts of a cumulative total of one-thousand and one hundred (1,100) pages plus an additional five hundred (500) pages per produced source code version without the agreement of the Producing Party. Further, the limit for continuous pages should be removed completely."  Dkt. No. 401 at 14.

On August 22, 2024, the Special Master denied, without prejudice, the portion of Plaintiff's previous request "to amend the parties' stipulated protective order governing printing so as to increase the total allowable print volume pages of source code and remove the limit on

allowable consecutive pages." Dkt. No. 482 at 5. The Special Master's prior Order (Dkt. No. 482) explained that, for the reasons discussed on the record during the discovery conference on August 16, 2024, Plaintiff had "not shown that any of the printing-limit or page-limit provisions of the Texas Protective Order should be amended at this time. ***Broad, blanket requests for 'more' simply because the scope of the alleged misappropriation in this case has expanded since its outset is not sufficient***." Dkt. No. 482 at 4 (emphasis added).

The Special Master's previous Order explained that, going forward, if Plaintiff seeks "to increase the total allowable print volume of pages of source code and remove the limit on allowable consecutive pages[,] Plaintiff shall use the procedures described in the Texas Protective Order when seeking to alter these or any other such limits, and if intervention by the Court or Referee becomes necessary during that process, ***Plaintiff shall make specific showings tailored to each specific set of additional pages Plaintiff believes to be warranted***." Dkt. No. 482 at 5, 8 (emphasis added).

Thereafter, according to Defendants, on October 8, 2024, Meishe sent Defendants a revised version of its print request totaling 403 pages of Defendants' accused audio and video editing source code on top of the roughly 500 pages already printed – 300 pages in excess of the 600-page limit in the Protective Order. Opp'n at 2. On October 9, 2024, Defendants agreed to print the 403 pages Meishe sought. *Id.*; Exs. O-P.

On November 29, 2024, Meishe requested additional audio and video editing source code printouts for the TikTok U.S. Android apps v15.0.0 and v25.0.0 and TikTok U.S. iOS apps v15.0.0 and v25.0.0. Opp'n at 2; Ex. A. Meishe's print request for the Android apps includes the same files Meishe previously identified for v8.4.0, with only a handful of new source code files. Opp'n at 2. Meishe's request would result in printouts of 1,215 additional pages of source code. Opp'n at 2.

## II.    LEGAL STANDARDS

Upon a showing of "good cause," a court may "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in discovery by "requiring that trade secret or other confidential . . . commercial information not be revealed, or be revealed only in a

specified way." Fed. R. Civ. P. 26(c). In addition, the Court balances the conflicting interests between the protection of Rule 26(c) and the broad access to discovery conferred by Rule 26(b)(1). *See Brown Bag Software v. Symantec Corp*., 960 F.2d 1465, 1472 (9th Cir. 1992).[3]

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "[A] party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case." *Gilead Scis., Inc. v. Merck & Co., Inc*., No. 13-cv-4057-BLF, 2016 WL 146574, *1 (N.D. Cal. Jan. 13, 2016). The Court "***must*** limit the frequency or extent of discovery" if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C) (emphasis added).

A party moving to compel discovery must address "why [nonmoving party's] objections are not justified or why the response provided is deficient, and how proportionality and the other requirements of the Federal Rules of Civil Procedure 26(b) are met." *Campbell v. Facebook, Inc*., No. 13-CV-5996-PJH, 2016 WL 7888026, *1 (N.D. Cal. Oct. 4, 2016). In addition, Local Rule 37-2 states: "For each such request [motion to compel], the moving papers must detail the basis for the party's contention that it is entitled to the requested discovery and must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied."

///

///

---

[3] Plaintiff's moving papers (Mot. at 1-2) assert that, in patent cases in this district, the model "Protective Order authorized by the Northern District of California shall govern discovery unless the Court enters a different protective order." Patent L. R. 2-2; Model Protective Order, available at https://www.cand.uscourts.gov/forms/model-protective-orders/; *see generally Acer America Corp. v. Technology Properties*, 2009 U.S. Dist. LEXIS 46834, at *1 (N.D. Cal. May 14, 2009). "Accordingly, the court treats the model protective order as setting forth presumptively reasonable conditions regarding the treatment of highly confidential information." *Kelora Sys., LLC v. Target Corp*., 2011 U.S. Dist. LEXIS 96724, at *2 (N.D. Cal. Aug. 29, 2011). The model protective order provides that a party "may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in paragraph (c) in the first instance." Model Protective Order, § 9(d).  The undersigned is not persuaded that *Kelora* offers helpful guidance here.  First, this is not a patent case.  Second, *Kelora* involved the court's issuance of a protective order in the first instance.  *See Kelora*, 2011 U.S. Dist. LEXIS 96724, at *6-8.  Here, however, the issue is not whether a protective order should issue; instead, the terms of the parties' longstanding Agreed Protective Order already governs the current dispute regarding printed pages of source code beyond agreed-upon limits.

### III.    DISCUSSION

#### A. Reasonable Need and Good Cause for Printing

Plaintiff argues that while "the Agreed Protective Order in this case, while silent on a definition of 'permitted purpose' or 'reasonable need' [. . .] allows that a 'party may include excerpts of source code in a pleading, exhibit, expert report, discovery document, deposition transcript, or other Court document.'" Mot. at 2-3; Ex. C, Agreed Protective Order, Dkt. No. 82 at ¶¶ 24, 32.  Plaintiff argues that "[w]ith the fact discovery cutoff in this case set for March 7, 2025, and the opening expert reports due on March 28, 2025, the requested printed source code may be utilized in upcoming depositions as well as to create exhibits to attach to expert reports, such as side-by-side comparisons of different versions of the copied code."  Mot. at 2-3.

Plaintiff seeks an order permitting "additional narrowly-tailored printouts of source code from specific versions of Defendants' produced source code," *not* "printouts of all 25 Android and 14 iOS ByteDance source code versions."  Mot. at 3.  Plaintiff has "provided specific exemplary lists of identified functions/structures/etc. contained in Meishe app 1.5 with the corresponding ByteDance/TikTok analogues contained in the produced ByteDance/TikTok v. 8.4.0, v.15.0.0 and v.25.0.0 source code (including separately identified iOS versions) – with identified line numbers."  Mot. at 3 (citing correspondence at Exs. F, B, and G).

Defendants respond that "[b]ecause Meishe refuses to reasonably identify its Asserted IP, it has articulated no good cause for more printouts at this time.  Trial is almost a year away and Defendants have agreed to make a source code computer available during depositions.  Meishe and its experts remain free to inspect Defendants' source code.  Meishe's motion is premature and should be denied."  Opp'n at 1.

Defendants argue that "Defendants' source code has been—and will continue to be— available to Meishe for inspection. This is enough. There is no good cause for additional ***printouts*** until Meishe more reasonably identifies its Asserted IP." Opp'n at 3 (emphasis added).

Defendants also argue that "Meishe's assertion that good cause exists for further source code printouts because it may use them in depositions, expert reports and/or trial is speculative and unfounded. For depositions, Defendants agreed to make a source code computer available,

obviating the need for source code printouts. Expert reports are months away and Meishe's experts remain free to inspect Defendants' source code in person—which is mandated by the Protective Order over using printouts to review source code in the first instance outside the protections of the source code room. Trial is almost a year away. Meishe has not identified a specific, imminent need for source code printouts that cannot wait until resolution of Defendants' upcoming motion to compel."  Opp'n at 5.

On Reply, Plaintiff completely ignores Defendants' assertion that Defendants will "make a source code computer available" during depositions going forward in this case, thereby "obviating the need for source code printouts."  Opp'n at 5.  The undersigned agrees with Defendants that the availability of a source code computer during remaining depositions would significantly undercut Plaintiff's articulated need for printed source code at this time.  The undersigned also finds that Plaintiff's papers fail to compelling explain *why* it requires the additional *printed* pages when its experts remain able to fully inspect Defendants' source code in person – and to be questioned thereon during depositions through source code computers.

The undersigned finds that Plaintiff has not specifically articulated *why* it needs to *print hard copies of source code* at this time.  Just as the undersigned explained in denying Plaintiff's prior motion for additional printed pages, broad descriptions of Plaintiff's blanket need for printouts to use in "depositions" or for "summary judgment" or at "trial" are not sufficient to show a need to print additional pages of sensitive and confidential source code *now*. See Dkt. No. 482 at 4, 5, 8 ("***Broad, blanket requests for 'more' simply because the scope of the alleged misappropriation in this case has expanded since its outset is not sufficient***[;]" and if Plaintiff seeks "to increase the total allowable print volume of pages of source code and remove the limit on allowable consecutive pages[,] . . . ***Plaintiff shall make specific showings tailored to each specific set of additional pages Plaintiff believes to be warranted***.") (emphases added).

While Plaintiff's motion does include specifics as to which versions of source code it wants to print, Plaintiff's motion does not include any detailed explanation as to why ***printing*** is necessary at this particular time.  The undersigned finds that, while printing certain additional pages of source code may well be necessary at some point in the future, even the near future,

Plaintiff has not shown that printing is necessary now.  For these reasons, and also given the undersigned's ruling on Defendants' motion for specificity [Issue K] (also heard on February 6, 2025), the undersigned finds that Plaintiff has not shown good cause for an order directing Defendants to provide the additional requested printed pages at this time.  Therefore, Plaintiff's Motion must again be denied, without prejudice.

### B.  Potential Mootness

Defendants also argue in part that Defendants' motion to compel Plaintiff to more specifically identify its trade secrets and copyrights at issue [Issue K], which was also heard on February 6, 2025, will "moot some or all of Meishe's source code print demand."  Opp'n at 1. According to Defendants, "Resolution of [Issue K] will require Meishe to tie allegedly copied code to its Asserted IP in a way that allows Defendant to identify representative versions of specifically accused source code related to audio and video editing tied to Meishe's Asserted IP." Opp'n at 1.

Plaintiff responds that Defendants' Motion to Compel [Issue K] "will not moot Meishe's source code print demand."  Reply at 2.   Rather than explaining how further specificity regarding alleged trade secrets and copyrights would not moot Plaintiff's request for more printouts, however, Plaintiff simply lists Defendants' prior attempts to obtain more specificity regarding Plaintiff's alleged trade secrets and copyrights at issue, and frames Defendants' Motion to Compel [Issue K] as another step in that campaign.  Reply at 2-3.

Both sides disagree as to which should be required to provide "representative versions" of the relevant software.  Opp'n at 4-5; Reply at 3 (arguing that because Defendants refuse to provide representative versions, Plaintiff has done so).

The undersigned agrees that the Order addressing Defendants' motion to compel Plaintiff to more specifically identify its trade secrets and copyrights at issue [Issue K] hopefully will impact the scope of Plaintiff's request for printed pages of source code.  Plaintiff's providing additional details and specifics regarding its alleged trade secrets and copyrights might potentially narrow the portion(s) and version(s) of relevant source code at issue, thereby potentially narrowing the scope of the source code arguably warranting printing.  Therefore,

given the undersigned's determinations as to Issue K, at this time Plaintiff's instant motion is denied, without prejudice.

### C. Confusion re: Defendant's Agreement to Provide "Newly Identified" Pages

"Defendants agreed to provide the printouts Meishe requested for TikTok U.S. Android and iOS v25.0.0 – corresponding to newly identified files. This amounted to 625 pages. As a result, Defendants have agreed to provide Meishe with 1,527 printed pages of Defendants' highly confidential audio and video editing source code." Opp'n at 2. "Defendants maintained their objections to producing printouts of audio and video editing source code files from later versions of the TikTok app that (1) existed in the earliest accused version of the TikTok Android app, and (2) Defendants have already produced. Meishe's failure to connect alleged copying in this earliest accused version to its Asserted IP will be the subject of Defendants' forthcoming motion to compel further identification of Meishe's alleged trade secrets and asserted copyrights[,]" i.e., Issue K. Opp' at 2. However, Plaintiff argues "Defendants did not specifically identify which requested printouts from version 25.0.0 they would not be providing" when providing only "newly identified files." Reply at 2 (noting Defendants "refused to provide any requested printouts for both Android and iOS version 15.0.0" and noting dispute between file names and their contents across versions of software).

The undersigned finds, however, that because Plaintiff has not shown entitlement to additional printed pages at this time, the parties can meet and confer on these issues between now and any future request for additional printed pages. Further meet and confer should resolve the confusion regarding the "newly identified files" and the other similar issues Plaintiff raise in Reply.

## IV.    ORDER APPOINTING SPECIAL MASTER

On April 4, 2024, the Court entered an Order Appointing Hon. Kendall J. Newman, Ret. As Special Master And Referring Discovery Disputes ("Order Appointing Special Master"). Dkt. No. 423.

The Order Appointing Special Master provides that, "Pursuant to Rule 53(b)(2)(A), the Special Master shall assist the Court with all discovery disputes and managing the conduct of

discovery to promote efficiency and savings of time and cost, and dealing with any other matters which the Court may direct him to undertake. The Special Master shall have the authority to set the date, time and place for all hearings, to preside over hearings, to take evidence, to conduct telephonic conferences to resolve disputes arising during depositions, and to issue orders awarding non-contempt sanctions, including, without limitation, the award of attorneys' fees, as provided by Rules 37 and 45. . . ."  Dkt. No. 423 at 2-3.

"Pursuant to Rule 53(e), the Special Master shall issue orders on motions presented to him which shall be final and not require the Court's signature, subject to the parties' right to file objections as described below. If the Special Master considers it advisable to make a Report to the Court, he shall do so in accordance with Rule 53(f)."  Dkt. No. 423 at 3-4.

The Order Appointing Special Master also includes procedures for objections to the Special Master's orders, reports, and recommendations. "Pursuant to Rule 53(b)(2)(D) and 53(g), the procedures described in paragraphs 14 through 17 herein shall govern any action on the Special Master's orders, reports, and/or recommendations."  Dkt. No. 423 at 4.  "Any party wishing to file objections to or a motion to adopt or modify the Special Master's orders, reports, and/or recommendations must file such objections or motion with the Court within 14 days from the day the Special Master filed the order, report, and/or recommendation via ECF. Any order issued by the Special Master shall remain in effect pending any such objection or motion."  *Id.* at 4.

"Pursuant to Rule 53(g)(3)-(5), the Court shall review findings of fact made or recommended by the Special Master for clear error. The Court shall review de novo any conclusions of law made or recommended by the Special Master. The Court will set aside the Special Master's ruling on a procedural matter only for an abuse of discretion."  *Id.* at 4. "Pursuant to Rule 53(g)(1), in acting on an order, report, or recommendation of the Special Master, the Court shall afford the parties an opportunity to present their positions and, in its discretion, may receive evidence, and may adopt or affirm; modify; wholly or partly reject or reverse; resubmit to the Special Master with instructions; or make any further orders it deems appropriate."  *Id.* at 4.

## V.    SPECIAL MASTER'S FEE ALLOCATION

The Order Appointing Special Master specifies how the Special Master's compensation is to be allocated in this matter.  "Pursuant to Rule 53(b)(2)(E) and 53(h), the Special Master shall be compensated at an hourly rate to be set by Judge Newman, Ret. after consultation with the parties, plus the Administrative Fee charged by Judicate West, and shall be reimbursed for any out-of-pocket expenses (e.g., expenses for telephone conference calls). The Special Master shall not charge for travel time. Judge Newman, Ret. shall prepare a monthly invoice for his services, which he shall provide to counsel. Plaintiff and defendants shall each pay half of the monthly invoice, unless the Special Master or the Court directs otherwise. Counsel shall each be responsible for promptly forwarding payment of the Special Master's invoice." Dkt. No. 423 at 3 (Order Appointing Special Master).

Here, the Special Master has complied with this provision and has provided his monthly invoicing to counsel, reflecting the time necessary for the Special Master to address the issues herein, with the assistance of his research attorney.

Rule 53(g) provides further that "The court must allocate payment among the parties after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master."

Here, the Special Master finds that Plaintiff and Defendants shall each pay half of the Special Master's monthly invoice in connection with the instant Order.

The Special Master will file a copy of this Order with the Court, whereupon the Order will also be served electronically on all parties.[4]

///

///

///

_____

[4] Fed. R. Civ. Proc. § 53(d)-(e) ("A master who issues an order must file it and promptly serve a copy on each party. The clerk must enter the order on the docket.") and ("A master must report to the court as required by the appointing order. The master must file the report and promptly serve a copy on each party, unless the court orders otherwise.").

## VI.    CONCLUSION

For these and all the foregoing reasons, the Special Master hereby **ORDERS** that:

1.  Plaintiff's Motion to Compel Source Code Printouts is DENIED without prejudice.

2.  Plaintiff and Defendants shall each pay half of the Special Master's monthly invoice in connection with the instant Order.

IT IS SO ORDERED.

Dated:  February 7, 2025

_____
Honorable Kendall J. Newman (Ret.)
Special Master