WHITE & CASE LLP
Yar R. Chaikovsky (175421)
yar.chaikovsky@whitecase.com
Philip Ou (259896)
philip.ou@whitecase.com
David T. Okano (278485)
david.okano@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Additional Counsel listed on Signature page

*Attorneys for TikTok Inc., TikTok Pte. Ltd.,*
*ByteDance Ltd., and ByteDance Inc*

COVINGTON & BURLING LLP
John E. Hall (118877)
jhall@cov.com
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Kathryn E. Cahoy (298777)
kcahoy@cov.com
Kurt G. Calia (214300)
kcalia@cov.com
3000 El Camino Real, 10th Floor
5 Palo Alto Square
Palo Alto, California 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

BEIJING MEISHE NETWORK TECHNOLOGY
CO. LTD.,

                    Plaintiff,

         v.

TIKTOK INC., TIKTOK PTE. LTD.,
BYTEDANCE LTD., AND BYTEDANCE INC,

                    Defendants.

Case No. 3:23-cv-06012-SI

**REDACTED VERSION**

**DEFENDANTS' NOTICE OF MOTION
AND MOTION FOR SANCTIONS
PURSUANT TO RULE 37 OF THE
FEDERAL RULES OF CIVIL
PROCEDURE AND THE COURT'S
INHERENT POWER TO ISSUE
SANCTIONS**

Date: August 15, 2025
Time: 10:00 a.m.
Place: Courtroom 1, 17th Floor
Before: Hon. Judge Susan Illston
Trial Date: October 27, 2025

# TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENTS ................................................... 1

II.    FACTUAL BACKGROUND ................................................................................... 2

    A.    ███████████████████████████████████████
         ██████████████████████████████ ................................... 2

    B.    The First Mention of Any ████████████ Was a Hearsay Statement in a
         Meishe Expert Report After the Close of Fact Discovery. ..................................... 5

    C.    Meishe Repeatedly but Falsely Averred to the Court and to the Special Master
         That It Independently Developed the Asserted Code. ............................................ 6

    D.    Meishe Admitted Near the End of Fact Discovery That It ███████████
         ██████████████████████████████████████ ...... 8

    E.    Meishe Concealed Documents Generated from Its Pre-Suit Investigation and
         Violated the Special Master's Order Requiring Their Complete Production. ...... 10

III.   LEGAL STANDARD ....................................................................................... 11

IV.    ARGUMENT .................................................................................................. 12

    A.    Terminating Sanctions Are Warranted for Meishe's Serial Misrepresentations on
         Core Issues and the Resulting Insurmountable Prejudice to Defendants. ............ 13

        1.    Meishe's Willful, Bad Faith Misconduct Concerning Core Issues of
             Ownership and Development of the Asserted Source Code Warrants
             Terminating Sanctions. ............................................................................. 13

            a)    Whether the ███████████ theory that Meishe seeks to present
                at trial was actively concealed during fact discovery or concocted
                thereafter, it constitutes willful, bad faith misconduct worthy of
                case termination. .......................................................................... 14

            b)    Meishe's false representations that it "independently developed"
                the asserted code Meishe now admits came from ██████████
                ██ constitutes willful, bad faith misconduct justifying terminating
                sanctions ...................................................................................... 16

            c)    Meishe's acknowledgement that i █████████████████
                ████████████████████████████ amounts to willful, bad faith misconduct
                warranting terminating sanctions. ................................................. 18

i

2.    The Five *Leon* Factors Further Support Issuing Terminating Sanctions. . 19

a)    The Public and Court Interest Factors Support Termination. ....... 19

b)    The Prejudice to Defendants Factor Supports Termination. ......... 20

c)    The Public Policy Factor Favors Termination. ............................ 20

d)    The Availability of Lesser Sanctions Factor Favors Termination.21

B.    In the Alternative, Evidentiary Sanctions Are Warranted. .................................. 23

1.    Preclude Meishe from presenting any evidence related to the supposed ███████████ never disclosed in discovery.......................................... 23

2.    Deem admitted that the entirety of the asserted code was copied unlawfully from ███████████ and that ███████████████████████ █. ....................................................................................................... 24

3.    Preclude Meishe from offering any evidence concerning measures taken to protect the secrecy of the asserted code ███████████████ ███████████..................................................................... 24

4.    Deem admitted that Meishe's pre-suit comparison of decompiled object code for the TikTok app and Meishe app demonstrated no infringement or misappropriation. ..................................................................... 25

V.    CONCLUSION.......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*,
2015 WL 12732433 (C.D. Cal. Dec. 14, 2015) ................................................................13

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
69 F.3d 337 (9th Cir. 1995) ................................................................20, 21

*Arnold v. Cnty. of El Dorado*,
2012 WL 3276979 (E.D. Cal. Aug. 9, 2012) ................................................13, 16, 18

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (9th Cir. 1991) ................................................................11

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
482 F.3d 1091 (9th Cir. 2007) ................................................................ *passim*

*ConsumerDirect, Inc. v. Pentius LLC*,
2023 WL 8876198 (C.D. Cal. Sept. 21, 2023) ................................................................23

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
2019 WL 6527951 (S.D. Cal. Dec. 4, 2019) ................................................................20

*Facebook, Inc. v. OnlineNIC Inc.*,
2022 WL 2289067 (N.D. Cal. Mar. 28, 2022) ................................................11, 13, 18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ................................................................15

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
655 F. Supp. 3d 899 (N.D. Cal. 2023) ................................................................16

*Indiezone, Inc.. v. Rooke*,
2014 WL 4354122 (N.D. Cal. Sept. 2, 2014) ................................................................21

*Innospan Corp. v. Intuit Inc.*,
2011 WL 2669465 (N.D. Cal. July 7, 2011) ................................................................23

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006) ................................................................13, 19, 21

*Loop AI Labs Inc. v. Gatti*,
2017 WL 934599 (N.D. Cal. Mar. 9, 2017) ................................................................20

*Madrid v. Woodford*,
2004 WL 2623924 (N.D. Cal. Nov. 17, 2004) ................................................................16

*MAI Sys. Corp. v. Peak Computer, Inc.*,
  991 F.2d 511 (9th Cir. 1993) ...................................................................16

*Moonbug Ent. Ltd. v. Babybus (Fujian) Network Tech. Co., Ltd.*,
  2023 WL 11922843 (N.D. Cal. Oct. 31, 2023)..........................................19

*National Casualty Co. v. National Strength and Conditioning Association*,
  2020 WL 3498169, at *3-4 (S.D. Cal. June 29, 2020) ..............................23

*Otsuka v. Polo Ralph Lauren Corp.*,
  2010 WL 366653 (N.D. Cal. Jan. 25, 2010) .......................................11, 23

*R&R Sails, Inc. v. Ins. Co. of Penn.*,
  673 F.3d 1240 (9th Cir. 2012) ..................................................................12

*Sec. & Exch. Comm'n v. Blockvest, LLC*,
  2020 WL 1910355 (S.D. Cal. Apr. 20, 2020)............................................20

*Skyline Advanced Tech. Servs. v. Shafer*,
  2020 WL 13093877 (N.D. Cal. July 14, 2020) ..........................................22

*Somers v. Digital Realty Tr. Inc.*,
  2018 WL 2134020 (N.D. Cal. May 9, 2018) ..............................................23

*The Sunrider Corp. v. Bountiful Biotech Corp.*,
  2010 WL 4590766 (C.D. Cal. Oct. 8, 2010) .........................................13–14

*Thompson v. Hous. Auth. of City of L.A.*,
  782 F.2d 829 (9th Cir. 1986) ....................................................................13

*Townsend v. Holman Consulting Corp.*,
  929 F.2d 1358 (9th Cir. 1990) ..................................................................13

*Uribe v. McKesson*,
  2011 WL 3925077 (E.D. Cal. Sept. 7, 2011)........................................13, 21

*United States v. Sumitomo Marine & Fire Ins. Co.*,
  617 F.2d 1365 (9th Cir. 1980) ..................................................................12

*Valley Eng'rs Inc. v. Electric Eng'g Co.*,
  158 F.3d 1051 (9th Cir. 1998) ........................................................12, 16, 21

*Vogel v. Tulaphorn, Inc.*,
  2013 WL 12166212 (C.D. Cal. Nov. 5, 2013)................................13, 17, 21

*Vox Network Sols., Inc. v. Gage Techs., Inc.*,
  2024 WL 1260573 (N.D. Cal. Mar. 25, 2024)...........................................15

*Wanderer v. Johnston*,
  910 F.2d 652 (9th Cir. 1990) ....................................................................19

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ...................................................................................................12

*Yu v. ByteDance Inc.*,
    759 F. Supp. 3d 992 (N.D. Cal. Dec. 12, 2024)..............................................................11, 18, 20

**Statutes**

17 U.S.C. § 410(c) .........................................................................................................................16

18 U.S.C. § 1839(3) .......................................................................................................................17

**Rules**

Fed. R. Civ. P. 33 .............................................................................................................................4

Fed. R. Civ. P. 37 ...................................................................................................................*passim*

**NOTICE OF MOTION/MOTION**: PLEASE TAKE NOTICE that on August 15, 2025, at 10:00 a.m., Defendants will and hereby do move under the Court's inherent power and F.R.C.P. 37 for an Order granting terminating or, alternatively, evidentiary sanctions. The motion is based on the memoranda in support, declaration and exhibits, and other evidence and argument as the Court permits.

## MEMORANDUM IN SUPPORT

## I.  INTRODUCTION AND SUMMARY OF ARGUMENTS

Plaintiff Beijing Meishe Network Technology Co. Ltd. ("Meishe"), a small Chinese company, brought this lawsuit four years ago for copyright infringement and trade secret misappropriation contending that source code used in Defendants' TikTok app contains source code similar to or derived from Meishe's video and audio editing software. To establish standing and meet its burden on the most basic element of these claims, Meishe asserted in its first pleading and in sworn statements throughout this litigation that it "is, and at all material times hereto, has been the owner of the" asserted source code. ECF 1 at ¶ 1. Although Meishe was formed and is owned in part by another Chinese developer of video editing software, China Digital Video (Beijing) Limited (hereafter, "XAT"), Meishe objected to any discovery into its close association with XAT. ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████

During the past few weeks, however, evidence emerged showing each of these sworn statements was *false*. First, far from supporting Meishe's ownership of the source code "at all material times," the only ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████ Perhaps recognizing the problem this created for its case, Meishe announced *after* the close of fact discovery an entirely new theory of ownership, asserting in one of its expert's reports that a purported ████████████████ ████████████████████████████████████████████████████████████ Incredibly, Meishe then served ███████████████████████████████████████████████████████

1  ███████████████████████████████████████████████████████████

2  ███████████████████. Second, Meishe's Chief Technology Officer admitted ████████████

3  ███████████████████████████████████████████████████████████

4  ███████████████████████████████████████████████████████████

5  █████████████████████████████████ Third, despite his sworn representations to the contrary,

6  ███████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████

These are not minor transgressions concerning ancillary facts—they are material falsehoods, perpetuated in this case for years, and made or authorized by Meishe's apex executives. With fact discovery closed, Meishe's deception has made it impossible to test the veracity of its ever-shifting positions on multiple core issues: (1) whether Meishe owned the disputed trade secrets and copyrights at all relevant times, (2) whether any of the asserted code qualifies as a trade secret, (3) the scope of the asserted code that is copyrightable or protected by trade secret, and (4) whether Meishe's pre-suit analysis provided a good-faith basis to launch this massively expensive, multi-year campaign against Defendants. Meishe's deceit is an affront to the judicial process and has caused severe prejudice to Defendants that cannot be cured. Even if discovery were to be reopened and all of the costs borne by Meishe, its willful, bad faith misconduct has made it impossible to rely upon future proceedings to serve their truth-seeking role. Accordingly, pursuant to the Court's inherent powers and Rule 37, Defendants respectfully request that the Court sanction Meishe by terminating this case. In the alternative, and at minimum, Defendants request that the Court issue evidentiary sanctions.

## II.    FACTUAL BACKGROUND

### A.    ████████████████████████████████████████████
████████████████████████████████████

Meishe brought this case nearly four years ago claiming that former Meishe engineer, Mr. Xie Jing, "accessed Meishe's source code and downloaded the source code" on June 3, 2015, five days before leaving the company. ECF 433 ¶¶ 85–88, 162–65. Meishe repeatedly alleged in every complaint filed that "Meishe is, and at all material times hereto, has been the owner of the" asserted code. ECF 1 at ¶ 1; ECF 6 (Aug. 4, 2021 First Am. Compl.) at ¶ 1 (same); ECF 9 (Aug. 12, 2021 Second Am. Compl.) at ¶ 1 (same); ECF 235

2

(April 20, 2023 Third Am. Compl.) at ¶ 1 (same); ECF 433 (May 14, 2024 Fourth Am. Compl.) at ¶ 1; *id.* at ¶¶ 3, 94 (same for copyrights); *id.* at ¶¶ 149, 190 (same for trade secrets).

Just before this lawsuit, Meishe initiated parallel litigation in China. ECF 433 at ¶ 127. To support its claimed ownership rights, Meishe submitted a one-paragraph declaration to the Chinese court, which Meishe produced here. *See* Ex. A; Ex. B at 148:6–14 (confirming Meishe submitted it).[1] ██████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████

Chinese courts do not provide the same discovery rights that exist under the Federal Rules, so Defendants sought to discover through this case evidence of the agreement underlying the claimed ████████████ transfer. In response, Meishe produced a Computer Software Copyright Transfer Contract ("Transfer Agreement"). *See* Ex. C. ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

Defendants also served an interrogatory requiring Meishe to "[i]dentify all current, former, and claimed ownership interests . . . , and all agreements and negotiations related to those actual or claimed ownership interests and/or changes in ownership interest" in the asserted code. *See* Ex. D at Interrogatory No. 14. ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[1] All Exhibits cited herein are attached to the accompanying Declaration of Kurt G. Calia.

███████████. *See* Ex. E at 81–82 (responses to Interrogatory No. 14); *see also* Exs. A, C, F, and G (documents cited in response to Interrogatory No. 14).[2] Meishe's response to the interrogatory, which it was obligated to answer "fully in writing under oath," Fed. R. Civ. P. 33(b)(3), ███████████████████████████████████████████████████████████████

███████ *See* Ex. E at 81–82. ████████████████████████████████

████████████████████, Meishe's Sixth Amended Initial Disclosures, served February 24, 2025, ███████████████████████████████████████████████████ *See* Ex. L.

Meishe was also ordered by the Special Master to submit a declaration identifying "whether any documents *or agreements* exist that bear on the terms of Meishe's separation from XAT . . . . including any documents addressing intellectual property as between Meishe and XAT." ECF 519 at 32 (emphasis added). Meishe submitted a declaration from its CEO, Mr. Zheng, executed on January 27, 2025. Ex H. ████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████[3]

At his April 14, 2025 deposition, in which Mr. Zheng was designated to testify as Meishe's Rule 30(b)(6) designee on the topics of ████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████. *See* Ex. B at 122:13–123:6. ████████████████████████████████

---

[2] MEISHE-TT_00000160–MEISHE-TT_00000161 is also cited in Meishe's responses to Interrogatory No. 14, but it is a duplicate of the Transfer Agreement.

[3] Defendants pursued discovery directly from XAT through Hague Convention letters rogatory but received only 17 documents, many of which Meishe had already produced. Defendants received no technical documents or code, ██████████████████████████. *See* Ex. I at TTI-BDI_00932063–64. ████████████████████████████████████████████
████████████████████ Ex. BB at TTI-BDI_00932468 (emphasis added).

When asked about the discrepancy between ███████████

**B.    The First Mention of Any ████████████ Was a Hearsay Statement in a Meishe Expert Report After the Close of Fact Discovery.**

Approximately ten days later, on April 25, 2025, Meishe served the Expert Report of Yanfang Wang, a professor at East China University, whom Meishe proposes to have testify at trial about ownership rights to the asserted code under Chinese law. Ex. K. According to her report, Prof. Wang claims ████████

---

[4] Fact discovery closed on April 11, 2025. *See* ECF 553. Defendants agreed to take Meishe's executive depositions the following week as a courtesy due to scheduling constraints of Meishe and its counsel.

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Following the submission of the Wang report, Meishe served an "errata" to Mr. Zheng's deposition transcript, which purports to ████████████████████████████████████████████. *See* Ex. M. █

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ *Id.* (addressing Ex. B at 124:4–6).

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████ Ex. M (addressing Ex. B. at 125:23–126:3).

The "errata" also ████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ Ex. B at 134:6–10. In the "errata," Meishe adds: ██████████████████████████████████ Ex. M (addressing Ex. B at 134:6–20). In response to the question, ██████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████ *Id.* (addressing Ex. B at 148:17–20).

### C.    Meishe Repeatedly but Falsely Averred to the Court and to the Special Master That It Independently Developed the Asserted Code.

In addition to never disclosing this supposed ██████████████ Meishe also repeatedly and falsely represented to the Court, the Special Master, and Defendants that it independently developed the asserted

6

code until that story unraveled at the close of fact discovery. Meishe has alleged since the outset of the case that "Meishe developed" the asserted code and that "Plaintiff created these trade secrets." ECF 6 at ¶¶ 54, 147; ECF 9 at ¶¶ 54, 149. It also alleged, "Meishe developed the Meishe app," which Meishe claimed was its "proprietary, *independently-developed* software code." ECF No 235 at ¶¶ 54, 119 (emphasis added). In opposing Defendants' motion to dismiss the Third Amended Complaint, Meishe reiterated to the Court that "Meishe created original works by developing the" asserted code. *See* ECF 260 at 9. The Court expressly referred to these representations in its order denying in part Defendants' motion to dismiss. *See* ECF 429 at 2 ("Meishe 'developed the Meishe app and further developed the Meishe SDK'") (citing ECF 235 at ¶¶ 53–54). The Court dismissed Meishe's trade secret claims with leave to amend "to the extent they allege trade secrets beyond proprietary, independently-developed software code." *Id.* at 26.

After the dismissal, Meishe amended again, continuing to plead that the source code at issue was Meishe's "independently-developed registered and unregistered source code." ECF 433 at ¶ 1; *see also id.* ¶¶ 74 (same), 149 (same). Meishe likewise told the Court in its motion to dismiss opposition that "Plaintiff's *independently-developed* source code is copied verbatim into Defendants' source code." ECF 443 at 1 (emphasis added); *see also id.* at 15 ("Defendants copied Plaintiff's *original works*" and calling the code at issue Meishe's "*original source code*" (emphases added)). At the hearing, Meishe's counsel ███████ ████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████ Ex. N at 9:5–22, 32:8–16. The Court relied again on these representations. *See* ECF 465. at 2–4 ("Meishe developed the Meishe app and further developed the Meishe SDK" and referencing the "independently developed" code).

Defendants subsequently moved the Special Master to compel Meishe to produce technical documents and source code for XAT's Dunhuang app. ECF 564 at 5. Defendants had located a 2016 public securities filing from XAT with the Hong Kong stock exchange suggesting that the Meishe app "[u]tiliz[es] [the] visual effects and video compositing technologies" and "[a] variety of templates" from XAT's Dunhuang app. Ex. CC at 147–48 ("Meicam" is the same as "Meishe"). Defendants sought to discover which was correct—XAT's securities filings or Meishe's repeated representations to this Court.

Meishe opposed the motion by continuing to swear to the Special Master that the asserted code does not contain or use any code from XAT's Dunhuang app. Ex. O; *see also* Ex. P. Meishe submitted a declaration from its Chief Technology Officer, Liang Jian, in support of its opposition. *See* Ex. Q. Mr. Jian attested under penalty of perjury, "The Meishe software is independently developed from the ground up and no Dunhuang source code has been incorporated into the Meishe software." *Id.* at ¶ 3. Meishe's opposition relied on Mr. Jian's declaration ███████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████ Ex. O at 1; *see also id.* ███████████████████████

███████████████████████████████████ *id.* ████████████████████████████████

██████████████████████████████████████████████████████████ [5]

Relying on Meishe's representations, the Special Master "ordered Meishe to produce only what it could find related to Dunhuang" and declined "to compel Meishe to obtain Dunhuang-related documents and code from XAT." ECF 564 at 3. Meishe then produced some code for the Dunhuang app that was time stamped in December 2016, and some technical and sales documents related to the Dunhuang app. *Id.* at 7. Meishe also served supplemental discovery responses ████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████ Ex. DD at 8–9, 12. These responses were signed and verified by Mr. Jian. *See id.* at 15. [6]

**D.    Meishe Admitted Near the End of Fact Discovery That** ███████████████████
████████████████████████████████

Towards the end of fact discovery, several Meishe employees ██████████████████

███████████████████████████████████████████████████████████████████████

---

[5] Meishe's counsel also stated to the Special Master that the Dunhuang app █████████████
██████████████████ Ex. EE at 27:24–28:6.

[6] The Special Master also had ordered Meishe to "identify all third-party libraries, frameworks, and other source code used in its" asserted code "by close of business on March 3, 2025." ECF No. 539 at 37. In these supplemental discovery responses, ████████████████████████████████████████████
██████████████████ Ex. DD at 8, 12

8

1

2

3

4

5

6      Defendants then deposed Meishe's CTO, Mr. Jian. He admitted, contrary to

7

8

9

10

11

12

13

14

15

16

17      On April 18, 2025, Mr. Jian submitted a letter to the Special Master which stated:

18

19      Ex. S. He nonetheless was willing to sign "under penalty of perjury" his prior declaration stating

20

21

22      Ex. Q at ¶¶ 2, 3.

23      Thereafter, Defendants renewed their motion to compel

24      *See* Ex. V at 4. As Defendants explained to the Special Master,

25

26

27      *See id.* at 2, 4.

28



9

The Special Master agreed that "[t]he requested documents are relevant for the reasons Defendants have asserted" and granted Defendants' motion on May 7, 2025. ECF 564 at 3, 9–10. The Special Master explained that his prior order had "relied in part on Liang Jian's prior sworn statement that Dunhuang source code ___was not___ used in developing the Meishe app." *Id.* at 14. But Mr. Jian admitted at his deposition that the prior declaration "___was not accurate___." *Id.* The Special Master ordered Meishe to produce "[a]ll Dunhuang code that existed before development of the Meishe app began" and related technical documents by May 21, 2025. *Id.* at 18. Meishe objected to the order, *see* ECF 570, and only provided some Dunhuang source code and related technical documents.[7] Meishe failed to produce any ████████████████████ ███████████████—despite being compelled to do so, *see* ECF 564 at 18—and otherwise produced eighteen "technical documents" that had already been produced in the case.

Although Defendants' experts have evaluated this material (only available on the eve of their expert report deadline) to the extent possible under the timeframe, Meishe's eleventh-hour production deprived Defendants of any chance to conduct further fact discovery on the case-critical issues—ownership, the viability and enforceability of Meishe's asserted copyrights and trade secrets, and damages—implicated by the fact that Meishe's code was derived from and still incorporates third-party Dunhuang code.

**E.    Meishe Concealed Documents Generated from Its Pre-Suit Investigation and Violated the Special Master's Order Requiring Their Complete Production.**

Meishe also alleged in its complaint that it conducted "an analysis between the code of Meishe app and that of TikTok app" that formed the basis for its claims. ECF 433 at ¶ 79. Specifically, Meishe alleged that it conducted "a comparison between decompiled 'TikTok v8.5.0' object code and decompiled 'Meishe v2.5.4' object code" which purportedly showed "identical names to Meishe's copyrighted source code, including typographical errors." *Id.* at ¶ 80.

Given Meishe's allegations, Defendants requested the decompiled object code and comparison files ████████████████████████████████████████████████████. Ex. W. Meishe refused.

---

[7] Defendants responded to Meishe's objection that the Special Master's order was unwarranted. ECF 587. Defendants also recently objected to the Special Master's denial of a separate motion for sanctions filed by Defendants for Meishe's failure to sufficiently identify its asserted code and Defendants' accused code. *See* ECF 580. These recent filings address issues that are separate from Meishe's misconduct addressed in this Motion and would be mooted if the Court grants Defendants' request for case terminating sanctions.

DEFS.' MOT. FOR SANCTIONS UNDER FRCP 37 AND COURT'S INHERENT POWER                    CASE NO. 3:23-cv-06012-SI

*See* Ex. P. Meishe represented that it used a software program called IDA Pro to decompile the relevant files and only used screenshots from the software window as the basis for the complaint allegations. *Id.* Meishe claimed to have done so without "generat[ing] files of decompiled object code." *See id.*

Again, Defendants moved to compel, and again, ███████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

Nevertheless, the Special Master granted Defendants' motion to compel and ordered Meishe to produce "decompiled object code and compiled application code for the Meishe apps and SDK," including any IDA Pro comparison files. ECF 531 at 13–14. In response, Meishe produced decompiled object code

██████████████████████████████. *See* Ex. AA.

Meishe's production still did not contain ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

## III.    LEGAL STANDARD

"District courts have inherent power to impose sanctions for 'conduct which abuses the judicial process.'" *Yu v. ByteDance Inc.*, 759 F. Supp. 3d 992, 999 (N.D. Cal. Dec. 12, 2024) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). These sanctions can include dismissing the action, evidentiary sanctions (e.g., evidence preclusion or adverse inferences), or monetary sanctions. *See, e.g.*, *Otsuka v. Polo Ralph Lauren Corp.*, 2010 WL 366653, at *3 (N.D. Cal. Jan. 25, 2010) (collecting cases).

Federal Rule of Civil Procedure 37(b) authorizes these same sanctions against a party who "fails to obey an order to provide or permit discovery." *Facebook, Inc. v. OnlineNIC Inc.*, 2022 WL 2289067, at *8 (N.D. Cal. Mar. 28, 2022), *rep. and rec. adopted*, 2022 WL 17371092 (N.D. Cal. Oct. 17, 2022). Rule

11

37(c)(1) also authorizes the same sanctions "for failure to produce information under Rules 26(a) or 26(e)" or when a party fails to supplement discovery responses "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." *Id.* Rule 37(c)(1) gives courts "particularly wide latitude" to sanction discovery misconduct. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(b) similarly "provides a wide range of sanctions for a party's failure to comply with court discovery orders." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980). "[T]he party facing [Rule 37] sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R&R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012).

## IV.    ARGUMENT

"Where a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate." *Valley Eng'rs Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998). So it is here. Meishe's pervasive misconduct—including its failure to identify the supposed ████████████ on which it now seeks to rely, ████████ ████████████████████, and repeated material misrepresentations and false declarations about the ownership and development of the disputed code and IP throughout the many years of this lawsuit—has irreparably prejudiced Defendants. That Defendants have needlessly spent substantial resources pursuing discovery that Meishe should have produced at the outset of the case, instead of denying its existence, is the least of the harm. Far worse, Meishe's evasions and falsehoods have made it impossible to discover the truth, and "[t]here is no point to a lawsuit, if it merely applies law to lies." *Id.* ("True facts must be the foundation for any just result."). With fact discovery closed, expert discovery underway, and trial commencing in four months, there is no further discovery to be had.

Nor could a mere extension suffice. This case has been litigated for years at significant expense to Defendants. After all that time, Meishe now seeks to base its ownership claims on a supposed decade-old ████████████████████████████████████████████████████ that it either (1) actively and purposefully concealed during fact discovery, or (2) simply made up after the fact. And the hearsay sources of this late-breaking ████████████ are the very witnesses who have shown a repeated willingness to submit false statements under oath. This "pattern of deception and discovery abuse ma[ke] it

12

impossible for the district court to conduct [a] trial with any reasonable assurance that the truth would be available," leaving termination as the appropriate recourse. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007).

### A. Terminating Sanctions Are Warranted for Meishe's Serial Misrepresentations on Core Issues and the Resulting Insurmountable Prejudice to Defendants.

In deciding whether to impose terminating sanctions under the Court's inherent power or Rules 37(b)&(c), courts consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (courts' inherent power); *see also Facebook*, 2022 WL 2289067, at *8 (same framework under Rule 37(b)); *Thompson v. Hous. Auth. of City of L.A.*, 782 F.2d 829, 831 (9th Cir. 1986) (same for Rule 37(c)(1)(C)). "Courts should not apply these factors mechanically," *Facebook*, 2022 WL 2289067, at *8, and need not make findings regarding each factor, so long as "willfulness, fault, or bad faith" is found. *Leon*, 464 F.3d at 958. Those findings are afforded "great deference." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1366 (9th Cir. 1990).

#### 1. Meishe's Willful, Bad Faith Misconduct Concerning Core Issues of Ownership and Development of the Asserted Source Code Warrants Terminating Sanctions.

"[I]t is well-settled that fabricating and submitting knowingly false evidence amounts to willful and bad faith conduct." *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 2015 WL 12732433, at *5 (C.D. Cal. Dec. 14, 2015). "[P]erjury on any material fact strikes at the core of the judicial function and warrants a dismissal of one's right to participate at all in the truth seeking process." *Arnold v. Cnty. of El Dorado*, 2012 WL 3276979, at *4 (E.D. Cal. Aug. 9, 2012); *see also, e.g.*, *Vogel v. Tulaphorn, Inc.*, 2013 WL 12166212, at *4, 12 (C.D. Cal. Nov. 5, 2013), *aff'd*, 637 F. App'x 344 (9th Cir. 2016) ("When a party falsifies evidence of central importance to a case, this shows bad faith, willfulness, or fault.").

Courts thus have issued terminating sanctions where a party submitted false declarations or violated discovery orders. In *Uribe v. McKesson*, the court terminated the case after the plaintiff submitted one false declaration in support of a summary judgment motion. 2011 WL 3925077, at *5 (E.D. Cal. Sept. 7, 2011). In *The Sunrider Corp. v. Bountiful Biotech Corp.*, the court issued terminating sanctions against a party who "ma[d]e false statements under oath or penalty of perjury," and "repeatedly and willfully disregarded his

13

discovery obligations and disobeyed court orders to provide or permit discovery." 2010 WL 4590766, at

*22 (C.D. Cal. Oct. 8, 2010), *rep. and rec. adopted*, 2010 WL 4589156 (C.D. Cal. Nov. 3, 2010).

Terminating sanctions likewise are warranted here. Meishe's willful, bad faith deception and misconduct—effectuated by its most senior executives on multiple, material issues affecting the merit and veracity of Meishe's claims—amply justifies this relief.

> a)      *Whether the* ▮▮▮▮▮▮▮▮▮ *theory that Meishe seeks to present at trial was actively concealed during fact discovery or concocted thereafter, it constitutes willful, bad faith misconduct worthy of case termination.*

There is abundant reason to believe that Meishe's supposed ▮▮▮▮▮▮▮ is pure fiction. It depends upon the strained, if not absurd, notion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ in any of the subsequent written agreements entered into between XAT and Meishe. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Even if such an ▮▮▮▮▮▮▮ did exist, Meishe's repeated failure to disclose it—and indeed, its active concealment of it—during this long litigation was indisputably willful. There is no other explanation for (i) why such a critical "fact" was not forthrightly alleged in the Complaint four years ago (or in any of the many Amended Complaints Meishe filed thereafter); (ii) why it was not identified ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮, Ex. E at 81–82; (iii) why it was not disclosed in response to the Special Master's order directing Meishe to submit a declaration identifying "whether any documents or agreements exist that bear on the terms of Meishe's separation from XAT . . . . including any documents addressing intellectual property as between Meishe and XAT," ECF 519 at 32; or (iv) why Meishe's CEO, Mr. Zheng, testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Whatever may have been Meishe's motivation for its extensive and repeated deceit—whether because no ▮▮▮▮▮▮▮ existed and the claim was invented after Meishe recognized the October 2015

14

Transfer Agreement would be insufficient to support its case, whether because of a calculated effort to protect the Chinese company XAT from U.S. discovery, or some combination of both—there can be no question that the deceit was purposeful. That Meishe felt the need to make fundamental, substantive changes to its CEO's sworn testimony through its ██████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████—plainly demonstrates that even Meishe understands that the CEO's testimony (assuming the █████████ story is true, as Meishe now apparently wants to try to argue to the jury) was indefensibly inaccurate as given. Likewise, the self-evidently suspicious timing—mentioning the █████████ for the first time only after fact discovery had concluded, when Defendants would no longer be able to discover and challenge the facts surrounding this claim—supports only one inference: the elaborate and lengthy concealment was intentional.

Had Meishe properly identified the supposed █████████ during fact discovery, Defendants would have investigated the claim, including, for example, by examining persons with knowledge of the purported agreement and its negotiation, including representatives of the supposed third-party XAT; discovering the precise metes and bounds of the supposed █████████ as well as any consideration given for the supposed transfer of this allegedly valuable IP; and discovering all pertinent consistent or inconsistent facts that might bear upon the veracity of whether any such █████████ was truly made. Having denied Defendants the opportunity to take such critical discovery through misinformation and falsehoods, Meishe forfeited the opportunity to present this strained claim to a jury.

It is beyond debate that the ownership issues implicated by the alleged █████████ are highly consequential to this case, implicating the core issue of whether Meishe owns the asserted trade secrets and copyrights now and whether it did so at the time the code was allegedly taken, as well as the scope of the asserted IP rights. To prove its trade secret claim, Meishe must establish that it "owned the trade secret" and that "at the time of misappropriation, the information was a trade secret." *Vox Network Sols., Inc. v. Gage Techs., Inc.*, 2024 WL 1260573, at *3 (N.D. Cal. Mar. 25, 2024). To establish copyright infringement, Meishe must similarly prove "ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). This burden

15

1    is more significant where, as here, Meishe asserts not U.S. copyrights (the registration of which would

2    constitute prima facie evidence of validity and ownership per 17 U.S.C. § 410(c)), but Chinese copyrights

3    which carry no such evidentiary presumption.

4         Defendants, who obviously had no reason to investigate an ████████ claim they had not been

5    told about, should not be forced to proceed to trial in a case where Meishe's misconduct has made finding

6    the truth an impossible task. This is especially true where proof of the existence of the purported ████

7    ████████  depends on the testimony of Meishe's CEO and CTO, apex witnesses who have already

8    demonstrated a willingness to testify falsely. Meishe's deceit on this issue is so grave that it strikes at the

9    core of the judicial process and undermines the integrity of the "truth seeking process" of litigation. *Arnold*,

10   2012 WL 3276979, at *4. Like the party sanctioned in *Valley Engineers*, Meishe's "conduct in the litigation

11   has cast such a pall upon [its] integrity and upon a fair and just resolution on the merits that no alternative

12   sanction could be effective." 158 F.3d at 1058. Case terminating sanctions are warranted.

13            *b)*      *Meishe's false representations that it "independently developed" the
                        asserted code Meishe ███████████████████████
14                      constitutes willful, bad faith misconduct justifying terminating sanctions.*

15        Similar to the ownership issue, at every turn, Meishe represented that it independently developed

16   the asserted code and that no Dunhuang app code was in the asserted code. But at the close of fact discovery,

17   Meishe's CTO, Mr. Jian, revealed ████████████████████████████████████

18   ████████████████████████████████████[8] Meishe's falsehoods

19   and concealment concern the core issues of (1) ownership of the asserted copyrights and trade secrets,

20   (2) what measures, if any, were taken to protect the secrecy of the asserted source code, and (3) how much,

21   if any, of the code was developed by Meishe (versus XAT). These are elements that Meishe has the burden

22   to prove. *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993) ("[A] plaintiff who

23   seeks relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of

24

---

25   [8] False declarations submitted to a Special Master appointed by the Court to govern discovery have the
     same effect as if they were submitted to the Court for purposes of issuing sanctions. *See, e.g.*, *In re*
26   *Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 917–18 (N.D. Cal. 2023)
     (sanctions based on court findings that the party and its attorneys delayed litigation by improperly
27   complying with the Special Master's orders); *Madrid v. Woodford*, 2004 WL 2623924, at *2 (N.D. Cal.
     Nov. 17, 2004) (issuing sanctions based on false statements made to Special Master).
28

showing that they exist."); *see also* 18 U.S.C. § 1839(3) (requiring "owner" to take "reasonable measures to keep [the asserted trade secret] secret").

Meishe's false representations about the development and content of the asserted source code warrant terminating sanctions under Rule 37(c) and the Court's inherent power. In *Vogel*, the district court found that falsified declarations where "a party affirmatively misrepresented facts of central importance to the case that it knew not to be true" warranted terminating sanctions. *Vogel*, 2013 WL 12166212, at *7. In particular, the Court found that the plaintiff and its counsel had "attempted to convince not just Defendant, but also the Court, that Plaintiff had standing to pursue the instant case." *Id.*

Here, Meishe's false assertions of independent development and concealment of the true contents of the asserted code strike at the core of its claims. If, as is now clear, Meishe did not originally develop the code, Defendants were entitled to discover XAT's development of the Dunhuang app code present in the asserted code, compare the Dunhuang app code to the asserted code, and assess which remaining portions of the asserted code (if any) contain sufficient creative expression to be copyrightable. Further, while Meishe provided some limited interrogatory responses on ████████████████████████████████ ████████████████████ *see* Ex. FF at 10–13, Defendants were entitled to discover whether XAT took any measures to protect the secrecy of XAT's Dunhuang app code present in the asserted code. Additionally, understanding which code originated at XAT and which (if any) at Meishe could have profound implications for Meishe's massive damages claim. If Meishe made insubstantial changes to the ██████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████

Had Meishe accurately represented its code development history, Defendants would have pursued critical discovery, including deposing Meishe's witnesses to understand how, when, and by whom the Dunhuang code contained in the asserted code was developed, whether it was derived from other code, and how much of it was publicly available. And while the Special Master recently ordered Meishe to produce Dunhuang app source code and related technical documents, ECF 564,[9] this material comes well after the

---

[9] In response to a prior order from the Special Master, ECF 532, Meishe only produced ██████████ ████████████████████████████████████████

DEFS.' MOT. FOR SANCTIONS UNDER FRCP 37 AND COURT'S INHERENT POWER                    CASE NO. 3:23-cv-06012-SI

close of fact discovery and Meishe's opening expert reports, thus depriving Defendants of the ability to pursue follow up discovery with Meishe (or XAT) or examine Meishe witnesses with the benefit of having the code in hand to test their assertions about the extent of their copying from XAT. Moreover, this belated production does nothing to cure Meishe's repeated falsehoods about its alleged independently developed code, which go to the heart of whether Meishe has enforceable rights to it *at all*. Falsehoods on facts so material to the case warrant terminating sanctions. *Arnold*, 2012 WL 3276979, at *12.

c)    *Meishe's acknowledgement that* █████████████████████████████████████████████ *amounts to willful, bad faith misconduct warranting terminating sanctions.*

Meishe's concealment of the decompiled code and comparison file from its purported pre-suit investigation—which directly violated the Special Master's order—undermined Defendants' ability to prepare their defenses and consider mitigation damages by discontinuing use of allegedly infringing code, and otherwise casts doubt on whether Meishe had a good faith basis to file this suit. Notably, Meishe performed this comparison to evaluate whether to sue Defendants and thus unquestionably should have preserved and produced it at the outset of this case instead of repeatedly concealing its existence.

At the close of fact discovery, Meishe's CTO revealed that ████████████████████ ██████████████████████████████████████████████████████████ ███████████████ Meishe withheld this document in direct violation of the Special Master's order, *see* ECF 531, even though Meishe's CTO admitted that ██████████████████████████████ Ex. R at 147:20–148:4. While Meishe produced the comparison file after Mr. Jian's deposition, Meishe's concealment hampered Defendants' ability to evaluate Meishe's copyright and trade secret claims during fact discovery and to determine whether the asserted code was present in the accused code. Indeed, had Meishe disclosed its code comparison at the outset of the case, Defendants could have evaluated the extent to which any asserted code was present in its services and ameliorated the situation (if needed) to dramatically limit the scope of alleged damages. Meishe's deceit concerning its pre-suit diligence rendered that impossible. Terminating sanctions thus are warranted under (1) Rule 37(b) for Meishe's violation of the Special Master's order, (2) Rule 37(c) for Meishe's failure to disclose this critical discovery, and (3) the Court's inherent power. *Yu*, 759 F. Supp. 3d at 999; *Facebook*, 2022 WL 2289067, at *8.

18

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record. I further certify that the foregoing document and all supporting sealed attachment(s) have been provided to all counsel of record via secure FTP delivery on the same day of the filing.

*/s/ Kurt G. Calia*
Kurt G. Calia

*    *    *

Each of the above courses of conduct is sufficient, by itself, to warrant the sanction of terminating this case. Together, they compel it, demonstrating beyond cavil that this was no isolated error, but instead a litigation strategy premised on doing what you can get away with instead of fidelity to the truth. Courts faced with such, or even less, severe misconduct have issued terminating sanctions. For example, in *Connecticut General Life*, the Ninth Circuit upheld terminating sanctions when a party refused to answer questions, responded to discovery in a way that appeared "calculated to prevent plaintiffs from learning and proving the truth," claimed that records were misplaced or lost, and did not reply or confess that they made false misstatements of fact. 482 F.3d at 1095–97. Defendants request that the Court do the same for Meishe's pattern of misconduct, which has persisted throughout the case.

### 2. The Five *Leon* Factors Further Support Issuing Terminating Sanctions.

Examining this record through the lens of the five *Leon* factors leads to the same conclusion.

#### a) *The Public and Court Interest Factors Support Termination.*

The first and second *Leon* factors, which are "often considered together," concern the interest of the public and the Court and, "as in most cases" involving severe discovery misconduct, violations of discovery orders, or the submission of false declarations, favor termination. *Moonbug Ent. Ltd. v. Babybus (Fujian) Network Tech. Co., Ltd*., 2023 WL 11922843, at *4 (N.D. Cal. Oct. 31, 2023); *see also Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). Indeed, both factors are satisfied where the misconduct "delayed the expeditious resolution of litigation." *Moonbug*, 2023 WL 11922843, at *4. In *Moonbug*, for example, these factors favored termination when the misconduct required the other party to repeatedly expend resources seeking critical discovery and pursuing numerous discovery motions. *Id.*

Meishe's misconduct resulted in needless delay and costs for Defendants, the Special Master, and the Court. Defendants were forced to pursue several motions to compel, including for the production of XAT documents, Dunhuang app code, and the materials from Meishe's pre-suit investigation. Doing so impeded and distracted Defendants' ability to discover relevant facts and develop its defenses to Meishe's claims. Meishe's misconduct amounts to abuse of the judicial process, and warrants terminating sanctions.

b)    *The Prejudice to Defendants Factor Supports Termination.*

"In deciding whether to impose case-dispositive sanctions, the most critical factor is not merely delay or docket management concerns, but truth." *Conn. Gen. Life*, 482 F.3d at 1097. "Falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation." *Yu.*, 759 F. Supp. 3d at 1001. Moreover, a defendant suffers prejudice when the misconduct "threaten[s] to interfere with the rightful decision of the case." *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995). Courts have awarded terminating sanctions when the plaintiff so damaged "the integrity of the discovery process that there can never be assurance of proceeding on true facts." *Loop AI Labs Inc. v. Gatti*, 2017 WL 934599, at *14 (N.D. Cal. Mar. 9, 2017).

By any objective measure, Meishe's misconduct, including repeated falsehoods from its apex executives, has enabled Meishe to evade the truth, casts doubt on the veracity of its submissions, and threatens to undermine the rightful decision in the case, such that neither Defendants nor "the Court nor the public can trust the veracity of further discovery collected from" Meishe. *See CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n,* 2019 WL 6527951, at *19 (S.D. Cal. Dec. 4, 2019).

The magnitude of Meishe's misconduct is perhaps best illustrated by its senior executives, on whose testimony Meishe's case depends. They submitted multiple sworn statements on core issues pertaining to ownership of the rights to the asserted code, the contents of the asserted code, and whether the asserted code qualifies as a trade secret. That Meishe either made up the ███████████ or concealed it with repeated falsehoods throughout the period of fact discovery, is particularly insidious; for the reasons stated, it would be the height of prejudice to allow Meishe to present such a strained and unverifiable claim to a jury when Defendants were denied the opportunity to take discovery to challenge it. Meishe's misconduct has so irreparably tainted the integrity of these proceedings that only terminating sanctions can cure the prejudice.

c)    *The Public Policy Factor Favors Termination.*

The fourth *Leon* factor, that public policy favors resolution on the merits, "lends little support to a party whose conduct impeded progress toward disposition on the merits." *Sec. & Exch. Comm'n v. Blockvest, LLC*, 2020 WL 1910355, at *15 (S.D. Cal. Apr. 20, 2020), *rep. and rec. adopted*, 2020 WL 2786869 (S.D. Cal. May 29, 2020) (finding this factor "neutral" in light of party's filing of false and forged declarations at the outset of the case). Thus, this factor—standing alone—does not preclude the imposition

of sanctions in this case. *See Uribe*, 2011 WL 3925077, at *5 (public policy factor favors dismissal where "Plaintiff's own misconduct . . . stalled the case").

Meishe's misconduct precluded Defendants' from obtaining critical discovery necessary to defend against Meishe's claims, thus casting doubt on the ability of any resolution on the true merits. Meishe disclosed its new ████████ ownership theory *after fact discovery ended*, thus impeding Defendants' ability to defend Meishe's claims of ownership of the asserted copyrights and trade secrets on the merits. Further, as to Meishe's falsehoods about the Dunhuang code, although the Special Master recently ordered Meishe to produce such code, its production after the close of fact discovery and after opening expert reports, has deprived Defendants of the ability to obtain any testimony about it or pursue follow-up discovery, including on such issues as its purported value, its functionality, and the extent to which it differs, if at all, from the code Meishe accuses Defendants of infringing and misappropriating. Meishe's serial misrepresentations about Dunhuang code caused this unfortunate timing. Any resolution on the merits thus has been tainted by Meishe's concealment of the truth throughout the case of the ownership and development of the asserted source code, whether it qualifies for trade secret and copyright protection, and Meishe's purported pre-suit investigation that brought Meishe to file the lawsuit as a threshold matter.

        d)    *The Availability of Lesser Sanctions Factor Favors Termination.*

"What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations threaten to interfere with the rightful decision of the case." *Valley Eng'rs.*, 158 F.3d at 1057. "A court cannot rightfully decide a case when a party's pattern of deception and discovery abuse make it impossible for the district court to conduct a trial with any reasonable assurance that the truth would be available. . . . When a party repeatedly lies under oath, this constitutes a pattern of deception sufficient to impose terminating sanctions rather than lesser sanctions." *Vogel*, 2013 WL 12166212, at *12; *see also Anheuser-Busch,* 69 F.3d at 352 ("It is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct.").

Meishe's alleged ownership and development of the asserted source code underlying its copyright and trade secret claims depend entirely on the testimony of its CEO and CTO. The record is clear: their testimony and sworn declarations are ████████ Mr. Zheng testified unequivocally at his deposition that ████████████████████████

1     ████████████████████. Far from being a salve, Meishe's submission of the wildly improper "errata"

2 seeking to ████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████████████

8 ████████████████████████████████████

9     In *Indiezone, Inc. v. Rooke*, the court considered whether lesser sanctions were appropriate but issued

10 terminating sanctions in view of the plaintiff's submission of false declarations and fraudulent documents

11 to the court. There, as here, the misrepresentations obfuscated "the heart of the case, namely the parties

12 involved and the owner of the IP, which is the subject of the dispute." 2014 WL 4354122, at *4 (N.D. Cal.

13 Sept. 2, 2014). Further, courts have found that terminating sanctions, as opposed to lesser sanctions, such

14 as evidence preclusion or adverse inferences, are appropriate when, as here, discovery had closed. The court

15 in *Blockvest*, for example, ruled that terminating sanctions were more appropriate compared to evidentiary

16 and monetary sanctions where "[d]iscovery ha[d] closed and deponents whose [false] declarations are at

17 issue have been deposed." 2020 WL 1910355, at *16. The court further reasoned that "evidence preclusion

18 sanctions would not deter [the sanction parties'] misconduct and would place [the sanctioned parties] in the

19 same position they were in before filing the false and forged declarations." *Id.* at *17.

20     Meishe's misconduct has prevented Defendants from "hav[ing] access to the true facts" in this case,

21 so terminating sanctions are appropriate. *See, e.g.*, *Conn. Gen. Life*, 482 F.3d at 1097 (affirming terminating

22 sanctions where the party repeatedly lied to the court and obstructed discovery). In addition, given the

23 severity of Meishe's misconduct, Defendants request that the Court allow Defendants to submit a fee

24 petition in support of monetary sanctions if the Court issues terminating or evidentiary sanctions. *See, e.g.*,

25 *Skyline Advanced Tech. Servs. v. Shafer*, 2020 WL 13093877, at *12 (N.D. Cal. July 14, 2020), *rep. and*

26 *rec. adopted*, 2020 WL 13093878 (N.D. Cal. July 30, 2020).

27

28

**B.    In the Alternative, Evidentiary Sanctions Are Warranted.**

At a minimum, severe evidentiary sanctions are warranted against Meishe for the material falsehoods it perpetuated throughout this case and the resulting undue prejudice to Defendants. "Appropriate sanctions short of dismissal may include exclusion of the disputed evidence, an adverse inference jury instruction, or monetary sanctions." *Otsuka*, 2010 WL 366653, at *3. The Court's inherent power to issue sanctions "include broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." *Somers v. Digital Realty Tr. Inc.*, 2018 WL 2134020, at *15 (N.D. Cal. May 9, 2018); *see also Innospan Corp. v. Intuit Inc.*, 2011 WL 2669465, at *2 (N.D. Cal. July 7, 2011) (citing Fed. R. Civ. P. 37(b)(2)(A)(ii)); Fed. R. Civ. P. 37(c)(1)(C) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

In *Innospan*, the court imposed preclusion sanctions where a plaintiff willfully directed a witness to submit a declaration that "contained statements that [the witness'] later deposition demonstrate[d] are false," coached witnesses on what to say at depositions, and made false statements in his complaint. 2011 WL 2669465, at *4, 6. In *National Casualty Co. v. National Strength and Conditioning Association*, the court awarded several evidentiary sanctions after finding that the sanctioned party submitted a declaration containing false statements and withheld relevant documents from production. 2020 WL 3498169, at *3-4 (S.D. Cal. June 29, 2020). Similarly, in *ConsumerDirect, Inc. v. Pentius LLC*, the court issued evidentiary sanctions in the form of an adverse inference instruction to the jury based on the plaintiff's submission of falsehoods in sworn declarations and in depositions. 2023 WL 8876198, at *9 (C.D. Cal. Sept. 21, 2023).

Here, should this Court decide not to terminate the case, Defendants respectfully request that the Court issue the following evidentiary sanctions:

1.    Preclude Meishe from presenting any evidence related to the supposed ███████ ████████ never disclosed in discovery.

Meishe unveiled the supposed ████████████████ in an opening expert report after fact discovery closed. Meishe never mentioned any purported ███████████ in response to Defendants' on-point interrogatory or in any other discovery response. Further, no Meishe witness—including its CEO and CTO—ever mentioned any such ████████ at deposition. Defendants therefore had *zero*

opportunity, and indeed no reason, to pursue any discovery of the supposed ██████████ Instead, Meishe identified the ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████ Defendants respectfully request that the Court, pursuant to Rule 37(c)(1) or the Court's inherent power, order that Meishe be limited to what it disclosed in fact discovery, and specifically (1) preclude Meishe from presenting any evidence related to the purported ██████████ and (2) deem admitted that the ████████████████████████████████████████████████

███████████████████████.

        2.  <u>Deem admitted that the entirety of the asserted code was copied unlawfully from ████████████ and that</u> ████████████████████████████

Meishe's ██████████ theory also proclaims that Meishe obtained from XAT "████████ ████████████████████████████████████████. Ex. K at ¶ 17. Not only did Meishe fail to disclose the alleged ██████████ during fact discovery, Meishe also concealed, via false declarations by its CTO, that ████████████████████████████████ ██████████████. Having misrepresented that ████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████ Defendants further request that, under Rule 37(c)(1) or its inherent power, the Court deem admitted that Meishe did not obtain rights ██████████████████████████

        3.  <u>Preclude Meishe from offering any evidence concerning measures taken to protect the secrecy of the asserted code</u> ██████████████.

Due to Meishe's misconduct, only at the very end of fact discovery did Defendants learn that Meishe ████████████████████████████████████████████████████████████ ████████████████████████ To perpetuate their narrative of independent development, Meishe's CTO submitted a ████████████████████████████████████ As a result, Defendants were not able to pursue case critical discovery, including, for example, deposing Meishe and XAT witnesses to understand how, when, and by whom the ████████████████████████ was developed, whether it was derived from other code, and how much of it was publicly available. Further, given Meishe's misrepresentations about the Dunhuang code, the discovery record is devoid of

24

1   evidence of what reasonable measures were taken to protect the secrecy of the ███████████

2   ████████████. Defendants thus request that, per Rule 37(c)(1) or its inherent powers, the Court

3   preclude Meishe from presenting any evidence concerning measures to protect the secrecy of the asserted

4   code.

5                  4.      <u>Deem admitted that Meishe's pre-suit comparison of decompiled object code for</u>
                           <u>the TikTok app and Meishe app demonstrated no infringement or misappropriation.</u>

6           Meishe violated the Special Master's order during fact discovery by withholding from production

7   ██████████████████████████ from its pre-suit comparison of the decompiled object code for the

8   TikTok app and the Meishe app. By withholding this discovery in violation of the Special Master's order,

9   which Defendants only learned at the close of fact discovery, Meishe irreparably impaired Defendants'

10  ability to evaluate the basis of Meishe's copyright and trade secret claims at the outset of the case. Had

11  Meishe complied with its discovery obligations and produced it, Defendants could have analyzed whether

12  the asserted code was present in its accused apps and ameliorate the dispute (if needed) to limit the scope

13  of alleged liability. Accordingly, Defendants request that, under Rules 37(b)(2)(A) & (c)(1) and the

14  Court's inherent powers, the Court deem admitted that Meishe's pre-suit comparison demonstrated no

15  copyright infringement or trade secret misappropriation.

16  **V.      CONCLUSION**

17          For the foregoing reasons, Defendants respectfully request that the Court issue terminating

18  sanctions, or in the alternative, evidentiary sanctions, against Meishe. Should the Court grant this motion in

19  whole or in part, Defendants also request to submit a fee petition in support of monetary sanctions.

20

21  Dated: June 16, 2025                    Respectfully submitted,

22

23                                          */s/ Kurt G. Calia*

24

25                                          WHITE & CASE LLP
                                            Yar R. Chaikovsky (175421)
26                                          yar.chaikovsky@whitecase.com
                                            Philip Ou (259896)
27                                          philip.ou@whitecase.com
                                            David T. Okano (278485)
28                                          david.okano@whitecase.com

                                              25

3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

Michael Songer
michael.songer@whitecase.com
701 Thirteenth Street, NW
Washington, DC 2005-3807
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

Andrew Zeve
andrew.zeve@whitecase.com
Jeremy Dunbar
jeremy.dunbar@whitecase.com
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701

COVINGTON & BURLING LLP
John E. Hall (118877)
jhall@cov.com
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Kathryn E. Cahoy (298777)
kcahoy@cov.com
Kurt G. Calia (214300)
kcalia@cov.com
3000 El Camino Real, 10th Floor
5 Palo Alto Square
Palo Alto, California 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

*Attorneys for TikTok Inc., TikTok Pte. Ltd.,
ByteDance Ltd. and ByteDance Inc.*

1

**CERTIFICATE OF SERVICE**

2

3        I hereby certify that on June 16, 2025, I caused the foregoing document to be electronically filed

4  with the Clerk of the Court using the CM/ECF system which will send notification of such filing via

5  electronic mail to all counsel of record. I further certify that the foregoing document and all supporting

6  sealed attachment(s) have been provided to all counsel of record via secure FTP delivery on the same

7  day of the filing.

8

9                                              _/s/ Kurt G. Calia_
                                               Kurt G. Calia
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' MOT. FOR SANCTIONS UNDER FRCP 37 AND COURT'S INHERENT POWER                    CASE NO. 3:23-cv-06012-SI