KORULA T. CHERIAN (Bar No. 133967)
sunnyc@cherianllp.com
ROBERT M. HARKINS (Bar No. 179525)
bobh@cherianllp.com
**CHERIAN LLP**
2001 Addison St, Suite 275
Berkeley, CA 94704
Telephone: (510) 944-0190

STEPHANIE R. WOOD (Bar No. 242572)
stephaniew@cherianllp.com
**CHERIAN LLP**
8350 N. Central Expressway, Suite 1900
Dallas, TX 75206
Telephone: (945) 205-0301

Attorneys for Plaintiff Beijing Meishe
Network Technology Co., Ltd.

THOMAS M. DUNHAM (pro hac vice)
tomd@cherianllp.com
J. MICHAEL WOODS (pro hac vice)
michaelw@cherianllp.com
ADAM A. ALLGOOD (Bar No. 295016)
adama@cherianllp.com
**CHERIAN LLP**
2001 L St. NW Suite 650
Washington, DC 20036
Telephone: (202) 838-1560

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| BEIJING MEISHE NETWORK TECHNOLOGY CO., LTD.<br><br>Plaintiff,<br><br>v.<br><br>TIKTOK INC., TIKTOK PTE. LTD., BYTEDANCE LTD., and BYTEDANCE INC.,<br><br>Defendants. | Case No. 3:23-cv-06012-SI<br><br>**PLAINTIFF'S RESPONSE TO DEFEND-ANTS' MOTION FOR SANCTIONS**<br><br>Date: August 15, 2025<br>Time: 10:00 AM<br>Place: Courtroom 1, 17th Floor<br>Before: Hon. Judge Susan Illston<br>Trial Date: October 27, 2025 |

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

████████████████████████

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 3

    A.    Meishe Spun Off From XAT. ................................................................ 3

    B.    XAT Transferred All Its Rights in the Meishe App IP to Meishe ............................ 4

    C.    Meishe's Pre-Suit Investigation ................................................................ 5

    D.    In February 2025, Meishe Discovered and Immediately Produced to Defendants Dunhuang Source Code in Meishe's Possession. ................................................................ 6

    E.    In His May 9, 2025 Order, the Special Master Declined to Credit Defendants' Accusations of Misconduct Against Meishe. ................................................................ 7

    F.    Only Defendants Deliberately Concealed Information Here. ................................. 8

III.  ARGUMENT ................................................................................................ 8

    A.    Standard of Review ................................................................................................ 8

    B.    Sanctions Are Not Warranted on Any Basis. ................................................................ 9

        1.    Defendants' Accusations Lack Merit. ................................................................ 9

            a.    Accusations Relating to the ███████ ................................. 10

            b.    Accusations Relating to Mr. Jian's Declaration .............................. 14

            c.    Meishe Produced Information from its Pre-Suit Comparison of Meishe and Tik Tok Object Code ................................. 15

            d.    Defendants' Case Law Is Inapposite. ................................. 17

        2.    Defendants Failed to Show Prejudice ................................................................ 20

        3.    Defendants' Sanctions Motion Should Be Denied Because It Contravenes Other Authorities. ................................................................ 22

            a.    Defendants' Sanctions Request Violates Generally Applicable Ninth Circuit Law on Discovery Sanctions. ................................. 22

            b.    Defendants' Motion Contravenes This Court's April 4 Order. ........ 24

    C.    The Court Should Award Meishe Attorney's Fees. ................................. 24

IV.  CONCLUSION ................................................................................................ 25

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO: 3:23-cv-06012-SI

███████████████████

## TABLE OF AUTHORITIES

**Cases**

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
    69 F.3d 337 (9th Cir. 1995) ................................................................................ 9

*Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*,
    29 F.3d 1529 (11th Cir. 1994) ............................................................................ 21

*Billy-Bob Teeth v. Novelty, Inc.*, 329 F.3d 586 (7th Cir. 2003) ...................................... 21

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
    482 F.3d 1091 (9th Cir. 2007) ........................................................................... 18

*Imperial Residential Design, Inc. v. Palms Development Group, Inc.*,
    70 F.3d 96 (11th Cir. 1995) ................................................................................ 20

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
    617 F.3d 1146 (9th Cir. 2010) ........................................................................... 21

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ......................................................................... 2, 9

*Magnuson v. Video Yesteryear*,
    85 F.3d 1424 (9th Cir. 1996) ............................................................................. 21

*Nat'l Photo Grp., LLC v. Allvoices, Inc.*,
    No. 13-cv-03627, 2014 U.S. Dist. LEXIS 9190 (N.D. Cal. Jan. 24, 2014) .............................. 21

*Navellier v. Sletten*,
    262 F.3d 923 (9th Cir. 2001) ....................................................................... 2, 9, 23

*Radio Television Espanola S.A. v. New World Ent., Ltd.*,
    183 F.3d 922 (9th Cir. 1999) ............................................................................. 21

*See Valley Eng'rs Inc. v. Electric Eng'g Co.*,
    158 F.3d 1051 (9th Cir. 1998) ........................................................................... 18

*The Sunrider Corp. v. Bountiful Biotech Corp.*,
    2010 WL 4590766 (C.D. Cal. Oct. 8, 2010) ............................................................. 18

*Uribe v. McKesson*,
    2011 WL 3925077 (E.D. Cal. Sept. 7, 2011) ............................................................ 17

*Vogel v. Tulaphorn, Inc.*,
    2013 WL 12166212 (C.D. Cal. Nov. 5, 2013) ............................................................. 18

**Statutes**

17 U.S.C. § 204 .............................................................................................. 21

Fed. R. Civ. P. 37 ....................................................................................... 1, 9

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

iii

## I.    INTRODUCTION

In their latest gambit to avoid the merits of this case, Defendants again move for discovery sanctions against Meishe. Except this time, unlike Defendants' recent motion that the Special Master denied on May 29, 2025, *see* Dkt. No. 576, Defendants seek sanctions from the Court in the first instance. And rather than relying on any purported Meishe violation of any discovery order, Defendants instead rely on a threadbare tapestry of incorrect and immaterial arguments about Meishe's conduct during discovery or ownership of the asserted source code. Such arguments fail to support Defendants' request for sanctions under either Rule 37 or the Court's inherent authority.

Defendants' arguments lack merit, as they fail to show that Meishe committed any sanctionable conduct, much less any that warrants dismissal. First, Defendants complain that they did not have notice of an ███████████████████████████████████████████████ ███████████████████████████████ But that argument is disingenuous; Defendants were long aware that XAT and Meishe agreed to a transfer of intellectual property that took place in ████████ ████████████████████████████████████████. Nor should Defendants be surprised that there was some type of ████████████ when a small company is formed from a unit of a larger company. It is Defendants' failure own failure to pursue this further in discovery.

Second, Defendants argue that Meishe's CTO made "false" statements in a declaration regarding the development of the Meishe app and that Meishe "concealed" the truth behind his statements during fact discovery. Defendants argue that during the development of the Meishe app at XAT used some source code from another XAT product (Dunhuang) was used in the Meishe code. Dunhuang documents were ultimately produced by Meishe and Dunhuang source code from both Meishe and XAT was made available for inspection. Defendants previously told this story to the Special Master, who rejected it. Dkt. No. 564 at 13.

Third, Defendants complain of information related to Meishe's pre-suit investigation from four years ago. Defendants were aware of Meishe's pre-suit analysis years ago from Meishe's

---

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO: 3:23-cv-06012-SI

1    complaint. Ultimately, the information that was determined by the Special Master to be non-privi-

2    leged was produced. Again, Defendants raised this issue to the Special Master only to have it rejected.

3        Even if the Court decides to apply the Ninth Circuit's *Leon* test for whether sanctionable

4    conduct may warrant dismissal, Defendants' arguments fail.[1] Defendants primarily rely on the prej-

5    udice factor, but they have suffered no prejudice.[2] Meishe's ownership of its intellectual property

6    was established, at least, by an ███████████████████████████████████████████████████████

7    ████████████████████ related to the Meishe app which is what Defendants copied.[3] For any Dunhuang

8    code used in the Meishe code, Defendants have full access to inspect both the Dunhuang code and

9    Meishe code. Meishe's pre-suit investigation presents absolutely no prejudice to Defendants. This

10   investigation concerned the comparison of some Meishe and TikTok object code – not the source

11   code that is at issue in this litigation. Defendants have spent hundreds of hours inspecting Meishe

12   source code and Meishe has identified where Meishe source code is found in Defendants' code.

13       Finally, the Court should Defendants' motion because it contravenes other authority includ-

14   ing Ninth Circuit law and this Court's orders. As discussed below, Defendants' proposed sanctions

15   and alternative sanctions do not relate to the discovery conduct of which Defendants complain as

16   required by the Ninth Circuit.[4] Moreover, Defendants act of filing this motion violates Your Honor's

17   order on the Special Master which requires Defendants to pursue discovery issues with the Special

18   Master first. *See* Dkt. No. 423.

19

20   _____

21   [1] The Ninth Circuit's five *Leon* factors are: "(1) the public's interest in expeditious resolution of
     litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking
     sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability
22   of less drastic sanctions." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

23   [2] As discussed below the other *Leon* factors are either inapplicable, neutral, or disfavor sanctions.

24   [3] Further, Defendants are now challenging Meishe's ownership of its intellectual property in their
     recent summary judgment motion. Although Meishe disagrees with the arguments in that motion,
     Defendants clearly have the information they need to pursue this alleged issue. *See* Dkt. No. 608.

25   [4] *See Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001) ("a reasonable relationship to the subject
26   of discovery that was frustrated by sanctionable conduct.").

27
     PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
28   CASE NO: 3:23-cv-06012-SI

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

As set forth below, this Court should deny Defendants' motion for at least three reasons: (1) Defendants fail to show that Meishe committed any sanctionable conduct, much less bad faith; (2) no complained-of conduct was material or caused any prejudice; and (3) Defendants' motion contravenes multiple other authorities. And the Court should award Meishe its attorney's fees for responding to Defendants' baseless request.

## II.    BACKGROUND

### A.    MEISHE SPUN OFF FROM XAT.

Throughout this case, Meishe has made it clear that it was spun off from its predecessor-in-interest Xin Ao-Te ("XAT"),[5] that XAT initially developed version 1.0 of the Meishe app, and that founding members of the Meishe team had been XAT employees working on XAT products, including XAT's Dunhuang video-editing software.[6] *See, e.g.*, Ex. A at 2 (The Meishe app "was developed and owned by XAT before Meishe was established."); *id.* ("The founding employees of Meishe were originally core members of XAT's research and development team … involved in development of different XAT products, including the Dunhuang software."); *see also, e.g.*, Dkt. No. 6 at ¶ 60 (alleging "at 'Xin Ao-Te' and Meishe, Mr. Jing Xie directly participated in the development of 'Meishe v1.0' and the subsequent upgrades of various versions….").

Indeed, Meishe began as a department of XAT, called video360, which completed the initial version of the Meishe mobile application for audio and video editing (Meishe app) in September 2014. *E.g.*, Ex. B at MEISHE-TT_00002503. In October 2014, that department began operating as the separate company Meishe, with XAT signing an investment agreement ███████████████ ███████████        in Meishe. Ex. C (investment agreement).[7] Meishe received its business licenses

---

[5] Also referred to in English as China Digital Video (Beijing) Limited.

[6] XAT launched its Dunhuang software in 2010. Dunhuang is mainly used for editing and composing video content on desktops and laptops. XAT launched the Meishe app in 2014, and it was mainly used on smartphones with Android and iOS operating systems.

[7] After additional financing, XAT now owns about 30 percent of Meishe.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO: 3:23-cv-06012-SI

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

██████████████████████████████████████████

on October 23, 2014. Ex. D (attached to declaration). As further detailed below, portions of source code for XAT's Dunhuang software were re-used in the Meishe app, but XAT's transfer of all its rights in the Meishe app to Meishe included those portions. *E.g.*, Ex. E at ¶ 17.

### B.    XAT TRANSFERRED ALL ITS RIGHTS IN THE MEISHE APP IP TO MEISHE

There has never been any ownership dispute between XAT and Meishe regarding the IP rights that Meishe is asserting in this case. ████████████████████████████ ███████████████████████████████████████████████, to Meishe. *See* Ex. B at MEISHE-TT_00002504; Ex. E at ¶ 17. That transfer necessarily completed performance of an earlier ████ ████████████████████████████████████████████████████████████████████ ██████████████████████████. *E.g.*, Ex. E at ¶ 11. Consistent with that, Meishe's CEO testified in deposition that Meishe was spun off as a company and the ████████████████████████ ████. *See* Ex. F at 43:11–15, 68:20–22, 80:19-20, 119:21–120:7, 122:7–12, 125:11–17, 132:13–134:10, 145:19–146:10. Defendants also ignore a written investment agreement in September 2014 (effective October 1, 2014) that left to the parties' further agreement ████████████████ ████████████████████████████. Ex. C.[8] That transfer was then further confirmed by an █████ ███████████████████████████████████████████████████████████████████████████████ ████, Ex. B at MEISHE-TT_00002500–01, as well as a █████████████████████████ in connection with Meishe's litigation against several ByteDance entities in China. *Id*. at MEISHE-TT_00002504.

Specifically, XAT had registered Meishe app version 1.0 with the National Copyright Administration of the People's Republic of China, as Registration No. 2014SR205312. *See* Ex. G (including translation). In the written ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████

---

[8] There was a supplement in June of 2015, after XAT had already transferred the source code including copyrights and trade secrets, further defining intangible assets as patent applications, but that was only after the performance and acceptance of the transfer of the other IP rights.

4

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO: 3:23-cv-06012-SI

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

████████████████████████████████

██████████████████████████████. *See* Ex. B at MEISHE-TT_00002500–01. The transfer of the registered copyright in Meishe app v1.0 to Meishe was also registered with the National Copyright Administration of China, as Registration No. 2015SR227927. *Id*. at MEISHE-TT_00002503.

Further, ████████████████████████████████████████

████████████████████████████████████████████

████████████████████. *Id*. at MEISHE-TT_00002504; Ex. E at ¶¶ 38–40. That declaration expressly states, among other things, that XAT completed version 1.0 of the Meishe app on ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████." *Id*. The Chinese courts thereafter repeatedly confirmed that Meishe owns the Meishe app in a series of civil rulings. *See* Ex. E at ¶¶ 38–40; Ex. H (Chinese courts' rulings attached as Exs. 1–9 to Wang Rept.).

### C.    MEISHE'S PRE-SUIT INVESTIGATION

This case involves vast copying of Meishe's source code by a former employee, who brought it to Defendants. As alleged in the operative complaint, Xie Jing, "participated in the development of Meishe's software until his resignation" from Meishe on June 8, 2015. Dkt. No. 433 at ¶¶ 85, 87. When Mr. Xie left Meishe, he took "Meishe's trade secrets, copyrighted computer code, and other confidential information" and used them in Defendants' products. *See id*. at ¶ 88. To determine whether it had a plausible claim for relief, Meishe's pre-suit investigation included conducting a comparison between the decompiled TikTok app v.8.5.0 object code (not source code) and decompiled Meishe app v.2.5.4 object code to discover alleged similarities. *Id*. at ¶¶ 79–80. Confirming the results of Meishe's investigation, Mr. Xie Jing later ██████████████████████

████████████████████████████████████████████

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ "). And Mr. Xie's manager at ByteDance, Jianchao Yang, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉. *See*, *e.g.*, Dkt. No. 601-17 at 139:5–7. The vast scope of Defendants' copying extends to 89 versions of Defendants' software, impacting over a million files. *See*, *e.g.*, Dkt. No. 602-15 at ¶ 78. Meishe had no access to Defendants' source code, so its presuit investigation did not and could not include any actual source code comparison.

### D. IN FEBRUARY 2025, MEISHE DISCOVERED AND IMMEDIATELY PRODUCED TO DEFENDANTS DUNHUANG SOURCE CODE IN MEISHE'S POSSESSION.

As noted, founding Meishe employees previously worked on XAT's Dunhuang software. During fact discovery, Defendants requested that Meishe produce Dunhuang source code and related documents in its possession, and Meishe complied with Defendants' requests to the extent that Meishe found responsive information. For whatever reason, despite XAT complying with Defendants' letters rogatory requests, no request was made from Defendants to XAT for Dunhuang code. Until February 2025, Meishe had not found and believed that it did not possess any Dunhuang source code. Meishe CTO Jian Liang's recollection was that the Meishe app had not used any Dunhuang source code, and Meishe employees' physical access to Dunhuang source code had generally ended in 2015, when Meishe moved into its new offices. *See* Ex. I at 7–8, 11–12. As Meishe explained in interrogatory responses, however, two Meishe employees continued to work for XAT on Dunhuang into 2016 and 2017, respectively. *Id*. In February 2025, Meishe located some Dunhuang source code and related documents on an old computer in storage, which one of those employees had used. *Id*. Meishe then immediately produced this source code and the related documents to Defendants. *Id*.

In opposition to a motion to compel Dunhuang documents that Defendants submitted to the Special Master on December 4, 2024 (months prior to the location of Dunhuang code by Meishe), Meishe's CTO, Mr. Jian, had submitted a declaration stating that the Meishe app did not use Dunhuang source code. Dkt. No. 590-15 (Defs. Ex. Q). After Meishe discovered the Dunhuang

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

source code and Mr. Jian reviewed it, he wrote a letter to the Special Master explaining that this declaration had been "truthful based on [his] understanding at the time," but that his recollection had been incorrect, as the Meishe app did use some Dunhuang source code. Dkt. No. 590-17 (Defs. Ex. S). During his deposition, Mr. Jian's testimony was consistent with his letter, with nothing suggesting that he or Meishe had any access to Dunhuang source code until it was found and produced in discovery. *See* Ex. J at 91:24–134:24.

### E.    IN HIS MAY 9, 2025 ORDER, THE SPECIAL MASTER DECLINED TO CREDIT DEFENDANTS' ACCUSATIONS OF MISCONDUCT AGAINST MEISHE.

In their April 25, 2025 Renewed Motion to Compel XAT Documents, Defendants attempted to use Mr. Jian's candor against Meishe, arguing that his letter to the Special Master showed that Meishe had "actively concealed" relevant discovery. *E.g.*, Dkt. No. 568-13 at 3, 5. On May 7, 2025, the Special Master ordered Meishe to produce what Defendants requested in that motion but rejected Defendants' accusations of deliberate concealment. As stated in that order:

> The Special Master agrees that allegations of concealment are belied by Plaintiffs' production of Dunhuang code on the computer found in storage, as Plaintiff notes, and Mr. Liang's letter correcting his prior statements. The Special Master makes no finding that Plaintiff intentionally "concealed" responsive materials here.

Dkt. No. 564 at 13.

Shortly after Defendants served the motion that resulted in that order, Meishe sent another letter to XAT requesting the specific Dunhuang source code and documents that Defendants sought. Dkt. No. 569-14 (at internal Ex. D, April 28, 2025 letter).[9] Meishe also reached out to XAT through its CEO. Dkt. No. 570-10 (at internal Ex. E, April 30, 2025 decl.). On May 21, 2025, XAT voluntarily provided the Dunhuang source code for the version that immediately preceded the development of the Meishe app in 2014, as well as related technical documents. Dkt. No. 570 at 5–6. And Meishe produced that information to Defendants via its source code computer. *Id.*

---

[9] This was Meishe's fourth letter to XAT requesting that it voluntarily produce this information.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO: 3:23-cv-06012-SI

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

**F.     ONLY DEFENDANTS DELIBERATELY CONCEALED INFORMATION HERE.**

Regarding Defendants' demands for Dunhuang code and documents, Meishe complied with Defendants' requests, to the extent it was able. *See* Ex. K at 46:20-23. Meishe opposed Defendants' motions to the extent they sought information not in Meishe's control. *See generally* Dkt. No. 570 (objections to May 7, 2025 order). As noted, XAT owns part of Meishe, not the other way around, and Meishe does not control XAT. However, Meishe repeatedly sent letters to XAT requesting documents, including on Meishe's own initiative and at the direction of the Texas court and the Special Master. *See, e.g.*, Dkt. No. 362 at ¶ C; Dkt. No. 569-14 (at internal Ex. C, March 20, 2025 letter).

Yet, at the same time that Defendants were filing serial motions to compel and hounding Meishe for discovery from XAT, Defendants failed to mention to anyone—Meishe, the Texas court, or the Special Master—that Defendants obtained 500 pages of documents directly from XAT, via letters rogatory issued by the Texas court, back in 2023. Defendants stayed silent when Meishe sent a letter to XAT on October 6, 2023, at the behest of Defendants and the Texas court, requesting documents that Defendants had already received from XAT a month earlier. *See* Dkt. No. 569-4 (internal Ex. 8, Oct. 6, 2023). Only on April 11, 2025, at the close of fact discovery, did Defendants finally produce the documents they had received from XAT more than a year earlier, revealing that they had been able to obtain discovery from XAT all along. And if anyone is at fault for deliberately concealing information from the Court or parties here, it is Defendants, not Meishe. Defendants have never explained why they never followed up via the letters rogatory process that XAT complied with to obtain directly from XAT any additional documents Defendants sought.

## III.    ARGUMENT

### A.     STANDARD OF REVIEW

Defendants request dismissal, under Rule 37 or the Court's inherent authority. "Dismissal is an available sanction when 'a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings' because 'courts have inherent power to dismiss an action when

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

████████████████████████████

1   a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly

2   administration of justice.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quoting *An-*

3   *heuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). If a party has en-

4   gaged in such conduct, the district court should consider the following factors before imposing such

5   a "harsh sanction": "(1) the public's interest in expeditious resolution of litigation; (2) the court's

6   need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public

7   policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."

8   *Id.* Additionally, "a finding of willfulness, fault, or bad faith is required," and "the district court must

9   consider less severe alternatives." *Leon*, 465 F.3d at 958 (internal quotations omitted). And Ninth

10  Circuit law requires discovery sanctions to bear "a reasonable relationship to the subject of discovery

11  that was frustrated by sanctionable conduct." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001).

12       **B.       SANCTIONS ARE NOT WARRANTED ON ANY BASIS.**

13       The Court should deny Defendants' motion for at least three reasons. First, Defendants fail

14  to show that Meishe committed any wrongful or sanctionable conduct, much less that it "willfully

15  deceived the court and engaged in conduct utterly inconsistent with the orderly administration of

16  justice" or otherwise acted in bad faith, as Defendants' request for dismissal requires. *E.g.*, *Leon*,

17  464 F.3d at 958. As a result, it is unnecessary to reach the five *Leon* factors listed above. Second,

18  even if the Court were to apply the *Leon* factors, no sanctions would be warranted, as none of the

19  conduct that Defendants complain of was material to this case or caused any prejudice. Third, De-

20  fendants' motion contravenes multiple other authorities, including Ninth Circuit law on discovery

21  sanctions, Rule 37, and this Court's order appointing the Special Master.

22            **1.       Defendants' Accusations Lack Merit.**

23       Defendants' accusations against Meishe generally relate to three topics: (1) Meishe's Chi-

24  nese law expert's discussion of an ███████████████████████; (2) a December

25  2024 declaration that Meishe's CTO submitted in opposition to one of Defendants' serial motions

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

26

9

27  PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS

28  CASE NO: 3:23-cv-06012-SI

██████████████████████████████████████████████

to compel; and (3) disclosures regarding Meishe's pre-suit investigation. As detailed below, Defend-ants fail to show that Meishe committed any wrongful conduct in either instance. Defendants' mo-tion thus should be denied, even before applying the *Leon* factors. *See Leon*, 464 F.3d at 958.

### a.    Accusations Relating to the Oral Agreement

Defendants argue that they had no notice of the background of Meishe's ownership of its intellectual property relating to an ████████████████████████████████████████████ ████████████████████████████████████████. That argument is disingenuous, as Defendants cannot credibly claim to be surprised by the fact that, shortly before XAT spun off Meishe as a separate company devoted to further developing and monetizing the Meishe app, XAT and Meishe's future CEO discussed, planned, and reached an agreement to do that exact thing. *See*, *e.g.*, Ex. F at 43:11–15, 68:20–22, 80:19-20, 119:21–120:7, 122:7–12, 125:11–17, 133:21–134:10, 145:19–146:10; Ex. B at MEISHE-TT_00002500 (§ ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████. Put another way, Meishe was not spun off spontaneously; it was planned. Unsurprisingly and necessarily, part of the plan was to transfer the IP rights for the Meishe app from XAT to Meishe. That's what the ███████████████████████ ████████████████████████████████████████. And that's consistent with Meishe's allegations and positions throughout this case, interrogatory responses, and witness testimony.

Defendants' only response to this appears to be that despite Meishe disclosing throughout that there was an agreement between XAT and Meishe whereby ████████████████████████ ████████████████████████████████████████████████████████l." That is not a failure to ████████████████████████████████████████████████████████████ ███. Meishe disclosed the agreement.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO: 3:23-cv-06012-SI

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

███████████████████████████

Meishe has repeatedly explained that it spun off from its predecessor-in-interest XAT, that XAT initially developed version 1.0 of the Meishe app, and that founding members of the Meishe team were previously XAT employees working on XAT products, including XAT's Dunhuang software.[10] *See, e.g.,* Ex. A at 2 (The Meishe app "was developed and owned by XAT before Meishe was established."). And Defendants have known since at least mid-2022***, when Meishe served its first response to Defendants' first interrogatory relevant to this issue***, that XAT transferred all its IP rights for the Meishe app to Meishe in February 2015.[11]

Specifically, Defendants' Interrogatory 14, served July 29, 2022, asks about ownership of the asserted copyrights and source code.[12] Meishe timely responded one month later, asserting objections and confirming that "Meishe is the current and sole owner of all the copyrights and trade secrets asserted in this case." Ex. L at 24. Meishe's response also directed Defendants to seven pages of documents, including ███████████████████████████████████████

████████████. *Id.*[13] As is relevant here, that declaration stated that:

██████████████████████████████████████████
██████████████ Beijing Meishe Network Technology Co., Ltd. has since become copyright owner and trade secret owner of the "MEISHE Mobile-phone Video Shooting and Editing Software", and there exists no ownership dispute between the Company and Beijing Meishe Network Technology Co., Ltd. with respect to the Software.

---

[10] XAT launched its Dunhuang software in 2010. Dunhuang is mainly used for editing and composing video content on desktops and laptops. XAT launched the Meishe app in 2014, and it was mainly used on smartphones with Android and iOS operating systems.

[11] Defendants likewise knew, since at least mid-2022, that the transfer of IP rights from XAT to Meishe took place before XAT and Meishe signed the ████████████████████████████████
████████████████████████████.

[12] "Identify all current, former, and claimed ownership interests in each of the Asserted Copyrights, Alleged Nonpublic Source Code, or Related Products, and all agreements and negotiations related to those actual or claimed ownership interests and/or changes in ownership interest."

[13] *I.e.*, MEISHETT_00000160–161, MEISHE-TT_00002500–2504.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO: 3:23-cv-06012-SI

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

[REDACTED]

1  Ex. B (MEISHE_TT00002504).[14]

2       In Meishe's document production, XAT's [REDACTED]

3  [REDACTED]

4  [REDACTED]

5  [REDACTED]. Thus, contrary to what Defendants argue, Meishe did not mis-

6  lead Defendants into believing that the [REDACTED]

7  [REDACTED]. Nor did Meishe even elevate the [REDACTED]

8  [REDACTED]. Rather, from Meishe's earliest interrog-

9  atory response onward, it has been Meishe's position that XAT transferred its IP rights in the Meishe

10  app to Meishe [REDACTED]

11  [REDACTED].

12       Mr. Zheng's deposition testimony, when Defendants' counsel let him speak, further clarifies

13  the sequence of events. For example, Mr. Zheng explained that his discussions with XAT began in

14  2014, and that Meishe began operating as separate company by October 2014. *See, e.g.*, Ex. M at

15  188:1–9; Ex. F at 43:11–15, 68:20–22, 80:19-20; *see also* Ex. D at ¶ 3 (stating that Meishe began

16  operating as separate company in October 2014); Ex. C ([REDACTED]

17  [REDACTED]).[15]

18       Further, Defendants' counsel asked Mr. Zheng about ownership of Meishe app version 1.3

19  in October 2014, and he testified as follows:

20  [REDACTED]

21

22

23  [14] That public declaration is attached to the October 10, 2015 written agreement between XAT and
   Meishe (MEISHE-TT_00002501–MEISHE_TT00002502) and follows a document from the Copy-
24  right Protection Center of China showing that Meishe owns Chinese Copyright Registration No.
   2015SR227927 (MEISHE_TT00002503).

25  [15] As noted, XAT agreed to a 40 percent stake in the not-yet-incorporated spin off. This shows that
   XAT treated Meishe as a separate company, as there ordinarily would be no need for such an ar-
26  rangement with a department consisting of its own employees.

27
   PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
28  CASE NO: 3:23-cv-06012-SI

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704



Ex. F at 119:17–120:7. Thus, although Mr. Zheng did not expressly refer to it as an

. Yet Defendants' motion ignores that and other relevant passages of testimony. *See, e.g., id.* at 125:15–17 ("I can tell you with certainty that starting from 1.0 and after that, all the intellectual properties belonged to Meishe.").[16]

Further, when questioning Mr. Zheng, it became apparent that Defendants' counsel was only interested in obtaining responses about                                           . Defendants' counsel did not ask follow-up questions when Mr. Zheng testified that he understood that there was an agreement before that. *See, e.g., id.* at 119:17–120:7. And Defendants' counsel became argumentative when Mr. Zheng attempted to explain himself or felt that he was unable to truthfully

---

[16] Other examples include the following: Ex. F at 127:9–11                                           ."); *id.* at 132:22–25                                           *id.* at 122:9–12                                           "); *see also id.* at 43:11–15, 68:20–22, 80:19-20, 132:13–134:10, 145:19–146:10 (similar).

13

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO: 3:23-cv-06012-SI

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

██████████████████████████

1    answer counsel's questions with a one-word yes or no.[17] *See*, *e.g.*, *id*. at 120:8–121:4.

2          Thus, contrary to Defendants' mischaracterizations, there is nothing surprising or sinister

3    about ████████████████████████████, Meishe, to further develop the

4    Meishe app. That is how a new company typically starts. Some of the details from 10 years ago are

5    no longer clear. But what is clear—crystal clear—is that in any time period that is potentially rele-

6    vant to this lawsuit, Meishe owned all the copyrights and other IP rights for the asserted Meishe app

7    source code. There has never been a dispute about that between Meishe and XAT. And as further

8    addressed below, regarding prejudice, XAT is the only other party that could conceivably have

9    standing to challenge the oral agreement or Meishe's ownership of the asserted IP rights.

10                b.    Accusations Relating to Mr. Jian's Declaration

11          As noted, Meishe believed until February 2025 that it did not possess any Dunhuang source

12   code, based on its searches, Meishe CTO Jian Liang's recollection that the Meishe app had not used

13   Dunhuang source code, and that Meishe employees' physical access to Dunhuang source code had

14   generally ended in 2015. *See* Ex. I at 7–8, 11–12. When Meishe and Mr. Jian obtained new infor-

15   mation, it was entirely appropriate for Mr. Jian to correct his previous statement that the Meishe app

16   did not use Dunhuang source code. As Mr. Jian stated in his letter to the Special Master, his decla-

17   ration had been "truthful based on [his] understanding at the time," but now he knew otherwise and

18   wanted to correct the record. Dkt. No. 590-17 During his deposition, Mr. Jian's testimony was con-

19   sistent with that, and nothing suggested that he or Meishe had any access to Dunhuang source code

20   until February 2025. *See* Ex. J at 91:24–134:24. For example, when Defendants' counsel asked Mr.

21   Jian about his previous sworn statement (and attempted to cabin his testimony into a misleading

22   sound bite), he candidly testified as follows:

23   ████████████████████████████████████████

24

---

25   [17] Following his deposition, Mr. Zheng reviewed his transcript and determined he needed to clarify
     his testimony regarding the oral agreement. He submitted an errata to his deposition to do just that,
26   to which Defendants subsequently raised objections.

27
     PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
     CASE NO: 3:23-cv-06012-SI
28

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704



*Id.* at 132:8–19.

At bottom, there is absolutely no evidence that supports Defendants' repeated and over-the-top accusations of willful false statements, deliberate concealment, bad faith, and "perjury." Civil and criminal punishment is reserved for conduct with the requisite scienter. Accordingly, in determining whether to award sanctions, courts evaluate a statement based on the declarant's knowledge at the time it was made. *See, e.g.*, Fed. R. Civ. P. 11, Advisory Committee's note to 1983 amendment ("The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted."). Here, the record confirms that Mr. Jian believed his sworn statement at the time, and that he and Meishe did not know that the Meishe app contained Dunhuang source code until both sides could review the Dunhuang source code that Meishe found in February 2025. As such, Defendants' arguments based on Dunhuang or Mr. Jian's declaration are meritless.

        c.      <u>Meishe Produced Information from its Pre-Suit Comparison of Meishe and Tik Tok Object Code</u>

As Meishe alleged in the Fourth Amended Complaint, filed more than a year ago, Meishe's pre-suit investigation included conducting a comparison between decompiled TikTok v.8.5.0 object code and decompiled Meishe v.2.5.4 object code to discover similarities. Dkt. 433 at ¶¶ 79–80. This pre-suit analysis was not 'hidden' from Defendants as they argue in their brief. Meishe also made similar allegations in earlier-filed Chinese litigations. *See* Dkt. 531 at 4. As noted in the Special Master's January 27, 2025 Order, Meishe used a software program called IDA Pro to decompile the object code and utilized what was displayed on the software window without "generating files of decompiled object code." *Id.* at 3. Meishe initially believed that the IDA Pro software used by

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

Meishe did not retain any files showing the decompiled code comparison as stated in the declaration of Mr. Liang Jian, Meishe's CTO. *See* Dkt. No. 590-20 (Defs. Ex. Z). However, Meishe subsequently determined that there were files in the IDA Pro software that retained some decompiled code information, not actual source code. Mr. Jian's declaration was not false as claimed by Defendants, rather he was mistaken and then Meishe corrected this error by producing the IDA Pro files in February 2024.

In 2021, at the direction of Meishe's Chinese litigation counsel, Meishe employees prepared a spreadsheet comparing TikTok v8.5.0 decompiled object code with Meishe v2.5.4 de-compiled object code. *E.g.*, Dkt. 560 at 2. This spreadsheet included notations reflecting communications between Meishe and its Chinese litigation counsel. *E.g., id*. Meishe did not hide this spreadsheet as Defendants suggest. *See* Motion at 18. As Meishe informed Your Honor, Meishe regarded this spreadsheet as attorney work product. On April 22, 2025, the Special Master directed Meishe to produce this spreadsheet, but with redactions to those notations and a privilege log, and Meishe immediately did so. *See id*.

Importantly, the comparison files Defendants cite were very limited comparisons between a single version each of the Meishe and TikTok object code – not the underlying source code. Since 2022, Defendants have spent hundreds of hours using multiple experts and attorneys inspecting the actual Meishe source code. Defendants' statement that the lack of these few files hampered Defendants investigation is without merit. Defendants could have had a direct comparison between Meishe and Defendants' source code years ago using software, but they refused. For example, in an August 15, 2023 letter, Meishe detailed the specifics of a proposal for modifying the protective order and having both sets of source code on one computer to use software to compare the difference sets of code. Dkt. No. 603-9. Defendants rejected that Meishe proposal. Dkt. No. 601-20. When Defendants complained to the Special Master that they did not have sufficient line-by-line comparisons (█████ ██████████████████████████████████), the Special Master agreed that Meishe's

proposal for comparing the source code with software would have been preferable. Dkt. No. 603-17 at 39:9–11 ("I certainly agree with [Meishe counsel that] a better way to have run this railroad was have this software that just compares them all.").

Meishe did not hide anything or make false statements, as Defendants state, and Meishe produced the information once the Special Master determined what parts of the information were not privileged. Once again, if Defendants wanted more information on comparisons of source code (which is what is at issue here – not object code), Defendants have only themselves to blame.

d.    Defendants' Case Law Is Inapposite.

As noted, dismissal requires a "a finding of willfulness, fault, or bad faith is required," and "the district court must consider less severe alternatives." *Leon*, 465 F.3d at 958. None of the cases that Defendants cite dismiss actions or claims based on circumstances like those in this case, as set forth above. Defendants cite *Uribe v. McKesson* as supporting dismissal from "one false declaration." *See Uribe v. McKesson*, 2011 WL 3925077 at *5 (E.D. Cal. Sept. 7, 2011); Mot. at 13. But *Uribe* was a prisoner civil rights proceeding where one prisoner completely fabricated a declaration from another prisoner and signed the other prisoner's name (without the knowledge of the so-called de-clarant). *Id*. In the instant case there are no knowingly false declarations, much less completely fab-ricated ones.

In *The Sunrider Corp. v. Bountiful Biotech Corp*. case cited by Defendant, the Court deter-mined that the defendant in *Sunrider* had knowingly and willfully violated several court orders on discovery, repeatedly provided perjurious testimony and testified to contradictory information, ad-mitted information he previously provided was false, and was previously subject to Court-ordered discovery sanctions. *See The Sunrider Corp. v. Bountiful Biotech Corp.*, 2010 WL 4590766 at *22 (C.D. Cal. Oct. 8, 2010); Mot. at 13-14. No such circumstances exist here.

In *Valley Eng'rs Inc. v. Electric Eng'g Co*., the Ninth Circuit affirmed a district court order dismissing a litigation based on discovery conduct. Although this case turned on the withholding of

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

a single documents, this documents – described as a "smoking gun" memo and was itself case dis-positive. *See Valley Eng'rs Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998); Mot. at 16. The Court held that the defendant knowingly and willfully withheld the document despite years of discovery requests and specific court orders. As discussed herein, the conduct of which Defend-ants complain has <u>no impact</u> on the litigation and is not the result of any knowing or willful actions.

In *Vogel v. Tulaphorn, Inc.*, the Court terminated an Americans with Disabilities Act (ADA) case for discovery misconduct where the plaintiff had knowingly submitted false evidence and tes-timony on which the entire case was based in that he testified that he entered a restaurant and en-countered barriers incompatible with the ADA and photographed them when in fact only his attorney visited the restaurant and took photographs. *See Vogel v. Tulaphorn, Inc.*, 2013 WL 12166212, at *7 (C.D. Cal. Nov. 5, 2013); Mot. at 17. Even if Defendants' allegations were true (which they demonstrably are not) no such egregious conduct occurred here. Further, the discovery issues of which Defendants complain have no impact of this litigation.

In *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, the Ninth Circuit affirmed a district court decision in a RICO and fraud litigation. In that case, the defendants actively evaded discovery for years despite specific orders from the Court. Defendants falsified documents in an attempt to evade discovery obligations, suited knowingly false statements to the Court, and changed names of employees to prevent the employees from being contacted by plaintiff. See *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1095-97 (9th Cir. 2007); Mot. at 13, 19, 20, 22. Such egregious conduct is not even alleged here by Defendants.

In *Indiezone, Inc. v. Rooke*, this Court dismissed a case after the plaintiff knowingly submit-ted manufactured documents to the Court that went to the heart of the issues in the litigation, made many false and fraudulent statements through declarations, and testimony, and offered no plausible explanations for the many frauds perpetrated on the Court. *See Indiezone, Inc. v. Rooke*, 2014 WL 4354122 (N.D. Cal. Sept. 2, 2014); Mot. at 22. Again, Defendants have made no allegations of

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO: 3:23-cv-06012-SI

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

fraudulent documents here and, to the extent there were misstatements in declarations, these errors were promptly explained and corrected. Moreover, as discussed herein, the issues of which Defendants complain have no impact on the litigation.

In *National Casualty Co. v. National Strength and Conditioning Association*, although the plaintiff sought terminating sanctions twice, the Court only awarded lesser sanctions in both instances. In *National Casualty*, the defendants had knowingly made many false statements and later admitted that fact and knowingly committed spoilation. Despite the significant volume of discovery misconduct, the Court did not terminate the case based on sanctions but later ended it on summary judgment. *See National Casualty Co. v. National Strength and Conditioning Association*, 2020 WL 3498169, at *3-4 (S.D. Cal. June 29, 2020); Mot. at 23. Although defendants cited this case, this case shows that even discovery misconduct far in excess of what Defendants have alleged did not result in terminating sanctions.

In *ConsumerDirect, Inc. v. Pentius LLC*, the Court again did not grant the requested terminating sanctions; instead granting lesser sanctions even though the plaintiff concealed that it lacked standing to even bring the lawsuit and manufactured fraudulent documents to attempt to correct this issue. *See ConsumerDirect, Inc. v. Pentius LLC*, 2023 WL 8876198 at *9 (C.D. Cal. Sept. 21, 2023). Here, Defendants seek terminating sanctions for much lesser allegations than what actually occurred in *ConsumerDirect.* Further, the alleged discovery issues of which Defendants complaint do not have any impact on the case, much less the basis on which the entire case was brought.

As shown above, there is no such willful or knowing conduct here as in the cases cited by Defendants, nor is there even any sanctionable conduct on Meishe's part. The circumstances in the cases cited by Defendants where terminating sanctions were granted were far more egregious than even what Defendants alleged. Moreover, the unlike the case cited by Defendants, the discovery issues complained of by Defendants do not impact the instant case. Accordingly, this Court should deny Defendants' motion, even before analyzing the *Leon* factors.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO: 3:23-cv-06012-SI

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

## 2.    Defendants Failed to Show Prejudice

In determining whether sanctionable conduct may warrant dismissal, courts consider the five *Leon* factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.* Factor four (the preference for disposing of cases on their merits) weighs against sanctions. As does factor five (the availability of less drastic sanctions). If Defendants were truly aggrieved by Meishe's conduct during discovery, Defendants could have raised it with the Special Master, as they were required to, and sought an extension or other appropriate relief. By requesting dismissal, Defendants confirm that the present motion amounts to a desperate Hail Mary, with no supporting record. Factors one and two are inapplicable or neutral. And factor three (prejudice), which Defendants' attempt to rely on, also favors denying sanctions, as none of the conduct that Defendants complain of materially impacts this case one iota.

For instance, with respect to the enforceability ███████████████████████████████ ███████████████████████ ), it is well established that an accused infringer cannot escape copyright liability by raising a failure to comply with a writing requirement, or some other formalistic defect, in a copyright transfer agreement between other parties that are not themselves disputing ownership. For example, as the Seventh Circuit explained in *Billy-Bob Teeth v. Novelty, Inc.*:

> [Defendant] simply does not having standing under § 204 [the Copyright Act's writing requirement]. The statute is in the nature of a statute of frauds and is designed to resolve disputes among copyright owners and transferees. As the court said in *Imperial Residential Design*, "the chief purpose of section 204(a), (like the Statute of Frauds), is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership." The court went on to say that, where there is no dispute between the copyright owner and the transferee about the status of the copyright, "it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement." 70 F.3d at 99.

329 F.3d 586, 592–93 (7th Cir. 2003). Here, likewise, Defendants have never had standing to

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

challenge any agreement between XAT and Meishe (or Mr. Zheng as Meishe's promoter), because they are in agreement that Meishe owns the IP rights at issue in this case. *See* Ex. B at MEISHE-TT_00002504 (XAT declaration).

And even were that otherwise, the case law is equally clear that an ███████████████ ██████████████████████████████████████████ under both United States law and Chinese Law. For example, *Billy-Bob* further explains:

> As the statute [§ 204] indicates, an oral assignment may be confirmed later in writing. In *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529 at 1532 (11th Cir. 1994), the court recognized that "17 U.S.C. § 204(a) can be satisfied by an oral assignment later ratified or confirmed by a written memorandum of the transfer." Similarly, in *Imperial Residential Design, Inc. v. Palms Development Group, Inc.*, 70 F.3d 96 at 99 (11th Cir. 1995), the court agreed that "a copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer ab initio."

*Id*. at 591. Accordingly, the court found it sufficient in that case that "White, as the 'author' of the [work] in question, executed a nunc pro tunc document in 2001 memorializing that as of May 31, 1996, he assigned his copyrights to Billy-Bob, Inc." *Id*. And Ninth Circuit and Chinese law is consistent with *Billy Bob* and the cases it cites on the salient points. *See* Ex. E at ¶¶ 32–44; *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1155 (9th Cir. 2010); *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428–29 (9th Cir. 1996); *SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 894-95 (N.D. Cal. 2022); *Nat'l Photo Grp., LLC v. Allvoices, Inc.*, No. 13-cv-03627, 2014 U.S. Dist. LEXIS 9190, at *8 (N.D. Cal. Jan. 24, 2014); *see also Radio Television Espanola S.A. v. New World Ent., Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999) ("It doesn't have to be the Magna Carta; a one-line pro forma statement will do.").

Accordingly, the ██████████████████████████████████████████████ ██████, which Meishe has cited in its interrogatory responses from the beginning, is the document most important to ownership of the IP rights in this case. Given the absence of any dispute between XAT and Meishe, ████████████████████████████████████████████

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO: 3:23-cv-06012-SI

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

████████████████████████████████████████████████

1   ████████████, long before the damages period. And to the extent doing so is necessary, it also

2   validates nunc pro tunc ████████████████████████████████████████████████████

3   ███████████████████████████████████████████████).[18]

4          Defendants' speculation that XAT could own the asserted source code, or that Meishe's

5   source code may be a derivative work, or that Meishe's source code may incorporate Dunhuang code

6   is immaterial for the same reason. There is no dispute among the parties with standing to dispute it,

7   that Meishe owns the rights to the asserted source code. Whatever Dunhuang source code was in-

8   cluded in the Meishe software, XAT transferred the rights to this portion of Dunhuang code to

9   Meishe ten years ago. In addition, Meishe's expert, Judge Wang Yanfang, further confirmed in her

10  expert report that XAT transferred its ownership in the Meishe software to Meishe, including any

11  Dunhuang source code used in the Meishe software. *See, e.g.*, Ex. E at ¶ 17. Regardless of Defend-

12  ants' arguments about any purported use of Dunhuang source code in the Meishe software, Meishe

13  is the sole owner of the Meishe source code and the related copyrights and trade secrets.

14         And in addition to all the above, the Special Master granted Defendants requests to compel

15  XAT documents and Dunhuang source code. To the extent that was in Meishe's control, Meishe

16  provided it. To the extent it wasn't, XAT voluntarily provided it on May 21. Thus, Defendants re-

17  ceived all the information that they requested (immaterial though it may be to anything in this case).

18  And Defendants fail to show how they could be prejudiced as a result of any Meishe conduct relating

19  to that information. Accordingly, for all these reasons, the *Leon* factors decisively disfavor sanctions.

20         **3.      Defendants' Sanctions Motion Should Be Denied Because It Contravenes**
            **Other Authorities.**

21

22             a.    Defendants' Sanctions Request Violates Generally Applicable Ninth
                     Circuit Law on Discovery Sanctions.

23         The Ninth Circuit requires that discovery sanctions bear "a reasonable relationship to the

---

[18] To clarify, there is ████████████████████████████████

████████████████████████████████████████████, once Meishe legally existed.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO: 3:23-cv-06012-SI

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

subject of discovery that was frustrated by sanctionable conduct." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001). For the same reasons that the conduct Defendants complain of is immaterial and caused no prejudice, Defendants' request for severely punitive sanctions has no relationship to that conduct. And Defendants' overreaching violates Ninth Circuit law. *E.g.*, *Navellier*, 262 F.3d at 947.

Further, Defendants proposed alternative sanctions similarly fail to bear "a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct." *Id*. First, Defendants' proposal that Meishe be precluded from presenting evidence on ███████████ ignores that Defendants had the opportunity to explore this throughout discovery and Defendants served a detailed expert report on Chinese law ██████████. Second, Defendants' proposal that the Court deem that the entire Meishe source code was unlawfully copied from XAT's Dunhuang source code directly contradicts the facts of the case and is illogical. Defendants have the entire Dunhuang source code and have access to the asserted Meishe code, so Defendants are fully aware that the entire Dunhuang code was not copied into the Meishe code. Moreover, even using the Dunhuang code in the Meishe code could not have been unlawful as the Meishe code was initially developed at XAT who also owned the Dunhuang code. Third, Defendants' proposal that Meishe be prevented from offering evidence on protecting the secrecy of the Meishe code before October 2015 makes no sense and directly contradicts the facts of the litigation. The measures to protect the secrecy of the Meishe code has no connection to the conduct Defendants complain about and Defendants have known for years the measures taken by both Moishe and XAT to protect the Meishe source code. Finally, Defendants' proposal to require Meishe to admit it found no infringement in Meishe's pre-suit analysis is irrelevant to the litigation four years after this pre-suit analysis when Defendants have had years to analyze the actual Meishe source code. Further, such an admission serves no purpose except to allow Defendants to attempt to dismiss Meishe's case. The sanctions sought by Defendants are inappropriate and improper under Nonth Circuit law.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO: 3:23-cv-06012-SI

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

b.    <u>Defendants' Motion Contravenes This Court's April 4 Order.</u>

Unlike Defendants' previous motion that the Special Master denied on May 29, 2025, *see* Dkt. No. 576, here Defendants seek discovery sanctions from the Court in the first instance, without previously requesting sanctions from the Special Master. Defendants' present motion thus contravenes this Court's April 4, 2024 order appointing the Special Master. That order provides that "the Special Master shall assist the Court with all discovery disputes and managing the conduct of discovery to promote efficiency and savings of time and cost," and "shall have the authority to … to issue orders awarding non-contempt sanctions" and to "recommend a contempt sanction." Dkt. 423 at 2–3 (¶ 6). Apart from Defendants' apparent unhappiness with the Special Master's ruling on their last sanctions motion, *see generally* Dkt. No. 580, there appears to be no reason for Defendants to move this Court in the first instance. Defendants' present motion thus should be denied for the additional reason that it was not presented to the Special Master.[19]

Similarly, if Defendants were aggrieved by Meishe's failure to provide any information during discovery, Defendants should have moved to compel before Special Master. And if the Defendants disagreed with his decision on any such motion, Defendants were required to file objections as set forth in this Court's April 4 Order. Defendants' failure to do so both violates that order and further confirms that the conduct Defendants complain of did not cause any prejudice.

**C.    THE COURT SHOULD AWARD MEISHE ATTORNEY'S FEES.**

Defendants accuse Meishe of perjury, bad faith, deliberate concealment, and other gross misconduct based on nothing more than unsupported speculation that the Special Master rejected. More care should be taken when making such serious accusations. By throwing them around in a meritless attempt to avoid the consequences of their illegal copying, Defendants undermined the judicial system and unduly drained Meishe and taxpayer resources. Accordingly, Meishe respectfully requests

---

[19] Meishe respectfully requests that denial of Defendants' present motion on this basis be with prejudice, given Defendants' failure to explain their noncompliance and that Defendants already burdened Meishe with multiple rounds of related briefing.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO: 3:23-cv-06012-SI

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

that the Court award Meishe its attorney's fees for responding to this motion.

## IV.    CONCLUSION

As set forth above, this Court should deny Defendants' motion for at least three reasons: (1) Defendants fail to show that Meishe committed any sanctionable conduct, much less bad faith; (2) no complained-of conduct was material or caused any prejudice; and (3) Defendants' motion contravenes multiple other authorities. And the Court should award Meishe its attorney's fees for responding to Defendants' baseless request.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO: 3:23-cv-06012-SI

Cherian LLP
2001 Addison Street, Suite 275
Berkeley, CA 94704

DATED: July 14, 2025

Respectfully submitted,

CHERIAN LLP

By: */s/ Robert Harkins*
ROBERT M. HARKINS (Bar No. 179525)
bobh@cherianllp.com
KORULA T. CHERIAN (Bar No. 133967)
sunnyc@cherianllp.com
CHERIAN LLP
2001 Addison St, Suite 275
Berkeley, CA 94704
Telephone: (510) 944-0190

STEPHANIE R. WOOD (Bar No. 242572)
stephaniew@cherianllp.com
CHERIAN LLP
8350 N. Central Expressway, Suite 1900
Dallas, TX 75206
Telephone: (945) 205-0301

THOMAS M. DUNHAM (pro hac vice)
tomd@cherianllp.com
J. MICHAEL WOODS (pro hac vice)
michaelw@cherianllp.com
ADAM A. ALLGOOD (Bar No. 295016)
adama@cherianllp.com
CHERIAN LLP
2001 L St. NW Suite 650
Washington, DC 20036
Telephone: (202) 838-1560

*Attorneys for Plaintiff Beijing Meishe
Network Technology Co., Ltd.*

26

1

**CERTIFICATE OF SERVICE**

2         The undersigned hereby certifies that all counsel of record who are deemed to have con-

3    sented to electronic service are being served this 14th of July 2025, with a copy of this document

4    via secured means.

5

6                                      */s/ Robert Harkins*

7                                   Robert M. Harkins, Jr.
                               SBN 179525

8

9

10

**Cherian LLP**
**2001 Addison Street, Suite 275**
**Berkeley, CA 94704**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28